| | |
|---|---|
| 1 | **Lory R. Lybeck**<br>Lybeck Murphy, LLP |
| 2 | 7525 SE 24th Street, Ste. 500<br>Mercer Island, WA 98040-2334 |
| 3 | 206-230-4255 /phone<br>206-230-7791 /fax |
| 4 | Lybeck – lrl@lybeckmurphy.com |
| | **Lybeck – OSB #83276** |
| 5 | Attorney for defendant |

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON AT PORTLAND

TANYA ANDERSEN

  Plaintiff

v.

ATLANTIC RECORDING CORPORATION, a Delaware corporation; PRIORITY RECORDS, LLC, a California limited liability company; CAPITOL RECORDS, INC., a Delaware corporation; UMG RECORDINGS, INC., a Delaware corporation; and BMG MUSIC, a New York general partnership; RECORDING INDUSTRY ASSOCIATION OF AMERICA; SAFENET, INC., f/k/a MEDIA SENTRY, INC., a Delaware corporation; SETTLEMENT SUPPORT CENTER, LLC, a Washington limited liability company

  Defendants.

No.

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

**RELATED CASE NOTICE**

## I. RELATED ACTION

A. **LR 42 Related Case Notice**

   1. **Identity of Related Case**

      1.1 Pursuant to Local Rule 42.2 this action is related to <u>Atlantic Recording Corp., et</u>

Complaint and Demand for Jury Trial - 1
andersen\pleadings05\complaint against RIAA et al.v7

Lybeck✦Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791

Dockets.Justia.com

al v. Andersen, No. CV 05-933 AS (D. Or) pending before the Honorable Donald C. Ashmanskas in the United States District Court, District of Oregon.

2. **Nature of Related Case**

1.2 On August 26, 2005, while Tanya Andersen and her 8 year-old daughter were sitting down to dinner, a legal process server knocked on her door. When she answered the door, she was served with a lawsuit filed by RIAA-controlled music distribution companies in a federal court. Ms. Andersen was shocked, afraid, and very distressed. The lawsuit falsely claimed that she owed hundreds of thousands of dollars to these companies as penalties for copyright infringement. Ms. Andersen knew that she was completely innocent of the charges against her. She answered the false claims and asserted counterclaims seeking damages. During discovery, Ms. Andersen learned that the lawsuit filed against her was based solely upon an illegal, flawed and negligent investigation. Almost two years later, on the eve of summary judgment, the lawsuit was dismissed with prejudice. Ms. Andersen's counterclaims continue in that case. Those counterclaims are restated here as direct claims. New claims are also set forth here against the former plaintiffs in that action and against new additional parties.

3. **LR 42.4 Notice/Consolidation**

1.3 It is anticipated that on Ms. Andersen's motion her counterclaims in Atlantic Recording Corp. v. Andersen and these new claims will be joined in a single action either by voluntary dismissal or consolidation of the related action with this case.

## II. NATURE OF THE CASE

2.1 Tanya Andersen pursues this action to recover compensation for the significant damages these defendants directly caused her. She also seeks punitive damages, statutory

Complaint and Demand for Jury Trial - 2
andersen\pleadings05\complaint against RIAA et al.v7

Lybeck✦Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791

penalties, litigation fees and expenses, and declaratory relief.

## III. PARTIES

### A. Tanya Andersen

3.1 Plaintiff Tanya Andersen is the single mother of a 10 year-old girl, Kylee. She and Kylee reside in Beaverton, Oregon.

### B. Defendants

3.2 **Defendant Record Companies.** Defendants Atlantic Recording Corporation, a Delaware corporation; Priority Records, LLC, a California limited liability company; Capitol Records, Inc., a Delaware corporation; UMG Recordings, Inc., a Delaware corporation; and BMG Music, a New York general partnership (hereinafter collectively "defendant Record Companies") are companies in the business of manufacturing and distributing recorded music. Each of these companies is also a member of the Recording Industry Association of America. The defendant Record Companies filed an action against Ms. Andersen, <u>Atlantic Recording Corp., et al v. Andersen</u>, No. CV 05-933 AS (D. Or.), which remains pending in this court.

3.3 **Defendant RIAA.** The true nature of Defendant Recording Industry Association of America (hereinafter "RIAA") RIAA's corporate form is unknown. Its headquarters are located in Washington D.C. It holds itself out as a trade group that directs and controls its members companies, in the filing of thousands of lawsuits against individuals in federal courts across the country. These RIAA controlled member companies are subsidiaries of 4 major companies that monopolize and control the sale of over 90% of all the music that is commercially distributed in the United States. For several years the RIAA has engaged in a coordinated enterprise to pursue a scheme of threatening and intimidating litigation in an attempt to maintain its music distribution monopoly.

Complaint and Demand for Jury Trial - 3
andersen\pleadings05\complaint against RIAA et al.v7

Lybeck✦Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791

3.4     **Defendant MediaSentry.** Defendant SafeNet, Inc. f/k/a MediaSentry, Inc. (hereinafter "MediaSentry"), is believed to be a Delaware corporation which maintains its principal place of business in Maryland. It assists the RIAA and its controlled member companies in their coordinated enterprise to pursue a scheme of threatening and intimidating litigation against tens of thousands of private U.S. citizens. It also conducts illegal, flawed and negligent investigations for the RIAA and its controlled member companies.

3.5     **Defendant Settlement Support Center.** Defendant Settlement Support Center, LLC is a Washington limited liability company that operates as the debt collection arm of the defendants' coordinated enterprise to pursue a scheme of threatening and intimidating litigation.

## IV. JURISDICTION AND VENUE

4.1     The court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1332.

4.2     This action asserts claims under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, et seq., and the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1961, et seq., in addition to the other causes of action set forth below.

4.3     The parties are citizens of different states. The amount in controversy exceeds $75,000.

4.4     The court also has jurisdiction over the parties in accordance with ORS 14.080.

4.5     Venue is proper under 28 U.S.C. §1391.

Complaint and Demand for Jury Trial - 4
andersen\pleadings05\complaint against RIAA et al.v7

Lybeck✦Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255   Fax 206-230-7791

## V. FACTUAL BACKGROUND

### A. The National Threat and Litigation Enterprise

5.1 Defendant RIAA is composed of 4 major multinational member companies and each of which has many subsidiary member companies. The RIAA publicly claims to have a virtual monopoly and to control 90% of the sound recordings sold in the United States.

5.2 Defendant MediaSentry is in the business of conducting personally invasive private investigations of private citizens in many states in the U.S., for the RIAA and its controlled member companies. MediaSentry advertises that its services include "investigation" and "litigation support".

5.3 Pursuant to a secret agreement, the RIAA, its controlled member companies and MediaSentry conspired to develop a massive threat and litigation enterprise targeting private citizens across the United States. The RIAA and its controlled member companies have for years aggressively acted to prevent disclosure of the secret agreement. Recently it has been discovered that as a part of this secret enterprise MediaSentry has for years conducted illegal, flawed and negligent investigations of many thousands of private United States citizens. These illegal investigations are then used as the sole basis for pursuit of tens of thousands of lawsuits throughout the U.S.

5.4 During the investigation, MediaSentry, without authorization and under the false pretext of being a peer user, claims to employ secret methods to enter individual computers to surreptitiously and illegally gather information on private citizens. At best, MediaSentry only identifies an internet protocol (IP) address and which it then sells to the RIAA. The RIAA and its controlled member companies then use this illegally obtained information in its public threat and litigation enterprise.

Complaint and Demand for Jury Trial - 5
andersen\pleadings05\complaint against RIAA et al.v7

Lybeck✦Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255   Fax 206-230-7791

5.5 MediaSentry and the RIAA know that their investigations are illegal, flawed and cannot identify specific individuals that are subsequently threatened and/or sued. In a March 2004 sworn deposition MediaSentry's then president admitted to various serious flaws in the investigative scheme which all defendants know result in misidentification of individuals. Despite this knowledge, defendants have falsely represented to tens of thousands of people that they have been definitively and personally identified as a copyright infringer.

5.6 MediaSentry's then president also admitted that MediaSentry actually cannot determine whether listed files are copyrighted recordings, bogus or inoperative files, or decoys from lists of file names collected on "screen shots".

5.7 The flaws in MediaSentry's investigations have been well known to defendants for years. In Brein et al v. UPC Nederland B.V. et al., No. 194741/KGZA-05-462/BL/EV at 4.30-31 (2005), a Dutch court ruled that that MediaSentry's investigation protocol was insufficient to state a claim for copyright infringement because it was unable to identify an actual individual allegedly engaged in copyright infringement.

5.8 In BMG Canada, Inc. v. John Doe, 2005 FCA 193, (2005), the Canadian Federal Court ruled that the investigation protocol used by MediaSentry is so deficient that the "evidence" gathered fails to establish even a prima facie case of infringement.

5.9 RIAA-controlled member companies have filed and dismissed meritless cases across the country after being forced to admit that they had sued the wrong people. See, e.g., Atlantic v. Zuleta, Case No. 06-CV-1221 (N.D. Ga.); BMG Music v. Thao, Case No. 07-CV-143 (E.D. Wis.); Capitol Records, Inc., et al v. Foster, Case No. Civ. 04-1569-W (W.D. Okla.); Interscope Records v. Leadbetter, Case No. C05-1149-RSL-MJP (W.D. Wash.); Priority Records, LLC v. Chan, Case No. 04-CV-73645-DT (E.D. Mich.); Virgin Records America, Inc.

Complaint and Demand for Jury Trial - 6
andersen\pleadings05\complaint against RIAA et al.v7

Lybeck♦Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791

v. Marson, Case No. 05-CV-03201 RGK (C.D. Cal.).

5.10   The <u>illegality</u> of the private investigations is also known to defendants. Most states require licensing or registration of private investigators. In Oregon, unlicensed investigators are subject to civil and criminal penalties. These licensing laws are well known to reputable investigators. On information and belief, MediaSentry and its investigators are not and have not been licensed to conduct private investigations of private citizens in Oregon or any other state. Their investigations are illegal.

5.11   For years, the RIAA and its member companies have been using flawed and illegal private investigation information as part of their coordinated scheme and common enterprise to threaten, intimidate and coerce payment from private citizens across the United States. As such they have clogged and abused the federal courts for many years.

5.12   To conduct this enterprise, the RIAA causes its controlled member companies to file information farming suits against anonymous "John Doe" parties to obtain private information about certain IP addresses from internet service providers (ISPs). Since only John Doe defendants are "named", the targeted individuals are often deprived of due process and receive little or no information about the RIAA's conspiracy to harvest personal information about them.

5.13   After an individual's personal information is harvested, the anonymous "John Doe" suits are invariably dismissed; often before the individuals who have been secretly sued have any meaningful opportunity to appear or to otherwise protect their privacy.

5.14   When the anonymous suits are filed, defendants know that the subpoenaed private information is often flawed and mistaken and will be later misused. Some ISPs receiving subpoenas have informed their customers of this potential for errors. After learning

Complaint and Demand for Jury Trial - 7
andersen\pleadings05\complaint against RIAA et al.v7

Lybeck✦Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255   Fax 206-230-7791

that these ISPs were disclosing flaws in its investigations, the RIAA demanded that the ISPs stop giving advice to their own customers and that ISPs direct all customers to contact only the RIAA.

5.15 After the RIAA has the ISP customers' private information, it directs its lawyers to send threatening and misleading letters containing false allegations and material omissions to individuals whose names and addresses were disclosed.

5.16 These letters are intended to intimidate, confuse, and mislead by claiming that the recipient has "already been sued". At the same time the letters state that the recipients "have not yet been named as a defendant", in a lawsuit.

5.17 These letters also falsely allege that "[t]he evidence necessary for the record companies to prevail in this action [against an individual] has already been secured."

5.18 These letters typically demand that the recipient contact the RIAA's unnamed "representatives" and threaten that if the recipient does not make contact within 10 days of the letter, a federal lawsuit will be filed against them personally.

5.19 The short 10 day time period is intended to deny the recipient any meaningful opportunity to investigate the false assertions contained in the letter.

5.20 These letters never advise the recipient that he or she was the subject of an illegal private investigation. Further, these letters never disclose the known possibility of error or mistaken identity. The letters also never disclose that the investigations provide no proof that a specific individual engaged in the alleged copyright infringement. Instead, these letters falsely claim that the RIAA has actual proof necessary to prevail on direct copyright infringement claims against the recipient.

5.21 These letters instruct the recipients to contact defendants' agent, Settlement

Complaint and Demand for Jury Trial - 8
andersen\pleadings05\complaint against RIAA et al.v7

Lybeck♦Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791

Support Center. The nature of the Settlement Support Center's association with the RIAA and other defendants in their common enterprise is never specifically disclosed.

5.22 Settlement Support Center was formed by the RIAA and its controlled member companies for the purpose of coercing payments from individuals identified by MediaSentry's illegal, flawed and negligent private investigations. Settlement Support Center's role in the defendants' common enterprise is to engage in debt collection activities across the country. Settlement Support Center employs personnel specially trained to project an authoritative and intimidating presence in communications with targeted individuals.

5.23 In their communications, Settlement Support Center representatives do not disclose the fact of the illegal investigation or acknowledge the possibility of mistaken identity due to the known flaws inherent in MediaSentry's private investigation protocol. Moreover, they do not disclose that no proof actually exists of infringement by a specific individual.

5.24 Defendants are aware that Settlement Support Center does not disclose the illegal private investigation, the possibility of misidentification or the inability of the investigation to identify specific individuals.

5.25 Each defendant acted in concert with the others in a joint enterprise to retain monopolistic control over U.S. and worldwide distribution of music recordings. This monopoly harms the artists (including songwriters and musicians), the music-consuming public, and wrongfully sued individuals like Tanya Andersen. Defendants' illegal enterprise also clogs and abuses this nation's federal court system.

### B. The Campaign Against Tanya Andersen

5.26 Tanya Andersen initially received a letter from the Los Angeles, California law firm Mitchell Silverberg & Knupp, LLP on behalf of certain undisclosed "record companies".

Complaint and Demand for Jury Trial - 9
andersen\pleadings05\complaint against RIAA et al.v7

Lybeck✦Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791

The letter falsely claimed that Ms. Andersen had illegally downloaded music, infringed undisclosed copyrights and that "[t]he evidence necessary for the record companies to prevail in this action has already been secured."

5.27 After receiving this letter, Ms. Andersen immediately contacted defendants and their agent, Settlement Support Center. She explained that their claims were in error and that she had never downloaded or shared music or used any file-sharing program. She told them that she did not even know how to use such a program. According to the defendants' scheme, Settlement Support Center repeated defendants' joint threat that unless she immediately paid Settlement Support Center $4,000-5,000 defendants would ruin her financially. Defendants then knew or should have known that Ms. Andersen was innocent.

5.28 An employee of Settlement Support Center actually admitted to Ms. Andersen that he believed that she had not infringed any copyrights. He explained, however, that defendants would not quit their attempts to force payment from her because to do so would encourage other people to defend themselves. He stated that Ms. Andersen could pay thousands of dollars to defend herself against a federal lawsuit or take the less expensive option of "settling" with defendants.

5.29 Ms. Andersen wrote to Settlement Support Center again explaining her innocence. She even invited an inspection of her computer to prove that the claims made against her were false or in error.

5.30 Instead of inspecting her computer, the RAA and its controlled member companies filed suit against Ms. Andersen on June 24, 2005.

5.31 The defendant Record Companies later claimed that MediaSentry had caught her sharing files online at 4:20 A.M. PST, on May 20, 2004, and identified her as

Complaint and Demand for Jury Trial - 10
andersen\pleadings05\complaint against RIAA et al.v7

Lybeck♦Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791

1  "gotenkito@kazaa."

2  5.32   Ms. Andersen explained that she did not know "gotenkito" nor anyone else who used that name. Ms. Andersen also explained that she was not awake at 4:20 AM on May 20, 2004. She again explained that her computer was never used to share files online.

5.33   Defendants knew that Ms. Andersen was not engaged in copyright infringement. In fact, a simple 2-minute search for "gotenkito" on the Google search engine confirms that a young man in Everett, Washington had been using the internet name gotenkito. This man's MySpace webpage, "Chad's Wacky Life Stories", describes his interest in computers, music and even admits downloading copyrighted materials.

5.34   In an attempt to end defendants' persecution of her, Ms. Andersen provided gotenkito's name, location, and phone number to the defendant Record Companies. Along with everything else she had done, she hoped this would result in their admitting that she had been misidentified and falsely accused and that the claims against her would be dismissed.

5.35   Instead of dismissing their false claims, the defendant Record Companies persisted in their malicious prosecution of her they publicly libeled her with demeaning and repulsive accusations. They repeatedly and publicly claimed that Ms. Andersen stole and possessed songs with titles such as "shake that ass bitch", "dope nose", "die motherfucker die", "bullet in the head", "fuck y'all hoes", "nigger fucker", and "i stab people".

5.36   Ms. Andersen remains understandably offended and outraged by defendants conduct. She was the mother of a then 7 year-old girl. She has no interest in the violent, profane, misogynistic, and racist music that the RIAA and its controlled member companies monopolize. Defendants knew that Ms. Andersen listens to only country music and soft rock. For years she had avidly purchased music from RIAA member companies' mail order CD

Complaint and Demand for Jury Trial - 11
andersen\pleadings05\complaint against RIAA et al.v7

Lybeck♦Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791

clubs.

5.37 Defendants were also aware that their false, slanderous claims and the federal lawsuit were significantly damaging to Ms. Andersen. In May 2004, for health reasons Ms. Andersen had been forced to leave her position as a case manager at the Department of Justice at the time she was targeted by defendants, she was surviving on disability benefits for painful physical illness, emotional and psychological problems.

5.38 Before the lawsuit, she had hoped to return to work, but her psychological and physical symptoms seriously worsened due to defendants' malicious and outrageous conduct. Rather than completing a return to work program she had to seek additional medical and psychiatric care.

5.39 Still defendants refused to undertake a reasonable investigation into the propriety of their claims against Ms. Andersen. They repeatedly refused to even inspect her computer hard drive. After a court order required it and the inspection was finally done, the RIAA's own expert determined that Ms. Andersen's computer had not been used to infringe copyrights. No files or remnants of any files allegedly containing copies of the defendant Record Companies' copyrighted recordings were ever found on her computer.

5.40 Even then and despite their own experts' determination and all the other proof of her innocence, the RIAA and its member controlled companies refused Ms. Andersen's pleas that the litigation and persecution of her stop.

5.41 Rather than ending their abuse of her, RIAA-controlled lawyers renewed their threats: They would not dismiss their false claims unless Ms. Andersen paid them some undisclosed amount of money. They wanted it to appear publicly that they had prevailed.

5.42 When Ms. Andersen declined to pay them, defendants stepped up their

Complaint and Demand for Jury Trial - 12
andersen\pleadings05\complaint against RIAA et al.v7

Lybeck♦Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791

intimidation. They demanded the deposition of Ms. Andersen's 10 year-old daughter Kylee. Ms. Andersen remained outraged. The RIAA and its agents knew that Ms. Andersen was very concerned about her daughter and the threat of taking her deposition was causing Ms. Andersen a great deal of distress.

5.43 Knowing of her distress, the RIAA and its agents even attempted to directly contact Kylee. They called Ms. Andersen's apartment building looking for Kylee. Phone calls were also made to her former elementary school under false pretenses. The voice of the woman on the phone claimed to be Kylee's grandma inquiring as to her attendance. Ms. Andersen learned of these tactics and was even more frightened and distressed.

5.44 Later, and not until nearly two years after their reckless suit was filed, RIAA lawyers offered to voluntarily dismiss the claims against Ms. Andersen, <u>but only if she abandoned her legal counterclaims against them</u>. They also emphasized that if she did not abandon her legal rights, they would continue to persecute her and her young daughter, and again demanded to interrogate and confront her little girl at the offices of RIAA lawyers. Despite her distress, Ms. Andersen failed to give in. The court even was compelled to enter an order protecting Kylee and Ms. Andersen from the aggressive confrontation threatened by the RIAA and its agents.

5.45 Ms. Andersen was ultimately able to file a motion for summary judgment. This motion required the defendant Record Companies to submit proof of their claims. The defendants delayed the time to submit proof they knew never existed. They made one more demand that Ms. Andersen dismiss her counterclaims. When she again refused, the Record Companies' had no option and were forced to finally dismiss their case with prejudice on June 1, 2007.

Complaint and Demand for Jury Trial - 13
andersen\pleadings05\complaint against RIAA et al.v7

Lybeck♦Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255   Fax 206-230-7791