**Lory R. Lybeck**
Lybeck Murphy, LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 /phone
206-230-7791 /fax
Lybeck – lrl@lybeckmurphy.com
**Lybeck – OSB #83276**
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON AT PORTLAND

TANYA ANDERSEN, Individually and as Representative of Others Similarly Situated

Plaintiff

v.

ATLANTIC RECORDING CORPORATION, a Delaware corporation; PRIORITY RECORDS, LLC, a California limited liability company; CAPITOL RECORDS, INC., a Delaware corporation; UMG RECORDINGS, INC., a Delaware corporation; and BMG MUSIC, a New York general partnership; RECORDING INDUSTRY ASSOCIATION OF AMERICA; SAFENET, INC., f/k/a MEDIA SENTRY, INC., a Delaware corporation; SETTLEMENT SUPPORT CENTER, LLC, a Washington limited liability company

Defendants.

No. CV 07-934 BR

**NATIONWIDE CLASS ACTION ALLEGATION**

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

**DEMAND FOR JURY TRIAL**

**RELATED CASE NOTICE**

Plaintiff seeks certification to pursue this action as representative of a nationwide class and includes below specific CLASS ACTION ALLEGATIONS.

Nationwide Class Action Allegation
Plaintiff's First Amended Complaint - 1

Lybeck❖Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791

Dockets.Justia.com

# I. RELATED ACTION

## A. LR 42 Related Case Notice

### 1. Identity of Related Case

1.1 Pursuant to Local Rule 42.2 this action is related to Atlantic Recording Corp., et al v. Andersen, No. CV 05-933 AS (D. Or) pending before the Honorable Donald C. Ashmanskas in the United States District Court, District of Oregon.

### 2. Nature of Related Case

1.2 On August 26, 2005, while Tanya Andersen ("Ms. Anderson" or "Plaintiff") and her 8 year-old daughter were sitting down to dinner, a legal process server knocked on her door. When she answered the door, she was served with a lawsuit filed by RIAA-controlled music distribution companies in a federal court. Ms. Andersen was shocked, afraid, and very distressed. The lawsuit falsely claimed that she owed hundreds of thousands of dollars to these companies as penalties for copyright infringement. Ms. Andersen knew that she was completely innocent of the charges against her. She answered the false claims and asserted counterclaims seeking damages. During discovery, Ms. Andersen learned that the lawsuit filed against her was based solely upon an illegal, flawed and negligent investigation. Almost two years later, on the eve of summary judgment, the lawsuit was dismissed with prejudice. Ms. Andersen's counterclaims continue in that case. Those counterclaims are restated here as direct claims. New claims are also set forth here against the former plaintiffs in that action and against new additional parties.

### 3. LR 42.4 Notice/Consolidation

1.3 It is anticipated that on Ms. Andersen's motion her counterclaims in Atlantic Recording Corp. v. Andersen will be dismissed, concluding that action with the exception of

Lybeck❖Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791

her pending motion for attorney's fees. If the remaining counterclaims in that action are not dismissed, Ms. Andersen will request that these counterclaims be joined in a single action by consolidation of the related action with this case.

## II. NATURE OF THE CASE

2.1 This is a class action lawsuit seeking money damages and equitable relief pursuant to FEDERAL RULE OF CIVIL PROCEDURE 23. Plaintiff files this lawsuit for the purpose of certifying a nationwide class of Plaintiffs pursuant to F.R.C.P. 23. This lawsuit seeks to recover on behalf of Plaintiff, and all others similarly situated as class members, compensation for the significant damages caused by the Defendants. In addition, this lawsuit seeks to recover punitive damages, statutory penalties, litigation fees and expenses, and equitable relief.

## III. PARTIES

### A. Tanya Andersen

3.1 Plaintiff Tanya Andersen is the single mother of a 10 year-old girl, Kylee. She and Kylee reside in Beaverton, Oregon.

### B. Defendants

3.2 **Defendant Record Companies**. Defendants Atlantic Recording Corporation, a Delaware corporation; Priority Records, LLC, a California limited liability company; Capitol Records, Inc., a Delaware corporation; UMG Recordings, Inc., a Delaware corporation; and BMG Music, a New York general partnership (hereinafter collectively "Defendant Record Companies") are companies in the business of manufacturing and distributing recorded music. Each of these companies is also a member of the Recording Industry Association of America. The defendant Record Companies filed an action against Ms. Andersen, Atlantic Recording Corp., et al v. Andersen, No. CV 05-933 AS (D. Or.), which remains pending in this court.

Lybeck❖Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791

3.3 **Defendant RIAA.** Defendant Recording Industry Association of America (hereinafter "RIAA") claims to be a New York not-for-profit corporation. Its headquarters are located in Washington D.C. It holds itself out as a trade group that directs and controls its member companies in the filing of thousands of lawsuits against individuals in federal courts across the country. These RIAA controlled member companies are subsidiaries of 4 major companies that monopolize and control the sale of over 90% of all the music that is commercially distributed in the United States. For several years the RIAA has engaged in a coordinated enterprise to pursue a scheme of threatening and intimidating litigation in an attempt to maintain its music distribution monopoly.

3.4 **Defendant MediaSentry.** Defendant SafeNet, Inc. f/k/a MediaSentry, Inc. (hereinafter "MediaSentry"), is believed to be a Delaware corporation which maintains its principal place of business in Maryland. It assists the RIAA and its controlled member companies in their coordinated enterprise to pursue a scheme of threatening and intimidating litigation against tens of thousands of private U.S. citizens. It also conducts illegal, flawed and negligent investigations for the RIAA and its controlled member companies.

3.5 **Defendant Settlement Support Center.** Defendant Settlement Support Center, LLC was a Washington limited liability company that operated as the debt collection arm of Defendants' coordinated enterprise to pursue a scheme of threatening and intimidating litigation.

## IV. JURISDICTION AND VENUE

4.1 The court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1332.

Lybeck❖Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791

4.2 This action asserts claims under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, et seq., and the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1961, et seq., in addition to the other causes of action set forth below.

4.3 The parties are citizens of different states. The amount in controversy exceeds $75,000.

4.4 Venue is proper under 28 U.S.C. §1391.

## V. <u>CLASS ACTION ALLEGATIONS</u>

5.1 Ms. Andersen as the representative plaintiff brings this class action on behalf of herself and all other individuals similarly situated as members of a proposed class pursuant to Rule 23 of the FEDERAL RULES OF CIVIL PROCEDURE. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of those provisions.

5.2 This class action is brought against Defendants for perpetuating a "campaign of threat and intimidation," as described in detail in this Complaint, against Plaintiff and all the many others who are similarly situated. Specifically, Defendants are liable for damages to the following class of plaintiffs:

> Those who were sued or were threatened with suit by Defendants for file-sharing, downloading or other similar activities, who have not actually engaged in actual copyright infringement.

5.3. The class is comprised of many thousands of individuals, making joinder impracticable. The disposition of the claims of these class members in a single class action will provide substantial benefits to all parties and the Court. There is a well-defined community of interest among members of the class. Plaintiff, like all class members, was a target of the above-referenced "campaign of threat and intimidation".

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791

5.4 Ms. Andersen as the representative Plaintiff, like all class members, has suffered actual damages as a result of Defendants' misconduct, and will be required to incur court costs and reasonable and necessary attorneys' fees in order to recover all sums due as a result of that misconduct.

5.5. There are questions of law and fact common to Plaintiff and the proposed class and those questions predominate over any questions that may affect the individual class members. Those questions include, but are not limited to, the following:

a. whether Defendants were negligent in their pursuit of the class members;

b. whether Defendants defrauded and/or made negligent misrepresentations to the class members (or conspired to do so);

c. whether Defendants violated and/or conspired to violate the Federal Racketeering and Influence Act ("RICO");

d. whether Defendants abused and/or conspired to abuse the legal process;

e. whether Defendants have maliciously prosecuted and/or conspired to maliciously prosecute class members;

f. whether Defendants violated and/or conspired to violate the Computer Fraud and Abuse Act;

g. whether Defendants committed or conspired to commit trespass to chattels against the class members;

h. whether Defendants committed or conspired to commit invasion of privacy against the class members;

i. whether Defendants misused or conspired to misuse the copyright laws;

j. whether Plaintiff and the class members are entitled to injunctive relief;

Lybeck❖Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791

k. whether Plaintiff and the class members are entitled to punitive damages.

5.6. The interests of the class will be fairly and adequately protected. Plaintiff has retained counsel with experience in prosecuting class actions involving wrongful conduct. Furthermore, Plaintiff and the undersigned counsel are committed to vigorously prosecuting this action on behalf of the class and have the financial resources to do so. Neither Plaintiff nor her counsel has any interests adverse to the interests of the class.

5.7. Plaintiff and members of the class have suffered and will continue to suffer harm and damages as a result of the unlawful and wrongful conduct of Defendants. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Absent a class action, most of the members of the class would find the cost of litigating their claims prohibitive and will have no effective remedy at law.

5.8. Absent a class action, class members will continue to incur damages and the misconduct of Defendants will continue without remedy. The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation because it affords the most efficient avenue for full redress of grievances, while simultaneously conserving the resources of the courts and the litigants, and promoting consistency and efficiency of adjudication.

## VI. FACTUAL BACKGROUND

### A. The National Threat and Litigation Enterprise

6.1 Defendant RIAA is composed of 4 major multinational member companies each having many subsidiary member companies. The RIAA publicly claims to exercise an actual monopoly and control over 90% of the sound recordings sold in the United States.

Lybeck❖Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791

6.2 Defendant MediaSentry is in the business of conducting personally invasive private investigations of private citizens in many states in the U.S. for the RIAA and its controlled member companies. MediaSentry advertises that its services include "investigation" and "litigation support".

6.3 Pursuant to a secret agreement, the RIAA, its controlled member companies and MediaSentry conspired to develop a massive threat and litigation enterprise targeting private citizens across the United States. The RIAA and its controlled member companies have for years aggressively acted to prevent disclosure of the secret agreement and their conspiratorial enterprise. Recently it has been discovered that as a part of this secret enterprise MediaSentry has for years conducted illegal, flawed and negligent investigations of many thousands of private United States citizens. These illegal investigations were and are used as the sole basis for the pursuit of tens of thousands of threatened and actual lawsuits throughout the U.S.

6.4 MediaSentry claims to conduct private investigations of private U.S. citizens without authorization and under the false pretext of being a peer user. It claims to employ secret methods to enter individual computers to surreptitiously and illegally gather information on private citizens. In reality and at best, MediaSentry is only capable of identifying an internet protocol (IP) address which it then provides to the RIAA. The RIAA and its controlled member companies then use this illegally obtained information in its public threat and litigation enterprise.

6.5 MediaSentry and the RIAA know that their investigations are illegal and flawed. MediaSentry is not licensed or registered to conduct private investigation of private U.S. citizens. Moreover, in a March 2004 sworn deposition MediaSentry's then president admitted to various serious flaws in the investigative scheme which all Defendants know result in

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791

misidentification of individuals. Despite this knowledge, Defendants have falsely represented to many tens of thousands of people that they have been definitively and personally identified as copyright infringers.

6.6 MediaSentry's former president also admitted that MediaSentry cannot actually determine from lists of files or "screen shots" whether listed files are copyrighted recordings, bogus or inoperative files, or decoys.

6.7 The flaws in MediaSentry's investigations have been well known to Defendants for years. In Brein et al v. UPC Nederland B.V. et al., No. 194741/KGZA-05-462/BL/EV at 4.30-31 (2005), a Dutch court ruled that that MediaSentry's investigation protocol was insufficient to state a claim for copyright infringement because it was unable to identify an actual individual allegedly engaged in copyright infringement.

6.8 In BMG Canada, Inc. v. John Doe, 2005 FCA 193, (2005), the Canadian Federal Court ruled that the investigation protocol used by MediaSentry is so deficient that the "evidence" gathered fails to establish even a prima facie case of infringement.

6.9 RIAA-controlled member companies have filed and dismissed meritless cases across the country after being forced to admit that they had sued the wrong people. See, e.g., Atlantic v. Zuleta, Case No. 06-CV-1221 (N.D. Ga.); BMG Music v. Thao, Case No. 07-CV-143 (E.D. Wis.); Capitol Records, Inc., et al v. Foster, Case No. Civ. 04-1569-W (W.D. Okla.); Interscope Records v. Leadbetter, Case No. C05-1149-RSL-MJP (W.D. Wash.); Priority Records, LLC v. Chan, Case No. 04-CV-73645-DT (E.D. Mich.); Virgin Records America, Inc. v. Marson, Case No. 05-CV-03201 RGK (C.D. Cal.).

6.10 The illegality of the private investigations is also known to Defendants. Most states require licensing or registration of private investigators. Like virtually all states, Oregon

Lybeck❖Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791

subjects unlicensed investigators to civil and criminal penalties. These licensing laws are well known to reputable investigators. On information and belief, MediaSentry and its investigators are not and have not been licensed to conduct private investigations of private citizens in Oregon or any other state. Their investigations are illegal.

6.11 For years, the RIAA and its member companies have been using flawed and illegal private investigation information as part of their coordinated scheme and common enterprise to threaten, intimidate and coerce payment from private citizens across the United States. As such they have clogged and abused the federal courts for many years with factually baseless and fraudulent lawsuits.

6.12 As part of this enterprise, the RIAA causes its controlled member companies to file information farming suits against anonymous "John Doe" parties to obtain private information about certain IP addresses from internet service providers (ISPs). Since only John Doe defendants are "named", the targeted individuals are often deprived of due process and receive little or no information about the RIAA's conspiracy to harvest their personal and private information.

6.13 After an individual's personal and private information is harvested, the anonymous "John Doe" suits are typically immediately dismissed; often before the individuals who have been secretly "sued" have any meaningful opportunity to appear or to otherwise protect their privacy.

6.14 When the anonymous suits are filed, Defendants know that the subpoenaed private information is often flawed and mistaken and that it will be later misused. Some ISPs who have been subjected to RIAA subpoenas have informed their customers of the potential for errors. After learning that these ISPs were disclosing flaws in its investigations, the RIAA

Lybeck❖Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791

demanded that the ISPs stop giving advice to their own customers and that ISPs direct all customers to contact only the RIAA.

6.15 After the RIAA has extracted the ISP customers' private information, RIAA controlled law firms send threatening and misleading letters containing false allegations and material omissions to individuals whose names and addresses were disclosed.

6.16 These law firm letters are intended to intimidate, confuse, and mislead by claiming that the recipient has "already been sued". At the same time the letters state that the recipients "have not yet been named as a defendant", in a lawsuit.

6.17 These letters also falsely allege that "[t]he evidence necessary for the record companies to prevail in this action [against an individual] has already been secured."

6.18 These letters typically demand that the recipient contact the RIAA's unnamed "representatives" and threaten that if the recipient does not make contact within 10 days of the letter, a federal lawsuit will be filed against them personally.

6.19 The short 10 day time period is intended to deny the recipient any meaningful opportunity to investigate the false assertions contained in the letter.

6.20 These letters never advise the recipient that he or she was the subject of an illegal private investigation. Further, these letters never disclose the known possibility of error or mistaken identity. The letters also never disclose that the investigations provide no proof that a specific individual engaged in any of the alleged acts of copyright infringement. Instead, these letters falsely claim that the RIAA has actual proof necessary to prevail on direct copyright infringement claims against the recipient.

6.21 These letters instruct the recipients to contact Defendants' agent, Settlement Support Center. The nature of the Settlement Support Center's association with the RIAA and

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791

other defendants in their common enterprise is never specifically disclosed.

6.22 Settlement Support Center was named and retained by the RIAA and its controlled member companies for the purpose of coercing payments from individuals identified by MediaSentry's illegal, flawed and negligent private investigations. Settlement Support Center's role in the Defendants' common enterprise was primarily to engage in debt collection activities across the country. Settlement Support Center employed personnel specially trained to project an authoritative and intimidating presence in communications with targeted individuals.

6.23 In their communications, Settlement Support Center representatives never disclosed the fact of the illegal investigation or acknowledged the possibility of mistaken identity due to the known flaws inherent in MediaSentry's private investigation protocol. Moreover, they never disclosed that no proof actually existed of infringement by any specific individual.

6.24 Defendants are aware that Settlement Support Center did not disclose the illegal private investigation, the possibility of misidentification or the inability of the investigation to identify specific individuals.

6.25 Each Defendant acted in concert with the others in a joint enterprise to retain monopolistic control over U.S. and worldwide distribution of music recordings. This monopoly harms the artists (including songwriters and musicians), the music-consuming public, and the many individuals like Tanya Andersen subjected to litigation abuse. Defendants' illegal enterprise also unfairly clogs and abuses this nation's federal judicial system to the detriment of all U.S. taxpayers.

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791

B. **The Campaign Against Tanya Andersen and Others Similarly Situated**

6.26 In February 2005, Tanya Andersen received a letter from the Los Angeles, California law firm *Mitchell Silverberg & Knupp, LLP* on behalf of certain undisclosed "record companies". The letter falsely claimed that Ms. Andersen had illegally downloaded music, infringed undisclosed copyrights and that "[t]he evidence necessary for the record companies to prevail in this action has already been secured."

6.27 After receiving this letter, Ms. Andersen immediately contacted Defendants and their agent, Settlement Support Center. She explained that their claims were in error and that she had never downloaded or shared music or used any file-sharing program. She told them that she did not even know how to use such a program. According to the Defendants' scheme, Settlement Support Center repeated Defendants' joint threat that unless she immediately paid Settlement Support Center $4,000-5,000 Defendants would ruin her financially. Defendants then knew or should have known that Ms. Andersen was innocent.

6.28 An employee of Settlement Support Center actually admitted to Ms. Andersen that he believed that she had not infringed any copyrights. He explained, however, that Defendants would not quit their attempts to force payment from her because to do so would encourage other people to defend themselves. He stated that Ms. Andersen could pay thousands of dollars to defend herself against a federal lawsuit or take the less expensive option of "settling" with Defendants.

6.29 Ms. Andersen wrote to Settlement Support Center again explaining her innocence. She even invited an inspection of her computer to prove that the claims made against her were false or in error.

Lybeck❖Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791

6.30 Instead of inspecting her computer, the RAA and its controlled member companies filed suit against Ms. Andersen on June 24, 2005.

6.31 The Defendant Record Companies later claimed that MediaSentry had caught her sharing files online at 4:20 A.M. PST, on May 20, 2004, and identified her as "gotenkito@kazaa."

6.32 Ms. Andersen explained that she did not know "gotenkito" or anyone else who used that name. Ms. Andersen also explained that she was not awake at 4:20 AM on May 20, 2004. She again explained that her computer was never used to share files online.

6.33 Defendants knew that Ms. Andersen was not engaged in copyright infringement. In fact, a simple 2-minute search for "gotenkito" on the Google search engine confirms that a young man in Everett, Washington had been using the internet name gotenkito. This man's MySpace webpage, "Chad's Wacky Life Stories", describes his interest in computers and music and even admits downloading copyrighted materials.

6.34 In an attempt to end Defendants' persecution of her, Ms. Andersen provided gotenkito's name, location, and phone number to the Defendant Record Companies. Along with everything else she had done, she hoped this would result in their admitting that she had been misidentified and falsely accused and that the claims against her would be dismissed.

6.35 Instead of dismissing their false claims, the Defendant Record Companies persisted in their malicious prosecution of Ms. Andersen. They publicly libeled her with demeaning and repulsive accusations. They repeatedly and publicly claimed that Ms. Andersen stole and possessed songs with titles such as "shake that ass bitch", "dope nose", "die motherfucker die", "bullet in the head", "fuck y'all hoes", "nigger fucker", and "i stab people". In other widely publicized statements, Defendants portrayed those accused of copyright

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791

infringement as "pirates" and "thieves".

6.36 Ms. Andersen remains understandably offended and outraged by Defendants conduct. She was the mother of a then 7 year-old girl. She has no interest in the violent, profane, misogynistic, and racist music that the RIAA and its controlled member companies monopolize. Defendants knew that Ms. Andersen listens to only country music and soft rock. For years she had avidly purchased music from RIAA member companies' mail order CD clubs.

6.37 Defendants were also aware that their false claims and the federal lawsuit were significantly damaging to Ms. Andersen and to others similarly situated. In May 2004, for health reasons Ms. Andersen had been forced to leave her position as a case manager at the Department of Justice. At the time she was targeted by Defendants, she was surviving on disability benefits for painful physical illness, emotional and psychological problems.

6.38 Before the lawsuit, she had hoped to return to work, but her psychological and physical symptoms seriously worsened due to Defendants' malicious and outrageous conduct. Rather than completing a return to work program she had to seek additional medical and psychiatric care.

6.39 Still Defendants refused to undertake a reasonable investigation into the propriety of their claims against Ms. Andersen. They repeatedly refused to even inspect her computer hard drive. After a court order required it and the inspection was finally done, the RIAA's own expert determined that Ms. Andersen's computer had not been used to infringe copyrights. No files or remnants of any files allegedly containing copies of the Defendant Record Companies' copyrighted recordings were ever found on her computer.

Lybeck❖Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791

6.40 Even then and despite their own experts' determination and all the other proof of her innocence, the RIAA and its member controlled companies refused Ms. Andersen's pleas that the litigation and persecution of her stop.

6.41 Rather than ending their abuse of her, RIAA-controlled lawyers renewed their threats: They would not dismiss their false claims unless Ms. Andersen paid them some undisclosed amount of money. They wanted it to appear publicly that they had prevailed.

6.42 When Ms. Andersen declined to pay them, Defendants stepped up their intimidation. They demanded the deposition of Ms. Andersen's 10 year-old daughter Kylee. Ms. Andersen remained outraged. The RIAA and its agents knew that Ms. Andersen was very concerned about her daughter and the threat of taking her deposition was causing Ms. Andersen a great deal of distress.

6.43 Knowing of her distress, the RIAA and its agents even attempted to directly contact Kylee. They called Ms. Andersen's apartment building looking for Kylee. During this time, phone calls were also made to Kylee's former elementary school under false pretenses. The voice of the woman on the phone claimed to be Kylee's grandma inquiring as to her attendance. Ms. Andersen learned of these tactics and was even more frightened and distressed.

6.44 Later, and not until nearly two years after their reckless suit was filed, RIAA lawyers offered to voluntarily dismiss the claims against Ms. Andersen, <u>but only if she abandoned her legal counterclaims against them</u>. They also emphasized that if she did not abandon her legal rights, they would continue to persecute her and her young daughter, and again demanded to interrogate and confront her little girl at the offices of RIAA lawyers. Despite her distress, Ms. Andersen failed to give in. The court even was compelled to enter an order protecting Kylee and Ms. Andersen from the aggressive confrontation threatened by the

Lybeck❖Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791

RIAA and its agents.

6.45 Ms. Andersen was ultimately able to file a motion for summary judgment. This motion required the Defendant Record Companies to submit proof of their claims. The Record Companies repeatedly delayed the time to submit proof they knew never existed. They made one last demand that Ms. Andersen dismiss her counterclaims. When she again refused, the Record Companies' had no option and were forced to finally dismiss their case with prejudice on June 1, 2007. Like many others, Ms Andersen had been subjected to the Defendants' abuse for over two years.

6.46 Defendants' actions toward Ms. Anderson are typical of their actions toward the other members of the class.

## VII. CLAIMS FOR RELIEF

### Count 1: Negligence

7.1 Plaintiff realleges and incorporates herein by reference each of the allegations set forth above.

7.2 The RIAA publicly claims to have special expertise in conducting investigations, influencing politicians, and suing thousands of private citizens. In fact, the RIAA's president, Cary Sherman, is a 1971 graduate of Harvard Law School. He was senior partner in one of this country's best known law firms. The RIAA publicly proclaims that he is "one of the top copyright attorneys in the country." The RIAA knows what is legal and what is malicious.

7.3 With its legal expertise, the RIAA has a heightened duty to act reasonably, responsibly, and legally to avoid foreseeable harm to Plaintiff and other members of the class.

7.4 Despite its specialized knowledge, the RIAA acted negligently when it conspired and coordinated with MediaSentry to devise a scheme and common enterprise to conduct

Lybeck✧Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791

private investigations of Plaintiff and other class members' that it knew or should have known was flawed in that it was prone to erroneously identify innocent private citizens.

7.5 Despite its specialized knowledge, the RIAA acted negligently when it retained MediaSentry to conduct private investigation of Plaintiff and other class members' personal information when it knew or should have known that MediaSentry was not licensed to conduct private investigations.

7.6 Despite its specialized knowledge, the RIAA acted negligently when it conspired and coordinated with MediaSentry to devise a scheme and common enterprise to conduct private investigations of Plaintiff and other class members'that it knew or should have known were flawed in that they could not identify the individuals who actually engaged in alleged copyright infringement.

7.7 Despite its specialized knowledge, the RIAA acted negligently when it continued to use the illegal and flawed investigations in its enterprise of threatening and intimidating litigation against Plaintiff and other members of the class even after repeated reports of its illegality and flaws arose in its member companies' cases across the country.

7.8 Defendant MediaSentry held itself out as an expert in conducting secret internet-based private investigations of private citizens' personal information. MediaSentry acted negligently when it failed to comply with private investigation licensing laws in Oregon and many other states.

7.9 MediaSentry acted negligently when it designed a private investigation scheme that it knew or should have known was flawed and illegal.

7.10 MediaSentry acted negligently when it conspired and coordinated with the RIAA to operate an illegal and flawed private investigation scheme against Plaintiff and other

Lybeck❖Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791

members of the class.

7.11 The defendant Record Companies acted negligently when they relied on information collected and provided by Defendants RIAA and MediaSentry to file and pursue lawsuits against Plaintiff and other members of the class.

7.13 Defendant Settlement Support Center negligently relied upon the MediaSentry private investigation in its coercive communications to Plaintiff and other class members demanding payment, when it knew or should have known that this investigation was illegal and flawed.

7.14. Communications from the RIAA, the Defendant Record Companies, and Settlement Support Center negligently failed to disclose to Plaintiff and other class members the illegality of the investigation, the possibility of misidentification, and the true nature of "evidence" against them which had "already been secured".

7.15 Defendants negligently failed to properly investigate the true identity of "gotenkito", both before first demanding payment from Plaintiff, and after his true identity was supplied to Defendants by her and was otherwise known to defendants.

7.16 Defendants' negligent conduct described above proximately caused direct damages to Plaintiff and all others similarly situated in an amount to be proven at trial.

**Count 2: Fraud and Negligent Misrepresentation**

8.1 Plaintiff realleges and incorporates herein by reference each of the allegations set forth above.

8.2 Defendants knowingly made materially false representations and omissions of material facts to Plaintiff and other members of the class in an attempt to extort money.

Lybeck❖Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791

8.3 As an example of Defendants' activities against the class, on February 2, 2005, Defendants' lawyers wrote a letter demanding that Ms. Andersen contact Settlement Support Center. In an attempt to threaten, intimidate and coerce Ms. Andersen into paying thousands of dollars, the letter made the affirmative false statement that "[t]he evidence necessary for the record companies to prevail in this action has already been secured." Defendants knew that this statement was false because they knew that their investigation could not identify any individual who had committed any of the alleged acts of infringement; they knew that that there was no evidence that the files allegedly detected were actual copies of sound recordings for which they allegedly had copyrights; and they knew that that the investigation protocol they employed had resulted in multiple mistaken identifications in the past.

8.4 Between February and March 2005, Defendant Settlement Support Center falsely claimed that Defendants had proof that Ms. Andersen had been "viewed" downloading and distributing over 1,288 audio files for which it sought to collect hundreds of thousands of dollars. This statement was materially false. Plaintiff never downloaded or distributed any audio files nor did the record companies or any of their agents ever observe any such activity associated with her personal home computer. Defendants were at all relevant times aware that no evidence existed supporting their claims.

8.5 Defendants' representatives knowingly and intentionally misrepresented that Defendants had actual evidence that Plaintiff had infringed the copyrights for thousands of song titles listed in the defendant Record Companies' complaint. Defendants used this list of titles as a means to embarrass, coerce, and threaten Plaintiff with the prospect of being sued for over one million dollars. Defendants knowingly and intentionally withheld the material fact that they did not know who engaged in any infringing activities, and they did not know whether any

Lybeck❖Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791

of the thousands of file names contained any copyrighted sound recordings whatsoever. The reason Defendants omitted this information was to intimidate Plaintiff into paying the defendant Record Companies thousands of dollars.

8.6 Defendants failed to disclose to Plaintiff the fact that she had been misidentified, and withheld from her the true nature of the "evidence" against her. Plaintiff had no access to the information that the Defendants falsely claimed to have received from MediaSentry. Plaintiff had no way of knowing that Defendants were withholding and omitting information from her, on which they intended she rely.

8.7 Defendants had a duty to conduct a reasonable investigation into the information that it was representing as true. Defendants breached that duty.

8.8 As a direct result of Defendants' materially false representations and omissions of material facts, Plaintiff invested substantial resources into investigating the integrity of her computer and investigating the claims of infringement at the request of Defendants. Defendants' conduct resulted in direct and consequential harm to Ms. Andersen and damages in an amount to be proven at trial.

**Count 3: Racketeer Influenced and Corrupt Organization Acts**

9.1 Plaintiff realleges and incorporates herein by reference each of the allegations set forth above.

9.2 The Racketeer Influenced and Corrupt Organization Act (RICO) prohibits companies from engaging in organized racketeering or criminal activities. 18 U.S.C. § 1961, *et seq*. RICO provides that it is unlawful for any person employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity or the collection of an unlawful debt. 18 U.S.C. § 1962 (c). The Oregon

Lybeck♦Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791

Racketeer Influenced and Corrupt Organizations Act (ORICO), ORS 166.715 *et seq*., and many other state RICO statutes prohibit the same and similar conduct and provide relief that is similar and in cases more extensive than the federal RICO statute.

9.3 Defendants each worked in association with each other for the purpose of creating and operating an enterprise to wage a public relations and public threat and intimidation campaign targeting, in part, Plaintiff and other members of the class, in an attempt to maintain control of and monopolize the distribution of music recordings.

9.4 Defendants' association constitutes an "enterprise" as defined in 18 U.S.C. § 1961(4).

9.5 Defendants common and conspiratorial conduct is set forth in detail in paragraphs 5.1 to 5.45 above. Defendants conducted illegal and flawed investigations which were designed to be and actually were used in a campaign of threat and extortion waged against Plaintiff and the class members.

9.6 Defendants formed a scheme to defraud Plaintiff and the other class members and directed their lawyers to send false and misleading communications through the U.S. mail with the intent to defraud in violation of 18 U.S.C. § 1341.

9.7 Through the above-detailed enterprise, Defendants attempted to coerce and threaten Plaintiff and the other class members into paying the Defendant Record Companies thousands of dollars in violation of the Hobbs Act, 18 U.S.C. § 1951, *et seq.*

9.8 While each of the Defendants participate in the enterprise, they also have an existence separate and distinct from the enterprise.

9.9 Defendants are each "persons" as defined in 18 U.S.C. § 1961(3).

Lybeck❖Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791

9.10 Defendants' acts formed a pattern of racketeering as defined in 18 U.S.C. § 1961(5). Defendants have committed at least two acts of racketeering. These acts represent a common course of conduct used by plaintiffs to target thousands of citizens throughout the United States. These activities shared the common objectives of seeking payment of thousands of dollars from each person targeted, regardless of their innocence in order to protect a monopolistic music distribution scheme. These acts had the same or similar purposes, results, participants, victims and methods of commission. The predicate acts of racketeering include, but are not limited to: mail fraud, 18 U.S.C. § 1341; attempts to obtain property with consent induced by wrongful fear and intimidation in violation of the Hobbs Act, 18 U.S.C. § 1951, *et seq.*; extortion; and conspiracy to violate 18 U.S.C. § 1962(c) in violation of 18 U.S.C. § 1962(d).

9.11 These unlawful activities were not isolated. The RIAA and its member companies have repeated this coercive conduct with other members of the class. For example, the Settlement Support Center has reportedly engaged in the same pattern of threatening and coercive conduct. In 2004, the RIAA targeted another potential class member. When presented with evidence that the individual did not engage in any of the downloading activities, RIAA members insisted that her lack of involvement was irrelevant and reportedly threatened that they would sue her for hundreds of thousands of dollars whether or not she had ever engaged in the alleged file sharing: "It didn't matter. Someone is responsible and someone is going to have to pay." Motown Records, et al. v. Nelson, No. 04-73646 (E.D. MI).

9.12 Defendants and their agents stood to financially benefit from these deceptive and unlawful acts. Proceeds from these activities are used to fund the operation of Defendants' continued public threat campaigns against the class members.

Lybeck❖Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791

9.13 Defendants' enterprise engages in interstate commerce, and Defendants' activities affect interstate commerce.

9.14 Defendants' racketeering conduct directly and proximately resulted in damages to Plaintiff and other members of the class in an amount to be specifically proven at trial.

## Count 4: Abuse of Legal Process

10.1 Plaintiff realleges and incorporates herein by reference each of the allegations set forth above.

10.2 Despite knowing that Plaintiff and the class members were never observed downloading any music, Defendants used the threat of expensive and intrusive litigation as a tool to coerce them into paying many thousands of dollars for obligations they did not owe. Defendants pursued their collection activities and this lawsuit for the primary purpose of threatening Plaintiff and the other class members as part of its public relations campaign targeting electronic file sharing.

10.3 Defendants have falsely and publicly represented and asserted to this Court that information obtained in this invasive and secret manner existed and proved Ms. Andersen's alleged downloaded and distributed copyrighted audio recordings. Ms. Andersen and the other class members never downloaded music but have been subjected to public derision and embarrassment.

10.4 Defendants' conduct proximately resulted in damages to Plaintiff and other members of the class in an amount to be specifically proven at trial.

## Count 5: Malicious Prosecution

11.1 Plaintiff realleges and incorporates herein by reference each the allegations set forth above.

Lybeck❖Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791

11.2 Despite knowing that their faulty and illegal investigation protocol did not give rise to probable cause for commencing and then continuing civil litigation against Plaintiff and the other class members, RIAA and the Defendant Record Companies relied upon the same illegal and flawed investigation as the sole asserted basis for their false claims.

11.3 Prior to commencing their abusive litigation against Ms. Andersen, Defendants were aware that Ms. Andersen's psychological condition was deteriorating and worsening as a result of the threats of imminent litigation.

11.4 Despite her repeated requests, Defendants refused to inspect Ms. Andersen's computer prior to commencing litigation, and refused to adequately investigate the identity of gotenkito both before the litigation commenced and during the years they abusively continued it.

11.5 After becoming aware that Ms. Andersen was acutely sensitive to the prospect of her daughter's persecution, defendants' agents contacted Ms. Andersen's apartment building looking for Kylee. Disturbing calls to Kylee's former grade school were made under false pretenses inquiring as to her attendance. Ms. Andersen learned of these tactics and was frightened and distressed.

11.6 Defendants' lawyers threatened persecution of Kylee in an effort to force Ms. Andersen to abandon her counterclaims against Defendant Record Companies. Their demand for face-to-face confrontation with Ms. Andersen's then 10 year-old child in a deposition at the offices of RIAA lawyers were also intended to coerce and threaten her.

11.7 Defendant Record Companies abusively filed and continued this baseless litigation against Ms. Andersen for nearly two years, ignoring her many pleas that the litigation cease. Defendants were at all times aware of the total lack of probable cause for commencing

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791

and maintaining it, and the serious harm it caused to Ms. Andersen.

11.8 The litigation terminated in Ms. Andersen's favor upon the unconditional dismissal with prejudice of the claims against her on June 1, 2007.

11.9 The above course of conduct was malicious, and was intended to serve the primary purpose of intimidating, coercing, and threatening Ms. Andersen and others.

11.10 Defendants' conduct described above proximately caused direct and consequential monetary, physical, and psychological harms to Ms. Andersen and all others similarly situated, resulting in damages in an amount to be proven at trial.

**Count 6: Outrage and Intentional Infliction of Emotional Distress**

12.1 Plaintiff realleges and incorporates herein by reference each of the allegations set forth above.

12.2 Defendants' outrageous conduct, including threats, intimidation, and coercion, was intended to and actually caused Ms. Andersen and thousands of others extreme emotional distress.

12.3 Defendants' conduct was without any reasonable basis and reckless in that they did not reasonably investigate the defendant Record Companies' claims before initiating their lawsuits and in continuing to pursue lawsuits when they knew that no facts or evidence actually supported their claims.

12.4 Defendants also pursued debt collection activities for the inappropriate purpose of illegally threatening Ms. Andersen and many thousands of others. This tortious abuse was motivated by and constituted a central part of a nationwide campaign of threat and intimidation.

12.5 Defendants were aware that their conduct would cause extreme distress in Ms. Andersen and all others similarly situated.

Lybeck❖Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791

12.6 Defendants' conduct resulted in damages to Ms. Andersen and all others similarly situated to be proven at trial.

**Count 7: Computer Fraud and Abuse Act**

13.1 Plaintiff realleges and incorporates herein by reference each of the allegations set forth above.

13.2 Under the provisions of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.* ("CFAA"), it is illegal to invade another person's private computer to spy, steal or remove private information, damage property, or cause other harm and losses. The CFAA prohibits a person from accessing a computer without authorization to "obtain information from any protected computer if the conduct involved an interstate or foreign communication." 18 U.S.C. § 1030(a)(2)(C). The CFAA further prohibits a person from breaking into a computer without permission and creates a cause of action where the unauthorized access results in damage, loss, or personal injury. 18 U.S.C. § 1030(a)(5)(B)(iii).

13.3 Like most other U.S. citizens, Plaintiff regularly used her personal computer to communicate with friends and family across the country and for interstate e-commerce. Ms. Andersen had password protection and security in place to protect her computer and personal files from access by others. Ms. Andersen has never engaged in file sharing activities, did not make any portion of her computer available to the public, and did not authorize defendants to invade her computer or steal information.

13.4 Plaintiff's computer is her personal and private property. Defendant MediaSentry claims to have bypassed Ms. Andersen's computer security systems and to have invaded her personal computer to secretly spy on and steal or remove private information. If this occurred as claimed, MediaSentry did not have her permission to inspect, copy, or remove

Lybeck❖Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791

her private computer files. If this occurred, MediaSentry gained access secretly and illegally.

13.5 Even assuming that Defendants could have had implied consent to view certain files on Plaintiff and class members' computers, by using pretext, acting deceptively and masquerading as a peer user, using false pretenses, and employing sophisticated data collection technology, Defendants' acts vitiated whatever implied consent they might have had.

13.6 If Defendants' investigative claims are to be believed, they willfully used Plaintiff's and other members of the class' computers without authorization to appropriate personal property for their own purposes.

13.7 Defendants' claimed conduct resulted in damages and harm to Plaintiff and other members of the class' property. As a direct result of Defendants' purported interference with the integrity and capacity of Plaintiff's personal computer, Defendants' conduct resulted in direct and consequential damages, loss, and harm to Plaintiff's person and property and to all others similarly situated in an amount far in excess of $5,000 (the minimum damages required to be proved under the CFAA).

**Count 8: Trespass to Chattels**

14.1 Plaintiff's computer, its capacity and its integrity are her personal property. Plaintiff had password protection and security in place to protect her computer and personal files from access by others. Ms. Andersen has never engaged in file sharing activities, did not make any portion of her computer available to the public, and did not expressly or impliedly authorize defendants or any of their agents to enter her computer or steal information therefrom.

14.2 RIAA and the defendant Record Companies employed MediaSentry as their agent and claimed that it invaded Plaintiff's personal computer and secretly spied on and stole information or removed files from it. If Defendants' investigative claims are to be believed,

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791

they willfully misused Plaintiff's computer without authorization to appropriate Plaintiff's personal property for their own purposes. Defendants' claimed unauthorized invasion and use of Plaintiff's computer would constitute an interference and/or intermeddling with the capacity and integrity of her personal property.

14.3 Even assuming that Defendants could have had implied consent to view files appearing on Plaintiff's and class members' computers, Defendants use of false pretext, deception and their claimed masquerading as a peer user vitiated whatever implied consent they might have had

14.4 Defendants used the private information (including an alleged internet protocol address) that they claimed to have stolen from Plaintiff's computer in their attempt to threaten and coerce her into paying thousands of dollars. Defendants' claims and conduct resulted in damages and harm to Plaintiff and others similarly situated in an amount to be proven at trial.

**Count 9: Invasion of Privacy**

15.1 Plaintiff realleges and incorporates herein by reference each of the allegations set forth above.

15.2 According to Defendants, MediaSentry invaded Plaintiff's personal computer. If these claims are to be believed, MediaSentry did not have permission to inspect Plaintiff's private computer files and it gained access only by illegal acts of subterfuge.

15.3 Plaintiff's computer, its capacity, integrity, and the information contained in it are her personal, private property. Plaintiff did not authorize defendants or any of their agents to invade her computer or steal information. MediaSentry did not have her permission to inspect, copy, or remove her private computer files.

Lybeck❖Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791

15.4 Even assuming that Defendants could have had implied consent to view certain files allegedly appearing on Plaintiff's and class members' computers, by using pretext, acting deceptively and masquerading as a peer user, using false pretenses, and employing sophisticated data collection technology, Defendants' acts wrongfully and fraudulently vitiated whatever implied consent they might have had.

15.5 Defendants have falsely represented that information obtained in this invasive and secret manner is proof of Plaintiff's alleged downloading. Ms. Andersen never downloaded music but has been subjected to public derision and embarrassment associated with defendants' claims and public relations campaign.

15.6 Defendants have used this improperly obtained information to make reckless, shameful and slanderous public accusations about Plaintiff. Defendant RIAA has made further widely publicized statements portraying those it accuses of infringement as "pirates" and "thieves". These statements, innuendo and subsequent republications thereof place Ms. Andersen in a false light.

15.7 Defendants' conduct described above proximately caused direct and consequential damages to Plaintiff and all others similarly situated in an amount to be proven at trial.

**Count 10: Libel and Slander**

16.1 Defendants acted in concert to publicly state and represent that Ms. Andersen stole and collected racist, misogynist and violent music. She was publicly called a thief and a liar by defendants and their agents. The repulsive song titles were published repeatedly.

16.2 Defendants' conduct described above resulted in damages to Ms. Andersen and all others similarly situated in an amount to be proven at trial.

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791

## Count 11: Deceptive Business Practices

17.1 Plaintiff realleges and incorporates herein by reference each of the allegations set forth above.

17.2 Oregon's Unlawful Trade Practices Act prohibits those in trade or commerce from engaging in unfair or deceptive practices in the course of business with consumers. ORS 646.605 et seq. Most states have similar statutes protecting their citizens from fraudulent and deceptive business practices harmful to their citizens.

17.3 Settlement Support Center, acting on behalf of the RIAA and the defendant Record Companies, made false and deceptive statements to Ms. Andersen in an attempt to mislead, threaten, and coerce her into paying thousands of dollars.

17.4 Settlement Support Center, acting on behalf of the RIAA, the defendant Record Companies, and other RIAA members, has made similar false and deceptive statements to many other residents of Oregon and other states across the country. The public interest has been and continues to be directly impacted by defendants' deceptive practices.

17.5 Defendants intended that Ms. Andersen and the class members believe their false statements and rely on their omissions so that they would be frightened and coerced into paying them thousands of dollars. Defendants' misrepresentations and omissions created an unreasonable risk that Ms. Andersen and the class members would rely upon their misrepresentations and omissions to their detriment.

17.6 Ms. Andersen had no access to the information that defendants falsely claimed to have received from MediaSentry. Ms. Andersen had no way of knowing that defendants were withholding and omitting information, on which they intended she rely. As a result, Ms. Andersen was justified in relying on defendants' representations and acting on their omissions,

Lybeck❖Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791

which she in fact did.

17.7 Prior to the threats from defendants, Ms. Andersen had an ongoing customer relationship with the RIAA's member companies, and purchased music from them.

17.8 As a direct result of defendants' materially false representations and omissions of material facts, Ms. Andersen invested substantial resources into investigating the integrity of her computer and investigating the claims of infringement for the benefit of the record companies. Defendants' conduct caused her medical condition to worsen, requiring that she return to her doctor and caused her to be unable to return to work. Defendants' conduct resulted in damages to Ms. Andersen and all others similarly situated in an amount to be specifically proven at trial.

**Count 12: Misuse of Copyright Laws**

18.1 Plaintiff realleges and incorporates herein by reference each of the allegations set forth above.

18.2 Defendant Record Companies are in the business of creating and distributing recorded music, and investigating, threatening and prosecuting those who are deemed to present a threat to their business interests.

18.3 Defendants are a cartel acting collusively in violation of anti-trust laws and public policy. Their illegal conduct includes litigating all cases similar to this case in an identical manner, and engaging in a secret conspiracy and according to a uniform and unlawful agreement among themselves to litigate and dispose of all cases in an identical manner.

18.4 Defendants actions set forth above represent an attempt by Defendants to secure for themselves monopolistic rights far exceeding those provided by the Copyright Act.

Lybeck❖Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791

18.5 Such actions constitute a misuse of copyrights, and lead to a forfeiture of the exclusive rights granted to Defendants by those laws.

18.6 Plaintiff is entitled to judgment that Defendants have forfeited the exclusive rights, if any, which they possess in and to the sound recordings which they allege her to have infringed.

18.7 Plaintiff is entitled to costs and a reasonable attorney's fees and such other relief as may be just.

**Count 13: Civil Conspiracy**

19.1 Plaintiff realleges and incorporates herein by reference each of the allegations set forth above.

19.2 Defendants have entered into a conspiracy to perpetrate this nationwide "campaign of threats and intimidation" against Plaintiff and the other members of the class. The unlawful and overt acts committed by Defendants were committed in furtherance of a common plan and design. Defendants all benefited and continue to benefit from the enjoyment of the fruits of the civil conspiracy and fraud perpetrated on Plaintiff and the other members of the class. Accordingly, each of Defendants must be held liable to Plaintiff and all others similarly situated for the wrongful acts committed by one or more of the others.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Tanya Anderson, individually and on behalf of others similarly situated, prays for:

a. All direct and consequential damages necessary to compensate Plaintiff and the other members of the class;

Lybeck❖Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791

b. Injunctive relief;

c. Statutory and punitive damages awardable under 18 U.S.C. § 1961, *et seq.*, and state RICO statues;

d. Attorneys' fees and costs awardable;

e. For post-judgment interest on the entire judgment until paid in full;

f. For such other and further relief as the Court may deem just and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiffs request a trial by jury.

Respectfully submitted this 15th day of August, 2007.

Lybeck Murphy, LLP

By: ______________________
Lory R. Lybeck (OSB #83276)
Attorneys for plaintiff

Lybeck❖Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791