1  Lory R. Lybeck
   Lybeck Murphy, LLP
2  7525 SE 24th Street, Ste. 500
   Mercer Island, WA  98040-2334
3  206-230-4255 /phone
   206-230-7791 /fax
4  Lybeck – lrl@lybeckmurphy.com
   Lybeck – OSB #83276
5  Attorney for defendant

6

7

8

9

10              UNITED STATES DISTRICT COURT
                DISTRICT OF OREGON AT PORTLAND
11

12  Atlantic    Recording    Corporation,    a      )   No. CV 05-933 AS
    Delaware corporation; Priority Records,          )
13  LLC, a California limited liability              )   Defendant's    Second    Amended
    company; Capitol Records, Inc., a                )   Answer, Affirmative Defenses and
14  Delaware corporation; UMG Recordings,            )   Counterclaims
    Inc., a Delaware corporation; and BMG            )
15  Music, a New York general partnership,           )
                                                     )
16                          Plaintiffs,              )
                                                     )   AND DEMAND
17              v.                                   )   FOR JURY TRIAL
                                                     )
18  Tanya Andersen,                                  )
                                                     )
19                          Defendant.               )

20

21       Defendant Tanya Andersen submits this amended answer, affirmative defenses and

22  counterclaims pursuant to this court's order of December 13, 2006.  Significant amendments

23  include affirmative allegations of claims including claims for attorneys' fees and costs.  Other

24  changes are stylistic and non-substantive.

25
                            I.      ANSWER
26

    1.      Answering paragraphs 1-12 and 14 of the Complaint, Ms. Andersen admits that

---

Defendant's Second Amended Answer, Affirmative Defenses and Counterclaims - 1
andersen\Amended.Answer.1.2.07.filed.327                        Lybeck✛Murphy LLP
                                                                7525 SE 24th Street, Ste. 500
                                                                Mercer Island, WA  98040-233
                                                                206-230-4255   Fax 206-230-77'

                        EXHIBIT B PAGE 1 OF 25

Dockets.Justia.com

1  she is a resident of Oregon and that jurisdiction and venue are proper. She specifically denies

2  she downloaded or distributed any music or that any acts of infringement occurred. Ms.

3  Andersen has no ability to determine the accuracy of plaintiffs' claimed corporate forms,

4  principle locations, interest in copyrighted materials and publication of notices of copyright,

5  and on that basis denies these allegations.

6

7      2.      Ms. Andersen denies the allegations contained in paragraphs 13 and 15-17 and

8  the remainder of the allegations of plaintiffs' complaint.

9                     II.      AFFIRMATIVE DEFENSES

10     Ms. Andersen hereby asserts the following Affirmative Defenses in this case:

11     1.      Plaintiffs are not entitled to equitable relief under the doctrine of unclean hands.

12

13     2.      Some or all of plaintiffs' claims are barred by the statutes of limitations.

14     3.      Plaintiffs have failed to comply with filing requirements.

15     4.      Plaintiffs have failed to state a claim upon which relief can be granted.

16     5.      Plaintiffs have failed to join necessary and indispensable parties.

17     6.      The action is barred by the doctrine of laches.

18

19     7.      Plaintiffs' claims are not supported by fact or warranted by law.

20     8.      Plaintiffs' claims for punitive damages in amounts that are not recoverable are

21             extreme, abusive and unconstitutional.

22     9.      Plaintiffs have inspected Ms. Andersen's computer, are aware of the error in

23             identifying her and persist in pursuing the unfounded claims against her in

24             violation of FRCP 11 requiring imposition of sanctions under FRCP 11(c).

25                     III.      RESERVATION

26     Ms. Andersen reserves the right to assert third party claims should discovery so indicate.

Defendant's Second Amended Answer, Affirmative Defenses and Counterclaims - 2
andersen\Amended.Answer.1.2.07.filed.327

Lybeck❖Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791


EXHIBIT B PAGE 2 OF 25

# IV.  COUNTERCLAIMS

## Factual Background

### A.  The Record Companies' "John Doe" Lawsuits

1.  For a number of years, a group of large, multinational, multi-billion dollar record companies, including these plaintiffs, have been abusing the federal court judicial system for the purpose of waging a public relations and public threat campaign targeting digital file sharing activities.  As part of this campaign, these record companies retained MediaSentry to invade private home computers and collect personal information.  Based on private information allegedly extracted from these personal home computers, the record companies have reportedly filed lawsuits against more than 13,500 anonymous "John Does."

2.  The anonymous "John Doe" lawsuits are filed for the sole purpose of information farming and specifically to harvest personal internet protocol addresses from internet service providers.

3.  After an individual's personal information is harvested, it is given to the record companies' representatives and the anonymous "John Doe" information farming suits are then typically dismissed.

4.  The record companies provide the personal information to their agent, the "Settlement Support Center", which engages in prohibited and deceptive debt collection activities and other illegal conduct to extract money from the people allegedly identified from the secret lawsuits.  Most of the people subjected to these secret suits do not learn that they have been "sued" until demand is made for payment by the record companies' lawyers or Settlement Support Center.

Defendant's Second Amended Answer, Affirmative Defenses and Counterclaims - 3
andersen\Amended.Answer.1.2.07.filed.327

Lybeck◇Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791

EXHIBIT B PAGE 3 OF 25

1    **B.    Tanya Andersen has Never Downloaded Music**

2         5.    Tanya Andersen is a 42-year-old single mother of an eight-year-old daughter

3    living in Tualatin, Oregon.  Ms. Andersen is disabled and has a limited income from Social

4    Security.

5

6         6.    Ms. Andersen has never downloaded or distributed music online.  She has not

7    infringed on any of plaintiffs' alleged copyrighted interest.

8         7.    Since February 2005, Tanya Andersen has been trying to get the record

9    companies to do one thing: look at her computer so that this nightmare will end.  The record

10   companies have been wrongfully accusing Ms. Andersen of downloading and sharing music

11   online. Ms. Andersen, who lives off of a fixed income from Social Security and has no ability

12   to pay to defend a lawsuit, offered her computer to the record companies to inspect before this

13   lawsuit was ever filed.  The record companies have refused to look at her computer.  Ms.

14   Andersen has never downloaded or distributed music online.  She has not infringed on any of

15   plaintiffs' alleged copyright interests.  She has nothing to hide.  The record companies have

16   harassed her without doing any reasonable inquiry.  They have clearly sued the wrong person.

17

18   **C.    Tanya Andersen was Secretly Sued**

19

20        8.    Ms. Andersen has been the victim of the record companies' public threat

21   campaign.  The threats started when the record companies falsely claimed that Ms. Andersen

22   had been an "unnamed" defendant who was being sued in federal court in the District of

23   Columbia.  She was never named in that lawsuit and never received service of a summons and

24   complaint.

25        9.    Neither did Ms. Andersen receive any timely notice that the suit even existed.

26   That anonymous suit was filed in mid-2004.  Ms. Andersen first learned that she was being

---

Defendant's Second Amended Answer, Affirmative Defenses and Counterclaims - 4
andersen\Amended.Answer.1.2.07.filed.327

Lybeck❖Murphy LLP
7525 SE 24ᵗʰ Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791

1  "sued" when she received a letter dated February 2, 2005, from the Los Angeles, California,

2  law firm Mitchell Silverberg & Knupp, LLP. The LA firm falsely claimed that Ms. Andersen

3  had downloaded music, infringed undisclosed copyrights and owed hundreds of thousands of

4
   dollars and that "The evidence necessary for the record companies to prevail in this action has
5
   already been secured." Ms. Andersen was understandably shocked, fearful, and upset.
6

7        **D.    Record Companies Demand that Tanya Andersen Pay them Thousands of
                  Dollars**
8
         10.    After receiving the February 2, 2005 letter, Ms. Andersen contacted the record
9

10 companies' agent and "representative," which turned out to be Settlement Support Center, LLC.

11 This company was formed by the record companies for the sole purpose of coercing payments

12 from people who had been identified as targets in the anonymous information farming suits.

13 Settlement Support Center is a Washington State phone solicitation company which engages in

14
   debt collection activities across the country.
15

16       11.    When Ms. Andersen contacted Settlement Support Center, she was advised that

17 her personal home computer had been secretly entered by another record company agent:

18 MediaSentry.

19       12.    Settlement Support Center also falsely claimed that Ms. Andersen had "been

20 viewed" by MediaSentry downloading "gangster rap" music at 4:24 a.m. Settlement Support

21 Center also falsely claimed that Ms. Andersen had used the login name

22 "gotenkito@kazaa.com." Ms. Andersen does not like "gangster rap," does not recognize the

23
   name "gotenkito," is not awake at 4:24 a.m. and has never downloaded music.
24

25       13.    Settlement Support Center threatened that if Ms. Andersen did not immediately

26 pay them, the record companies would bring an expensive and disruptive federal lawsuit using

---

Defendant's Second Amended Answer, Affirmative Defenses and Counterclaims - 5
andersen\Amended.Answer.1.2.07.filed.327

Lybeck◇Murphy LLP
7525 SE 24ᵗʰ Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791



EXHIBIT _B_ PAGE _5_ OF _25_

1    her actual name and they would get a judgment for hundreds of thousands of dollars.

2         E.    **The Record Companies Refused to Investigate the False Claim Of Debt**

3         14.    Ms. Andersen explained to Settlement Support Center that she had never

4    downloaded music, she had no interest in "gangster rap," and that she had no idea who

5    "gotenkito" was.

6

7         15.    Ms. Andersen wrote Settlement Support Center and even invited an inspection

8    of her computer to prove that the claims made against her were false.

9         16.    An employee of Settlement Support Center asked Ms. Andersen to help

10   plaintiffs by investigating who could have used her computer or IP address to engage in any of

11   the alleged acts of infringement. Relying on the information provided by Settlement Support

12   Center, Ms. Andersen invested substantial time and resources finding information for plaintiffs'

13   benefit.

14

15        17.    In response to the information that Ms. Andersen had provided, an employee of

16   Settlement Support Center admitted to Ms. Andersen that he believed that she had not

17   downloaded any music. He explained, however, that Settlement Support Center and the record

18   companies would not quit their debt collection activities because to do so would encourage

19   other people to defend themselves against the record companies' claims. He stated that

20   plaintiffs did not care whether Ms. Andersen had actually engaged in the alleged infringing

21   activity or not—Ms. Andersen would have to pay thousands of dollars to the record companies

22   immediately, or else she would be subjected to an expensive and intrusive federal lawsuit. The

23   Settlement Support Center employee stated that regardless of whether she had infringed any

24   copyrights, plaintiffs could force Ms. Andersen to pay thousands of dollars by filing a lawsuit.

25        18.    Ms. Andersen was understandably shocked and upset. In a telephone call with

26

Defendant's Second Amended Answer, Affirmative Defenses and Counterclaims - 6
andersen\Amended.Answer.1.2.07.filed.327

Lybeck❖Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791

Settlement Support Center in late February 2005, Ms. Andersen offered to provide her computer for inspection before plaintiffs filed any lawsuit and caused her to incur substantial unnecessary costs and additional distress. Ms. Andersen specifically told plaintiffs that their conduct had caused her to suffer a painful medical condition for which she had sought treatment. When she did not receive a response, Ms. Andersen followed up with a letter to Settlement Support Center dated March 6, 2005, in which she asked plaintiffs to inspect her computer to prove that the claims made against her were mistaken:

> "Like I have said several times in this letter, I am innocent from doing what is being alleged. No one in my household has done this either. If there is a way to prove this by looking at my hard drive or something and someone from your agency would like to do that, I have nothing to hide."

19. Settlement Support Center insisted that Ms. Andersen's lack of involvement was irrelevant and that the record companies would sue her for hundreds of thousands of dollars whether or not she was actually engaged in the file sharing of music recordings: It didn't matter who did the downloading, she was going to have to pay. Plaintiffs' further threatened that unless Ms. Andersen paid thousands of dollars immediately, they would subject her to an extensive and costly lawsuit.

20. Instead of investigating, the record company plaintiffs filed suit this against Ms. Andersen.

F. **The Record Companies have no Proof of Infringement.**

21. Despite making false representations to Ms. Andersen that they had evidence of infringement and evidence of Ms. Andersen's identity, plaintiffs knew that they had no factual support for their claims. When this complaint was filed, the record companies knew that their investigation could not identify who had committed any of the alleged acts of infringement; knew

Defendant's Second Amended Answer, Affirmative Defenses and Counterclaims - 7
andersen\Amended.Answer.1.2.07.filed.327

Lybeck♦Murphy LLP
7525 SE 24ᵗʰ Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791

EXHIBIT B PAGE 7 OF 25

1  that that there was no evidence that the files allegedly detected were sound recordings; and knew

2  that that the investigation protocol they employed had lead to multiple mistaken identifications in

3  the past.

4

5     22.   In BMG Canada Inc. v. John Doe, 3 F.C. 241 (No. T-292-04 2004), the

6  Canadian Federal Court ruled that the investigation protocols used by the record companies in

7  these cases are so deficient, that the "evidence" gathered fails to establish even a prima facie

8  case of infringement.

9     23.   MediaSentry's president, Gary Millen testified in a deposition given in that case

10  that merely identifying the assigned owner of an Internet Protocol Address cannot identify *who*

11  was engaged in the alleged file sharing activities because multiple people can be using a single

12  IP address at once and MediaSentry cannot rule out whether any IP address that it traces had

13  been hijacked or spoofed by unknown persons.

14

15    24.   Millen admitted that MediaSentry's investigation protocol cannot actually

16  identify the person responsible for the suspected infringement.

17    25.   Millen testified that the investigation cannot verify whether the program files

18  identified in the screen shot exhibits are copies of actual sound recordings or program files that

19  look like they might be a sound recording by virtue of their name, title, or other description.

20

21    26.   Similarly, the Dutch courts have ruled that that MediaSentry's investigation

22  protocol (providing a list of file names, IP address, and date and time of detection) was

23  insufficient to state a claim for copyright infringement because the record companies were

24  unable to identify what person was using the detected computer and which computer contained

25  the allegedly infringing files. Brein et al v. UPC Nederland B.V. et al., No. 194741/KGZA-05-

26  462/BL/EV at ¶¶ 4.30-31 (2005).

Lybeck✦Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791

EXHIBIT 8 PAGE 8 OF 25



1    27.     No downloading or distribution activity was ever actually observed.  None ever
2    occurred.  Regardless, the record companies actively continued their coercive and deceptive
3    debt collection actions against her.  Ms. Andersen was falsely, recklessly, shamefully, and
4    publicly accused of illegal activities in which she was never involved.
5
6    **G.     Inspection Proves no Infringement**
7    28.     Ms. Andersen has been forced to defend against this frivolous and damaging
8    lawsuit for over 1 ½ years.  During this time, Ms. Andersen and her attorneys have repeatedly
9    requested that plaintiffs inspect her computer to confirm that she had not engaged in
10   downloading activities.
11
12   29.     After the case was stayed and the court entered an order for inspection of the
13   computer, Ms. Andersen's computer hard drive was copied and a mirror image was evaluated
14   by a neutral expert and plaintiffs' own paid expert in August 2006.
15   30.     After inspection of the computer hard drive, plaintiffs refused to disclose the
16   results of their expert's evaluation until the court ordered them to do so in October 2006.
17   31.     Even after they were ordered to provide specific information regarding their
18   expert's evaluation, plaintiffs still have refused to identify any evidence on the hard drive
19   supporting claims of downloading activities or infringement.
20
21   32.     There is no evidence to support plaintiffs' claims in this case.  Plaintiffs and
22   their lawyers are aware that no evidence exists.  Plaintiffs started and continue to pursue these
23   claims in violation of law, FRCP 11 and to Ms. Andersen's ongoing injury and harm.
24   ///
25   ///
26

Defendant's Second Amended Answer, Affirmative Defenses and Counterclaims - 9
andersen\Amended.Answer.1.2.07.filed.327

Lybeck♦Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791

EXHIBIT B  PAGE 9 OF 25

## Count 1

### Electronic Trespass

33.    Defendant realleges and incorporates herein by reference each of the allegations set forth above.  The following claim is made in response to plaintiffs' allegations only.  Ms. Andersen never downloaded music, and plaintiffs are aware that she did not.

34.    Entering a person's personal computer without their authorization to snoop around, steal information, or remove files is a violation of the common law prohibition against trespass to chattels.

35.    Ms. Andersen's computer, its capacity and its integrity are her personal property. Ms. Andersen had password protection and security in place to protect her computer and personal files from access by others.  Ms. Andersen has never engaged in file sharing activities, did not make any portion of her computer available to the public, and did not authorize MediaSentry, the record company plaintiffs, or any of their agents to break into her computer or steal information.

36.    The record company plaintiffs employed MediaSentry as their agent to break into Ms. Andersen's personal computer (and those of tens of thousands of other people) to secretly spy on and steal information or remove files and, in doing so, the record companies willfully used Ms. Andersen's computer without authorization to appropriate Andersen's personal property for their own purposes.  Plaintiffs' unauthorized invasion and use of Ms. Andersen's computer constituted an interference and/or intermeddling with the capacity and integrity of her personal property.  MediaSentry did not have Ms. Andersen's permission to inspect, copy, or remove private computer files.  If MediaSentry accessed her private computer,

Defendant's Second Amended Answer, Affirmative Defenses and Counterclaims - 10
andersen\Amended.Answer.1.2.07.filed.327

Lybeck✦Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791

EXHIBIT B PAGE 10 OF 25

1   it did so illegally and secretly. In fact, Ms. Andersen was unaware that the trespass occurred

2   until well after she was anonymously sued.

3

4      37.     According to the record companies, the agent, Settlement Support Center used

5   the stolen private information (including an alleged internet protocol address) allegedly

6   removed from her home computer in their attempt to threaten and coerce Ms. Anderson into

7   paying thousands of dollars.

8      38.     The record companies' conduct resulted in damages and harm to Ms. Andersen's

9   health and property. As a direct result of plaintiffs' interference with the integrity and capacity

10   of her personal computer, Ms. Andersen invested substantial resources into investigating the

11   integrity of her computer and the allegations of infringement at the insistence of the record

12   companies. Plaintiffs' conduct caused Ms. Andersen's medical condition to worsen and flare

13   up, requiring that she return to her doctor and caused her to be unable to return to work. The

14

15   record companies' conduct resulted in direct and consequential damages, loss, and harm to Ms.

16   Andersen in an amount to be proven at trial.

17

18                            **Count 2**

19            **Computer Fraud and Abuse Act**

20      39.     Defendant realleges and incorporates herein by reference each of the allegations

21   set forth above. The following claim is made in response to plaintiffs' allegations only. Ms.

22   Andersen never downloaded music, and plaintiffs are aware that she did not.

23      40.     Under the provisions of the Computer Fraud and Abuse Act (18 U.S.C. § 1030)

24   it is illegal to break into another person's private computer to spy, steal or remove private

25   information, damage property, or cause other harm and losses. The CFAA prohibits a person

26   from accessing a computer without authorization to "obtain information from any protected

Defendant's Second Amended Answer, Affirmative Defenses and Counterclaims - 11
andersen\Amended.Answer.1.2.07,filed.327

Lybeck♦Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791

EXHIBIT B PAGE 11 OF 25

computer if the conduct involved an interstate or foreign communication." 18 U.S.C. § 1030(a)(2)(C). The CFAA further prohibits a person from breaking into a computer without permission and creates a cause of action where the unauthorized access results in damage, loss, or personal injury. 18 U.S.C. § 1030(a)(5)(B)(iii)..

41.    Ms. Andersen regularly used her personal computer to communicate with friends and family across the country and for interstate e-commerce. Ms. Andersen had password protection and security in place to protect her computer and personal files from access by others. Ms. Andersen has never engaged in file sharing activities, did not make any portion of her computer available to the public, and did not authorize MediaSentry or the record company plaintiffs to break into her computer or steal information.

42.    Ms. Andersen's computer, its capacity and its integrity are her personal property. The record company plaintiffs employed MediaSentry as their agent to bypass Ms. Andersen's computer security systems and break into her personal computer to secretly spy and steal or remove private information. MediaSentry did not have her permission to inspect, copy, or remove her private computer files. It gained access secretly and illegally.

43.    The record companies willfully used Ms. Andersen's computer without authorization to appropriate Andersen's personal property for their own purposes.

44.    The record companies' conduct resulted in damages and harm to Ms. Andersen's health and property. As a direct result of plaintiffs' interference with the integrity and capacity of her personal computer, Ms. Andersen invested substantial resources into investigating the integrity of her computer. Plaintiffs' conduct caused her medical condition to worsen and flare up, requiring that she return to her doctor and caused her to be unable to return to work. The record companies' conduct resulted in direct and consequential damages, loss, and harm to Ms.

Defendant's Second Amended Answer, Affirmative Defenses and Counterclaims - 12
andersen\Amended.Answer.1.2.07.filed.327

Lybeck♦Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255   Fax 206-230-7791

EXHIBIT B PAGE 12 OF 25

1 Andersen in an amount to be proven at trial in excess of $5,000.

2 ### Count 3

3 ### Invasion of Privacy

4
5     45.    Defendant realleges and incorporates herein by reference each of the allegations
6 set forth above. The following claim is made in response to plaintiffs' allegations only. Ms.
7 Andersen never downloaded music, and plaintiffs are aware that she did not.

8     46.    According to the record companies, Ms. Andersen's personal computer was
9 invaded by MediaSentry after she was identified with a nine digit code (an Internet Protocol
10 Address ("IPA")) obtained from the anonymous information farming lawsuits. MediaSentry
11 did not have permission to inspect Ms. Andersen's private computer files. It gained access only
12 by illegal acts of subterfuge.
13

14     47.    Ms. Andersen's computer, its capacity, integrity and the information contained
15 in it are her personal, private property. Ms. Andersen has never engaged in file sharing activities,
16 did not make any portion of her computer available to the public, and did not authorize
17 MediaSentry or the record company plaintiffs to break into her computer or steal information.
18 MediaSentry did not have her permission to inspect, copy, or remove her private computer files.
19

20     48.    The record companies' agent has falsely represented that information obtained in
21 this invasive and secret manner is proof of Ms. Andersen's alleged downloading. Ms.
22 Andersen never downloaded music but has been subjected to public derision and
23 embarrassment associated with plaintiffs' claims and public relations campaign.

24     49.    The record companies have used this derogatory, harmful information to
25 recklessly and shamefully publicly accuse Ms. Andersen of illegal activities without even
26 taking the opportunity offered by Ms. Andersen to inspect her computer.

Defendant's Second Amended Answer, Affirmative Defenses and Counterclaims - 13
andersen\Amended.Answer.1.2.07.filed.327

Lybeck❖Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791



1    50.    The record companies' conduct resulted in damages including harm to her health

2    and property in an amount to be specifically proven at trial.

3                                    Count 4

4                            Abuse of Legal Process

5

6    51.    Defendant realleges and incorporates herein by reference each of the allegations

7    set forth above.

8    52.    Despite knowing that infringing activity was not observed, the record companies

9    used the threat of expensive and intrusive litigation as a tool to coerce Ms. Andersen to pay

10   many thousands of dollars for an obligation she did not owe.  The record companies pursued

11   their collection activities and this lawsuit for the primary purpose of threatening Ms. Andersen

12   (and many others) as part of its public relations campaign targeting electronic file sharing.

13

14   53.    The record companies have falsely represented and pleaded that information

15   obtained in this invasive and secret manner is proof of Ms. Andersen's alleged downloading

16   and distribution of copyrighted audio recordings.  Ms. Andersen never downloaded music but

17   has been subjected to public derision and embarrassment.

18   54.    The record companies' conduct resulted in damages and harm to Ms. Andersen

19   and her property in an amount to be specifically proven at trial.

20

21                                  Count 5

22                   Fraud and Negligent Misrepresentation

23   55.    Defendant realleges and incorporates herein by reference each of the allegations

24   set forth above.

25

26   56.    The record companies knowingly made materially false representations and

omissions of material facts to Ms. Andersen in an attempt to extort money from her.  The record

Defendant's Second Amended Answer, Affirmative Defenses and Counterclaims - 14
andersen\Amended.Answer.1.2.07.filed.327

Lybeck✦Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791

1  companies also knowingly withheld material information from Ms. Andersen in an attempt to
2  extort money from her.

3      57.    On February 2, 2005, the record companies wrote a letter demanding that Ms.
4  Andersen contact their collection agent Settlement Support Center. In an attempt to intimidate
5  and scare Ms. Andersen into paying thousands of dollars, the letter made the affirmative false
6  statement that "The evidence necessary for the record companies to prevail in this action has
7  already been secured." The record companies knew that this statement was false because they
8  knew that their investigation could not identify who had committed any of the alleged acts of
9  infringement; knew that that there was no evidence that the files allegedly detected were sound
10 recordings; and knew that that the investigation protocol they employed had lead to multiple
11 mistaken identifications in the past.
12
13

14     58.    Between February and March 2005, the record companies, through their
15 collection agent Settlement Support Center, falsely claimed that they had proof that Ms.
16 Andersen's IPA had been "viewed" downloading and distributing over 1,000 audio files for
17 which it sought to collect hundreds of thousands of dollars. This statement was materially
18 false.  Ms. Andersen never downloaded or distributed any audio files nor did the record
19 companies or any of their agents ever observe any such activity associated with her personal
20 home computer. Plaintiffs are now, and were at all relevant times, aware that no evidence
21 existed or exists supporting their claims.
22

23     59.    Plaintiffs' representatives knowingly and intentionally misrepresented that the
24 record companies had actual evidence that Ms. Andersen had infringed the thousands of file
25 names listed in Exhibit B to plaintiffs' complaint. Plaintiffs used this list of file names as a means
26 to coerce and threaten Ms. Andersen with the prospect of being sued for hundreds of thousands of

Defendant's Second Amended Answer, Affirmative Defenses and Counterclaims - 15
andersen\Amended.Answer.1.2.07.filed.327

Lybeck◊Murphy LLP
7525 SE 24ᵗʰ Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255  Fax 206-230-7791

EXHIBIT B PAGE 15 OF 25

1    dollars. Plaintiffs knowingly and intentionally withheld the material fact that it did not know who

2    engaged in any infringing activities and did not know whether any of the thousands of file names

3    contained any copyrighted sound recordings whatsoever. The reason plaintiffs omitted this

4    information was to intimidate Ms. Andersen into paying them thousands of dollars.

5

6    60.    Ms. Andersen had no access to the information that the record companies falsely

7    claimed to have received from MediaSentry. Ms. Andersen had no way of knowing that the

8    record companies were withholding and omitting information from her, on which they intended

9    she rely.

10   61.    The record companies had a duty to conduct a reasonable investigation into the

11   information that it was representing as true. The record companies breached that duty. Even after

12   being ordered to conduct an investigation and disclose its results, the record companies persist in

13   their false claims.

14

15   62.    The record companies' conduct resulted in damages and harm to Ms. Andersen's

16   health and property in an amount to be specifically proven at trial. As a direct result of

17   plaintiffs' materially false representations and omissions of material facts, Ms. Andersen invested

18   substantial resources into investigating the integrity of her computer and investigating the

19   claims of infringement at the request of the record companies. Plaintiffs' conduct caused her

20   medical condition to flare up and worsen, requiring that she return to her doctor and caused her

21   to be unable to return to work. The record companies' conduct resulted in direct and

22   consequential damages, loss, and harm to Ms. Andersen in an amount to be proven at trial.

23

24   ///

25   ///

26

Defendant's Second Amended Answer, Affirmative Defenses and Counterclaims - 16
andersen\Amended.Answer.1.2.07.filed.327

Lybeck◇Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791

EXHIBIT B PAGE 16 OF 25

## Count 6

### Outrage

63.    Ms. Andersen realleges and incorporates herein by reference each of the allegations set forth above.

64.    The record companies' outrageous conduct, including threats, intimidation, and coercion, was intended to and actually caused Ms. Andersen extreme emotional distress.

65.    The record companies' conduct was without any reasonable basis and reckless in that it did not investigate its claims before initiating this action and in continuing to pursue this action when it knows that no facts or evidence exists to support their claims.

66.    Despite having never observed any downloading or distribution associated with Ms. Andersen's personal home computer; despite refusing Ms. Andersen's offer to allow an inspection of her own computer; and, after confirming that she did not download music the record companies wrongfully continued their improper debt collection activities against her.

67.    The record companies pursued debt collection activities for the inappropriate purpose of illegally threatening Ms. Andersen and many thousands of others. This tortious abuse was motivated by and is a central part of a public relations campaign targeting electronic file sharing.

68.    An employee of Settlement Support Center admitted to Ms. Andersen that he believed that she had not downloaded any music. He explained that Settlement Support Center and the record companies would not quit the debt collection activity against her because to do so would encourage other people to defend themselves against the record companies' claims.

69.    The record companies were aware of Ms. Andersen's disabilities and her serious health issues. Settlement Support Center knew that its conduct would cause extreme distress in

Defendant's Second Amended Answer, Affirmative Defenses and Counterclaims - 17
andersen\Amended.Answer.1.2.07.filed.327

Lybeck+Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255    Fax 206-230-7791

1  Ms. Andersen.  As a result of defendant's conduct, Ms. Andersen suffered severe physical and
2  emotional distress and health problems.

3       70.    The record companies' conduct resulted in damages, including harm to Ms.
4  Andersen's health and property in an amount to be specifically proven at trial.
5

6                                      Count 7

7                           Deceptive Business Practices

8       71.    Defendant realleges and incorporates herein by reference each of the allegations
9  set forth above.

10      72.    Oregon's Unlawful Trade Practices Act prohibits those in trade or commerce
11  from engaging in unfair or deceptive practices in the course of business with consumers.  ORS
12  646.605 et seq.
13

14      73.    The record companies' agent, Settlement Support Center, is a company doing
15  business in Washington which was established to engage in debt collection activities in many
16  states, including Washington and Oregon.

17      74.    Settlement Support Center acting as the record companies' agent made false and
18  deceptive statements to Ms. Andersen in an attempt to mislead, threaten, and coerce her into
19  paying thousands of dollars.
20

21      75.    Settlement Support Center acting as the record companies' agent has made
22  similar false and deceptive statements to many other residents of Washington and Oregon, and
23  across the country.  The public interest has been and continues to be directly impacted by
24  plaintiffs' deceptive practices.
25

26      76.    The record companies intended that Ms. Andersen believe their false statements
   and rely on their omissions so that she would be frightened and coerced into paying them

Defendant's Second Amended Answer, Affirmative Defenses and Counterclaims - 18
andersen\Amended.Answer.1.2.07.filed.327

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791

EXHIBIT B PAGE 18 OF 25

1   thousands of dollars. The record companies' misrepresentations and omissions created an

2   unreasonable risk that Ms. Andersen would rely upon their misrepresentations and omissions to

3   her detriment.

4
5       77.    Ms. Andersen had no access to the information that the record companies falsely

6   claimed to have received from MediaSentry. Ms. Andersen had no way of knowing that the

7   record companies were withholding and omitting information from her, on which they intended

8   she rely. As a result, Ms. Andersen was justified in relying on plaintiffs' representations and

9   acting on their omissions, which she in fact did.

10      78.    The record companies' conduct resulted in damages and harm to her health and

11
12  property in an amount to be specifically proven at trial. As a direct result of plaintiffs'

13  materially false representations and omissions of material facts, Ms. Andersen invested

14  substantial resources into investigating the integrity of her computer and investigating the

15  claims of infringement for the benefit of the record companies. Plaintiffs' conduct caused her

16  medical condition to flare up, requiring that she return to her doctor and caused her to be unable

17  to return to work. The record companies' conduct resulted in direct and consequential

18  damages, loss, and harm to Ms. Andersen.

19
20      79.    The record companies' conduct resulted in damages and harm to Ms. Andersen

21  and her property in an amount to be specifically proven at trial.

22                                    **Count 8**

23              **Oregon Racketeer Influenced and Corrupt Organization Act**

24      80.    Defendant realleges and incorporates herein by reference each of the allegations

25  set forth above.

26
27      81.    The Oregon Racketeer Influenced and Corrupt Organization Act prohibits

Defendant's Second Amended Answer, Affirmative Defenses and Counterclaims - 19
andersen\Amended.Answer.1.2.07.filed.327

Lybeck♦Murphy LLP
7525 SE 24ᵗʰ Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791

EXHIBIT B PAGE 19 OF 25

1  companies from engaging in organized racketeering or criminal activities. ORS 166.715 *et seq.*

2  ORICO provides that it is unlawful for any person employed by, or associated with, any

3  enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of

4  racketeering activity or the collection of an unlawful debt. ORS 166.720(3).

5

6  82.  Atlantic Recording Corporation, a Delaware corporation; Priority Records, LLC,

7  a California limited liability company; Capitol Records, Inc., a Delaware corporation; UMG

8  Recordings, Inc., a Delaware corporation; and BMG Music, a New York general partnership,

9  MediaSentry, Inc. and Settlement Support Center, LLC, all worked together for the purpose of

10  waging a public relations and public threat and intimidation campaign targeting, in part,

11  innocent people in an attempt to collect thousands of dollars.

12

13  83.  As part of this enterprise, these record companies retained MediaSentry to

14  invade private home computers and collect personal information. Based on private information

15  allegedly extracted from these personal home computers, the record companies have reportedly

16  filed lawsuits against more than 13,500 anonymous "John Does." The anonymous "John Doe"

17  lawsuits are filed for the sole purpose of information farming and specifically to harvest

18  personal internet protocol addresses from internet service providers.

19

20  84.  After an individual's personal information is harvested, it is given to the record

21  companies' representatives and the anonymous "John Doe" information farming suits are then

22  typically dismissed and the record companies provide the personal information to Settlement

23  Support Center. Settlement Support Center in turn engages in coercive and deceptive collection

24  activities and other illegal conduct to extract money from the people allegedly identified from

25  the secret lawsuits. Using this stolen information, plaintiffs directed Settlement Support Center

26  to threaten Ms. Andersen into paying plaintiffs thousands of dollars, which is a violation of

Defendant's Second Amended Answer, Affirmative Defenses and Counterclaims - 20
andersen\Amended.Answer.1.2.07.filed.327

Lybeck♦Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791

EXHIBIT _B_ PAGE _20_ OF _25_

1   ORS 163.275 and a violation of ORS 166.720(3).

2       85.    Even where a Settlement Support Center employee believed that Ms. Andersen
3   did not engage in any infringing activities, plaintiffs directed Settlement Support Center to
4   continue to pressure and coerce Andersen into paying thousands of dollars. An employee of
5
6   Settlement Support Center explained that the record companies would not quit their debt
7   collection activities because to do so would encourage other people to defend themselves
8   against the record companies' claims. He stated that plaintiffs did not care whether it was Ms.
9   Andersen or not—Ms. Andersen would have to pay thousands of dollars to the record
10  companies immediately, or else she would be subjected to an expensive and intrusive federal
11  lawsuit.
12

13      86.    While plaintiffs participate in the enterprise, they also have an existence separate
14  and distinct from the enterprise.

15      87.    Plaintiffs' acts form a pattern of racketeering by committing at least two acts of
16  racketeering activity. This pattern constituted a common course of conduct used by plaintiffs to
17  target thousands of citizens throughout the United States. These activities shared the common
18  objectives of seeking payment of thousands of dollars from each person targeted, regardless of
19  their innocence. These acts had the same or similar purposes, results, participants, victims and
20  methods of commission. The predicate acts of racketeering include, but are not limited to
21  attempted violations of Oregon's coercion statute ORS 163.275 and furtherance of a plan to
22  commit coercion is a violation of ORICO 166.720(3).
23

24      88.    These unlawful activities were not isolated. The record companies have
25  repeated this coercive conduct with many other victims throughout the United States.
26  Settlement Support Center has reportedly engaged in the same pattern of threatening and

Defendant's Second Amended Answer, Affirmative Defenses and Counterclaims - 21
andersen\Amended.Answer.1.2.07.filed.327

Lybeck✦Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791

EXHIBIT B PAGE 21 OF 25

coercive conduct. In 2004, the record companies targeted another innocent person in this scheme. When presented with evidence that the defendant did not engage in any of the downloading activities, plaintiffs insisted that her lack of involvement was irrelevant and that plaintiffs reportedly threatened that they would sue her for hundreds of thousands of dollars whether or not she had ever engaged in the alleged file sharing, "It didn't matter. Someone is responsible and someone is going to have to pay." <u>Motown Records, et al. v. Nelson</u>, No. 04-73646 (E.D. MI).

89.     The record companies and their agents stood to financially benefit from these deceptive and unlawful acts. Proceeds from these activities are used to fund the operation of the record companies' continued public threat campaigns.

90.     The record companies' racketeering conduct directly and proximately resulted in damages, including harm to Ms. Andersen's health and property in an amount to be specifically proven at trial.

91.     As fully set forth above, the record companies falsely allege that they hired MediaSentry to break into private computers to spy, view files, remove information, and copy images. The record companies further falsely claim that they received and transmitted the information and images to Settlement Support Center. As the record companies' agent, Settlement Support Center falsely claim that the stolen information and images showed that Ms. Andersen had downloaded and distributed over 1,000 audio files. The record companies falsely claim that Ms. Anderson owed hundreds of thousands of dollars in an attempt to coerce and extort payment from her.

92.     By their claim, the record companies directed its agents to unlawfully break into thousands of private computers and engage in extreme acts of unlawful coercion, extortion,

Defendant's Second Amended Answer, Affirmative Defenses and Counterclaims - 22
andersen\Amended.Answer.1.2.07.filed.327

Lybeck❖Murphy LLP
7525 SE 24ᵗʰ Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791

EXHIBIT B  PAGE 22 OF 25

1    fraud, and other criminal conduct.

2        93.    The record companies and their agents stand to financially benefit from these

3    deceptive and unlawful acts.  Proceeds from these activities are used to fund the operation of

4    the record companies' continued public threat campaigns.

5

6        94.    These unlawful activities were not isolated.   The record companies have

7    repeated these unlawful and deceptive actions with many other victims throughout the United

8    States.

9        95.    The record companies' conduct resulted in damages, including harm to Ms.

10   Andersen's health and property in an amount to be specifically proven at trial.

11

12   <u>Count 9</u>

13   **Attorneys' Fees and Costs for Defending Meritless Copyright Infringement Suit**

14       96.    Defendant realleges and incorporates herein by reference each of the allegations

15   set forth above.

16       97.    Plaintiffs wrongfully and in violation of law and FRCP 11 initiated a meritless

17   lawsuit against Ms. Andersen.    After starting the lawsuit plaintiffs received additional

18   information confirming that their allegations of copyright infringement were without basis.

19   Despite this, plaintiffs continue to pursue these claims in further violation of law, FRCP 11 to

20   Ms. Andersen's ongoing injury and harm.

21

22       98.    Ms. Andersen is entitled to an award of all reasonable attorneys' fees and costs

23   in defending plaintiffs' meritless lawsuit pursuant to 17 U.S.C. §505 and FRCP 11.

24            I.     **PRAYER FOR RELIEF**

25       WHEREFORE, the plaintiff prays for:

26
         a.  Dismissal of the plaintiffs' claims with prejudice;

Defendant's Second Amended Answer, Affirmative Defenses and Counterclaims - 23
andersen\Amended.Answer.1.2.07.filed.327

Lybeck♦Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791

EXHIBIT _B_ PAGE _23_ OF _25_

1      b. An order that plaintiffs shall take no relief from their complaint herein;

2      c. All direct and consequential damages necessary to compensate Ms. Andersen;

3      d. Declaratory and Injunctive relief;

4
       e. Statutory and punitive damages awardable under ORS 646.605 *et seq* and ORS
5
          166.715 *et seq*;
6

7      f. Attorneys' fees and costs awardable under ORS 646.605 *et seq.*, ORS 166.715 *et*

8         *seq.*,17 U.S.C. § 505;

9      g. For post-judgment interest on the entire judgment until paid in full;

10     h. For sanctions pursuant to FRCP 11; and

11
       i. For such other and further relief as the Court may deem just and equitable.
12

13                           **DEMAND FOR JURY TRIAL**

14     Respectfully submitted this 27th day of March, 2007.

15                                 Lybeck Murphy, LLP

16
                                   By: /s/ Lory R. Lybeck
17                                     Lory R. Lybeck (OSB #83276)
                                       Attorneys for plaintiffs
18

19

20

21

22

23

24

25

26

Defendant's Second Amended Answer, Affirmative Defenses and Counterclaims - 24          Lybeck◆Murphy LLP
andersen\Amended.Answer.1.2.07.filed.327                                                7525 SE 24ᵗʰ Street, Ste. 500
                                                                                        Mercer Island, WA 98040-2334
                                                                                        206-230-4255  Fax 206-230-7791

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

AFFIDAVIT OF SERVICE

State of Washington    )
                       ) ss.
County of King         )

I hereby certify and declare that on the 27th day of March, 2007, I electronically filed the foregoing Defendant's Second Amended Answer, Affirmative Defenses and Counterclaims with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Atty/Plaintiffs:
Kenneth R. Davis, II
William T. Patton
Lane Powell PC
601 SW Second Avenue, Suite 2100
Portland, OR 97204
503-778-2100/phone
503-778-2200/fax
Email: davisk@lanepowell.com/Davis
       pattonw@lanepowell.com /Powell

James Ruh, *Admitted Pro Hac Vice*
james.ruh@hro.com
Nadia Sarkis, *Admitted Pro Hac Vice*
nadia.sarkis@hro.com
HOLME, ROBERTS & OWEN LLP
1700 Lincoln Street, Ste. 4100
Denver, CO 80203
Telephone: (303) 861-7000
Facsimile: (303) 866-0200

All parties are registered as CM/ECF participants for electronic notification.

DATED at Mercer Island, Washington, this 27th day of March, 2007.

_____/s/ Lory R. Lybeck_____
Lory R. Lybeck (OSB #83276)
Attorneys for defendant
Lybeck Murphy, LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040
(206) 230-4255 /phone
(206) 230-7791 /fax
lrl@lybeckmurphy.com

Defendant's Second Amended Answer, Affirmative Defenses and Counterclaims - 25
andersen\Amended.Answer.1.2.07.filed.327

Lybeck•Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791

EXHIBIT B PAGE 25 OF 25