Andersen v. Atlantic Recording Corporation et al                                                                       Doc. 14 Att. 4

LEXSEE 2006 US DIST LEXIS 20214

Interscope Records, et al., Plaintiffs, vs. Lindsey Duty, Defendant.

No. 05-CV-3744-PHX-FJM

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA

2006 U.S. Dist. LEXIS 20214; 79 U.S.P.Q.2D (BNA) 1043

April 14, 2006, Decided

**NOTICE:** [*1] NOT FOR PUBLICATION

**COUNSEL:** For Interscope Records, a California general partnership, Plaintiff: James C Ruh, Holme Roberts & Owen LLP, Denver, CO; Nadia A Sarkis, Holme Roberts & Owen, Denver, CO; Ray Kendall Harris, Susan Moon O, Fennemore Craig PC, Phoenix, AZ; Ira M Schwartz, DeConcini McDonald Yetwin & Lacy, Phoenix, AZ.

For Sony BMG Music Entertainment, a Delaware general partnership, Arista Records LLC, a Delaware limited liability company, Plaintiffs: Ray Kendall Harris, Susan Moon O, Fennemore Craig PC, Phoenix, AZ; Ira M Schwartz, DeConcini McDonald Yetwin & Lacy, Phoenix, AZ.

For Warner Bros. Records, Inc., a Delaware corporation, Capitol Records Inc., a Delaware corporation, Virgin Records America, Inc., a california corporation, Elektra Entertainment Group Inc., a Delaware corporation, UMG Recordings Inc., a Delaware corporation, Plaintiffs: James C Ruh, Holme Roberts & Owen LLP, Denver, CO; Ray Kendall Harris, Susan Moon O, Fennemore Craig PC, Phoenix, AZ; Ira M Schwartz, DeConcini McDonald Yetwin & Lacy, Phoenix, AZ.

For Lindsey Duty, Defendant: Sheila Marie Heidmiller, Macheledt Bales & Heidmiller LLP, Mesa, AZ.

For UMG Recordings Inc., a Delaware corporation, [*2] Warner Bros. Records, Inc., a Delaware corporation, Virgin Records America, Inc., a california corporation, Elektra Entertainment Group Inc., a Delaware corporation, Counter Defendants: James C Ruh, Holme Roberts & Owen LLP, Denver, CO; Ira M Schwartz, DeConcini McDonald Yetwin & Lacy, Phoenix, AZ.

For Interscope Records, a California general partnership, Counter Defendant: James C Ruh, Holme Roberts & Owen LLP, Denver, CO; Nadia A Sarkis, Holme Roberts & Owen, Denver, CO; Ira M Schwartz, DeConcini McDonald Yetwin & Lacy, Phoenix, AZ.

For Sony BMG Music Entertainment, a Delaware general Partnership, Capitol Records Inc., a Delaware corporation, Arista Records LLC, a Delaware limited liability company, Counter Defendants: Ira M Schwartz, DeConcini McDonald Yetwin & Lacy, Phoenix, AZ.

**JUDGES:** Frederick J. Martone, United States District Judge.

**OPINION BY:** Frederick J. Martone

**OPINION**

ORDER

I

Developments in internet-based technology, including the use of online peer-to-peer networks, have dramatically increased the speed and ease with which information can be shared worldwide. These networks have been substantially used for the rapid transfer of copyrighted works, leading to [*3] "infringement on a gigantic scale," *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 125 S. Ct. 2764, 2782, 162 L. Ed. 2d 781 (2005),* and creating a flurry of federal litigation. Here, plaintiffs-various recording companies ("the Recording Companies")-allege that Lindsay Duty ("Duty") used a peer-to-peer network called Kazaa to download and distribute copyrighted music in violation of federal law. Duty counterclaims, seeking a declaratory judgment that she did not violate the copyright laws, and raising state common law tort claims for invasion of privacy and abuse of legal process. The court has before it Duty's motion to dismiss (doc. 8), the Recording Companies' amended opposition (doc. 20), and Duty's reply (doc. 22); the Recording Companies' motion to dismiss

counterclaims (doc. 21), Duty's opposition (doc. 24), and the Recording Companies' reply (doc. 26); and the Recording Companies' motion to disregard Duty's affidavit, or in the alternative, to treat her reply brief as a motion for summary judgment (doc. 25) and Duty's response (doc. 30).

## II

Duty moves to dismiss the Recording Companies' copyright infringement claim pursuant to *Rule 12(b)(6), Fed. R. Civ. P.* [*4] , contending that A) the Recording Companies failed to satisfy the pleading requirement in *Rule 8(a)(2), Fed. R. Civ. P.*, and B) the Recording Companies provide no evidence of dissemination. Duty also moves to dismiss the claim pursuant to *Rule 12(b)(7), Fed. R. Civ. P.*, for the failure to join an indispensable party. We disagree with all three contentions, and accordingly deny Duty's motion to dismiss (doc. 8).

### A

Pursuant to *Rule 8(a)(2)*, a plaintiff need only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1 (2002)* (quotation omitted). "The liberal notice pleading of *Rule 8(a)* is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim." *Id.* (citation omitted).

The essential elements of a copyright infringement claim are A) plaintiff's ownership of a valid copyright and [*5] B) defendant's unauthorized copying of constituent elements of the work that are original. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361, 111 S. Ct. 1282, 1296, 113 L. Ed. 2d 358 (1991)* (citation omitted). The Recording Companies allege that they own the copyrights to various songs, and that "Defendant, without the permission or consent of Plaintiffs, has used, and continues to use, an online media distribution system to download the Copyrighted Recordings, to distribute the Copyrighted Recordings to the public, and/or to make the Copyrighted Recordings available for distribution to others." *Complaint* at 3.

Attached to the complaint are exhibits A and B. [1] The complaint is clear that exhibit A is a list of recordings which are copyrighted by the Recording Companies, and that some of the recordings on exhibit B are copyrighted by the Recording Companies. The complaint fails, however, to explicitly identify the relevance of the two exhibits to this copyright infringement action.

1 "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." *Fed. R. Civ. P. 10(c)*. Accordingly, we consider exhibits A and B herein.

[*6] In context, however, the relevance of the two exhibits is clear. Duty is alleged to have illegally used Kazaa to download and distribute various copyrighted works. Therefore, based upon the complaint alone, it is clear to the court that exhibit B is an alleged representation of Duty's Kazaa share folder, and that exhibit A is a list of some songs that the Recording Companies claim were illegally downloaded or distributed by Duty through her Kazaa share folder. Moreover, it is clear from Duty's motion to dismiss that she thoroughly understands the claims against her. Therefore, the complaint satisfies the liberal notice pleading standard of *Rule 8(a)*. To the extent that there remains confusion with regard to the exact date or time of the incidences of alleged infringement, that can be clarified during discovery. [2]

2 Moreover, we conclude below that the mere filing of a copyrighted work in a peer-to-peer network share folder may constitute distribution and therefore infringement. Therefore, the existence of any of the Recording Companies copyrighted recordings in Duty's share file as represented in exhibit B to the complaint may constitute copyright infringement. Therefore, additional date or time information may not be necessary to the Recording Companies' claims.

[*7] ### B

Duty also argues that "Plaintiffs' allegation that Defendant merely made recordings available for distribution to others fails to state a copyright claim" because "there is no liability for infringing upon the right of distribution unless copies of copyrighted works were actually *disseminated* to members of the public. *Duty's Memorandum in Support of her Motion to Dismiss* at 3 (emphasis in original). We disagree.

Pursuant to *17 U.S.C. § 106(3)*, the owners of a copyright have the "exclusive right[]" to "distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending." "Distribute" is not defined under the Copyright Act, but the right of distribution is synonymous with the right of publication, *Ford Motor Co. v. Summit Motor Prod., Inc., 930 F.2d 277, 299 (3d Cir. 1991)*, and "publication" is defined under the Copyright Act. "Publication" is defined to include "the *offering* to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display." *17 U.S.C. § 101* [*8] (emphasis added). Moreover, the Court of Appeals has stated that "Napster

Page 3

2006 U.S. Dist. LEXIS 20214, *; 79 U.S.P.Q.2D (BNA) 1043

[a peer-to-peer file sharing company] users who upload file names to the search index for others to copy violate plaintiffs' distribution rights." *A & M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1014 (9th Cir. 2001).* Therefore, the mere presence of copyrighted sound recordings in Duty's share file may constitute copyright infringement. Accordingly, Duty's motion to dismiss for failure to state a claim upon which relief can be granted is denied (doc. 8). [3]

> 3 To be clear, we do not conclude that the mere presence of copyrighted sound recordings in Duty's share file constitutes copyright infringement. We have an incomplete understanding of the Kazaa technology at this stage, and the ultimate issue of liability is more appropriately considered on a motion for summary judgment where the parties will have an opportunity to fully explain the Kazaa technology, and the means by which a file can be made available for public download on Kazaa.

[*9] C

Duty also argues that the alleged infringement would not have been possible without the use of Kazaa, and therefore the owner of Kazaa, Sharman Networks, Ltd. ("Sharman"), is a necessary and indispensable party to this suit. We disagree. The Recording Companies may have a viable claim against Sharman for direct, contributory or vicarious infringement. *See Metro-Goldwyn-Mayer Studios Inc., 125 S. Ct. at 2776.* Furthermore, following this action, Duty may have a viable claim against Sharman for contribution. However, the possibility of related third-party liability does not preclude us from according complete relief among those already named as parties, nor does it represent sufficient harm to either Sharman or Duty to require joinder. *Fed. R. Civ. P. 19(a); see Temple v. Synthes Corp., Ltd., 498 U.S. 5, 7-8, 111 S. Ct. 315, 316, 112 L. Ed. 2d 263 (1990)* (holding that joint tortfeasors are not necessary parties).

Duty argues that to the extent copyright infringement took place, it was not caused by her because Kazaa has an automatic upload feature which causes any user to unknowingly distribute computer files over the internet. [*10] To the extent this is true, it might be a valid defense. However, for the reasons stated, it does not make Sharman a necessary party. Therefore, Duty's motion to dismiss for the failure to join an indispensable party is denied (doc. 8).

III

Duty counterclaims A) seeking a declaratory judgment that she did not commit copyright infringement; B) claiming that the Recording Companies are liable for the invasion of privacy in accessing her computer files and C) publically identifying her as a file-sharer; and D) claiming that the Recording Companies are liable for the abuse of legal process. The Recording Companies move to dismiss each cause of action.

A

The Recording Companies sole claim is that Duty committed copyright infringement. Duty counterclaims, seeking a declaratory judgment that she did not commit copyright infringement. The issue of copyright infringement will be decided by this court regardless of the declaratory judgment claim unless the parties stipulate to settlement, or the Recording Companies move to voluntarily withdraw their complaint and the court so orders pursuant to *Rule 41(a)(2), Fed. R. Civ. P.* Therefore, [*11] Duty's claim for a declaratory judgment is redundant and unnecessary, and the Recording Companies motion to dismiss it is granted (doc. 21).

B

Duty claims that the Recording Companies are liable for the tort of intrusion upon seclusion. A person is liable for that tort if he "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person." *Hart v. Seven Resorts Inc., 190 Ariz. 272, 279, 947 P.2d 846, 853 (Ct. App. 1997)* (citing *Restatement (Second) of Torts § 652B (1977)*). Therefore, a defendant is liable "only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs." *Id.* (citing *Restatement § 652B cmt. c*).

Duty alleges that the Recording Companies committed this tort by "inva[ding] [her] alleged computer." *Counterclaim* at 7. More specifically, it appears that Duty claims that the Recording Companies committed this tort by accessing her Kazaa share folder, which is reproduced as exhibit [*12] B to the complaint. The Recording Companies argue that Duty fails to state a claim upon which relief can be granted because the information in the share file is public, and therefore, there is no seclusion. Duty does not dispute this fact; she merely argues that she did not put the sound recordings in the share file. She argues that Kazaa did so automatically. However, whether Duty or Kazaa acted, it is undisputed that the share file is publically available, and therefore Duty cannot show that the Recording Companies intruded upon her private affairs. Accordingly, the Recording Companies' motion to dismiss Duty's intrusion upon seclusion claim is granted (doc. 21).

C

Duty claims that the Recording Companies are liable for the tort of false light for publically disclosing that Duty is a file-sharer by filing this lawsuit. The Recording Companies move to dismiss this claim arguing that they are protected by the *Noerr-Pennington* doctrine. The Recording Companies appear to be correct, but we need not further consider the substance of their argument because Duty failed to respond to it and, pursuant to LRCiv 7.2(i), we perceive the failure to respond as consent to the granting [*13] of the motion with regard to this issue. Accordingly, the Recording Companies' motion to dismiss Duty's false light claim is granted (doc. 21).

D

Duty claims that the Recording Companies are liable for the state law tort of abuse of the legal process, which is defined as "a willful act in the use of judicial process . . . for an ulterior purpose not proper in the regular conduct of proceedings." *Crackel v. Allstate Ins. Co., 208 Ariz. 252, 257, 92 P.3d 882, 887 (Ct. App. 2004).* To succeed on the claim, "a plaintiff must show that the defendant's improper purpose was the primary motivation for its actions, not merely an incidental motivation." *Id.* at 259, 92 P.3d at 889. Moreover,

> for abuse of process to occur there must be use of the process for an immediate purpose other than that for which it was designed and intended. The usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it.

*Restatement § 682 cmt. b.*

Here, Duty claims that this is one case in thousands where the Recording Companies [*14] are suing individual users of peer-to-peer networks such as Kazaa in an effort to frighten users away from the networks, thereby putting the networks out of business. This might be true. In fact, the Recording Companies state in their briefings that "they face a massive problem of digital piracy over the Internet" and accordingly they have "sustained and continue to sustain devastating financial losses." *Recording Companies' Amended Opposition* at 2. It is not, however, an abuse of the legal process to organize a large-scale legal assault on small-scale copyright infringers that together cause devastating financial losses. Moreover, it is not an abuse of the legal process if the Recording Companies' goal in bringing these actions is to scare would-be infringers into complying with federal law, and thereby prevent the networks that allegedly facilitate the alleged infringement from doing so. It may be an abuse of the legal process for a collection of large corporate entities to use their substantial financial and intellectual capacities to prey upon less capable individuals and unfairly pressure them into settlement. However, while Duty sets forth general allegations with regard [*15] to the Recording Companies' overall strategy, she sets forth no allegations with regard to such heavy-handed tactics in this litigation. Therefore, the Recording Companies' motion to dismiss Duty's abuse of process claim is granted (doc. 21).

IV

The Recording Companies move to disregard Duty's affidavit attached to her reply brief, or in the alternative to convert Duty's reply brief to a motion for summary judgment. When considering a motion to dismiss under *Rule 12(b)(6),* we accept the plaintiff's factual allegations as true. *Anderson v. Clow, 89 F.3d 1399, 1403 (9th Cir. 1996).* Accordingly, Duty's contradictory assertions of fact in her affidavit are irrelevant to the analysis. Moreover, it would be inappropriate to convert Duty's reply into a motion for summary judgment because the parties have not had an opportunity to conduct discovery and flesh out the factual issues that are necessary to the infringement claim. Furthermore, the facts set forth in the affidavit would have no effect on our resolution of Duty's motion to dismiss pursuant to *Rule 12(b)(7).* Accordingly, we grant the Recording Companies' motion to disregard Duty's affidavit (doc. 25).

[*16] V

IT IS ORDERED DENYING Duty's motion to dismiss (doc. 8).

IT IS FURTHER ORDERED GRANTING the Recording Companies' motion to dismiss the counterclaims (doc. 21).

IT IS FURTHER ORDERED GRANTING the Recording Companies' motion to disregard Duty's affidavit (doc. 25).

For clarity, only the Recording Companies' copyright infringement claims remain.

DATED this 14th day of April, 2006.

Frederick J. Martone

United States District Judge

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-6340

WILLIAM J. MARTINI
JUDGE

September 30, 2004

## LETTER OPINION

**VIA REGULAR MAIL**

Michele Scimeca
P.O. Box 339
Hibernia, NJ 97842

*(Pro Se Defendant/Counterclaimant)*

Karen A. Confoy, Esq.
Sterns & Weinroth, P.C.
50 West State St., Suite 1400
Trenton, NJ 08607-1298

*(Attorney for Plaintiffs Sony Music Entertainment Inc., UMG Recordings, Inc., and Motown Record Company, L.P.)*

Re:   Sony Music Entertainment Inc. v. Scimeca
      Docket No.: 2:03-cv-05757 (WJM)

Dear Litigants:

This matter comes before the Court on Plaintiffs' Motion to Dismiss Defendant's Counterclaim Pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant Michele Scimeca has filed an opposition and Plaintiffs have filed a reply. For the reasons set forth below, Plaintiffs' motion to dismiss is **GRANTED** and the Counterclaim Complaint is **DISMISSED WITH PREJUDICE.**

## BACKGROUND

The underlying action is a copyright infringement action brought by Plaintiffs alleging that Defendant illegally copied and distributed copyrighted works of music without Plaintiffs' permission. The action was administratively terminated on July 13, 2004 due to bankruptcy proceedings and then reopened August 23, 2004. Plaintiffs now seek to dismiss Defendant's counterclaim originally filed on or about February 5, 2004.

Defendant's counterclaim alleges that Plaintiffs, through the Recording Industry Association of America, have violated the Racketeer Influenced and Corrupt Organizations

("RICO"), 18 U.S.C. §§ 1961–68 (2000) by carrying out a pattern of enterprise racketeering and extortion. (*See* Counterclaim Complaint at p.4) The Counterclaim Complaint does not specify under which section of RICO Defendant bases her claim, but the allegations in the Counterclaim Complaint suggest that the RICO claim is being brought under 18 U.S.C. § 1962(c), which makes it unlawful to conduct an enterprise through a pattern of racketeering activities, and 18 U.S.C. § 1962(d), which makes it unlawful to conspire to violate any provision of the RICO statute. In support of the RICO counterclaim, Defendant alleges that Plaintiffs committed common law fraud and violated the federal criminal extortion statute (18 U.S.C. § 1951), the federal mail fraud statute (18 U.S.C. § 1341), and the federal bank fraud statute (18 U.S.C. § 1344(d)). *See* Counterclaim Complaint at pp.5–6.

The RICO enterprise allegedly began in July 2002 with the service of subpoenas upon various internet providers seeking to obtain information about the identities of alleged copyright infringers. (*Id.*) The Plaintiff record companies then allegedly furthered the enterprise by initiating hundreds of lawsuits, which were commenced by the service of summonses and complaints accompanied by letters discussing and prompting a settlement of the infringement action. (*Id.* at pp.4–5.) These letters allegedly stated: "Your liability for infringement under the Copyright Act is clear. . . . You violated the record company plaintiffs' copyrights and are liabl[e] for damages as a result." (*Id.* at pp.5.) The letters went on to state that the damages for the alleged infringement could range from $750 to $150,000 per violation. (*Id.*)

Defendant alleges that the letters fraudulently represented clear liability in an effort to obtain settlement funds and were a scare tactic that caused a "vast amount of settlements from individuals who feared fighting such a large institution and feel victim to these actions and felt forced to provide funds to settle these action instead of fighting the institution." (*Id.* at pp.5–6.) These letters also allegedly caused Defendant "great emotional and financial harm and damage" and caused Defendant, as well as others similarly situated, to withdraw funds out of various bank accounts. (*Id.* at p.6.) Defendant alleges on behalf of other similarly situated persons also that Plaintiffs' conduct caused personal and financial damages. (*Id.*)

Plaintiffs now move this Court to dismiss Defendant's Counterclaim with prejudice, arguing the RICO counterclaim should be dismissed because the Defendant (1) has not alleged a predicate act under RICO; (2) lacks standing to assert a RICO claim to the extent that her claims are based on personal injury; and (3) has not properly pled a RICO violation. In addition, Plaintiffs argue that Defendant (4) has not pled her alleged fraud claims with particularity, as required by Rule 9(b). Finally, Plaintiffs argue that the Defendant (5) lacks standing to assert claims on behalf of other, unnamed persons.

## ANALYSIS

I.   **Standard of Review**

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc.*,

EXHIBIT E PAGE 2 OF 6

*v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998); *Robb v. Philadelphia*, 733 F.2d 286, 290 (3d Cir. 1984). A court may dismiss a complaint for failure to state a claim if, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts which could prove consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Zynn v. O'Donnell*, 688 F.2d 940, 941 (3d Cir. 1982).

## II.     Defendant's Motion To Dismiss The Complaint Is Granted

### A.     Defendant Has Not Identified Any Predicate Act In Support Of Her RICO Counterclaim

RICO provides a private civil action to recover treble damages for injuries resulting from a defendant's "racketeering activities" in violation of RICO's substantive provisions. 18 U.S.C. § 1964(c). The RICO statute makes it unlawful to, among other things, conduct an enterprise through a pattern of racketeering activities or to conspire to do the same. *Id.* § 1962(c), (d). To successfully allege a violation, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity" as well as an injury resulting from the conduct constituting a violation. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). "Racketeering activity" means one of the various predicate acts identified in the statute, including acts "indictable" under the federal mail and wire fraud statutes. 18 U.S.C. § 1961(1).

In this case, Defendant has not identified any valid predicate act under RICO in support of her counterclaim. Defendant bases her counterclaim on the mailing of summonses and complaints by Plaintiffs' counsel accompanied by settlement demand letters which Defendant alleges fraudulently represented clear liability. (*See* Counterclaim Complaint at p.4). This is precisely the kind of attorney conduct to which the courts previously have refused to attach RICO liability. In *Morin v. Trupin*, 711 F. Supp. 97 (S.D.N.Y. 1989), for example, a trial court stated that a letter sent by attorney-defendants to plaintiffs demanding payment on notes which the defendants allegedly knew to be unenforceable could not constitute a RICO predicate act because "[s]ubjecting the letters in issue to the mail fraud statute would chill an attorney's efforts and duty to represent his or her client in the course of pending litigation." *Id.* at 101–02, 105–06. The court observed that the "legitimate acts of attorneys on behalf of clients cannot form the basis of a RICO claim." *Id.* at 105. Similarly, in *Paul S. Mulling & Assocs., Inc. v. Bassett*, 632 F. Supp. 532 (D. Del. 1986), a trial court declined to conclude that the mailing of a letter by counsel stating defendant's legal position and demanding certain action based on that position constituted a RICO predicate act, finding "absurd plaintiffs' apparent suggestion that a lawyer's act in posting a letter which states a client's legal position in a dispute can constitute mail fraud. If such were the situation, every dispute in which the parties' counsel exchanged letters could give rise to RICO litigation." *Id.* at 540. Based on the reasoning in *Morin* and *Bassett*, the Court concludes that the settlement letters described in the Counterclaim Complaint cannot constitute a RICO predicate act. Thus, Defendant's § 1962(c) and § 1962(d) counterclaims must fail. *See Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1192 (3d Cir. 1993) ("Any claim under section 1962(d) based on conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient.").

The Court notes also that Defendant appears to base her RICO counterclaim solely on the mailing of the allegedly fraudulent settlement letter. However, to the extent that Defendant bases her RICO counterclaim on Plaintiffs' filing of allegedly frivolous lawsuits or threats to file allegedly frivolous lawsuits, this form of conduct also is not properly the basis of a RICO action. *See, e.g., Deck v. Engineered Laminates*, 349 F.3d 1253, 1258 (10th Cir. 2003) ("We recognize that litigation can induce fear in a defendant; and it would be fair, at least in other contexts, to characterize as 'wrongful' the filing of a groundless lawsuit, particularly when the plaintiff resorts to fraudulent evidence. But we join a multitude of other courts in holding that meritless litigation is not extortion under § 1951."); *Vemco, Inc. v. Camardella*, 23 F.3d 129, 134 (6th Cir. 1994) ("A threat of litigation if a party fails to fulfill even a fraudulent contract, moreover, does not constitute extortion."); *I.S. Joseph Co., Inc. v. J. Lauritzen A/S*, 751 F.2d 265, 266–67 (8th Cir. 1984) (holding that threats to sue, although characterized as extortion in plaintiff's complaint, do not constitute predicate acts of racketeering under RICO because threats to bring even groundless civil actions do not involve force or violence); *G-I Holdings, Inc. v. Baron & Budd*, 179 F. Supp.2d 233, 259 (S.D.N.Y. 2001) ("Threats of litigation, and even threats of meritless litigation or the actual pursuit of such litigation, have been held not to constitute acts of extortion.")

Although the Court's determination that Plaintiffs' alleged conduct does not constitute a predicate act under RICO alone is sufficient to resolve this motion to dismiss, the Court addresses the other deficiencies in Defendant's counterclaim.

### B. The 18 U.S.C. § 1951 Allegation Underlying Defendant's RICO Counterclaim Must Be Dismissed

The Hobbs Act states that "[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do . . . shall be fined under this title or imprisoned not more than twenty years, or both." 18 U.S.C. § 1951. An obvious element of extortion is an extortionate demand, *i.e.* a demand by the extortioner that the victim pay the extortioner a valuable consideration for return of the victim's property. *United States v. Inigo*, 925 F.2d 641, 651 (3d Cir. 1991). For conspiracy convictions, there must be (1) some evidence of an agreement among the conspirators and (2) knowledge on behalf of each of the conspirators that the agreement "had the specific unlawful purpose charged in the indictment." *See United States v. Terselich*, 885 F.2d 1094, 1097 (3d Cir. 1989).

The Court concludes that Plaintiffs did not commit extortion or conspire to commit extortion by mailing summonses and complaints accompanied by letters discussing and prompting a settlement of the infringement action. As stated in *Morin*, "legitimate acts of attorneys on behalf of clients cannot form the basis of a RICO claim" on the theory that they constitute mail fraud. 711 F. Supp. at 105. Nor can the threat to file an allegedly frivolous lawsuit form the basis of a RICO claim on the theory that the threat constitutes extortion. *Id.* at 106. For these reasons, the Court concludes that mailing summonses and complaints accompanied by letters discussing and prompting a settlement of the infringement action cannot constitute extortion. Therefore, Defendant's § 1951 allegations must be dismissed.

C. **The 18 U.S.C. § 1341, 18 U.S.C. § 1344(d), And Common Law Fraud Counterclaims Underlying Defendant's RICO Counterclaim Must Be Dismissed**

Where, as here, a litigant relies on allegations of fraud as a basis for a RICO violation, the allegations of fraud must comply with Federal Rule of Civil Procedure 9(b). *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2003). Under Federal Rule of Civil Procedure 9(b), the circumstances constituting fraud must be pleaded with particularity, though fraudulent intent may be generally alleged. In the context of RICO fraud allegations, Plaintiffs may satisfy this requirement by pleading the "date, place or time" of the fraud, or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Lum*, 361 F.3d at 224. In addition, Plaintiff must identify why the alleged fraudulent statements were fraudulent. *See U.S. Fire Ins. Co. v. United Limousine Serv. Inc.*, 303 F. Supp.2d 432, 443–44 (S.D.N.Y. 2004). Put another way, the "who, what, when and where details of the alleged fraud" are required. *Bonavitacola Elec. Contractor, Inc. v. Boro Developers, Inc.*, No. 03-1713, 2003 WL 23155074, at *3 (3d Cir. Oct. 30, 2003).

In this case, Defendant's mail fraud (18 U.S.C. § 1341), bank fraud (18 U.S.C. § 1344(d)), and common law fraud in support of her RICO counterclaim fail to meet Rule 9(b)'s pleading requirement because Defendant has made no attempt to specify why the settlement letters issued by Plaintiffs' counsel were fraudulent other than to allege conclusorily that the settlement letters "fraudulently represented clear liability" and that "the U.S. mail was used as an instrument of the initial fraud, conspiracy to commit fraud, and in the continuation of this fraud and fear inducing (*See* Counterclaim Complaint at p.6). These allegations are, therefore, dismissed.

D. **To The Extent That Defendant Seeks To Assert Counterclaims On Behalf Of Other Third Parties, Those Claims Are Dismissed**

Defendant appears to assert claims on behalf of unnamed persons who were allegedly threatened by Plaintiffs' litigation demand letters and who allegedly "felt forced to provide funds to settle these actions." (*See* Counterclaim Complaint at p.5.) However, Plaintiffs correctly point out that Defendant has no standing to bring these claim on behalf of these third persons. *See Moose Lodge No. 107 v. Irvin*, 407 U.S. 163, 166 (1972) (stating that a claimant "has standing to seek redress for injury done to him [or her], but may not seek redress for injuries done to others").

## CONCLUSION

For the foregoing, Plaintiffs' Motion to Dismiss Defendant's Counterclaim is **GRANTED** and Defendant's Counterclaim Complaint is **DISMISSED WITH PREJUDICE**. An appropriate Order accompanies this Letter Opinion.

William J. Martini, U.S.D.J.

cc: The Honorable Ronald J. Hedges, U.S.M.J.

LEXSEE 2007 US DIST LEXIS 35824

ATLANTIC RECORDING CORPORATION, ET AL. VS. DIANE HESLEP

CIVIL ACTION NO.4:06-CV-132-Y

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, FORT WORTH DIVISION

2007 U.S. Dist. LEXIS 35824

May 16, 2007, Decided
May 16, 2007, Filed

**COUNSEL:** [*1] For Atlantic Recording Corporation, a Delaware corporation, Virgin Records America Inc, a California corporation, UMG Recordings Inc, a Delaware corporation, Sony BMG Music Entertainment, a Delaware grneral partnership, Arista Records LLC, a Delaware limited liability company, Interscope Records, a California general partnership, Plaintiffs: Stacy R Obenhaus, LEAD ATTORNEY, Lisa L Honey, Gardere Wynne Sewell - Dallas, Dallas, TX.; David Tonini, Timothy M Reynolds, Holme Roberts & Owen - Denver, Denver, CO.

For Diane Heslep, Defendant: Thomas E Kimble, LEAD ATTORNEY, Law Office of Thomas E Kimble, Arlington, TX.

**JUDGES:** TERRY R. MEANS, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** TERRY R. MEANS

**OPINION**

ORDER DENYING MOTION FOR RULE 11 SANCTIONS

The Court has before it defendant Diane Heslep's motion requesting that the Court impose sanctions on Plaintiffs' attorney, Stacy Obenhaus, and the lawfirm Gardere Wynne Sewell LLP, under *Federal Rule of Civil Procedure 11*. After review, the Court finds Heslep's motion to be frivolous and concludes that it should be DENIED (doc. # 31).

I. Factual Background

Stacy Obenhaus is an attorney with the lawfirm Gardere [*2] Wynne Sewell LLP. Collectively, they represent Plaintiffs, who are recording companies that own or control exclusive rights to certain copyrighted sound recordings. Plaintiffs contend that since the early 1990s they have faced a massive and exponentially expanding problem with digital piracy of their copyrighted material over the internet.

It is now well-known that there are numerous programs that anyone can install onto one's computer that will provide access to online networks (referred to as "peer-to-peer" or "P2P" networks) that link millions of users' computers simultaneously to a common peer-to-peer network throughout the world and allow a person to access, acquire (download), and distribute (upload), illegally, billions of copyrighted sound recordings, movies, and software. *See MGM Studios, Inc., et al. v. Grokster, LTD., et al., 545 U.S. 913, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005); A&M Records, Inc., et al. v. Napster, Inc., et al., 239 F.3d 1004 (9th Cir. 2001).* Plaintiffs assert that as a result of the rise of these peer-to-peer networks, they have sustained and continue to sustain enormous financial losses.

To combat this online piracy, Plaintiffs employ the MediaSentry [*3] Managed Services unit ("MediaSentry") of Safenet, Incorporated, through the Recording Industry Association of America. MediaSentry is one of the principal providers of online anti-piracy services worldwide, and it specializes in the ability to detect the unauthorized distribution of copyrighted materials over the internet. MediaSentry searches the numerous peer-to-peer networks to identify individuals illegally acquiring and distributing Plaintiffs' copyrighted sound recordings.

Becoming a user of a peer-to-peer network is relatively easy. One need only download from any one of hundreds of websites on the internet and install onto his computer the peer-to-peer software--such as the program *Kazaa*, which is the program alleged to have been used in this case. Once installed, the user can access the peer-to-peer network and is able to search the network for any

file, including copyrighted sound recordings that have been converted to a digital file. The user can download that copyrighted sound file, for free, and later transfer that file to a compact disk or digital music player. Also, once that file has been downloaded onto the user's computer, it is also available to other users [*4] on the peer-to-peer network to access and download onto their respective computers. Users of the peer-to-peer software and networks download the copyrighted sound recordings into what is called a "shared directory" onto their computer. As long as the user turns on the sharing feature of the peer-to-peer program, any user on the peer-to-peer network will have access to that user's shared directory and all of the files stored in that directory.

MediaSentry combs these peer-to-peer networks for individuals infringing on Plaintiffs' copyrights and gathers evidence of their unlawful activity. MediaSentry searches for Plaintiffs' copyrighted sound recordings over the network, views the files that a user has in his shared directory, obtains the internet protocol ("IP") address and screen name of that user, and downloads a sampling of the copyrighted recordings contained on that user's shared directory. In doing so, MediaSentry uses the very program employed by the alleged infringing user.

MediaSentry captures a list of all of the files a particular user possesses in his shared directory by taking what are called "screen shots" of the user's shared directory. Screen shots are actual pictures [*5] of the screens that MediaSentry and other users on the network view when accessing the user's shared directory. In other words, these screen shots are actual pictures of all of the files available for downloading from the user's shared directory.

Once MediaSentry has a list of all of the files contained on a user's shared directory, it searches the list for Plaintiffs' copyrighted recordings. If the list includes some of Plaintiffs' copyrighted recordings, MediaSentry will download a sampling of those recordings from the user's shared directory on the user's computer. By the conclusion of its investigation of any one user, MediaSentry will have gathered evidence of the copyrighted sound recordings possessed on the user's shared directory on his computer, the metadata for each digital file, screen shots of the user's shared directory on his computer, the user name of the alleged infringer, the user's IP address, and the date and time of the alleged infringement.

In this case, MediaSentry observed an individual logged onto a peer-to-peer network through the *Kazaa* program on January 6, 2005, at 17:42:34 eastern standard time ("EST") using IP address 172.143.120.109. The IP address [*6] was assigned to America Online ("AOL"), which serves as an internet service provider ("ISP") allowing access by its subscribers to the internet.

Attached as Exhibit B to Plaintiffs' complaint are a series of the above-described screen shots taken by MediaSentry in this case. The screen shots show approximately 850 digital sound files located on this user's shared directory. (Pls.' Am. Compl. Ex. B.) The user's name on the network was "mke@KaZaA." (*Id.*) Many of the sound files contained on the user's shared directory were recordings by very famous and well known artists. Plaintiffs' own copyrights on some of them. (*Id.*) The screen shots also show that at the time this user was logged onto the network, the user's shared directory was available to some 2.5 million other users. (*Id.*) The screen shots also establish that the millions of users on the network at that time were sharing more than one billion files. (*Id.*) Thus, while on the network, the user "mke@KaZaA" had access to more than a billion files shared by more than 2.5 million users and the more than 2.5 million users on the network would have access to all of "mke@KaZaA's" files on her shared directory. [1]

> 1 Although, as will be discussed below, further investigation by Plaintiffs revealed their belief that the user "mke@KaZaA" was Diane Heslep, at that time, the user mke@KaZaA was anonymous.

[*7] The screen shots also revealed that one of the files contained on user "mke@KaZaA's" shared directory was "Diane.kpl." (*Id.* at 3.) The "kpl" at the end of the file identifies that file as a *Kazaa* playlist file. One of the functions of the Kazaa program is to enable the user to create *Kazaa* playlist files that are lists of the audio files contained on the user's shared directory that can be played using *Kazaa's* audio player program. This *Kazaa* playlist also allows other users on the network to download the specific files contained on that playlist from the user's shared directory. When creating this playlist, the user is free to assign it any name he chooses.

With this information, Plaintiffs filed a "John Doe" complaint in the Federal District Court for the Eastern District of Virginia. *See Motown Record Company L.P. v. Does 1-95*, No. 1:05-cv-071 (E.D.Va. 2005); (Pls.' App. to Resp. to Mot. for Sanctions at 9-16.) Plaintiffs obtained a subpoena under *Federal Rule of Civil Procedure 45* and served that subpoena on AOL in order to learn the identity of the person at IP address 172.143.120.109 on January 6, 2005, at 17: [*8] 42:34 (EST). In response, AOL identified the user as Diane Heslep of 609 Kelly Terrace, Arlington, Texas 76010. (Pls.' App. to Resp. to Mot. for Sanctions at 28.)

After learning of Heslep's identity, Plaintiffs sent her a notice of their intent to sue her for copyright infringe-

ment. (*Id.* at 109.) The notice contained a copy of the original complaint in this case, informed Heslep of Plaintiffs' allegation of her copyright infringement, and offered to settle this case. (*Id.*)

After attempting unsuccessfully to reach settlement, Plaintiffs filed their copyright-infringement action against Heslep under *17 U.S.C. § 101, et seq.*, on February 17, 2006. Shortly thereafter, Heslep offered her computer hard drive to Plaintiffs for inspection to support her assertion that she was not engaged in any ongoing infringement of Plaintiffs' copyrights. In a demand letter sent to Plaintiffs on June 19, 2006, from Heslep's attorney, Heslep offered to allow Plaintiffs to inspect her hard drive and to work out a suitable protection order for the evidence uncovered through the inspection. (*Id.* at 33.) The letter also demanded that Plaintiffs remove their allegation [*9] of Heslep's ongoing infringement in their original complaint. (*Id.* at 37.) The letter threatened Rule 11 sanctions if Plaintiffs did not amend their complaint. (*Id.* at 37-38.)

An inspection of Heslep's hard drive did not occur, however, because she demanded terms unacceptable to Plaintiffs. Among her many demands, Heslep insisted upon a payment of $ 10,000 and dismissal of all claims if the inspection showed that she was not currently engaged in copyright infringement. (*Id.* at 42-45.) Plaintiffs would not agree to those terms because even if an inspection of Heslep's computer established that she was not currently infringing on Plaintiffs' copyrights, their complaint also alleged that she had so infringed in the past.

After learning of Heslep's objections, Plaintiffs contacted AOL to verify that Heslep was the subscriber to the IP address 172.143.120.109 used on January 6, 2005, at 17:42:34 (EST). (*Id.* at 58.) AOL again confirmed its identification of Heslep.

According to Plaintiffs, in an effort to avoid unnecessary litigation, they filed an amended complaint on July 14, 2006, removing the allegation of Heslep's ongoing and continued infringement. In their amended [*10] complaint, Plaintiffs alleged that

> on January 6, 2005, at approximately 5:42 p.m., [Heslep], without the permission or consent of Plaintiffs, used an online media distribution system to distribute the copyrighted recordings to the public and/or to make the copyrighted recordings available for distribution to others, and that, on other occasions on or before January 6, 2005, and continuously through January 6, 2005, [Heslep], without the permission or consent of Plaintiffs, used an online media distribution system to download the copyrighted recordings, to distribute the copyrighted recordings to the public, and/or to make the copyrighted recordings available for distribution to others. In doing so, [Heslep] has violated Plaintiffs' exclusive rights of reproduction and distribution. [Heslep's] actions constitute infringement of Plaintiffs' copyrights and exclusive rights under copyright.

(Pls.' Am. Compl. at 3.) After receiving the amended complaint, Heslep responded by claiming she was at work at 5:42 p.m. (EST) on January 6, 2005, and that she has no idea whose computer was in use at the time in question. (Pls.' App. to Resp. to Mot. for Sanctions at 59-66.) [*11] She also claimed that her AOL account was and is used by secondary users, though she has never identified these secondary users. (*Id.*)

In response, Plaintiffs' national counsel sent a letter to Heslep's counsel detailing the evidence they possessed of her alleged infringement and inviting her to provide any information regarding her claim of secondary users of her AOL account. (*Id.* at 70-72.) Heslep's counsel left a voicemail with Plaintiffs' national counsel stating he refused to communicate with them because he regarded this as a Rule 11 issue and advised that he would only communicate through Plaintiffs' local counsel Obenhaus and the lawfirm Gardere Wynne Sewell LLP. (*Id.* at 73.)

Thereafter, Heslep filed a declaration claiming that Plaintiffs' amended complaint falsely alleges she infringed on Plaintiffs' copyright using the *Kazaa* program at 5:42 p.m. (EST) on January 6, 2005. (Heslep Decl. of April 15, 2006 at P 2.) Notably absent in her declaration made under penalty of perjury, however, is any denial of Plaintiffs' allegation that she infringed on Plaintiffs' copyrights "on other occasions on or before January 6, 2005, and continuously through January 6, 2005." [*12] (Pls.' Am. Compl. at 3.)(Emphasis added.); (Heslep Decl. of April 15, 2006 at 1-2.) Heslep's attorney also advised Plaintiffs' attorney that AOL had confirmed that Heslep's screen name was not in use at 5:42 p.m. (EST) on January 6, 2005. (Def.'s Mot. for Sanctions at 2.)

Again and in response, Plaintiffs requested Heslep produce any evidence to support her claim that AOL confirmed that her screen name was not in use at the time in question, and requested information on any secondary users who have access to her AOL account. Instead, Heslep provided emails she received from AOL. In those emails, AOL advised Heslep that its

> records indicate that the screen name "gocwbys8" was online using IP address 172.143.120.109 from 15:38:59 to

21:17:30 (EST) on January 6, 2005 . . . . Since the screen name "gocwbys8" is a screen name on the AOL account of your client, Ms. Diane Heslep, we identified her in the April 19, 2005, subpoena response [referring to Plaintiffs' *Rule 45* subpoena].

(Pls.' App. to Resp. to Mot. for Sanctions at 90.) Although AOL gave Heslep permission to turn over those emails to Plaintiffs in early August 2006, she did not disclose them until October 21, [*13] after she filed her motion for sanctions on October 5.

II. Analysis

A. Standard

The Federal Rules of Civil Procedure are designed "to secure the just, speedy, and inexpensive determination of every action." *FED.R.CIV.P. 1*. *Rule 11* champions these goals and in pertinent part provides,

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances,--
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law . . .;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; . . . .

*FED.R.CIV.P. 11(b)* [*14] . Each obligation under *Rule 11* must be satisfied; violation of any justifies sanctions. *See Whitehead, et al. v. Food Max of Mississippi, Inc., et al., 332 F.3d 796, 802 (5th Cir. 2003)*. In assessing whether an attorney has met his obligations under *Rule 11*, this Circuit applies "the 'snapshot' rule, measuring the attorney's conduct as of the time of the signing." *FDIC v. Calhoun, et al., 34 F.3d 1291, 1296 (5th Cir. 1994)*. And "the standard under which an attorney is measured is an objective, not subjective, standard of reasonableness under the circumstances." *Whitehead, 332 F.3d at 802* (internal quotations and citations omitted).

B. Discussion

To start with, Plaintiffs have pellucidly explained the extensive investigation that was conducted before filing suit against Heslep for copyright infringement. Plaintiffs retained the services of a third-party investigator whose investigation revealed that a user had logged onto a peer-to-peer network using the *Kazaa* program and made available for distribution, from that user's shared directory on that user's computer, more than 850 music files. Screen shots of the user's shared directory [*15] revealed a *Kazaa*-playlist file called "Diane.kpl," and verified that many of Plaintiffs' copyrighted recordings were being freely distributed to millions of other users on the network by this user. MediaSentry's investigation identified the IP address used to access the internet, and it was later traced to an AOL account controlled by Heslep. Based on that information, the Court concludes that Plaintiffs' attorneys reasonably believed that Heslep was responsible or at least shared responsibility for the infringement of their clients' copyrights through the use of her AOL account.

The Court rejects Heslep's characterization of this lawsuit, and many others like it, as "predatory." (Def.'s Mot. for Sanctions at 3.) Plaintiffs' attorneys brought this lawsuit not for the purposes of harassment or to extort Heslep as she contends, but, rather, to protect their clients' copyrights from infringement and to help their clients deter future infringement. The evidence uncovered from MediaSentry's investigation shows that Plaintiffs' allegation of Heslep's alleged copyright infringement have evidentiary support and will likely have more evidentiary support through further investigation and [*16] discovery.

For now, our government has chosen to leave the enforcement of copyrights, for the most part, in the hands of the copyright holder. *See 17 U.S.C. § 101, et seq.* Plaintiffs face a formidable task in trying to police the internet in an effort to reduce or put a stop to the online piracy of their copyrights. Taking aggressive action, as Plaintiffs have, to defend their copyrights is certainly not sanctionable conduct under *Rule 11*. The right to come to court to protect one's property rights has been recognized in this country since its birth.

Furthermore, as detailed above, Plaintiffs went to considerable effort to work with Heslep to determine her true culpability in this case. Plaintiffs have tried to cooperate with Heslep and examine her computer hard drive,

but she has made unreasonable demands. Plaintiffs have repeatedly asked Heslep for information regarding the alleged secondary users of her AOL account, but she has provided none. And Plaintiffs have repeatedly asked to view her evidence to support her defensive claims, but she has failed to disclose. Time and again, Heslep has failed to back up her assertions with any substance, leading [*17] any reasonable person to suspect that her defensive claims are without merit.

In her motion, Heslep argues that Plaintiffs' attorneys should be sanctioned because she has established that she was at work at the exact date and time the amended complaint alleges she was online infringing on Plaintiffs' copyrights, that AOL has confirmed that she was not herself online at the specific date and time in question, and that AOL could not identify the specific computer in use at the date and time in question. The evidence suggests that these assertions are disingenuous, and they certainly do not support sanctioning Plaintiffs' attorneys.

First, whether Heslep was at work at the exact date and time alleged in the amended complaint is a red herring. Plaintiffs' amended complaint does not allege that infringement of their copyrights happened at exactly 17:42:34 (EST) on January 6, 2005. Instead, it alleges that at 17:42:34 (EST) on January 6, 2005, "and . . . on other occasions on or before January 6, 2005, and continuously through January 6, 2005, . . ." Heslep infringed on Plaintiffs' copyrights. (Pls.' Am. Compl. at 3.)(Emphasis added.) Further, the evidence she provided to Plaintiffs [*18] from AOL establishes that her AOL account was online for approximately six hours from 3:38 p.m. (EST) until 9:17 p.m. (EST). While Heslep may have been at work at 5:42 p.m. (EST), as she claims, she has not claimed to still have been at work at 9:17 p.m. (EST).

Moreover, the evidence shows that alleged infringement of Plaintiffs' copyrights occurred using her AOL account. Even if Heslep herself was not online on January 6 acquiring and distributing Plaintiffs' copyrighted recordings, it's reasonable to infer that someone she knew and gave permission to use her AOL account was. Thus, it is reasonable to infer that Heslep may be guilty of contributory infringement. *See Grokster, 545 U.S. at 930.* Although the copyright act does not expressly provide for liability for infringement committed by another, "doctrines of secondary liability [have] emerged from common-law principles and are well established in the law." *Id.* Essentially, these doctrines attach liability upon anyone who is an aider and abetter of copyright infringement. *See Id.* The evidence certainly reasonably implies that Heslep, if not directly, may have contributorily infringed on Plaintiffs' copyrights. [*19] This is further buttressed by the fact that to date, although she alleges there are secondary users who have access to her AOL account, she has refused to provide any information to Plaintiffs regarding these secondary users--possibly assisting those secondary users in escaping liability and obstructing Plaintiffs' ability to enforce their copyrights.

Second, Heslep's claim that AOL confirmed that she was not online at 17:42:34 (EST) on January 6, 2005, is simply false. AOL confirmed twice for Plaintiffs that a screen name in Heslep's AOL account was online at the date and time in question. And the emails Heslep provided to Plaintiffs confirm that screen name "gocwbys8" was online at that time and is a screen name registered to Heslep's AOL account.

While that does not conclusively prove that Heslep herself accessed the internet through AOL at the date and time in question, neither does it prove that she did not. What it does show is that AOL has not confirmed that Heslep herself was not online on the date and time in question.

Third, for the same reasons just discussed above, whether AOL can or cannot confirm what specific computer was on the internet on the date and time in question [*20] does not establish that Plaintiffs' attorneys committed sanctionable conduct under *Rule 11*. The evidence strongly suggests that infringement of Plaintiffs' copyrights took place through the use of Heslep's AOL account. "It is not necessary that an investigation into the facts be carried to the point of absolute certainty." *Kraemer v. Grant County, et al., 892 F.2d 686, 689 (7th Cir. 1989).* The investigation need only be reasonable under the circumstances. *Thomas v. Capital Sec. Servs., 836 F.2d 866, 875 (5th Cir. 1988).* Under these circumstances, where the piracy takes place secretly and anonymously over the internet, and with the perpetrator not readily or easily identifiable, the investigation was more than reasonable. Moreover, the conduct of Plaintiffs' attorneys in attempting to resolve this dispute with Heslep has also been more than reasonable.

Finally, the Court concludes that sanctions are appropriate in this case, but not against Plaintiffs' attorneys. Rather, the Court concludes that sanctions are appropriate against Heslep's attorney, Thomas Kimble. Among the many prohibitions contained in *Rule 11*, is one prohibiting an attorney from filing [*21] a motion for the purposes of harassment and unnecessarily increasing the cost of litigation. *FED.R.CIV.P. 11(b); see also Browne v. NASD, Inc., No. 3:05-CV-2469-G, 2006 U.S. Dist. LEXIS 90657 at *28 (N.D.Tex. 2006)*(Fish, C.J.)(stating the filing of a motion for sanctions is itself subject to the requirements of *Rule 11* and may lead to sanctions). Kimble's frivolous motion for sanctions clearly does both. The Court also notes that it has already sanctioned

Kimble for opposing discovery unreasonably, in bad faith, and in violation of *Dondi Properties Corp. v. Commerce Sav. & Loan Asso., 121 F.R.D. 284 (N.D.Tex. 1988)*.

The Court does not take motions for sanctions lightly. Such motions, upon mere filing, can damage an attorney's reputation, immediately call upon that attorney to defend his integrity, and can place a chilling effect on the Court's bar, preventing its members from representing their clients with vigor and creative advocacy, or from seeking to persuade the Court to move the law in a new direction. Such motions, when frivolously filed, will not only harm the attorney that is its target, but may [*22] harm the Court as well by affecting the quality of the advocacy before it. For this reason, frivolous motions for sanctions that harass the opposing party's attorney, chill that attorney's zealous representation of his client, and needlessly increase the cost of litigation cannot go unpunished. Accordingly, the Court concludes that sanctions are appropriate against Kimble.

III. Conclusion

For the foregoing reasons, Heslep's motion for sanctions is DENIED. It is further ORDERED that Kimble, personally, pay Plaintiffs' reasonable costs, including attorney's fees, incurred in defending against his client's baseless motion for sanctions. *See Browne, 2006 U.S. Dist. LEXIS 90657 at *28* ("The Court may award to the person who prevails on a motion under *Rule 11* . . . reasonable expenses, including attorney's fees, incurred in presenting or opposing the motion."). Plaintiffs shall have fourteen days from the date of this order to submit affidavits in support of such costs and fees, after which time Kimble shall have seven days to file any objections to the reasonableness of the costs and fees claimed by Plaintiffs.

SIGNED May 16, 2007.

TERRY R. MEANS

UNITED STATES [*23] DISTRICT JUDGE