**Lory R. Lybeck**
OSB #83276
lrl@lybeckmurphy.com
Lybeck Murphy, LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255 /phone
206-230-7791 /fax
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON AT PORTLAND

| | |
|---|---|
| TANYA ANDERSEN, Individually and as Representative of Others Similarly Situated<br><br>Plaintiff<br><br>v.<br><br>ATLANTIC  RECORDING CORPORATION, a Delaware corporation; PRIORITY RECORDS, LLC, a California limited liability company; CAPITOL RECORDS, INC., a Delaware corporation; UMG RECORDINGS, INC., a Delaware corporation; and BMG MUSIC, a New York general partnership; RECORDING INDUSTRY ASSOCIATION OF AMERICA; SAFENET, INC., f/k/a MEDIA SENTRY,  INC., a Delaware corporation;  SETTLEMENT SUPPORT CENTER, LLC, a Washington limited liability company<br><br>Defendants. | No. CV 07-934 BR<br><br>Plaintiff's Opposition to Defendants' Motion to Dismiss First Amended Complaint |

## I.     INTRODUCTION

Ms. Andersen has sufficiently pleaded her claims.  The Amended Complaint more than gives notice of the factual and legal basis entitling her to relief.  The pleadings are presumed truthful and accurate and are afforded all reasonable inferences.  The sufficient pleading, coupled with the many

remarkable misstatements of law and fact contained in Defendants' motion, requires the summary denial of Defendants' motion.

Moreover and as an initial matter, a significant part of Defendants' motion has been rendered moot.   Judge Ashmanskas has determined that Ms. Andersen's counterclaims, filed during the *Atlantic Recording Corp., et al v. Andersen* action (hereinafter known as "*Atlantic v. Andersen*"), shall be voluntarily dismissed and heard here along with the other claims she now asserts in this case. His Honor's findings and recommendation render moot all of Defendants' arguments asserting improper "claim splitting" or joinder.  Nevertheless, in addressing Defendants' misstatements of law to this Court, Ms. Andersen will discuss why Defendants' position regarding improper "claim-splitting" is simply without legal support.

## II.      LEGAL ARGUMENT

### A.  ASSERTIONS OF "CLAIM SPLITTING" ARE MOOT AND MERITLESS.

#### 1.  Rejected "Claim Splitting" Argument.

In late April 2007, while *Atlantic v. Andersen* was pending, Ms. Andersen discovered the illegal and flawed national private investigation scheme devised by Defendants.  This scheme was the sole foundation of their campaign of intimidation which has for years inflicted damage to many thousands of other private U.S. citizens across the nation, including Ms. Andersen. After discovering this information, Ms. Andersen advised the court and the parties of her intention to assert claims against new parties and to file new claims (in addition to her the pending counterclaims). She requested a status conference to seek the court's input on how it preferred these new claims to be asserted.

Two procedural options for handling the proposed new claims were discussed: (1) voluntarily dismissing her counterclaims without prejudice so that they could be heard as part of a new action; or

Lybeck✧Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255  Fax 206-230-7791

(2) seeking leave to amend the *Atlantic v. Andersen* counterclaims to add new parties and new claims. While the court made clear that it favored (for obvious procedural reasons) the first option, counsel for the plaintiffs in *Atlantic v. Andersen* (hereinafter known as "Atlantic plaintiffs") curiously objected to the voluntary dismissal of counterclaims against them. After Ms. Andersen was required to formally move for voluntary dismissal of her counterclaims, the Atlantic plaintiffs raised the same "claim splitting" argument they assert here.[1]

On September 18, 2007, Judge Ashmanskas issued his findings and recommendation that Ms. Andersen's "motion to voluntarily dismiss her counterclaims without prejudice (No. 136) should be GRANTED so that they may be heard as part of *Andersen v. Atlantic Recording Corp*., et al., CV 07-934-BR."[2] Because Ms. Andersen's claims were dismissed, no complaint can be made about maintaining "two separate actions involving the same subject matter at the same time in the same court and against the same defendant." Thus, the dismissal of Ms. Andersen's claims render moot the improper "claim-splitting" arguments and this Court should reject Defendants' arguments on this basis alone.

## 2. Defendant's Assertion of Compulsory Joinder is Also Moot.

Defendants' assertion that Ms. Andersen's claims are barred by some application of the compulsory joinder provisions of Federal Rule of Civil Procedure 13(a) is similarly misplaced. Defendants acknowledge that the purpose of Rule 13(a) is to "prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." After consideration of judicial economy, Judge Ashmanskas appropriately recommended that the

---

[1] See Plaintiffs' Response in Opposition to Defendant's Motion to Voluntarily Dismiss Counterclaims, Exhibit A to Declaration of Benjamin Justus in Opposition to Defendants' Motion to Dismiss First Amended Complaint ("Justus Declaration").

[2] See Findings and Recommendation of Judge Ashmanskas, entered on September 18, 2007, *Atlantic v. Andersen*, Docket

present action shall be the vehicle for disposition of Ms. Andersen's claims (and arguably the claims of others similarly harmed).  As such, Defendants' compulsory joinder argument is moot.

### 3. "Claim Splitting" and Compulsory Joinder Arguments No Basis to Dismiss Sufficiently Plead Claims.

Even if not already moot, Defendants' improper "claim splitting" argument is without legal basis.  Defendants' assertions falsely presume that an <u>adjudication</u> of the counterclaims in *Andersen v. Atlantic* in fact occurred.  The holding in *Adams v. Cal. Dep't. of Health Services,* 487 F.3d 684 (9th Cir. 2007), relied upon by Defendants simply has no application to the procedural history here.

*Adams* dealt with a situation where the plaintiff brought an action alleging civil rights violations and other claims arising out of an alleged withdrawn offer of employment.  Those claims actually proceeded to trial**,** and the defendants prevailed. 487 F.3d at 686-687.  A subsequent appeal affirmed the trial court's decision.  *Ibid.* Adams then brought a second action reasserting claims, asserting additional claims and naming additional defendants.  The district court dismissed the later filed action.  The 9th Circuit explained that:

> Plaintiffs *generally* have no right to maintain two separate actions involving the *same subject matter* at the *same time* in the same court and against the *same defendant*…To determine whether a suit is duplicative, we borrow from the test for claim preclusion. As the Supreme Court stated in *The Haytian Republic,* "the true test of the sufficiency of a plea of 'other suit pending' in another forum [i]s the legal efficacy of the first suit, *when finally disposed of,* as 'the thing adjudged,' regarding the matters at issue in the second suit"... in assessing whether the second action is duplicative of the first, we examine whether the causes of action and *relief sought,* as well as the parties or privies to the action, are the same.

*Adams,* at 688-689 (citations omitted; emphasis added).

There was no adjudication or final disposition of the counterclaims whatsoever in *Atlantic v. Andersen.*  Judge Ashmanskas simply granted Ms. Andersen's motion for voluntary dismissal without

#150, Exhibit B to Justus Declaration. Objections to the Findings and Recommendation are due by October 3rd, 2007.

prejudice specifically in order to allow her to proceed with those and additional claims here. As Judge Ashmanskas recognized, the Amended Complaint in this case involves different claims, different parties, and different requested relief than the *Atlantic v. Andersen* counterclaims. In fact, Judge Ashmanskas stated in his Findings and Recommendations of dismissal that "[e]ven a superficial comparison of the counterclaims in the present action with the claims in the more recently filed case belies [Atlantic] plaintiffs' assertion that the second action is duplicative." *See* Ex. B to Justus Declaration, at 4. There is no logical basis or legal support for Defendants' assertion of compulsory joinder or "improper claim-splitting" in this case.

## B. CLAIMS SUFFICIENTLY PLEAD FOR EACH CAUSE OF ACTION

### 1. <u>Standard For 12(b)(6) Motion To Dismiss.</u>

A Rule 12(b)(6) motion to dismiss cannot be granted where "state a short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz v. Sorema N.A.*, 122 S.Ct. 992, 998 (2002). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007). When considering the sufficiency of the allegations, the court must view the allegations in a light most favorable to the non-moving party, must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir.1987); s*ee e.g.* *Hawthorne v. Mac Adjustment, Inc*. 140 F.3d 1367, 1370 (11th Cir. 1998). A well-pleaded complaint may proceed even if appears "that a recovery is very remote and unlikely". *Scheuer v. Rhodes*, 416 U.S. 232 (1974).

Lybeck✦Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791

Unless Defendants demonstrate based on the pleadings alone "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" their motion muse be denied. *See* R. 12(b)(6); *Clevland Bd. Of Educ. v. Loudermill*, 470 U.S. 532 (1985); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

### 2. Dismissal At The Pleading Stage Based On Limitations Is Disfavored.

Determining the date of discovery for application of the affirmative defense of statute of limitations requires a fact-intensive examination on which defendants bear the burden of proof. Because a Rule 12(b)(6) motion is intended to test the legal adequacy of the complaint, not to address the merits of defendants' affirmative defenses, courts permit the limitations defense to be raised on a motion to dismiss only when the facts and the dates alleged in the complaint <u>establish</u> that the claim is time-barred as a matter of law. *See, e.g., Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 & 1053-54 (5th Cir. 1980). Dismissal on statute of limitations grounds can be granted pursuant to Rule 12(b)(6) "only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *See Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682 (9th Cir.1980).

Typically, this issue cannot be considered until – at the earliest – summary judgment. *See, e.g., Avco Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982); *see also Young v. Lepore,* 305 F.3d 1, 9 (1st Cir. 2002)("[I]t is for the factfinder to determine whether a particular collection of data was sufficiently aposematic to place an investor on inquiry notice."); *In re Jiffy Lube Sec. Litig.*, No. Y-98-1939, 1990 U.S. Dist. LEXIS 20141, at *11 (D. Md. Oct. 31, 1990)("The question of when the misstatements should have been discovered is a question of fact

Lybeck❖Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255  Fax 206-230-7791

1     that can not be decided on a motion to dismiss"). [3]

2        Additionally, considering the provisions of F.R.C.P. 15(c) allowing later filed pleadings to

3 relate back to the date of those filed earlier, Defendants' motion based on asserted statutes of

4 limitations applicable to particular claims must be denied.

5

6     **3.** <u>The *Noerr-Pennington* Doctrine and Oregon Litigation Privilege No Defense to Defendants' Conspiracy and Other Wrongful Conduct Outside the Present Litigation.</u>

7        Ms. Andersen's Amended Complaint arises from Defendants' conspiracy to create and their

8 implementation of a massive enterprise of threat and intimidation. Amended Complaint, ¶6.3. This

9 conspiracy included a secret agreement to devise and implement an investigation protocol that

10 MediaSentry and all Defendants knew was illegal, flawed, and could not possible identify Ms.

11 Andersen and the many thousands of others wrongfully targeted by Defendants. *Id.* at ¶¶ 6.3-6.10.

12 The ultimate goal of the Defendants' conspiratorial conduct was to maintain by illegal and improper

13 means their alleged 90% monopoly over the market for distributing music, *Id.* at ¶¶ 6.1, 6.25.

14

15        It is absurd to argue that the illegal, flawed online investigation scheme devised by Defendants

16 could be afforded protection under the U.S. Constitution through the *Noerr-Pennington* doctrine.

17 Defendants' conspiracy and resulting massive invasion of privacy of private citizens was conducted in

18 a reckless, indiscriminate manner entirely outside the confines of litigation. Their "driftnet" tactics

19 were employed without any true regard to potential litigation against Ms. Andersen or any other

20 putative class member. *See California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 515

21 (1972)("First Amendment rights may not be used as the means or the pretext for achieving

22 'substantive evils' which the legislature has the power to control").

23

24

25     _____

26 [3] On a motion to dismiss, the court "must accept as true all well-pleaded allegations in the complaint and . . . construe those allegations in the light most favorable to the plaintiff." *Rubenstein v. Collins*, 20 F.3d 160, 166 (5th Cir. 1994). Moreover, "[a] statute of limitations bar is an affirmative defense, and plaintiffs are not required to negate an

Lybeck✦Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791

Especially at the pleadings stage, Defendants' conspiratorial conduct cannot for immunity purposes be viewed as "conduct incidental to the prosecution of the suit." *Columbia Pictures Indus., Inc. v. Professional Real Estate Investors, Inc.*, 944 F.2d 1525, 1528 (9th Cir. 1991), *aff'd*, 508 U.S. 49 (1993). Rather, Defendants' conduct (including conspiracy and their flawed and illegal investigative activities) were instrumental to a central business enterprise entirely motivated to protect a distribution monopoly. The conduct complained of is primarily extrajudicial. As pleaded, Defendants' prosecution of tens of thousands of lawsuits was merely "incidental" to the unlawful business enterprise.

The *Noerr-Pennington* doctrine is derived from the Petition Clause of the First Amendment. Its purpose is to protect advocacy before all branches of government, including the judicial branch. *California Motor Transp.*, 404 U.S. at 510. Specifically, the Petition Clause mentions only the right to petition the Government for a redress of grievances. *See Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 486 U.S. 492, at 499-500, 108 S.Ct. 1931, 108 S.Ct. 1931, 100 L.Ed.2d 497 (1988). Thus, "the applicability of *Noerr* immunity, varies with the context and nature of the activity." *Allied Tube*, 486 U.S. at 499. In determining its application to civil litigation, the proper inquiry is whether the conduct can be characterized as "typical" litigation activity, or is "more aptly characterized as commercial activity" that happens to also involve litigation. *Venetian Casino Resort, L.L.C. v. N.L.R.B.*, 484 F.3d 601, 612 (C.A.D.C. 2007), *citing Allied Tube*, 486 U.S. at 507.

The *Noerr-Pennington* doctrine, for example, does not protect lobbying efforts directed at private parties. *Allied Tube*, at 499-500. The Supreme Court in *Allied Tube* explained that "incidental" activity is not protected by *Noerr-Pennington* if its "context and nature ... make it the

affirmative defense in their Complaint." *LaGrasta v. First Union Sec. Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (internal quotations omitted).

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791

type of commercial activity that has traditionally had its validity determined by the antitrust laws themselves." *Id.* at 505.  In the civil litigation context, *Noerr-Pennington* immunity does not extend to activities that are "neither common features of litigation nor statutorily protected litigation privileges." *Venetian Casino*, 484 F.3d at 613; *see also Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 936 (9th Cir.2006). There is nothing common about Defendants conspiracy or enterprise of threat and intimidation. Rather, Defendants' efforts to maintain their monopoly power can only be viewed as unprotected "commercial activity."

Likewise, Oregon's litigation privilege only applies to "statements in the course of or incident to judicial and quasi-judicial proceedings," and extends only to "parties to such proceedings and to their attorneys."[4] *See Mantia v. Hanson*, 190 Or.App. 412, 417, 79 P.3d 404, 407 (Or. App. 2003)(citations omitted).

Defendants' conspiracy to create and implement an extraordinary nationwide enterprise of threat and intimidation via secret agreement are by no means "common features of litigation," or "statements in the course of or incident to…proceedings."  Indeed, most of these activities typically occurred well before Ms. Andersen and others similarly situated were even threatened.  Obviously, at the time of the scheme was formulated, the Defendants had no idea who Ms. Andersen was.  No argument can be made that the illegal conduct alleged occurred as typical litigation.

Finally, even if the court were to determine that the conspiratorial and investigative activities were incidental to litigation, they are not immune from liability due to the sham exception to *Noerr-Pennington*, discussed below. Based on the foregoing, Defendants' request for dismissal of Ms. Andersen's claim must be denied.

---

[4] MediaSentry, the RIAA and Settlement Support Center were not parties to the *Atlantic v. Andersen* action, and thus they are not protected by the litigation privilege.

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255  Fax 206-230-7791

### 4. *Noerr-Pennington* Doctrine and Oregon Litigation Privilege

#### A. Sham Activities Not Protected

Since the *Noerr-Pennington* doctrine originated, the courts have recognized that sham activities disguised as "appeals to the branches of government to redress grievances" will not give rise to immunity. *See Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144 (1961). Defendants' systematic abuse of the federal courts is a sham and does not give rise to *Noerr* immunity. In *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 515 (1972), the U.S. Supreme Court explained that immunity would not apply to "a pattern of baseless, repetitive claims ... which leads the fact finder to conclude that the administrative and judicial processes have been abused." *Id.* at 513. A sham may be "evidenced by repetitive lawsuits carrying the hallmark of insubstantial claims." *Otter Tail Power Co. v. United States*, 410 U.S. 366, 380 (1973).

The Ninth Circuit has applied the sham exception in the more recent case of *Kottle v. Northwest Kidney Centers*, 146 F.3d 1056 (9th Cir. 1998). There, the court set forth three separate circumstances in which a defendant's activities can fall into the sham exception:

> First, if the alleged anticompetitive behavior consists of bringing a single sham lawsuit (or a small number of such suits), the antitrust plaintiff must demonstrate that the lawsuit was (1) objectively baseless, and (2) a concealed attempt to interfere with the plaintiff's business relationships. *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993); *Amarel [v. Connell*, 102 F.3d 1494, 1518-19 (9th Cir. 1996)]; *USS-POSCO Indus. v. Contra Costa County Bldg. & Constr. Trades Council*, 31 F.3d 800, 810-11 (9th Cir.1994).
>
> Second, if the alleged anticompetitive behavior is the filing of a series of lawsuits, "the question is not whether any one of them has merit-some may turn out to, just as a matter of chance-but whether they are brought pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring a market rival." *Id.* at 811 (citing *California Motor Transp.*, 404 U.S. at 512, 92 S.Ct. 609); *Oregon Natural Resources Council v. Mohla*, 944 F.2d 531, 534 (9th Cir.1991).
>
> Finally, in the context of a judicial proceeding, if the alleged anticompetitive behavior

Lybeck❖Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791

consists of making intentional misrepresentations to the court, litigation can be deemed a sham if "a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy." *Liberty Lake Inv., Inc. v. Magnuson*, 12 F.3d 155, 158 (9th Cir.1993); *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1260 (9th Cir.1982).

*Kottle*, 146 F.3d at 1060.

This holding has direct application to Defendants anticompetitive, monopoly-protecting enterprise. Moreover, this specific exception to *Noerr-Pennington* has already been addressed by the Federal Courts in an almost identical case in Florida. In the RIAA case of *UMG Recordings, Inc., et al v. Del Cid*, Case No. 8:07-cv-368-T-26TGW (M.D. Fla. Sept. 19, 2007) the court denied the recording industry plaintiffs' motion to dismiss defendant's counterclaims, finding that the counterclaim adequately pleaded that RIAA infringement suits amounted to sham litigation, and were not protected by the *Noerr-Pennington* immunity. In doing so, the court stated that the "Defendant alleges that Plaintiffs' copyright infringement suits amount to sham litigation. The allegations are sufficient to overcome a 12(b)(6) motion to dismiss." *See* Ex. C to Justus Declaration, at 3.

Here, Judge Ashmanskas has already concluded that there was no evidence whatsoever that Ms. Andersen infringed upon copyrighted recordings. Defendants intended to coerce payment from her regardless of whether or not she had committed infringing acts. When he issued his Findings and Recommendation granting Ms. Andersen's motion for attorney's fees and costs, Judge Ashmanskas explicitly addressed the frivolity and objective unreasonableness of the Atlantic plaintiffs' claims against Ms. Andersen. In his 15-page Findings, Judge Ashmanskas wrote:

> Plaintiffs do not specifically concede that they lacked evidence to support their claims, but that may reasonably be inferred from the timing of their stipulation—on the date their opposition to defendant's motion for summary judgment was due—and their admissions that "evidence uncovered during discovery proved inconsistent and inconclusive," which "has not been explained."…Because they chose instead to dismiss their claims with prejudice, it can reasonably be inferred that plaintiffs did not possess prima face evidence, despite being given a fair opportunity to obtain it,…

Lybeck♦Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791

|   | |
|---|---|
| 1 | … |
| 2 | Plaintiffs' failure to contact a third party, who potentially was the actual infringer, until April 2007, as well as their position that his denials were credible, while defendant's were not, are also relevant to the third <u>Fogerty</u> factor—objective |
| 3 | unreasonableness.  Without applying the benefit of hindsight, these facts indicate that, |
| 4 | in significant ways, plaintiffs did not conduct themselves in an objectively reasonable manner, *i.e.*, in a manner to be expected from a reasonable copyright holder pursuing |
| 5 | relief from a party it believed to be infringing. |
| 6 | …<br>An objectively reasonable copyright holder would seek to hold liable and deter the |
| 7 | person who actually violated the Copyright Act. |
| 8 | …<br>Whatever [Atlantic] plaintiffs' reasons for the manner in which they have |
| 9 | prosecuted this case, it does not appear to be justified as a reasonable exploration of the boundaries of copyright law. |

*See* Findings and Recommendations of Judge Ashmanskas, entered on September 21, 2007, *Atlantic v. Andersen*, Docket #151, Exhibit D to Justus Declaration, at 8-13.

Ms. Andersen also alleged that Defendants' baseless litigation is not isolated to her case.  She cited to a series of specific cases across the country in which RIAA member plaintiffs were forced to dismiss unfounded claims against innocent parties. Amended Complaint, ¶6.9.  As the authorities cited above hold, it does not matter that the Defendants might have succeeded, as a matter of chance, in coercing settlement from some of the tens of thousands of people they have threatened and sued.  It does not matter that Defendants' investigation might have coincidentally implicated third parties who happened to download copyrighted music.

The issue to consider at this pleading stage is whether the RIAA lawsuits incidental to their larger enterprise conceivably were "brought pursuant to a policy of starting legal proceedings without regard to the merits…." *USS-POSCO*, 31 F.3d at 811.  Ms. Andersen's Amended Complaint alleged precisely that circumstance. Amended Complaint, ¶¶6.4-6.24.

Defendants' have mistakenly relied on *Sosa v. DirecTV*, *supra* for the proposition that sending fraudulent communications demanding payment is immunized under *Noerr-Pennington*.

Lybeck❖Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255  Fax 206-230-7791

This is simply wrong. In reality, the *Sosa* court declined to pass on the applicability of the sham exception because the plaintiff in that case did not raise it. The *Sosa* court specifically stated that "[w]e need not decide precisely how *PRE II*'s or *Kottle*'s definition of sham litigation applies to presuit demand letters in the RICO context, however, because Sosa has declined to argue that the letters fall within the sham exception." *Sosa v. DirecTV*, 437 F.3d 923, 938.

Defendants have made serious fraudulent statements and misrepresentations to Ms. Andersen, to the putative class, to this Court and to many other federal courts across the country. *Id.* at ¶¶6.15-6.21, 6.26, 6.35, 8.1-8.8. This conduct deprives these RIAA cases of their legitimacy and gives rise to another basis for asserting the sham exception to the *Noerr-Pennington* doctrine.

### B. The Litigation Privilege is Inapplicable.

The Oregon litigation privilege does not protect defendants where malicious prosecution or wrongful initiation of civil proceedings is alleged:[5]

> Given the very nature of the "wrongful initiation" cause of action, absolute privilege is inapposite. If a plaintiff can show that, in representing a client in a judicial or quasi-judicial proceeding, an attorney acted "maliciously" and without "probable cause"- virtually the obverse of a qualified, good-faith privilege-the [defendant] is liable for wrongful initiation of a civil proceeding.

*See Mantia*, *supra*, 190 Or.App. at 408-409 (alteration supplied). Here, Ms. Andersen has alleged Defendants acted maliciously and without probable cause in initiating and prosecuting the claims against her and the other putative class members. Amended Complaint, ¶¶11.1-11.10. Judge Ashmanskas' in his Findings and Recommendations has already decided this issue.

### 5. Ms. Andersen Adequately Pleaded a Claim of Negligence.

Although Ms. Andersen has properly alleged that Defendants owed a duty to avoid

---

[5] The *Mantia* court noted that "malicious prosecution" is often used as a shorthand for wrongful initiation of civil proceedings. 190 Or.App. at 412, fn 6. See also discussion *infra*.

Lybeck✧Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791

foreseeable harm to others and generally to act reasonably under the given circumstances. *Slogowski v. Lyness*, 324 Or. 436, 927 P.2d 587 (1996). Because of the nature of the conduct, the relationship and legal representations made to her, Ms. Andersen has also alleged that she was owed a heightened duty. Defendants' assertion they had no special relationship with her, however, has no bearing on her ability to state a negligence claim under principles of general reasonableness and foreseeability.

It is recognized as a matter of public policy that a private detective agency is to be held responsible for damages sustained as a result of its willful, malicious and wrongful acts. *Zampatori v. United Parcel Service,* 125 Misc.2d 405, 479 N.Y.S.2d 470, 473 (N.Y.Sup.,1984). Good faith and reasonable care in conducting private investigations is required. *Id.* Even disregarding that their activities were illegal, Defendants had a duty to conduct their private investigation of Ms. Andersen and many thousands of others in a non-negligent manner.

Ms. Andersen's Amended Complaint contains sufficient allegations to show that:

- Defendant RIAA negligently conspired to develop a flawed and illegal investigation scheme; negligently retained MediaSentry to conduct the scheme; and negligently relied on MediaSentry's information to threaten and sue Ms. Andersen and the class members without a basis. Amended Complaint, ¶¶7.2-7.7.

- Defendant MediaSentry negligently failed to obtain requisite licenses before conducting investigations of Ms. Andersen and the class; negligently conspired with the RIAA to devise a flawed and illegal investigation scheme; and negligently conducted investigations of Ms. Andersen and the class. *Id.* at ¶¶7.8-7.10.

- The Atlantic plaintiffs negligently relied on flawed and illegally obtained investigations in pursuing baseless lawsuits against Ms. Andersen and the class. *Id.* at ¶7.11.

Lybeck✠Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791

- Defendant Settlement Support Center negligently relied on flawed and illegally obtained investigations in making coercive communications to Ms. Andersen and the class. *Id.* at ¶7.13.

Moreover, all of the Defendants negligently failed to disclose to Ms. Andersen and the class the illegal and flawed nature of the investigation and the inaccuracy of the information gained. They also negligently failed to investigate the identity of the actual infringer. *Id.* at ¶7.15. As alleged, all of Defendants' negligent conduct proximately caused damages to Plaintiff and the putative class. *Id.* at ¶7.16. Since the elements of duty, breach, causation and damages are adequately pled, this Court must allow the negligence claim to be proven.

Finally, Defendants again mistakenly rely on the notion that all of the varied negligent conduct of Defendants and their agents are subject to blanket protection under the *Noerr-Pennington* doctrine. This reliance is unfounded and misplaced.

### 6. <u>Claims of Fraud and Negligent Representation Sufficiently Pleaded.</u>

The elements of common-law fraud are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury. *Estate of Schwarz v. Philip Morris Inc.*, 206 Or.App. 20, 135 P.3d 409 (Or.App.,2006). In her Amended Complaint, Ms. Andersen alleged that Defendants knowingly made serious fraudulent statements and misrepresentations to her and thousands of other putative class members, including the delivery of communications with material omissions, with the intention that they be relied upon. Ms. Andersen further alleges that Defendants' communications were made in order to intimidate her and the class into paying them thousands of dollars. Amended

1    Complaint ¶¶6.15-6.21, 6.26, 8.1-8.8.

2        Defendants contend that Ms. Andersen did not reasonably rely on their representations. This

3    assertion is completely contrary to the specific allegations in her Amended Complaint. *Id.* at ¶8.3-8.6.

4     Her allegations are reasonable and at this state must be accepted as true.  Ms. Andersen is not a

5    person with great knowledge or experience in copyright law or computer technology.  She was

6    understandably shocked, fearful, and upset, and did in fact reasonably rely on the self-assured

7    statements of Defendants' lawyers and other agents when they told her that her computer had been

8    used to engage in massive copyright infringement.  Her reliance is also understandable considering

9    that agents and employees of a huge multinational corporation with disproportionate sophistication

10   included her in a national enterprise of intimidation.  In response, Ms. Andersen invested substantial

11   emotion, time and resources into investigating the integrity of her computer and the allegations of

12   infringement, at the insistence of the Defendant Record Companies. Defendants' conduct resulted

13   in direct and consequential damages to Ms. Andersen. *Id.*, ¶¶6.34, 6.39, 8.8.   Defendants'

14   conflicting contrary assertion is unreasonable and provides no basis to grant a motion to dismiss

15   the pleadings.

16       The factors (not addressed in the elements of fraud) that give rise to a cause of action for a

17   negligent misrepresentation claim under Oregon law: (1) a special relationship of some kind

18   between plaintiff and defendants; and, (2) that defendants failed to exercise reasonable care by

19   negligently making misleading representations or omitting material facts. *Vigilante.com, Inc. v.*

20   *Argus Test.com, Inc.,* 2005 WL 2218405 (D.Or.,2005); *Prosser v. Safeco Insurance Co.,* 2001

21   U.S. Dist. Lexis 8341 (D. Or. June 15, 2001). Defendants created a "special relationship" with

22   Ms. Andersen and the putative class when they took it upon themselves to conduct flawed and

23   illegal investigations and then to make legal demands and provide legal advice in furtherance of

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255  Fax 206-230-7791

their enterprise to protect a virtual monopoly. Defendants were, at the very least, negligent in making false statements or omitting material facts. Amended Complaint, ¶ 8.2-8.3, 8.5-8.6.

Finally, Defendants again rely on the notion that all of the statements of Defendants and their agents are subject to blanket protection under the *Noerr-Pennington* doctrine. For the reasons set forth *supra*, this reliance is unfounded and misplaced. Based on the foregoing, Defendants' motion to dismiss Ms. Andersen's fraud and negligent misrepresentation claims must be denied.

### 7. RICO Claim Adequately Pleaded.

18 U.S.C. § 1962 (c) provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." As specifically detailed in the Amended Complaint, Defendants' illegal activities including: mail fraud; attempts to obtain property with consent induced by wrongful fear and intimidation in violation of the Hobbs Act; extortion; and conspiracy to violate 18 U.S.C. § 1962(c). All of this conduct falls within the definition of "racketeering activity" as defined in 18 U.S.C. § 1961(1). Amended Complaint, ¶¶9.6, 9.7, 9.10. The Oregon Racketeer Influenced and Corrupt Organizations Act prohibits similar conduct. ORS 166.715; Amended Complaint at ¶9.2.

Defendants erroneously argue that Ms. Andersen did not adequately allege that they have engaged in a "pattern of racketeering activity" as set forth in 18 U.S.C. § 1962 (c). This statement is not true. First, Ms. Andersen specifically details the acts constituting each incident of racketeering activity. The Amended Complaint describes in detail how Defendants allegedly used MediaSentry to illegally invade Ms. Andersen's computer under false pretenses, and directed Settlement Support Center to attempt to coerce payment from her whether or not she committed any infringing acts. *Id.* at

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791

¶¶6.26-6.29, 9.5, 9.10.  The Amended Complaint further describes in detail how Defendants and/or other RIAA member companies used the same or highly similar tactics against other members of the class, and also specifically describes a 2004 attempt to coerce payment from another individual, again with an admitted lack of regard to the individual's liability for the infringing acts. *Id.* at ¶¶6.4-6.25, 9.5-9.6, 9.9-9.11.

Finally, Defendants again rely on the notion that all of the acts of Defendants and their agents are subject to blanket protection under the *Noerr-Pennington* doctrine.  For the reasons set forth *supra*, this reliance is unfounded and misplaced.  Ms. Andersen's claim for violations of the Racketeer Influenced and Corrupt Organization Act must stand.

## 8. <u>Abuse of Legal Process Claim Adequately Pleaded.</u>

Contrary to Defendants' assertion, one need only allege the following to properly plead abuse of process: 1) an ulterior purpose, 2) a willful act in the use of process not proper in the regular conduct of the proceeding; and 3) injuries beyond those which are a common burden on parties to litigation. *Pfaendler v. Bruce*, 195 Or.App. 561, 571-572, 98 P.3d 1146, 1152-3 (Or.App.,2004)(*citing Yanney v. Koehler,* 935 P.2d 1235 (Or. App. 1997)).  Here, Ms. Andersen has alleged that (despite the fact that Defendants knew the Class members were never observed downloading music), Defendants used the threat of expensive and personal intrusion incidental litigation as a tool to coerce them into paying thousands of dollars for obligations they did not owe. Amended Complaint, ¶10.2. Ms. Andersen also clearly alleged a conspiratorial scheme to conduct illegal investigations in order to monopolize the music distribution industry, and Defendant's improper abuse of the Federal Judiciary.  *Id.* at ¶6.3.  Abuse of process was clearly alleged.  Ms. Andersen also adequately described the injuries she suffered, which were beyond the common burdens faced by a party to litigation.

Lybeck✦Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255  Fax 206-230-7791

Ms. Andersen does not have to show an "arrest or seizure of property" to support an abuse of process claim, as erroneously argued by Defendants. Nonetheless, Ms. Andersen did suffer a seizure of her private digital property. She was, and continues to be, chilled against the lawful use of her computer for fear of further invasion and harassment by Defendants and their agents. She also invested substantial resources into investigating the integrity of her computer and the allegations of infringement at the insistence of the Defendants. *Id.* at ¶¶6.34, 6.39, 8.8, 10.1-10.4. Allowing all presumptions of truth and reasonable inferences afforded to Ms. Andersen, her claim for abuse of legal process is more than adequately pleaded.

### 9. Claim of Malicious Prosecution Adequately Pleaded.

Contrary to Defendants' assertions, Ms. Andersen does not have to allege that Defendants initiated criminal proceedings against her. The very notion that baseless lawsuits such as *Atlantic v. Andersen* can be filed, without the repercussions afforded through this cause of action, is ridiculous. The elements of malicious prosecution are: "(1) The commencement and prosecution by the defendant of a judicial proceeding against the plaintiff; (2) The termination of the proceeding in the plaintiff's favor; (3) The absence of probable cause to prosecute the action; (4) The existence of malice, or as is sometimes stated, the existence of a primary purpose other than that of securing an adjudication of the claim; and (5) damages." *Crosswhite v. Cole*, 2003 WL 23537962 at *5 (D.Or. 2003); *See also*, *Alvarez v. Retail Credit Ass'n of Portland, Or., Inc.* 381 P.2d 499, 502 (Or. 1963)(When referring to malicious prosecution, the court stated that Punitive damages may be allowed when *civil proceedings are employed against another for improper motives*)[6].

---

[6] As noted above, Oregon courts have frequently recognized that "malicious prosecution" is often used as a shorthand for wrongful initiation of civil proceedings. *See, e.g. Mantia, supra*, 190 Or.App. at 412 fn. 6; *Checkley v. Boyd*, 170

Lybeck◊Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791

Here, Ms. Andersen alleged Defendants acted maliciously and without probable cause in initiating and prosecuting the claims against her and the class members. This wrongful conduct caused damage to Ms. Andersen and the class members. Moreover, the proceeding against her was disposed of in her favor. Amended Complaint, ¶¶11.1-11.10.  She has further alleged that the primary purpose of the Defendants' conduct was not to protect the copyrights allegedly at issue, but to maintain the RIAA distribution monopoly. *Id.* at ¶6.25. Thus, Ms. Andersen has pled all of the necessary elements of her malicious prosecution claim.

### 10.  Claim for Outrage Adequately Pleaded.

Here as in other claims, Defendants attempt to impose on Ms. Andersen additional elements for causes of action which are not required by Oregon law. In order to maintain a cause of action for intentional infliction of emotional distress (IIED) Ms. Andersen only has to show: (1) an intent by defendant to inflict severe emotional distress on plaintiff; (2) that defendant's acts caused plaintiff severe emotional distress; and (3) that defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct. *Harris v. Pameco Corp.*, 12 P.3d 524 (Or.App. 2000). Although a court may consider the existence of a special relationship, including an employer and employee relationship, between the parties in determining the bounds of socially tolerable conduct, this is certainly not a requirement. *Id.*

Defendants are mistaken that a special relationship is a condition precedent for bringing a claim. *Delaney v. Clifton*, 180 Or. App. 119, 130, 41 P.3d 1099, 1106-07 (Or. App. 2002).  The *Delaney* court held that "[w]hether the conduct alleged is sufficiently extreme or outrageous to be actionable is a fact-specific inquiry, one to be made on a case-by-case basis considering the totality of the circumstances." *Id.,* 180 Or. App. at 130, 41 P.3d at 1106, *citing Lathrope-Olson v. Dept. of*

---

Or.App. 721, 736, 14 P.3d 81 (2000), *rev. den.* 330 Or. 239, 1 P.3d 449 (2001)

Lybeck❖Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255  Fax 206-230-7791

*Transportation*, 128 Or. App. 405, 408, 876 P.2d 345 (Or. App. 1994). The *Delaney* court also specifically discussed application of these claims where no special relationship existed. *See Kraemer v. Harding*, 159 Or. App. 90, 976 P.2d 1160 (Or. App. 1999) (IIED claim successfully brought by school bus driver against parents of children who rode on plaintiff's bus).

As set forth in requisite detail in the Amended Complaint, Defendants' conduct in the investigation, instigation, and continued persecution of the *Atlantic v. Andersen* suit was outrageous. ¶¶12.1-12.6. There has never been any evidence whatsoever where Ms. Andersen infringed upon Defendants' copyrighted recordings. Defendants' agents told her that Defendants intended to coerce payment from her whether or not she had committed infringing acts. Ms. Andersen maintained her innocence in early dealings with Defendants and their agents, and even urged them to inspect her computer to verify it. They refused, and sued her instead. A later inspection of her computer by Defendants' expert was fruitless, but the suit did not end there. Defendants unreasonably demanded facial confrontation with Ms. Andersen's young daughter in an effort to intimidate her into capitulation. The Atlantic plaintiffs irrationally prolonged the case for years and would not dismiss it until the eve of summary judgment for public relations reasons. *Id.* at ¶6.26-6.46, 12.2-12.6.

Defendants' litigation against Ms. Andersen was not only a sham, it was abusive and malicious. Their threats against Ms. Andersen and her daughter were equally abusive and beyond all bounds of social decency. The litigation threats can only be understood as a means for Defendants to extort money from and/or to intimidate her and others similarly situated as part of the RIAA's massive anti-piracy campaign. The employment of such tactics on a massive scale is unprecedented in the history of civil litigation in the federal courts. If nothing else, Defendants' acts are an "extraordinary transgression of the bounds of socially tolerable conduct." Even if a "special relationship" were required, one existed when Defendants undertook to victimize, threaten, extort and

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791

1   advise Ms. Andersen.  The grossly disproportionate power and sophistication that the Defendants

2   brought to bear against Ms. Andersen in making their extortionate, false accusations and demands for

3   "settlement" payments created a relationship of victimizer and innocent victim.

4
5       Finally, Defendants again rely without any basis on the notion that all of the conduct of

    Defendants and their agents are subject to blanket protection under the *Noerr-Pennington* doctrine.
6
7   For the reasons set forth *supra*, this reliance is unfounded and misplaced.  Ms. Andersen's claim for

8   outrage or IIED must stand.

9                    **11. Claim under the Computer Fraud and Abuse Act Sufficiently Pleaded.**

10      The Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA") prohibits illicit and

11  fraudulent computer-related activities and allows for civil recovery under the circumstances
12
    provided in § 1030 (g). That subsection specifically provides:
13
14              Any person who suffers damage or loss by reason of a violation of this section may
                maintain a civil action against the violator to obtain compensatory damages and
15              injunctive relief or other equitable relief.

16      As Defendants' brief acknowledges, the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. §

17  1030, gives rise to a civil action when, as result of a party's conduct proscribed by the Act, a person
18
    suffers losses in excess of $5,000. See 18 U.S.C. § 1030(a)(5)(B)(i).
19
20      The statute further defines "loss" in § 1030 (e)(11) as:

21              any reasonable cost to any victim, including the cost of responding to an offense,
                conducting a damage assessment, and restoring the data, program, system, or
22              information to its condition prior to the offense, and any revenue lost, cost
                incurred, or other consequential damages incurred because of interruption of
23              service; and "damage" in § 1030 (e)(8): any impairment to the integrity or
                availability of data, a program, a system, or
24              information.

25  Under the statute, then, the elements of a CFAA claim are:

26              (1) intentional access to a computer;

Lybeck⬥Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

(2) without authorization,
(3) resulting in any impairment to the integrity or availability of data, a program, a system, or information,
(4) that causes "any reasonable cost to any victim" in excess of $5,000 in the course of a year.

Defendants argue that any civil claim arising under the Act requires the access of another's computer without authorization, citing *Theofel v. Farey-Jones*, 359 F.3d 1066 (9th Cir. 2004). What Defendants do not acknowledge is that the 9th Circuit in *Theofel* found that the claim of the defendants for a violation of the CFAA was actionable and the appeals court reversed the district court's decision to dismiss that claim. The *Theofel* court pointed out that the deceptive nature of the subpoena was an independent basis for invalidating consent:

> The subpoena may not have been coercive, but it was deceptive, and that is an independent ground for invalidating consent. <u>See</u> Restatement (Second) of Torts § 892B(2)-(3). It was a piece of paper masquerading as legal process.

*Id.,* 359 F.3d at 1074.

Here, Ms. Andersen and the putative class members never authorized Defendants' investigators to access their computers, either impliedly or expressly. Amended Complaint, ¶¶ 6.4, 13.3, 13.4. Even if the KaZaA shared file folder was on a person's computer Defendants were not entitled to use pretext and false pretenses, and masquerade as a peer user for the purpose of employing sophisticated data collection technology. Defendants' wrongful acts vitiated whatever implied consent they might have had. This gives rise to a claim under the CFAA. *Id.* at ¶13.6.

Defendants again rely on the notion that all of the statements of Defendants and their agents are subject to blanket protection under the *Noerr-Pennington* doctrine. In *Del Cid, supra,* the court held that a counterclaim for a CFAA violation would stand despite the recording industry plaintiffs' assertion of *Noerr-Pennington* immunity. For the reasons set forth *supra*, this reliance is unfounded and misplaced.

Lybeck❖Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255   Fax 206-230-7791

The Defendants' interference with the integrity and capacity of Plaintiff's personal computer impaired the availability and use of files and data. As alleged, Ms. Andersen suffered damages as a result of Defendants' conduct, and while the amount of damages has not yet been formally tabulated, it certainly exceeds $5,000. Amended Complaint, ¶¶8.8, 13.7. Since all elements of CFAA were pled by Ms. Andersen, the Court must allow this count to stand.

## 12. Claim for Trespass to Chattels Adequately Pleaded.

Ms. Andersen alleges trespass to chattels, an intentional tort which has been described as the "little brother of conversion." *Prosser and Keeton on Torts* 86 (5th ed 1984). In contrast to conversion, in which the interference with the chattel is so great that the actor can justly be required to pay its full value, the gist of the lesser claim of trespass to chattels is the disturbance of the plaintiff's possession. *Laursen v. Morris,* 103 Or.App. 538, 543, 799 P.2d 648 (1990), *rev. den.* 311 Or. 150 (1991); *Swank v. Elwert,* 55 Or. 487, 496, 105 P. 901 (1910). *Morrow v. First Interstate Bank of Oregon, N.A.* 118 Or.App. 164, *168, 847 P.2d 411, **413 (Or.App. 1993).

Federal courts have recognized the applicability of the traditional trespass to chattels tort to the appropriation and use of computer technology without the owner's consent. In *CompuServe Inc. v. Cyber Promotions, Inc.*, the court held that the defendant's massive deployment of "spam" email would give rise to a trespass claim on the part of the plaintiff's email service provider. 962 F.Supp. 1015 (S.D. Ohio 1997). The court noted the damage plaintiff suffered in the form of the drain upon the its computer memory resources caused by the mass emails, which made the plaintiff's services less useful to customers. The court rejected the defendant's argument that plaintiff consented to its use of the email service by connecting to the internet and held that the defendant's acts had exceeded the scope of the consent. "The use of personal property exceeding consent is a trespass." *Id.,* at 1024 citing *City of Amsterdam v. Daniel Goldreyer, Ltd.,* 882 F.Supp. 1273 (E.D.N.Y.1995); Restatement

Lybeck❖Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791

(Second) of Torts § 256.

As the 9th Circuit explained in *Theofel, supra*, 359 F.3d at 1073:

> A Defendant is not liable for trespass if the plaintiff authorized his entry. *See* Prosser & Keeton § 13, at 70. But "an overt manifestation of assent or willingness would not be effective ... if the Defendant knew, or probably if he ought to have known in the exercise of reasonable care, that the plaintiff was mistaken as to the nature and quality of the invasion intended." *Id.* § 18, at 119; *cf.* Restatement (Second) of Torts §§ 173, 892B(2). Thus, the busybody who gets permission to come inside by posing as a meter reader is a trespasser. *J.H. Desnick, M.D., Eye Servs., Ltd. v. ABC*, 44 F.3d 1345, 1352 (7th Cir.1995). So too is the police officer who, invited into a home, conceals a recording device for the media. *Cf. Berger v. Hanlon*, 129 F.3d 505, 516-17 (9th Cir.1997), vacated, 526 U.S. 808, 119 S.Ct. 1706, 143 L.Ed.2d 978 (1999), reinstated in relevant part, 188 F.3d 1155, 1157 (9th Cir.1999).

Here, Ms. Andersen alleged that the Defendants conspired for MediaSentry to break into her personal computer to secretly spy on and steal information or remove files from her computer. Amended Complaint, ¶¶ 6.4, 13.3, 13.4, 14.2. In doing so, the Record Companies willfully used Ms. Andersen's computer without authorization to appropriate her personal property and information for their own purposes. *Id.* at ¶¶ 13.3, 13.6, 14.1, 14.2. MediaSentry did not have Ms. Andersen's permission to inspect, copy, or remove private computer files. *Id.* at ¶¶ 6.4, 13.3, 13.4, 14.1 14.2. Their unauthorized invasion and use of Ms. Andersen's computer constituted an interference with the capacity and integrity of her personal property. Moreover, MediaSentry was not licensed in Oregon or elsewhere to engage in the investigative conduct which occurred. *Id.* at ¶¶6.10. MediaSentry's activities are illegal and plainly exceed the boundaries of consent relative to file sharing and, therefore, constitute trespass.

Contrary to Defendants' argument, MediaSentry's intrusion into Ms. Andersen's personal computer has caused her damages sufficient for a trespass claim in accordance with §218 of the Restatement Second of Torts and applicable Oregon caselaw. As a direct result of Defendants' interference with the integrity and capacity of her personal computer, Ms. Andersen was, and

Lybeck✦Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791

continues to be, chilled against the lawful use of her computer for fear of further invasion and harassment by Defendants and their agents. She also invested substantial resources into investigating the integrity of her computer and the allegations of infringement at the insistence of the Record Companies. Amended Complaint, ¶¶6.34, 6.39, 8.8, 10.1-10.4, 14.4.  Ms. Andersen adequately alleged that Defendants' actions resulted in the impairment to the quality and value of her personal computer under §218(b). In addition, Defendants' conduct has also caused Ms. Andersen's medical and psychological condition to worsen and her symptoms to flare up, forcing her to return to her physician for medical assistance. *Id.*, ¶6.38 Due to her repeated visits to her physician, she has also been prevented from returning to work. *Ibid.*  Defendants' wrongful conduct gives rise to damages for bodily harm under §218(d).

Defendants again rely on the notion that all of the varied conduct of Defendants and their agents are subject to blanket protection under the *Noerr-Pennington* doctrine.  In *Del Cid, supra*, the court held that a counterclaim for trespass to chattels would stand despite the recording industry plaintiffs' assertion of *Noerr-Pennington* immunity. Exhibit C to Justus Declaration, at 3-4.  For the reasons set forth *supra*, this reliance is unfounded and misplaced, and Ms. Andersen's trespass to chattel claim must stand.

## 13. <u>Invasion of Privacy Claims Adequately Pleaded.</u>

The tort of invasion of privacy, in general, protects the right of a plaintiff "to be let alone." *Humphers v. First Interstate Bank*, 298 Or. 706, 714, 696 P.2d 527 (1985)(quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 117, at 851 (5th ed 1984)). Included within this "umbrella" tort are the claims of intrusion upon seclusion, false light,  and publication of private facts. *French v. Safeway Stores*, 247 Or. 554, 556, 430 P.2d 1021 (1967)(citing Note, Right to Privacy: Social Interest and Legal Right, 51 Minn.L.Rev. 531, 539-40 (1967).

Lybeck✧Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255  Fax 206-230-7791

### a. Intrusion Upon Seclusion

"One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Restatement (Second) of Torts* § 652B (1977). Accordingly, to establish a claim for intrusion upon seclusion, a plaintiff must prove three elements: (1) an intentional intrusion, physical or otherwise, (2) upon the plaintiff's solitude or seclusion or private affairs or concerns, (3) which would be highly offensive to a reasonable person. *Mauri v. Smith,* 324 Or. 476, 482-483, 929 P.2d 307, 310 (Or.,1996)

Defendants argue, without any basis, that Ms. Andersen was "publicly distributing files over the internet," and therefore had no expectation of privacy in her personal computer and the information it contained. Ms. Andersen has consistently denied such activity, and there exists no evidence to the contrary. Amended Complaint ¶6.26-6.32. Additionally, the cases cited by Defendants for the proposition that a computer user effectively "waives" her expectation of privacy by engaging in peer-to-peer file sharing are inapplicable to Ms. Andersen's situation. *See, e.g., In re Verizon Internet Services, Inc.*, 257 F.Supp.2d 244 (D.D.C. 2003).

Moreover, as discussed *supra*, even if some third party had created a KaZaA shared file folder on Ms. Andersen's computer without her knowledge, the implied consent for other users to view and access the contents of such a file would not extend to the unlicensed, illegal, invasive and deceptive MediaSentry activities at issue here. Amended Complaint, ¶13.5. Regardless of Defendants' baseless assertions to the contrary, Ms. Andersen properly pled a claim for intrusion upon seclusion by alleging that Defendants, while masquerading as anonymous "cyber-sleuths," invaded her personal computer using pretext and false pretenses. *Id.* at ¶¶ 6.4, 13.3, 13.5, 14.1 14.2.

### b. False Light

Lybeck❖Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791

A person who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability for invasion of privacy, if: (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed. *Restatement* § 625E (1977). *Reesman v. Highfill,* 327 Or. 597, 607, 965 P.2d 1030 (1998) (discussing elements of "false light" claim pursuant to *Restatement (Second) of Torts* ).

Defendants acknowledge that their complaint accusing Ms. Andersen of committing unlawful acts and owing tens or hundreds of thousands of dollars in money damages is indeed a statement that was publicly filed. In connection with the same document, Defendants publicly claimed that Ms. Andersen stole and possessed songs with profane, racist, and misogynistic titles. Amended Complaint, ¶¶6.35, 15.1. These allegations have been republished countless times on the internet. In addition, Defendants made countless other widely publicized statements and innuendo portraying those accused of copyright infringement as "pirates" and "thieves." *Id.* at ¶¶ 6.35,15.6. Ms. Andersen's Amended Complaint contains sufficient allegations to support this claim, and therefore, it must remain a viable cause of action.

### c. Public Disclosure of Private Facts.

The tort of public disclosure of private facts requires that the tortfeasor publicly disclose private facts about another. *Tollefson v. Price,* 247 Or. 398, 430 P.2d 990 (1967). In contrast to a "false light" claim, the facts disclosed may be true. However, not every disclosure of a private fact will give rise to a claim in tort. The tortfeasor's conduct must be "wrongful" in some respect apart from inflicting emotional distress on the plaintiff. As the court held in *Andersen v. Fisher Broadcasting Companies, Inc.*, 300 Or. 452, 469, 712 P.2d 803 (1986):

Lybeck♦Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791

> [I]n Oregon the truthful representation of facts concerning a person, even facts that a reasonable person would wish to keep private and that are not 'newsworthy,' does not give rise to common-law tort liability for damages for mental or emotional distress, unless the manner or purpose of defendant's conduct is wrongful in some respect apart from causing the plaintiff's hurt feelings.

Here, Defendants' arguments as to this tort are based on the same mistaken assumptions as discussed above with respect to Ms. Andersen's false light claim: (1) statements by Defendants and their agents concerning Ms. Andersen were not published; and (2) all of the statements of Defendants and their agents are subject to *Noerr-Pennington* protection. For the same reasons set forth *supra*, these assumptions are incorrect. Moreover, Ms. Andersen has adequately pled factual allegations, as discussed above, which demonstrate that Defendants' conduct was wrongful in some respect apart from simply causing Ms. Andersen hurt feelings.

### 14.  Libel and Slander Claims Adequately Pleaded.

A defamatory communication is one that would subject another to "hatred, contempt or ridicule…[or] tend to diminish the esteem, respect, goodwill or confidence in which [the other] is held or to excite adverse, derogatory or unpleasant feelings or opinions against [the other]." *King v. Menolascino*, 276 Or. 501, 504, 555 P.2d 442 (1976) (quoting *Farnsworth v. Hyde,* 266 Or. 236, 238, 512 P.2d 1003 (1973)). To be actionable, a communication must be both false and defamatory. *Harley-Davidson v. Markley*, 279 Or. 361, 364, 568 P.2d 1359 (1977). A communication can be defamatory on its face. *Andreason v. Guard Publishing*, 260 Or. 308, 310-11, 489 P.2d 944 (1971). Even a communication that is not defamatory on its face may be defamatory if a reasonable person could draw a defamatory inference from the communication. *King*, 276 Or. at 504, 555 P.2d 442.

Defendants acknowledge that the Atlantic plaintiffs' complaint accusing Ms. Andersen of

committing unlawful acts and owing tens or hundreds of thousands of dollars in money damages is indeed a statement that was publicly filed.   Defendants publicly claimed that Ms. Andersen stole and possessed songs with profane, racist, and misogynistic titles. Amended Complaint, ¶¶6.35, 16.1. These false allegations were republished countless times on the internet.  Further, Defendants have made countless other widely publicized statements and innuendo portraying those accused of copyright infringement as "pirates and thieves." *Id.* at ¶¶ 6.35,15.6, 16.1.    Most recently, in a September 17, 2007 nationwide broadcast of a National Public Radio program ("Marketplace") RIAA Chairman and CEO Mitch Bainwol accused Ms. Andersen of lying when he stated to millions of listeners: "I would remind you that folks, when they have a legal dispute, often can be creative with the way they portray the facts."  As demonstrated in her Amended Complaint, Ms. Andersen adequately alleged a set of facts demonstrating that Defendants communicated information to others, either by written or spoken word, relating to Ms. Andersen that was defamatory on its face or that a reasonable person could draw a defamatory inference.

### 15. <u>Deceptive Business Practices Claims Adequately Pleaded.</u>

Ms. Andersen has adequately alleged a claim for violation of the Oregon Unlawful Trade Practices Act, ORS 646.605 *et seq.*  The elements of common law fraud are distinct and separate from the elements of a cause of action under the Act, which are much more easily shown. *See, e.g., Sherrod v. Holzshuh,* 274 Or. 327, 546 P.2d 470 (1976); *Scott v. Western Int. Sales, Inc.,* 267 Or. 512, 517 P.2d 661 (1973).  As set forth in detail in her Amended Complaint, Defendants made serious fraudulent statements and misrepresentations, and sent communications with material omissions, to Ms. Andersen and the putative class members with the intention that those statements and misrepresentations be relied upon. Amended Complaint ¶¶6.15-6.21, 6.26, 6.35, 8.1-8.8. Defendants made these fraudulent statements, misrepresentations and omissions so as to intimidate

Lybeck✣Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

1   Ms. Andersen and the class into paying them thousands of dollars. *Id.* at ¶¶8.5-8.6.

2          Defendants erroneously contend Ms. Andersen did not reasonably rely on any of their

3   misrepresentations.  Ms. Andersen did, in fact, reasonably rely on various misrepresentations made

4   by Defendants and their agents, and she has adequately set forth the basis for these allegations. *Id.* at

5   ¶8.3-8.6, 17.6, 17.8.  For instance,  Ms. Andersen's Amended Complaint reflects that she is not a

6   person who has great knowledge or experience in the areas of copyright law or computer technology.

7
8    When Defendants contacted Ms. Andersen, she was understandably shocked, fearful, and upset, and

9   did in fact reasonably rely at that stage on their self-assured statements that her computer had been

10  used to engage in massive copyright infringement.  Such reliance seems reasonable considering that

11  Ms. Andersen was contacted by agents and employees of huge multi-national corporations, who have

12  disproportionate sophistication in the relevant areas, and who had included her in a national enterprise

13  of intimidation.  In direct response to Defendants' allegations, Ms. Andersen invested substantial

14  emotion, time and resources into investigating the integrity of her computer  *Id.* at  ¶¶6.34, 6.39,

15  8.8.

16
17          Defendants again rely on the notion that all of their conduct and the conduct of their agents

18  are subject to blanket protection under the *Noerr-Pennington* doctrine.  In *Del Cid, supra*, the court

19  held that a counterclaim under the Florida Deceptive and Unfair Trade Practices Act would stand

20  despite the recording industry's plaintiffs' assertion of *Noerr-Pennington* immunity.  The elements of

21  for a claim under that statute are virtually identical as for the Oregon Unlawful Trade Practices Act.

22  *See, e.g. Rollins Inc. Orkin Exterm. Co.*, 951 So.2d 860, 869 (Fla. Dist. Cit. App. 2006).  For the

23  reasons set forth *supra*, Defendants' reliance on *Noerr* immunity is unfounded and misplaced.

24  Therefore, Ms. Andersen's claim for violation of the Oregon Unlawful Trade Practices Act has been

25  properly pleaded and must stand.

26

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255  Fax 206-230-7791

## 16. Claim for Copyright Misuse Adequately Pleaded.

This Court should also decline to dismiss Ms. Andersen's copyright misuse claim. First, while copyright misuse jurisprudence is still evolving, patent misuse law, to which copyright misuse owes its origin, provides for independent misuse claims such as the one brought here. Further, copyright misuse claims have been recognized as particularly appropriate where, as here, a party seeks a declaratory judgment that Defendants forfeited the exclusive rights they possess in and to the sound recordings which they allege Ms. Andersen to have infringed. *Amended Complaint,* ¶18.6.; *See also Electronic Data Systems Corp. v. Computer Associates Intern., Inc.*, 802 F. Supp. 1463, 1465-1466 (N.D. Tex. 1992)(Court held that claim of copyright misuse could be raised in action for declaratory judgment of noninfringement to show that defendants misuse of copyrighted software rendered its copyrights invalid and unenforceable).

Copyright misuse derives from the patent misuse doctrine, which was recognized by the Supreme Court in 1942. *See Morton Salt Co. v. G.S. Suppiger Co.*, 314 U.S. 488, 494 (1942)("It is the adverse effect upon the public interest of a successful infringement suit in conjunction with the patentee's course of conduct which disqualifies him to maintain the suit…."). In *Lasercomb America, Inc. v. Reynolds*, 911 F.2d 970 (4th Cir. 1990), the Fourth Circuit extended the misuse doctrine to copyrights:

> The origins of patent and copyright law in England, the treatment of these two aspects of intellectual property by the framers of our Constitution, and the later statutory and judicial development of patent and copyright law in this country persuade us that parallel public policies underlie the protection of both types of intellectual property rights. We think these parallel policies call for application of the misuse defense to copyright as well as patent law.

Lybeck✦Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791

*Id.* at 974. The copyright misuse doctrine is now recognized by most federal circuit courts. *See, e.g., Practice Mgmt. Info. Corp. v. AMA*, 121 F.3d 516 (9th Cir. 1998) (finding copyright misuse where plaintiff engaged in anticompetitive behavior); *Alcatel USA, Inc. v. DGI Techs.*, 166 F.3d 772, 793 (5th Cir., 1999) (finding that plaintiffs used its copyrights to gain commercial control over products it did not have copyrighted); *Assessment Techs. of Wi, LLC v. WIREdata, Inc.*, 350 F.3d 640, 647 (7th Cir. 2003) (holding that a copyright misuse does not require a showing of antitrust violations); *Broad. Music v. Hearst/ABC Viacom Servs.*, 746 F. Supp. 320, 328 (S.D.N.Y 1990) (recognizing copyright misuse defense.)

While some early cases declined to treat copyright misuse as an affirmative claim, the doctrine is still evolving. Therefore, it is appropriate for the Court to take guidance from the patent misuse doctrine from which copyright misuse derives. *See, e.g., Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.,* 342 F.3d 191, 204 (3d Cir. 2003) (looking to patent misuse law for assistance in deciding copyright misuse claim). In the patent context, several federal district courts have recognized that misuse can be pled as an independent claim. *See, e.g., Matsushita Elec. Indus. Co. Ltd. v. CMC Magnetics Corp.*, No. C 06-04538, 2006 WL 3290413 (N.D. Cal Nov. 13, 2006) (holding that patent-pooling, licensing, and participation in standard setting organizations can give rise to unlawful activity that is properly challenged with a patent misuse counterclaim); *Marchon Eyewear, Inc. v. Tura LP*, No. 98 CV 1932, 2002 WL 31253199 (E.D.N.Y Sept. 30, 2002) (denying plaintiff's motion to dismiss defendant's patent misuse counterclaim); *Affymetrix, Inc. v. PE Corp. (N.Y.),* 219 F. Supp. 2d 390, 398 (S.D.N.Y. 2002) (denying defendants' motion to dismiss plaintiff's patent misuse claim); *see also generally Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc.,* 233 F.3d 697, 703-704 (2d Cir. 2000) ("[C]ounterclaims related to misuse and other more economically oriented antitrust claims would

Lybeck✦Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791

seem generally to be distinct in nature and substance from patent validity and infringement issues").

In addition, courts have recognized that an affirmative copyright misuse claim may be proper where, as here, a party seeks declaratory judgment of noninfringement. In *Open Source Yoga Unity v. Choudhury*, for example, the court permitted a declaratory relief plaintiff to assert copyright misuse because the plaintiff was likely to be accused of copyright infringement. 2005 U.S. Dist. LEXIS 10440 at 25* (N.D. Cal. Apr. 1, 2005)(citing *Practice Mgmt Info. v. AMA*, 121 F.3d 516, 520 (9th Cir. 1997)). The same reasoning applies here. Ms. Andersen seeks declaratory relief because Defendants forfeited the exclusive rights they possessed by engaging in illegal conduct.

### 17. <u>Claim for Civil Conspiracy Adequately Pleaded.</u>

In order to plead a claim for civil conspiracy, Ms. Andersen must adequately allege the following: (a) two or more parties; (b) with an object to be accomplished; (c) a meeting of the minds on the object to be accomplished or a course of action; (d) one or more unlawful overt acts; (e) damages as a proximate result thereof. *Richmark Corp. V. Timber Falling Consultants, Inc.* 1989 Westlaw 81622 (D. Or. 1998); *Bonds v. Landers*, 279 Or. 169 (1997).

In the instant case, Ms. Andersen's Amended Complaint contains allegations concerning the common conspiracy of Defendants to develop a massive enterprise of threat and intimidation. Amended Complaint, ¶¶6.3, 19.1, 19.2. Ms. Andersen has adequately alleged the existence of a secret agreement between Defendants to devise and implement an investigative protocol utilizing MediaSentry. *Id.* at ¶6.3. In developing and implementing this protocol, Defendants knew that it was illegal, flawed, and could not specifically identify Ms. Andersen or the others they targeted. *Id.* at

Lybeck✦Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255   Fax 206-230-7791

¶¶6.3-6.10.  Finally, the fundamental purpose of Defendants' enterprise was to retain monopolistic control over the distribution of sound recordings. *Id.* at ¶¶ 6.1, 6.25, 19.1, 19.2.

Defendants again rely on the notion that all of the conduct of Defendants and their agents described in the Amended Complaint are subject to blanket protection under the *Noerr-Pennington* doctrine.  In *Del Cid, supra,* the court held that a counterclaim for civil conspiracy would stand despite the recording industry plaintiffs' assertion of *Noerr-Pennington* immunity.  The elements of a claim for civil conspiracy under Florida are virtually identical as those under Oregon law. *See, e.g. Raimi v. Furlong,* 702 So.2d 1273, 1284 (Fla. Dist. Cit. App. 1997).  For the reasons set forth *supra,* Defendants' reliance on *Noerr* immunity is unfounded and misplaced.  Based on the allegations as set forth in Ms. Andersen's Amended Complaint, her claim against Defendants for civil conspiracy must remain viable.

### III. CONCLUSION

With respect to all claims in her Amended Complaint, Ms. Andersen alleged a legally sufficient basis for recovery against the Defendants.  Taking the facts in the Amended Complaint as true Defendants' Motion to Dismiss the Amended Complaint must be denied.

Respectfully submitted this <u>28th</u> day of September, 2007.

LYBECK MURPHY, LLP
I
By: __/s/ *Lory R. Lybeck*_____
Lory R. Lybeck (OSB #83276)
Benjamin R. Justus, admitted *pro hac vice*

PATTON, ROBERTS, McWILLIAMS & CAPSHAW, LLP

Richard A. Adams, admitted *pro hac vice*
James C. Wyly, admitted *pro hac vice*

ATTORNEYS FOR PLAINTIFF

Lybeck✦Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255  Fax 206-230-7791

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

AFFIDAVIT OF SERVICE

State of Washington    )
                       ) ss.
County of King         )

      I hereby certify and declare that on the 28th day of September, 2007, I electronically filed the foregoing Plaintiff's Opposition to Defendants' Motion to Dismiss First Amended Complaint with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

**Atty/Defendants:**
Kenneth R. Davis, II
William T. Patton
Lane Powell PC
601 SW Second Avenue, Suite 2100
Portland, OR 97204
503-778-2100/phone
503-778-2200/fax
Email:  davisk@lanepowell.com/Davis
         pattonw@lanepowell.com /Powell

James Ruh, *Admitted Pro Hac Vice*
james.ruh@hro.com
Nadia Sarkis, *Admitted Pro Hac Vice*
nadia.sarkis@hro.com
HOLME, ROBERTS & OWEN LLP
1700 Lincoln Street, Ste. 4100
Denver, CO 80203
Telephone:  (303) 861-7000
Facsimile:  (303) 866-0200

      All parties are registered as CM/ECF participants for electronic notification.

      DATED at Mercer Island, Washington, this 28th day of September, 2007.

            By:  ___/s/ Lory Lybeck___
            Lory R. Lybeck (OSB #83276)
            lrl@lybeckmurphy.com
            Lybeck Murphy, LLP
            7525 SE 24th Street, Ste. 500
            Mercer Island, WA 98040
            (206) 230-4255 /phone
            (206) 230-7791 /fax

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Lybeck❖Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255 Fax 206-230-7791