1    **Lory R. Lybeck**
     Lybeck Murphy, LLP
2    7525 SE 24th Street, Ste. 500
     Mercer Island, WA  98040-2334
3    206-230-4255 /phone
     206-230-7791 /fax
4    Lybeck – lrl@lybeckmurphy.com
     **Lybeck – OSB #83276**
5    Attorney for Plaintiff

6

7

8

9

10
                    UNITED STATES DISTRICT COURT
11                 DISTRICT OF OREGON AT PORTLAND

12                                          )
     TANYA ANDERSEN, Individually and as    )    No.  CV 07-934 BR
13   Representative   of   Others  Similarly )
     Situated,                              )    **NATIONWIDE CLASS ACTION**
14                                          )    **ALLEGATION**
                                            )
15                    Plaintiff,            )    **PLAINTIFF'S FOURTH**
                                            )    **AMENDED COMPLAINT**
16              v.                          )
                                            )    **DEMAND**
17   ATLANTIC          RECORDING            )    **FOR JURY TRIAL**
     CORPORATION, a Delaware corporation;   )
18   PRIORITY RECORDS, LLC, a California     )    **RELATED CASE NOTICE**
     limited  liability  company;  CAPITOL  )
19   RECORDS, INC., a Delaware corporation;  )
     UMG RECORDINGS, INC., a Delaware        )
20   corporation; and BMG MUSIC, a New       )
     York general partnership; RECORDING     )
21   INDUSTRY       ASSOCIATION      OF      )
     AMERICA;   SAFENET,   INC.,   f/k/a     )
22   MEDIA  SENTRY,    INC., a Delaware      )
     corporation;  SETTLEMENT SUPPORT        )
23   CENTER, LLC, a Washington limited       )
     liability company,                     )
24                                          )
                     Defendants.            )
25                                          )

26

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255  Fax 206-230-7791

1

**TABLE OF CONTENTS**

2    **I.    INTRODUCTION** ...................................................................................3
3         A.    Personal Claims – Class Action............................................3
          B     Pre-litigation Activities – Sham Litigation...........................3
4
     **II.   RELATED ACTION** ...........................................................................6
5         A.    LR 42 Related Case Notice ...............................................6
              1.    Identity of Related Case ...............................................6
6             2.    Nature of Related Case ...............................................7
7
     **III.  NATURE OF THE CASE** ...............................................................7
8
     **IV.   PARTIES** ...........................................................................................8
9         A.    Tanya Andersen ...............................................................8
          B.    Defendants ......................................................................8
10            1.    Defendant Record Companies ....................................8
11            2.    Defendant RIAA ......................................................8
              3.    Defendant MediaSentry ............................................9
12            4.    Defendant Settlement Support Center .........................9
13   **V.    JURISDICTION AND VENUE** ......................................................9
14
     **VI.   CLASS ACTION ALLEGATIONS** ...............................................10
15
     **VII.  SUMMARY OF CONDUCT SUPPORTING CLAIMS** .................12
16        A.    Conspiracy and Investigation Scheme ........................12
          B.    Investigations Violate Criminal Laws ........................13
17        C.    Investigations Fundamentally Flawed..... ...................14
          D.    Mail Fraud ......................................................................16
18        E.    Wire Fraud ......................................................................16
19        F.    Real "Gotenkito" Known to Defendants ......................17
          G.    Public Humiliation of Ms. Andersen ..........................18
20        H.    Defendants Knew about Ms. Andersen's Health Problems ......19
          I.    Harassment Increased ...................................................21
21        J.    Court Action Forces End to Abuse................... ......22
          K.    Economic Losses and Other Harms Suffered....................23
22
23   **VIII.  CLAIMS FOR RELIEF** ...............................................................24
24
          **FIRST CLAIM FOR RELIEF:** CIVIL CONSPIRACY
25        (Oregon Law) – *All Defendants* ...............................................24

26        **SECOND CLAIM FOR RELIEF:** WRONGFUL INITIATION OF CIVIL PROCEEDINGS
          (Oregon Law) - *Defendants RIAA and Record Companies* ...............26

Nationwide Class Action Allegation
Plaintiff's Fourth Amended Complaint - 2

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255  Fax 206-230-7791

**THIRD CLAIM FOR RELIEF:** ABUSE OF LEGAL PROCESS
(Oregon Law) – *Defendants RIAA and Record Companies* ……………………….....29

**FOURTH CLAIM FOR RELIEF:** NEGLIGENCE / NEGLIGENCE *PER SE*
(Oregon Law) - *All Defendants* …………………………………………………………33
    A.    MediaSentry Negligence *Per Se* ………………………………....……………..33
    B.    Negligence Per Se / Vicarious Liability of
        RIAA and Record Companies………………..…………………………………33
    C.    Direct Negligence of RIAA and Record Companies –
        Heightened Duty…………………………… ..……………………………34
    D.    Direct Negligence of RIAA and Record Companies –
        General Duty …………………………………………………………...35
    E.    Direct Negligence of Settlement Support Center –
        General Duty………………………………….............................................36

**FIFTH CLAIM FOR RELIEF:** INJUNCTIVE RELIEF
*All Defendants* …………………………………………………………………37

IX.      **PRAYER FOR RELIEF** ………………………………………………...37

# I.     INTRODUCTION

## A.    Personal Claims – Class Action

1.1    Ms. Andersen pursues the claims set forth plainly and simply below, seeking full compensation for the serious damages Defendants have caused her to personally suffer. She also seeks to enjoin the RIAA and MediaSentry from continuing their illegal investigation activities. Ms. Andersen also seeks certification of a national class action to address the past and present harm being inflicted on thousands of other individuals similarly situated. She reserves the right to amend this complaint to assert or reassert claims that may be appropriately pursued following discovery and/or class certification.

## B.    Pre-litigation Activities - Sham Litigation

1.2    For three years, Ms. Andersen and her daughter were subjected to fear, threats, harassment and outrageous abuse that resulted from Defendants' national conspiracy of intimidation intent on maintaining a near complete commercial monopoly of the distribution of

Nationwide Class Action Allegation
Plaintiff's Fourth Amended Complaint - 3

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

recorded music.  In 2003 and before these Defendants, which include several entities controlled by the world's "Big 4" recording distribution companies, conspired with the RIAA and MediaSentry to devise and employ a seriously flawed and illegal investigation scheme that formed the basis of their larger threat and intimidation campaign.

1.3    As a part of the scheme, Defendants falsely claimed that they could identify individual copyright infringers.  Defendants knew this to be untrue but used illegally obtained information to threaten, harass and intimidate thousands of individuals including Ms. Andersen.  The scheme and conspiracy included as a component the filing of tens of thousands of sham lawsuits disregarding whether any particular lawsuit was actually supported by any admissible proof against the individual sued.  The sham lawsuits were filed first anonymously, clogging the federal courts with thousands of cases against "John" and "Jane Doe".  Lawsuits were later filed against dead people, people without computers, children and other totally innocent individuals, including Tanya Andersen.  The primary purpose of the sham lawsuit filed against Tanya Andersen was not to petition the government to seek appropriate relief from the Courts.  Rather, the baseless sham lawsuit against her (and those against many thousands of other individuals) was intended to spread public fear and intimidation by harassment, extortion and coercion.

1.4    As an RIAA senior spokeswoman admitted early on in the campaign, the lawsuits had no relationship to or regard for the evidence actually available against individual victims like Tanya Andersen.  The RIAA "explained" that the public campaign of intimidation being waged by Defendants was like fishing with a "driftnet": "When you fish with a net, you are going to catch a few dolphin."

1.5    Ms. Andersen like so many others was an innocent dolphin caught in the net of

Nationwide Class Action Allegation
Plaintiff's Fourth Amended Complaint - 4

Lybeck✦Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255  Fax 206-230-7791

Defendants' automated sham litigation scheme.  Federal judges around the country have noted the serious harm caused to individuals and the federal judiciary as a result of the automated filing of tens of thousands of baseless sham lawsuits.  The suits cannot and do not allege facts necessary to prove actual infringement by anyone.  Regardless, they falsely claim to have actual proof of an alleged specific individual infringer.

1.6    A federal judge in Arizona, in a thorough 17 page opinion, most recently appropriately explained that **"Merely making a copy [of a sound recording] available does not constitute distribution."**  He further correctly explained that **"An offer to distribute [a sound recording] does not constitute distribution."**  Without a distribution there is no infringement.  Despite this legal fact, "making available" is the sole asserted basis for tens of thousands of RIAA lawsuits alleging infringing conduct.[1]

1.7    A federal judge in California noted the improper purpose of the sham lawsuits and that **"the federal judiciary is being used as a hammer by a small group of plaintiffs to pound settlements out of unrepresented defendants"**.[2]

1.8    Another federal judge in California noted the lack of merits to the sham litigation, stating, **"Plaintiffs have presented no facts that this allegation [of copyright infringement] is anything more than speculation"**.[3]

1.9    In Maine a federal judge recognized the improper abuse of the courts, stating that **"it is difficult to ignore the kind of gamesmanship that is going on… these plaintiffs have devised a clever scheme… but it troubles me that they do so with impunity"**.[4]

---

[1] Atlantic Recording Corp., et al. v. Howell, CV-06-02076-PHX-NVW (D. Az. April 28, 2008)
[2] Elektra Entertainment Group, et al v. O'Brien, 06-CV-05289 SJO (C.D. Cal. March 2, 2007)
[3] Interscope Records, et al v. Rodriguez, No. 06cv2485-B (NLS)(S.D. Cal. August 17, 2007)
[4] Arista Records, LLC, et al v. Does 1-27, 07-CV-00162 JAW (D. Me. January 25, 2008).

Nationwide Class Action Allegation
Plaintiff's Fourth Amended Complaint - 5

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255  Fax 206-230-7791

1.10    In Oregon it was specifically recognized that the courts were abused in order to threaten, harass and intimidate Ms. Andersen.    Judge Ashmanskas write that **"copyright holders and these plaintiffs specifically should be deterred from prosecuting infringement claims as plaintiffs did in this case"**.[5]

1.11    Neither the *Noerr-Pennington* doctrine nor state litigation privileges create immunity for these Defendants to act with impunity, harming the courts, innocent victims, music consumers and artists.    The pre-lawsuit conduct in these Defendants' common conspiracy is flawed and illegal.    The anonymous "John" and "Jane Doe" lawsuits and the sham litigation scheme that follow were devised and implemented solely as a component of the national conspiracy of threat, coercion and extortion.    As federal courts have noted these cases are objectively baseless, automated, and pursued by the thousands without regard to their individual merits or the harm they cause real people.    Defendants continue to act in concert to engage in sham litigation as defined by our U.S. Supreme Court in *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508 (1972) and subsequent cases.    Defendants' concerted actions harm innocent American citizens, including Tanya Andersen, and deprive the federal judicial process of its legitimacy.

## II.    RELATED ACTION

A.    **LR 42 Related Case Notice**

1.    **Identity of Related Case**

2.1    Pursuant to Local Rule 42.2 this action is related to Atlantic Recording Corp., et al  v. Andersen, No. CV 05-933 AS (D. Or) which was pending before the Honorable Donald C. Ashmanskas in the United States District Court, District of Oregon.    After Judge

---

[5] Atlantic Recording Corp., et al. v. Andersen, OS-CV-933AS (D. Or. September 21, 2007).

Nationwide Class Action Allegation
Plaintiff's Fourth Amended Complaint - 6

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255  Fax 206-230-7791

Ashmanskas' recent retirement this case was transferred to the Honorable John V. Acosta for the sole remaining purpose of entry of his finding and recommendations and an order and judgment setting the amount of attorney's fees to be paid by plaintiffs in that action.

### 2.    Nature of Related Case

2.2    On August 26, 2005, while Tanya Andersen and her daughter, who was then just 8 years old, were sitting down to dinner, a legal process server knocked on her door.  When she answered the door, she was served with a sham lawsuit caused to be filed in Oregon U.S. District Court by several RIAA-controlled recording companies.  Ms. Andersen was shocked, afraid, and very distressed.  In the sham lawsuit, the RIAA and the Record Companies falsely claimed that Ms. Andersen owed hundreds of thousands of dollars as penalties for alleged copyright infringement.

2.3    Ms. Andersen was completely innocent of the charges against her.  She answered the false claims and asserted counterclaims seeking damages.  While the sham lawsuit against her was pending, Ms. Andersen learned that it was like thousands of other boilerplate suits that were based solely upon illegal, flawed and negligent investigations. Almost two years later, on the eve of her motion for summary judgment, the sham lawsuit brought by the RIAA and the Record Companies was abruptly dismissed with prejudice.  In short, Tanya Andersen won.  At the direction of Judge Ashmanskas, Ms. Andersen's former counterclaims in that case were dismissed without prejudice so that she could more efficiently pursue them in this action.

### III.    NATURE OF THIS CASE

3.1    This is a class action lawsuit seeking money damages and equitable relief pursuant to FEDERAL RULE OF CIVIL PROCEDURE 23.  Plaintiff files this lawsuit on her own behalf

Nationwide Class Action Allegation
Plaintiff's Fourth Amended Complaint - 7

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

and she seeks certification of the action as a nationwide class of Plaintiffs pursuant to F.R.C.P. 23. This lawsuit seeks to recover on behalf of Plaintiff, and all others similarly situated as class members, compensation for the significant damages caused by these Defendants. In addition, this lawsuit seeks to recover punitive damages, statutory penalties, litigation fees and expenses, and equitable relief including injunction.

## IV.    PARTIES

### A.    Tanya Andersen

4.1    Plaintiff Tanya Andersen is the single mother of her minor daughter, Kylee Andersen. She and Kylee reside in Beaverton, Oregon.

### B.    Defendants

#### 1.    Defendant Record Companies

4.2    Defendants Atlantic Recording Corporation, a Delaware corporation; Priority Records, LLC, a California limited liability company; Capitol Records, Inc., a Delaware corporation; UMG Recordings, Inc., a Delaware corporation; and BMG Music, a New York general partnership (hereinafter collectively "the Record Companies") are companies who take part in a virtual monopoly over the distribution of the world's recorded music. Each of these companies is also a member of the Recording Industry Association of America. The Record Companies filed a sham lawsuit against Ms. Andersen, Atlantic Recording Corp., et al v. Andersen, No. CV 05-933 AS (D. Or.), which remains pending in this court.

#### 2.    Defendant RIAA

4.3    Defendant Recording Industry Association of America (hereinafter "RIAA") claims to be a New York not-for-profit corporation. Its headquarters are located in Washington D.C. It holds itself out as a "trade group" that directs and controls its member companies in

Nationwide Class Action Allegation
Plaintiff's Fourth Amended Complaint - 8

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791

1    their filing of thousands of sham lawsuits against individuals in federal courts across the

2    country as part of a common scheme.   These RIAA-controlled member companies are

3    subsidiaries of the "Big 4" major companies (EMI, Sony BMG, Universal Music and Warner

4    Music Group) that monopolize and control the sale of over 90% of all the music that is

5    commercially distributed in the United States.   Since at least 2003 the RIAA and its member

6    companies have conspired to pursue a scheme of threatening and intimidating sham litigation in

7    an attempt to maintain this music distribution monopoly.

8

9                          **3.      Defendant MediaSentry**

10         4.4      Defendant SafeNet, Inc. f/k/a MediaSentry, Inc. (hereinafter "MediaSentry"), is

11    believed to be a Delaware corporation which maintains its principal place of business in

12    Maryland.   It conspires with the RIAA and Record Company Defendants in pursuit of their

13    coordinated common scheme of threatening and intimidating litigation against tens of

14    thousands of private U.S. citizens.   Specifically, MediaSentry has devised and conducts illegal,

15    flawed and negligent investigations at the direction of the RIAA and the Record Companies.   At

16    all relevant times, MediaSentry was acting as an agent of the RIAA and the Record Companies.

17

18                          **4.      Defendant Settlement Support Center**

19

20         4.5      Defendant Settlement Support Center, LLC <u>was</u> a Washington limited liability

21    company that operated as the debt collection arm of Defendants' conspiracy to pursue a

22    common scheme of threatening and intimidating litigation.   At all relevant times, Settlement

23    Support Center was acting as an agent of the RIAA and the Record Companies.

24                          **V.      <u>JURISDICTION AND VENUE</u>**

25         5.1      The court has jurisdiction over the subject matter of this action under 28 U.S.C.

26    1332.

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

1

2      5.2     The parties are citizens of different states.  The amount in controversy exceeds

3  $5,000,000.

4
       5.3     Venue is proper under 28 U.S.C. §1391.
5

6                           VI.     **CLASS ACTION ALLEGATIONS**

7      6.1     Ms. Andersen as the representative plaintiff brings this class action on behalf of

8  herself and all other individuals similarly situated as members of a proposed class pursuant to

9  Fed. R. Civ. P. 23.  This action satisfies the numerosity, commonality, typicality, adequacy,

10 predominance and superiority requirements of those provisions.

11
       6.2     This class action is brought against Defendants for conspiring to create and
12
   acting in concert to perpetuate a "campaign of threat and intimidation".  This class action seeks
13
   national injunctive relief and for damages to be paid to the following class of plaintiffs:
14

15         Those who were sued personally or as "John or Jane Does", or were threatened
           with suit by Defendants, for copyright infringement allegedly arising from file-
16         sharing, downloading or other similar activities, who have not engaged in
           violation of copyright laws.
17

18     6.3     The class is comprised of many thousands of individuals who are geographically

19 dispersed, making joinder impracticable.  The disposition of the claims of these class members

20 in a single class action will provide substantial benefits to all parties and the Court.  There is a

21 well-defined community of interest among members of the class.  Ms. Andersen, like all class

22 members, was a target of the above-referenced "campaign of threat and intimidation".

23
       6.4     Ms. Andersen as the class representative, like all class members, has suffered
24
   actual damages as a result of Defendants' misconduct, and will be required to incur court costs
25

26 and reasonable and necessary attorneys' fees in order to recover all sums due as a result of that

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255  Fax 206-230-7791

1    misconduct.

2        6.5    There are issues of law and fact common to Ms. Andersen and the proposed

3    class that predominate over any questions that may affect only the individual class members.

4    Proof on these issues includes, but is not limited to, the following:

5
6        a.    that Defendants engaged in a civil conspiracy;

7        b.    that Defendants wrongfully initiated civil proceedings;

8        c.    that Defendants conspired to and actually abused the legal process;

9        d.    that Defendants acted criminally in "investigating" and pursuing claims
             against class members;
10

11        e.    that Defendants were negligent in their pursuit of the class members;

12        f.    that Plaintiff and the class members are entitled to injunctive relief
             stopping the illegal investigations and Defendants' criminal conspiracy;
13            and

14        g.    that Plaintiff and the class members are entitled to compensatory and
             punitive damages.
15

16        6.6    The interests of the class will be fairly and adequately protected.  Plaintiff has

17    retained counsel with experience in prosecuting class actions involving wrongful conduct.

18    Furthermore, Plaintiff and the undersigned counsel are committed to vigorously prosecuting

19    this action on behalf of the class and have the financial resources to do so.  Neither Plaintiff nor

20
21    her counsel have any interests adverse to the interests of the class.

22        6.7    Plaintiff and members of the class have suffered and will continue to suffer harm

23    and damages as a result of the unlawful and wrongful conduct of Defendants.  A class action is

24    superior to other available methods for the fair and efficient adjudication of this controversy.

25    Absent a class action, most of the members of the class would find the cost of litigating their
26
      individual claims prohibitive and would have no effective remedy at law or equity.

6.8    Absent a class action, class members will continue to incur damages and the misconduct of Defendants will continue unabated.  The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation because it affords the most efficient avenue for full redress of grievances, while simultaneously conserving the resources of the courts and the litigants, and promoting consistency and efficiency of adjudication.

## VII.        SUMMARY OF CONDUCT SUPPORTING CLAIMS

### A.    Conspiracy and Investigation Scheme

7.1    In or about 2002, the RIAA, the Big 4 and MediaSentry conspired to secretly develop a massive threat and sham litigation scheme targeting private citizens across the United States.  Since then, the RIAA and the Big 4 have aggressively acted to prevent disclosure of their secret agreement and other details of their conspiratorial conduct.  Recently it has been discovered that as a part of this conspiracy MediaSentry has conducted many thousands of illegal, flawed and negligent investigations of private American citizens.  These illegal and flawed investigations form the sole basis for the pursuit of tens of thousands of threatened and actual sham lawsuits prosecuted throughout the United States, first by filing "John" and "Jane Doe" anonymous actions to obtain subpoena power and then to sue Tanya Andersen and thousands of other individuals.

7.2    Defendant MediaSentry is in the business of conducting illegal, flawed and personally invasive private investigations of private citizens in many states throughout the United States on behalf of the RIAA and its controlled member companies.  MediaSentry has advertised that its services include "investigation" and "litigation support".  It has for years

Nationwide Class Action Allegation
Plaintiff's Fourth Amended Complaint - 12

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

conducted secret investigations of private citizens in violation of the criminal laws of nearly every state in the nation.

7.3    Until several weeks ago, MediaSentry publicly claimed to conduct "private investigations" of American citizens. It claims to employ secret methods to enter individual computers to surreptitiously and illegally gather information without authorization or knowledge of the computer owner.  In reality and at best, MediaSentry is only capable of identifying an internet protocol (IP) address that <u>may</u> have been associated with or assigned to a particular computer or routing device.  MediaSentry is paid to provide the IP addresses to the RIAA.  The RIAA and the Big 4 then use this illegally obtained information in their public threat and sham litigation scheme.  In June 2003, the RIAA publicly announced that it would begin a campaign that would involve thousands of threats and sham lawsuits against individuals.  This criminal conduct continues to date.

**B.    <u>Investigations Violate Criminal Laws</u>**

7.4    The <u>illegality</u> of the private investigations is well known to Defendants.  The RIAA was advised in writing years ago that the "private investigations" it and its agents were conducting were illegal.  To protect American citizens, nearly every state in the country requires licensing or registration of private investigators.  Oregon laws subject unlicensed investigators to both civil and criminal penalties. ORS 703.405; ORS 703.993.  These laws were intended to protect citizens like Tanya Andersen from the very harm caused her and thousands of others.  Reputable investigators are aware of and comply with these licensing laws and regulations.  MediaSentry and its investigators are not and have not been licensed to conduct private investigations of private citizens in Oregon or any other state.  Recently, the Massachusetts State Police issued to MediaSentry a cease-and-desist notice requiring it to stop

Nationwide Class Action Allegation
Plaintiff's Fourth Amended Complaint - 13

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

1   its unlicensed investigation activities in the Commonwealth. The state of Michigan has also

2   notified the public that MediaSentry investigations must stop and could be prosecuted as a

3   criminal felony. Other states have also objected to MediaSentry's illegal activities.

### C.    Investigations Fundamentally Flawed

7.5    MediaSentry and the RIAA have also known for years that their investigations are fundamentally flawed. On September 14, 2003, an RIAA spokesperson admitted in a media report that the investigative techniques employed in the criminal conspiracy inevitably and predictably result in wrongful investigations, accusations and lawsuits against innocent individuals. The RIAA admits its conscious disregard for the actual merits of individual cases, arrogantly explaining that when they fish with a "driftnet" occasionally they will catch a "dolphin".

7.6    In a March 2004 sworn deposition MediaSentry's then president also admitted to various serious flaws in the investigative scheme forming the basis of Defendants' criminal conspiracy. All Defendants know that these flaws result in misidentification of actual individuals. Despite this knowledge, Defendants continue to falsely represent to many tens of thousands of people that they have been definitively and personally identified as copyright infringers.

7.7    In recent weeks, an international expert in internet processes and forensic investigations explained under oath that the RIAA investigation process demonstrated "borderline incompetence" and was unprofessional. MediaSentry's former president also admitted that MediaSentry cannot actually differentiate actual copyrighted recordings from bogus or inoperative files, or decoys.

7.8    Defendants cloak the private investigations in great secrecy. Many of the

Nationwide Class Action Allegation
Plaintiff's Fourth Amended Complaint - 14

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255   Fax 206-230-7791

1   technical details of their private investigation protocol remain guarded and unknown. What is

2   known is that both MediaSentry and the RIAA's chief computer consultant have claimed in

3   numerous sworn statements submitted in cases across the country that MediaSentry has in fact

4   invaded the personal computers of many thousands of private American citizens and has

5   viewed, manipulated and removed files. MediaSentry and the RIAA have in one broadly

6   reported case removed embarrassing and personal files from an Iraq War veteran's computer in

7   an effort to humiliate, coerce and harass him.

8

9          7.9    The <u>flaws</u> in MediaSentry's investigations have been well known to Defendants

10  for years. In <u>Brein et al v. UPC Nederland B.V. et al.</u>, No. 194741/KGZA-05-462/BL/EV at

11  4.30-31 (2005), a Dutch court ruled that that MediaSentry's investigation protocol was

12  insufficient to state a claim for copyright infringement because it was unable to identify an

13  actual individual allegedly engaged in copyright infringement.

14

15         7.10   In <u>BMG Canada, Inc. v. John Doe</u>, 2005 FCA 193 (2005), the Canadian Federal

16  Court ruled that the investigation protocol used by MediaSentry is so deficient that the

17  "evidence" gathered fails to establish even a prima facie case of infringement.

18

19         7.11   RIAA-controlled member companies have filed and dismissed meritless cases

20  across the United States after being forced to admit that they had sued the wrong people. <u>See,</u>

21  <u>e.g.</u>, <u>Atlantic v. Zuleta</u>, Case No. 06-CV-1221 (N.D. Ga.); <u>BMG Music v. Thao</u>, Case No. 07-

22  CV-143 (E.D. Wis.); <u>Capitol Records, Inc., et al v. Foster</u>, Case No. Civ. 04-1569-W (W.D.

23  Okla.); <u>Interscope Records v. Leadbetter</u>, Case No. C05-1149-RSL-MJP (W.D. Wash.); <u>Priority</u>

24  <u>Records, LLC v. Chan</u>, Case No. 04-CV-73645-DT (E.D. Mich.); <u>Virgin Records America, Inc.</u>

25  <u>v. Marson</u>, Case No. 05-CV-03201 RGK (C.D. Cal.).

26

           7.12   In Ms. Andersen's case, she was simply erroneously identified by MediaSentry

Nationwide Class Action Allegation
Plaintiff's Fourth Amended Complaint - 15

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

1   and Verizon, her ISP.  Defendants, however, elected not to admit their error and wrongfully

2   persecuted her, falsely insisting that she was "gotenkito", a music pirate.

3       **D.       Mail Fraud**

4       7.13    In February 2005, Tanya Andersen received a letter from the Los Angeles,

5   California law firm *Mitchell Silverberg & Knupp, LLP* on behalf of certain undisclosed "record

6   companies".   The letter falsely claimed that Ms. Andersen had illegally downloaded music

7   using the screen name "gotenkito", infringed undisclosed copyrights and that "[t]he evidence

8   
9   necessary for the record companies to prevail in this action has already been secured."   It

10  threatened Ms. Andersen with a lawsuit and absolute financial ruin.

11      **E.       Wire Fraud**

12  
13      7.14    After receiving this letter, Ms. Andersen immediately contacted Defendants and

14  their agent, Settlement Support Center.  She explained that their claims were in error and that

15  she had never downloaded or shared music or used any file-sharing program.  She told them

16  that she did not even know how to use such a program.  According to Defendants' scheme,

17  during telephone conversations in February and March 2005 Settlement Support Center

18  repeated Defendants' joint threat that unless Ms. Andersen immediately paid them $4,000-

19  
20  5,000 Defendants would ruin her financially.  Settlement Support Center also falsely asserted

21  that Ms. Andersen had been "viewed" engaging in infringing acts.  Defendants then knew or

22  should have known that Ms. Andersen was innocent.

23      7.15    During telephone conversations in February and March 2005, an employee of

24  Settlement Support Center actually admitted to Ms. Andersen that he believed that she had not

25  infringed any copyrights.  He explained, however, that Defendants would not quit their attempts

26  to force payment from her because to do so would encourage other people to defend

Nationwide Class Action Allegation
Plaintiff's Fourth Amended Complaint - 16

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

themselves.  He stated that Ms. Andersen could pay thousands of dollars to defend herself against a federal lawsuit or take the less expensive option of "settling" with Defendants.

7.16    Ms. Andersen wrote to Settlement Support Center again explaining her innocence.  She even invited an inspection of her computer to prove that the claims made against her were false or in error.

7.17    Instead of inspecting her computer, the RIAA and the Record Companies filed a federal lawsuit against Ms. Andersen on June 24, 2005, again claiming that she was "gotenkito".

**F.    Real "Gotenkito" Known to Defendants**

7.18    The federal lawsuit falsely claimed that MediaSentry had caught Ms. Andersen sharing files online at 4:20 A.M. PST, on May 20, 2004, and identified her as "gotenkito@kazaa."

7.19    Ms. Andersen explained that she did not know "gotenkito" or anyone else who used that name.  Ms. Andersen also explained that she was not awake at 4:20 AM on May 20, 2004.  She again explained that her computer was never used to share files online.  Ms. Andersen offered this information once again in a sworn declaration she provided in October 2006.

7.20    Defendants knew (and with very little effort could have earlier known) that Ms. Andersen was not engaged in copyright infringement.  In fact, a simple 2-minute search for "gotenkito" on the Google search engine in March of 2007 confirmed that a young man in Everett, Washington had been using the name "gotenkito" on various internet sites.  This man's MySpace webpage, "Chad's Wacky Life Stories", described his interest in computers and music and even admitted downloading copyrighted materials: "Doe's [sic] anyone else watch Drawn

Nationwide Class Action Allegation
Plaintiff's Fourth Amended Complaint - 17

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255  Fax 206-230-7791

1  Together?  That show is so funny.  I downloaded about 14 episodes and i can't stop watching

2  them."

3      7.21    In an attempt to end Defendants' persecution of her, in March 2007, Ms.

4  Andersen provided the man's name, location, and phone number to the Defendant Record

5  Companies.  Along with everything else she had done, she hoped this would result in their

6  admitting that she had been misidentified and falsely accused and that the claims against her

7  would be dismissed.

8

9      7.22    Ms. Andersen later learned that lawyers for the RIAA and the Record

10  Companies had actually already identified the real "gotenkito" many months earlier.  In a

11  September 2006 email, one RIAA lawyer had asked whether Ms. Andersen "had any

12  connection with a 30-something year old man named Chad".  She did not know any such

13  person.  No later than April 2007, the RIAA lawyer had located and made contact with this

14  man.  Despite having substantial evidence to support claims against the real "gotenkito", the

15  Record Companies and their lawyers continued to harass, embarrass, coerce and threaten Ms.

16  Andersen and her daughter.

17

18      **G.    Public Humiliation of Ms. Andersen**

19

20      7.23    Instead of dismissing their false claims, the Record Companies continued their

21  baseless and malicious prosecution of false claims against Ms. Andersen.  They publicly

22  humiliated her with demeaning and repulsive accusations.  In their June 24, 2005 public filing

23  of their complaint, they claimed that Ms. Andersen stole and possessed songs with titles such as

24  "Shake That Ass Bitch", "Dope Nose", "Die Motherfucker Die", "Bullet in the Head", "Fuck

25  y'all Hoes", "Nigger Fucker", and "I Stab People".  From June 24, 2005 to the present, in

26  various published documents, the Record Companies and the RIAA have continuously and

Lybeck◇Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255  Fax 206-230-7791

publicly asserted that contents of their original accusations were accurate and true. In a massive public relations blitz launched on September 26, 2002 and described by one RIAA member executive as "propaganda", the RIAA portrayed those accused of copyright infringement, including Ms. Andersen, as criminals and unsavory "pirates", "thieves", and "shoplifters". During the time that the RIAA and the Record Companies were specifically accusing Ms. Andersen of theft of misogynistic and racist music, these additional disparaging statements and innuendo appeared in major newspapers, were continuously broadcast on national television and radio, and were included in trailers before feature films in theaters nationwide. Even after they were forced to abandon their false claims against Ms. Andersen, their public attacks and humiliation of her continued. On a September 17, 2007 nationwide broadcast of a National Public Radio program ("Marketplace") RIAA Chairman and CEO Mitch Bainwol accused Ms. Andersen of lying when he stated to millions of listeners: "I would remind you that folks, when they have a legal dispute, often can be creative with the way they portray the facts."

7.24    Ms. Andersen remains understandably offended and outraged by Defendants' conduct. She has no interest in the violent, profane, misogynistic, and racist music that the RIAA and its controlled member companies monopolize. Defendants knew that Ms. Andersen listens to only country music and soft rock. In fact, had they undertaken even the most minimal investigation of her, they would have known that Ms. Andersen had for years avidly purchased music from mail order CD clubs and was a loyal customer of the very corporations who were then harassing, threatening, coercing and suing her.

**H.    Defendants Knew about Ms. Andersen's Health Problems**

7.25    Defendants were also aware that their harassment, threats, false claims and the federal lawsuit were significantly damaging to Ms. Andersen. In May 2004, for health reasons

Nationwide Class Action Allegation
Plaintiff's Fourth Amended Complaint - 19

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791

1    Ms. Andersen had been forced to leave her position as a case manager at the Department of

2    Justice. At the time she was targeted by Defendants, she was surviving on disability benefits

3    for painful physical illness, which contributed to stress related anxiety and depression.

4

5    7.26    Before the lawsuit, Ms. Andersen had hoped to return to work, but her

6    psychological and physical symptoms seriously worsened due to Defendants' malicious and

7    outrageous conduct. After being attacked by defendants, rather than completing a return to

8    work program she had to seek additional medical and psychiatric care. Defendants have been

9    aware of the deleterious effect their acts have had on Ms. Andersen's physical and

10   psychological conditions since March 6, 2005, when Ms. Andersen wrote to Settlement Support

11   Center advising of the harm she was suffering because of their conduct.

12

13   7.27    Because the automated litigation scheme was devised to disregard the truth of

14   claims against actual individuals, Defendants refused to undertake any reasonable investigation

15   into the propriety of their claims before or during their wrongful prosecution of claims against

16   Ms. Andersen. They repeatedly refused to even inspect her computer hard drive. After a court

17   order required it and the inspection was finally accomplished in September and October 2006

18   the RIAA Defendants refused to disclose the results. After the results were forced to be

19

20   disclosed, they revealed that the RIAA's own expert determined that Ms. Andersen's computer

21   had not been used to infringe copyrights. No files or remnants of any files allegedly containing

22   copies of the Record Companies' copyrighted recordings were ever found on her computer.

23   7.28    Even then and despite their own experts' determination and all the other proof of

24   her innocence, the RIAA and the Record Companies refused Ms. Andersen's continued pleas

25   that the litigation and ongoing persecution of her stop.

26

7.29    Rather than ending their abuse of her, in January 2007, RIAA-controlled lawyers

Nationwide Class Action Allegation
Plaintiff's Fourth Amended Complaint - 20

Lybeck✦Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791

renewed their threats.  They stated that the Defendant Record Companies would not dismiss their false claims unless Ms. Andersen paid them some undisclosed amount of money.  They wanted it to appear publicly that they had prevailed in their false claims against her.

### I.  **Harassment Increased**

7.30    When Ms. Andersen declined to pay them, Defendants stepped up their abuse and intimidation.    In January 2007, lawyers for the RIAA and the Record Companies demanded the deposition of Ms. Andersen's then 10 year-old daughter, Kylee.  This demand was made after Defendants 1) knew who the real "gotenkito" was; and, 2) after the computer inspection and other evidence showed that Ms. Andersen's computer has not been used for infringement.  The sole purpose of the threatened deposition was to distress, upset and intimidate Ms. Andersen.  Ms. Andersen was understandably upset.  The RIAA and its agents knew that Ms. Andersen was very concerned about her daughter.  As intended, the threat of taking her deposition was causing Ms. Andersen a great deal of physical and emotional distress.

7.31    Knowing of her distress, the RIAA and its agents even attempted to directly contact 10 year-old Kylee.  In February 2007, a paralegal from a law firm retained by the RIAA and the Record Companies called Ms. Andersen's apartment building looking for Kylee.  In April 2007, phone calls were also made to Kylee's former elementary school under false pretenses.  The voice of the woman on the phone claimed to be Kylee's grandma inquiring as to her attendance there.  Ms. Andersen learned of these tactics and was even more frightened and distressed.

7.32    Later, and not until nearly two years after their reckless suit was filed, RIAA lawyers offered to voluntarily dismiss the claims against Ms. Andersen, but <u>even then only if she would first abandon her legal counterclaims against them</u>.  They also emphasized that if she

Nationwide Class Action Allegation
Plaintiff's Fourth Amended Complaint - 21

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

1  did not abandon her legal rights, they would continue to persecute her and her young daughter,

2  and in March 2007 again demanded to interrogate and confront her little girl at the offices of

3  RIAA lawyers.  Again, this was done after Defendants had identified the real "gotenkito" and

4  after the computer inspection had cleared Ms. Andersen.  Despite her distress, Ms. Andersen

5  did not give in.  On March 27, 2007, the court was compelled to enter an order protecting Kylee

6

7  and Ms. Andersen from the aggressive facial confrontations being threatened by the RIAA, the

8  Record Companies and their lawyers.

9        7.33   In April and May 2007, the Record Companies' lawyers insisted on the

10  depositions of little Kylee and several other friends and relatives of Ms. Andersen.  Given the

11  computer inspection and the other exculpatory evidence the Record Companies already had,

12  these depositions were taken for the sole purpose of harassing and intimidating Ms. Andersen.

13  Their goal was to apply further financial and psychological pressure on Ms. Andersen so that

14

15  she would abandon her counterclaims against them.

16  **J.**  **Court Action Forces End to Abuse**

17        7.34   In May 2007, Ms. Andersen was ultimately able to file a motion for summary

18  judgment. This motion required the Defendant Record Companies to submit actual evidence

19  and proof of their baseless claims.  The Record Companies repeatedly delayed the hearing and

20  extended the time deadlines to submit proof even when they knew no such evidence ever

21

22  existed.  In late May, they made one last demand that Ms. Andersen dismiss her counterclaims.

23   When she again refused, the Record Companies had no option and were forced to finally

24  dismiss their case with prejudice on June 1, 2007.  Like many others, Ms Andersen had by then

25  been subjected to the Defendants' abuse, intimidation and humiliation for over two years.

26

      7.35   On September 21, 2007, U.S. Magistrate Judge Donald Ashmanskas, who had

Nationwide Class Action Allegation
Plaintiff's Fourth Amended Complaint - 22

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255  Fax 206-230-7791

presided over the case, ordered that Ms. Andersen was entitled to an award of attorney's fees incurred in defending the Record Companies' false claims against her. In his findings, Judge Ashmanskas concluded that throughout the pendency of this action the Record Companies **"unreasonably rejected or sought to suppress evidence to the extent it tended to exonerate"** Ms. Andersen, and **"exerted a significant amount of control over the course of discovery"**. The court also concluded that the Record Companies' claims were **objectively unreasonable** and **improperly motivated**, explaining that **"[w]hatever [the Record Companies'] reasons for the manner in which they have prosecuted this case, it does not appear to be justified as a reasonable exploration of the boundaries of copyright law."** On January 16, 2008, the Senior U.S. District Judge adopted all of Magistrate Judge Ashmanskas' Findings and Recommendations and granted Ms. Andersen an award of her attorney's fees.

**K.** **Economic Losses and Other Harms Suffered**

7.36    Ms. Andersen, like other class members, knew she had not engaged in copyright infringement as Defendants falsely claimed. Because of their aggressive and relentless claims that they had actual proof, their superior technological knowledge and economic domination, Ms. Andersen invested substantial resources into investigating the integrity of her computer and investigating the claims of infringement made by Defendants. Ms. Andersen also spent additional time and resources locating and consulting with attorneys regarding the false claims made against her. Defendants' false threat that they actually possessed proof that would be used in a lawsuit to ruin her financially caused her great distress. The conduct of the RIAA, the Record Companies and Settlement Support Center caused her medical condition to worsen, requiring that she return to her doctor causing her to be unable to return to work. Like many others in these horrible circumstances, Ms. Andersen did not possess the sophisticated

Nationwide Class Action Allegation
Plaintiff's Fourth Amended Complaint - 23

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

knowledge of copyright law or of computer technology claimed by Defendants.  She, like thousands of others, was without reasonable means to even properly investigate yet effectively the false claims and the federal lawsuit filed against her.

## VIII.   CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
CIVIL CONSPIRACY
*All Defendants*

8.1     Plaintiff realleges and incorporates herein by reference each the allegations set forth above.  Plaintiff makes this claim against all Defendants.

8.2     Each Defendant has acted in concert to harass, threaten, intimidate and attempt to extort payment from Ms. Andersen and thousands of other wrongfully accused individuals. The ultimate goal of the concerted actions was to maintain a virtually complete commercial monopoly of the worldwide distribution of recorded music and to deny market entry to others who wished to distribute music through emerging digital means.  This ultimate purpose was misguided and it was unlawful.  As described in detail above and herein below, Defendants committed numerous overt, unlawful acts in furtherance of this goal, including illegal investigations in violation of ORS 703.405 and ORS 163.725, mail fraud, wire fraud, extortion, criminal coercion in violation of ORS 163.725, misrepresentation, deceit, and intimidation through the initiation and continued prosecution of baseless, wrongful civil actions.

8.3     Defendant RIAA characterizes itself as a "trade group".  It is funded by the Big 4, major multinational music recording companies: EMI, Sony BMG, Universal Music and Warner Music Group.  Each of these companies has many subsidiary member companies.  The RIAA publicly claims that these companies together exercise an actual monopoly and control of the distribution of over 90% of the sound recordings sold in the United States.  The RIAA's

Nationwide Class Action Allegation
Plaintiff's Fourth Amended Complaint - 24

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

primary function is to act however it decides is necessary to maintain its monopoly. Maintaining a monopoly has become a difficult endeavor since advances in technology during the last 10 years have rendered the RIAA's antiquated business model for distribution of music virtually useless and obsolete. MP3 music storage and players are now over 10 years old. Musicians can now self-publish, self-produce and distribute their art to their fans and customers without the burden of the enormous and unfair payments demanded by the RIAA's member companies. Music consumers can now buy only the music they want. The actions of the RIAA and the Big 4 in their desperate attempt to maintain their monopoly have caused great harm to the courts, consumers and also to the artists they purport to represent. Within just the last few weeks, EMI's new president has publicly recognized that filing tens of thousands of automated lawsuits against its customers without regard to actual proof of infringement is not a "sustainable business model". At best, if perfectly implemented and completed Defendants' conspiracy and its resultant unlawful acts rely entirely on an illegal private investigation that can only identify an internet protocol address that may at a historical time have been associated with or assigned to one or more computers or router devices. Individuals cannot be identified but suits are falsely filed against individuals by the tens of thousands any way.

8.4     The overt unlawful acts Defendants committed in furtherance of their conspiracy are described in detail above. In this conspiracy, the RIAA and Record Companies hired MediaSentry. MediaSentry conspired to develop and then implement investigations known to be flawed and illegal which wrongfully implicated innocent individuals. Information from these investigations was provided by the RIAA and Record Companies to Settlement Support Center who made fraudulent statements to and harassed, coerced and/or extorted money from, individuals identified by MediaSentry. Agents of the RIAA and the Record Companies also

Nationwide Class Action Allegation
Plaintiff's Fourth Amended Complaint - 25

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

1   made fraudulent statements to the individuals, and engaged in further coercion, harassment

2   and/or extortion.

3       8.5     Each of the Defendants acting in concert financially benefited from their

4   participation in the common conspiracy. Accordingly, each of Defendants must be held liable to

5   Plaintiff and all others similarly situated for the wrongful acts committed by one or more of the

6   others.  Defendants' conduct resulted in damages to Plaintiff and all others similarly situated in

7   an amount to be specifically proven at trial.  Ms. Andersen has suffered economic and personal

8   injury damages that will be fully proved at trial.

9

10                          **SECOND CLAIM FOR RELIEF**
                            WRONGFUL INITIATION OF CIVIL PROCEEDINGS
11                          *Defendants RIAA and Record Companies*

12      8.6     Plaintiff realleges and incorporates herein by reference each the allegations set

13  forth above.  Plaintiff makes this claim against the RIAA and the Record Companies.

14

15      8.7     Despite knowing that their flawed and illegal investigation scheme did not

16  provide actual proof of individual infringement and did not give rise to probable cause for

17  commencing and then prosecuting civil proceedings against Plaintiff and the other class

18  members, the RIAA and the Record Companies relied on and continues to rely on this same

19  illegal and flawed investigation information as the sole basis for the false claims, both in their

20  initial information-farming "John" or "Jane Doe" actions to obtain subpoena power, and later in

21  the automated lawsuits filed against Tanya Andersen and other individuals.

22

23      8.8     Prior to commencing their abusive sham litigation against Ms. Andersen, the

24  RIAA and the Record Companies were aware of but totally disregarded the fact that their suit

25  against Ms. Andersen was without evidentiary basis.  They also were aware of her physical and

26  psychological conditions which were deteriorating and worsening as a result of their threats of

Nationwide Class Action Allegation
Plaintiff's Fourth Amended Complaint - 26

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

1   litigation and financial ruin.  Still they sued Ms. Andersen claiming she was "gotenkito" and

2   had infringed on their music copyrights.

3       8.9     Despite her repeated offers, the RIAA and the Record Companies refused to

4   inspect Plaintiff's computer prior to commencing litigation. After a court order required it, the

5   inspection was finally done in September and October 2006.  Thereafter, the RIAA and the

6   Record Companies willfully refused to disclose the results of the inspection.  This was because

7   the RIAA's own expert had determined that Plaintiff's computer had not been used to infringe

8   copyrights.   No files or remnants of any files allegedly containing copies of the Record

9
10  Companies' copyrighted recordings were ever found on her computer.

11      8.10    Despite their own expert's determination and all the other proof of Ms.

12  Andersen's innocence, the RIAA and the Record Companies still refused to abandon their

13  claims.

14

15      8.11    Since at least September 2006, the RIAA and the Record Companies had known

16  of a 30 year-old man who had widely used the name "gotenkito" on various websites.  The

17  same man had also admitted to downloading copyrighted materials on the internet.  Even after

18  Plaintiff independently discovered this man and supplied his contact information to the RIAA

19  and the Record Companies, they willfully refused to investigate and pursue him in the same

20  manner as they did Plaintiff, and instead continued their vexatious sham litigation against

21
22  Plaintiff.

23      8.12    The RIAA and the Record Companies abusively filed and then prosecuted this

24  baseless sham litigation against Plaintiff for nearly two years, ignoring her many pleas that the

25  sham litigation cease.  They were at all times aware of the total lack of probable cause for

26  commencing and prosecuting it, and the serious harm it caused to Plaintiff.

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

8.13    The proceedings terminated in Ms. Andersen's favor upon the unconditional dismissal with prejudice of the claims against her on June 1, 2007.

8.14    U.S. Magistrate Judge Donald Ashmanskas concluded in his September 21, 2007 findings that the Record Companies' prosecution of the litigation against Plaintiff had been objectively unreasonable and improperly motivated.  Specifically, the court found:

> **[the Record Companies'] failure to contact a third party, who potentially was the actual infringer, until April 2007, as well as their position that his denials were credible, while defendant's were not, are also relevant to the third Fogerty factor—objective unreasonableness.  Without applying the benefit of hindsight, these facts indicate that, in significant ways, [the Record Companies] did not conduct themselves in an objectively reasonable manner, i.e., in a manner to be expected from a reasonable copyright holder pursuing relief from a party it believed to be infringing.**
>
> **…**
>
> **An objectively reasonable copyright holder would seek to hold liable and deter the person who actually violated the Copyright Act.**
>
> **…**
>
> **Whatever [the Record Companies'] reasons for the manner in which they have prosecuted this case, it does not appear to be justified as a reasonable exploration of the boundaries of copyright law.**

In January 2008, the Senior U.S. District Judge adopted the Magistrate Judge's findings.

8.15    Defendants' conduct was malicious, and was intended to serve the primary purpose of intimidating, coercing, and threatening Plaintiff and others similarly situated, not securing an adjudication of any copyright claims.

8.16    The conduct of the RIAA and the Record Companies described above proximately caused direct and consequential monetary, physical, and psychological harms to Plaintiff and all others similarly situated, resulting in damages in an amount to be proven at trial.

Nationwide Class Action Allegation
Plaintiff's Fourth Amended Complaint - 28

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255  Fax 206-230-7791

### THIRD CLAIM FOR RELIEF
ABUSE OF LEGAL PROCESS
*Defendants RIAA and Record Companies*

8.17    Plaintiff realleges and incorporates herein by reference each of the allegations set forth above.  Plaintiff makes this claim against the RIAA and the Record Companies.

8.18    As detailed above and herein, the RIAA and the Record Companies pursued litigation against Plaintiff, and many processes attendant to that litigation (including the filing of an initial information-farming "John" and "Jane Doe" action to obtain subpoena power), not for purposes of protecting or vindicating the copyrights purportedly at issue, but instead for the primary unlawful purpose of intimidating Plaintiff and the general public in order to maintain and preserve as long as possible their monopolistic control over the world's market for the distribution of sound recordings.

8.19    That the RIAA and the Record Companies were abusing the litigation process to achieve their ulterior purpose is demonstrated by their knowing reliance (as the sole basis for their claims) on a flawed and illegal investigation that could not identify Plaintiff; their use of a boilerplate complaint containing generic, vague claims; their willful refusal to investigate and pursue an individual actually known as "gotenkito" (who was much more likely responsible for the alleged infringing acts); their refusal to dismiss the action even after obtaining substantial evidence exculpating Plaintiff; and their misuse of the discovery process in order to harass and coerce Plaintiff into making an undeserved payment of money and/or abandoning her legal rights.

8.20    As set forth above, the RIAA and the Record Companies engaged in willful acts in the course of the sham litigation which were aimed at achieving their illegitimate objectives.  Although an investigation of Plaintiff's computer prior to the litigation or at its outset could

Nationwide Class Action Allegation
Plaintiff's Fourth Amended Complaint - 29

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

have yielded critical evidence necessary to evaluation of their claims, the RIAA and the Record Companies repeatedly refused Ms. Andersen's offer to inspect her computer hard drive. After a court order required it, the inspection was finally done in September and October 2006. Thereafter, the RIAA and the Record Companies willfully refused to disclose to Ms. Andersen the results of the inspection of her computer. This was because the RIAA's own expert had determined that Plaintiff's computer had not been used to infringe copyrights. No files or remnants of any files allegedly containing copies of the Record Companies' alleged copyrighted recordings were ever found on her computer.

8.21    As also set forth above, despite their own expert's determination and all the other proof of Plaintiff's innocence, the RIAA and the Record Companies refused to voluntarily dismiss their claims against her.

8.22    Rather than ending their abuse of her, RIAA-controlled lawyers renewed their threats. They would not dismiss their false claims unless Plaintiff paid them some undisclosed amount of money. They wanted it to appear publicly that they had prevailed.

8.23    When Plaintiff declined to pay them, in late January 2007 lawyers for the RIAA and the Record Companies demanded the deposition of her then 10 year-old daughter Kylee. The demand came after the computer inspection and other evidence showed that Plaintiff's computer has not been used for infringement; the deposition was totally unnecessary. The RIAA and its agents knew that Plaintiff was very concerned about her daughter and the threat of taking her daughter's deposition was causing her a great deal of distress.

8.24    Knowing of her distress, the RIAA and its agents even attempted to directly contact Kylee under the guise of a need to serve subpoenas and/or deposition notices. In February 2007, a paralegal from the law firm retained by the RIAA and the Record Companies

Nationwide Class Action Allegation
Plaintiff's Fourth Amended Complaint - 30

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255  Fax 206-230-7791

called Plaintiff's apartment building looking for Kylee.  This attempt at direct contact was completely unnecessary; the customary and professional procedure for effecting the deposition of Plaintiff's child would have been to simply provide notice to Plaintiff's counsel.

8.25    In April 2007, phone calls were also made to Kylee's former elementary school under false pretenses.  The voice of the woman on the phone claimed to be Kylee's grandma inquiring as to her attendance.  Plaintiff learned of these tactics and was even more frightened and distressed.

8.26    Since at least September 2006, the RIAA and the Record Companies had known of a 30 year old man who had widely used the name "gotenkito" on various websites.  The same man had also admitted to downloading copyrighted materials on the internet.  Even after Plaintiff independently discovered this man and supplied his contact information to the RIAA and the Record Companies, they willfully refused to investigate and pursue him in the same manner as they did Plaintiff, and instead continued their vexatious sham litigation against Plaintiff.

8.27    It was not until nearly two years after their baseless suit was recklessly filed, that the RIAA lawyers initially offered to voluntarily dismiss the Record Companies' claims against Plaintiff, but only if she abandoned her legal counterclaims against them.  The lawyers also threatened that if she did not abandon her legal rights, they would continue to persecute her and her young daughter.  In fact, when Ms. Andersen insisted on protecting her rights, in March 2007, Defendants again demanded to interrogate and confront her little girl at the offices of RIAA lawyers.  Despite her distress, Plaintiff refused to give in.  On March 27, 2007, Judge Ashmanskas intervened and entered an order protecting Kylee and Plaintiff from the aggressive facial confrontation threatened by the RIAA and its agents.

Nationwide Class Action Allegation
Plaintiff's Fourth Amended Complaint - 31

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

8.28    In April and May 2007, a lawyer for the RIAA and the Record Companies interrogated Kylee.  Several other friends and relatives of Plaintiff were also interrogated.  Again, this was done despite the fact that computer inspection had been done, "gotenkito" had been identified and other exculpatory evidence established Ms. Andersen's innocence.  These depositions were entirely unnecessary and were intended by the RIAA and the Record Companies to apply further financial pressure and psychological distress on Plaintiff in an effort to cause her to abandon her counterclaims.

8.29    U.S. Judge Donald Ashmanskas concluded in his September 21, 2007 findings that the Record Companies' prosecution of the litigation against Plaintiff had been objectively unreasonable and improperly motivated.  Specifically, the court found:

> **[the Record Companies'] failure to contact a third party, who potentially was the actual infringer, until April 2007, as well as their position that his denials were credible, while defendant's were not, are also relevant to the third Fogerty factor—objective unreasonableness.  Without applying the benefit of hindsight, these facts indicate that, in significant ways, [the Record Companies] did not conduct themselves in an objectively reasonable manner, i.e., in a manner to be expected from a reasonable copyright holder pursuing relief from a party it believed to be infringing.**
> **…**
> **An objectively reasonable copyright holder would seek to hold liable and deter the person who actually violated the Copyright Act.**
> **…**
> **Whatever [the Record Companies'] reasons for the manner in which they have prosecuted this case, it does not appear to be justified as a reasonable exploration of the boundaries of copyright law.**

In January 2008, the Senior U.S. District Judge adopted the Magistrate Judge's findings.

8.30    The abusive conduct of the RIAA and the Record Companies proximately resulted in damages to Plaintiff and other members of the class in an amount to be specifically proven at trial.

Nationwide Class Action Allegation
Plaintiff's Fourth Amended Complaint - 32

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

1

2                                **FOURTH CLAIM FOR RELIEF**
                                NEGLIGENCE / NEGLIGENCE *PER SE*
3                            *Defendants MediaSentry, RIAA and Record Companies*

4          8.31    Plaintiff realleges and incorporates herein by reference each the allegations set
5
forth above.  Plaintiff makes this claim against MediaSentry, the RIAA and the Record
6
Companies.
7

8          A.      **Negligence *Per Se* – MediaSentry**

9          8.32    The RIAA and the Record Companies hired Defendant MediaSentry to act as
10
their agent to devise and implement the private investigation of tens of thousands of private
11
U.S. citizens.  MediaSentry is presumed negligent and is negligent *per se* as it devised and
12
actually engaged in tens of thousands of illegal private investigation conducted in violation of
13
ORS 703.405.  Violation of ORS 703.405 is a misdemeanor crime. ORS 703.993.  The purpose
14
of this Oregon law requiring licensing of private investigators (and of similar laws in other
15
states) is to protect the public including Ms. Andersen from flawed, unethical and incompetent
16
investigators and the very harm which these Defendants caused her to suffer.
17

18         8.33    The negligent conduct described above proximately caused direct damages to
19
Plaintiff and to all others similarly situated in an amount to be proven at trial.
20

21         B.      **Negligence *Per Se* / Vicarious Liability of RIAA and Record Companies**

22         8.34    The RIAA and the Record Company Defendants are vicariously liable for the
23
negligence of their agent MediaSentry in its conduct of flawed, unethical, incompetent and
24
illegal investigations.
25
26         8.35    The RIAA and the Record Companies had the ability to and actually controlled
the conduct of their agent MediaSentry, and, at all relevant times, MediaSentry was acting in

Nationwide Class Action Allegation
Plaintiff's Fourth Amended Complaint - 33

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

1    the scope of conduct that the RIAA and the Record Companies had directed.

2         8.36    The negligent conduct described above proximately caused direct damages to

3    Plaintiff and to all others similarly situated in an amount to be proven at trial.

4         **C.      Direct Negligence of RIAA and Record Companies – Heightened Duty**

5         8.37    The RIAA and the Record Companies actually controlled the actions of their

6    agent, MediaSentry.  These Defendants publicly claim to have special expertise in conducting

7    investigations, influencing politicians, and have experience in filing sham lawsuits against

8    thousands of private American citizens.  In fact, the RIAA's president, Cary Sherman, is a 1971

9    graduate of Harvard Law School.  He was formerly senior partner in one of this country's best

10   known law firms.  The RIAA publicly proclaims that Mr. Sherman is "one of the top copyright

11   attorneys in the country."  Mr. Sherman, the RIAA and the Record Companies know what is

12   legally required to file, pursue and prove copyright infringement.  They know what is legally

13   permissible, what is criminal and what is a sham.

14        8.38    The RIAA and the Record Companies owed a duty to Plaintiff and the class

15   members to act legally, reasonably and responsibly to avoid foreseeable harm to them.  This

16   duty arose when it decided to engage in criminal, invasive and personally threatening activities

17   which it knew or should have known would result in foreseeable, harm to Plaintiff and the

18   putative class members.  These activities, which are described in detail above and herein below,

19   include the RIAA's and Record Companies' actions in concert with Defendant MediaSentry in

20   designing, implementing, overseeing and controlling the criminal and flawed private

21   investigation scheme which improperly misidentified Plaintiff and the class members as

22   copyright infringers, causing harm to Plaintiff and the class when they were later subjected to

23   improper threats, coercion, extortion and sham litigation as a result.

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

8.39    Because of their illegal conduct and their specialized knowledge and expertise in the realm of copyright law and computer technology <u>and because they provided legal advice (albeit false and misleading) to Plaintiff and other class members</u>, the RIAA owed a heightened duty to Plaintiff and the class to avoid foreseeable harm to them.

8.40    The negligent conduct described above proximately caused direct damages to Plaintiff and to all others similarly situated in an amount to be proven at trial.

**D.    <u>Direct Negligence of RIAA and Record Companies – General Duty</u>**

8.41    The RIAA and Record Companies owed Plaintiff and the putative class members a common law duty to act reasonably, responsibly and legally so as to avoid causing foreseeable harm to them.

8.42    Especially in light of their specialized knowledge, the RIAA and the Record Companies acted negligently in one or more of the following ways:

a.    When they conspired and coordinated with MediaSentry to devise a criminal scheme to conduct illegal private investigations of Plaintiff and other class members that they knew were flawed and prone to erroneously identify innocent private citizens.

b.    When it retained MediaSentry to conduct illegal private investigations of Plaintiff and other class members' personal information when they knew or should have known that MediaSentry was not licensed to conduct private investigations.

c.    When they conspired and coordinated with MediaSentry to devise a criminal scheme to conduct private investigations of Plaintiff and other class members that they knew or should have known were flawed in that the investigations were not capable of identifying the individuals who allegedly actually engaged in copyright infringement.

d.    When they continued to use the illegal and flawed investigations to threaten and intimidate and pursue sham litigation against Plaintiff and other members of the class even after repeated reports of illegality and knowledge of the flaws in the investigations surfaced in cases across the country.

Lybeck◇Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

1

2
    e.       When they sent communications to Plaintiff and other class members
which failed to disclose the illegality of the investigation, the possibility
3
of misidentification, and the true nature of "evidence" against them
which had "already been secured".

4

5
    f.       When they engaged in threatening, instigating, and/or prosecuting
baseless sham litigation against Plaintiff and other members of the class,
and/or directed or controlled others in engaging in these acts.

6

7
    g.      When they failed to properly investigate the true identity of "gotenkito",
both before first threatening Plaintiff, and after his true identity was
8
supplied to them by her and was otherwise known to them.

9
    8.43     The negligent conduct described above proximately caused direct damages to

10
Plaintiff and to all others similarly situated in an amount to be proven at trial.

11
    **E.**       **Direct Negligence of Settlement Support Center – General Duty**

12

13
    8.44     Settlement Support Center owed Plaintiff and the putative class members a

14
common law duty to act reasonably, responsibly and legally so as to avoid causing foreseeable

15
harm to them.

16
    8.45     Settlement Support Center acted negligently in one or more of the following

17
ways.

18

19
    a.       When it made false and misleading oral and/or written communications
to Plaintiff and other class members which failed to disclose the
20
illegality of the investigation, the possibility of misidentification, and the
true nature of "evidence" against them which had "already been
21
secured".

22
    b.       When it relied on information that it knew or should have known was
flawed, illegally collected, and provided by Defendants RIAA and
23
MediaSentry, in communicating with Plaintiff and other putative class
members in attempt to coerce payments.
24

25
    8.46     The negligent conduct described above proximately caused direct damages to
26
Plaintiff and to all others similarly situated in an amount to be proven at trial.

Lybeck◇Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA 98040-2334
206-230-4255  Fax 206-230-7791

1

2

3

**FIFTH CLAIM FOR RELIEF**
INJUNCTIVE AND DECLARATORY RELIEF
*All Defendants*

4

5

6

7

8.47    In view of the unlawful and harmful conduct above, Plaintiff requests that this court enter injunctive relief necessary to prevent the Defendants from continuing to engage in criminal investigations of private American citizens.

8

9

10

8.48    Plaintiff requests that this court enter an order as soon as practicable declaring that the Defendants' conduct in the course of their private investigations as detailed above is unlawful.

11

12

13

14

8.49    Plaintiff requests that this court enter an order as soon as practicable also declaring that the fruits of the illegal investigations not be further used to conduct the ongoing conspiracy of sham litigation against private American citizen.

15

**IX.    PRAYER FOR RELIEF**

16

17

WHEREFORE, Plaintiff Tanya Anderson, individually and on behalf of others similarly situated, prays for:

18

19

a.    All direct and consequential damages necessary to compensate Plaintiff and the other members of the class;

20

21

b.    Injunctive and declaratory relief;

22

c.    Attorneys' fees and costs awardable;

23

d.    For post-judgment interest on the entire judgment until paid in full;

24

e.    For punitive damages;

25

f.    For such other and further relief as the Court may deem just and equitable.

26

**DEMAND FOR JURY TRIAL**

Nationwide Class Action Allegation
Plaintiff's Fourth Amended Complaint - 37

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

1   Plaintiff requests a trial by jury.

2

3   Respectfully submitted this <u>1st</u> day of May, 2008.

4           Lybeck Murphy, LLP

5

6          By:  <u>*/s/ Lory R. Lybeck*</u>

            Lory R. Lybeck (OSB #83276)

7          Attorneys for plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Lybeck❖Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791

1

2

3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**

4

5

     I hereby certify that on the 1st day of May, 2008, I electronically filed the foregoing Fourth Amended Complaint with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

6

7

8

9

10

11

     Kenneth R. Davis, II
     davisk@lanepowell.com
     William T. Patton
     pattonw@lanepowell.com
     Lane Powell PC
     601 SW Second Avenue, Suite 2100
     Portland, OR 97204
     503-778-2100/phone
     503-778-2200/fax
     Email:

12

13

14

15

16

     Timothy Reynolds, *Admitted Pro Hac Vice*
     timothy.reynolds@hro.com
     Richard Gabriel, *Admitted Pro Hac Vice*
     Richard.Gabriel@hro.com
     Amy Bauer, *Admitted Pro Hac Vice*
     amy.bauer@hro.com
     HOLME, ROBERTS & OWEN LLP
     1700 Lincoln Street, Ste. 4100
     Denver, CO 80203
     Telephone:  (303) 861-7000
     Facsimile:  (303) 866-0200

17

18

     All parties are registered as CM/ECF participants for electronic notification.

19

     DATED at Mercer Island, Washington, this 1st  day of May, 2008.

20

21

22

23

24

25

          By:  __ *s/ Lory R. Lybeck* _____
               Lory R. Lybeck (OSB #83276)
               Benjamin R. Justus, admitted *pro hac vice*
     Attorneys for Plaintiff
     Lybeck Murphy, LLP
     7525 SE 24th Street, Ste. 500
     Mercer Island, WA 98040
     (206) 230-4255 /phone
     (206) 230-7791 /fax
     lrl@lybeckmurphy.com

26

Nationwide Class Action Allegation
Plaintiff's Fourth Amended Complaint - 39

Lybeck◆Murphy LLP
7525 SE 24th Street, Ste. 500
Mercer Island, WA  98040-2334
206-230-4255   Fax 206-230-7791