IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TANYA ANDERSEN,                           07-CV-934-BR

          Plaintiff,                      OPINION AND ORDER

v.

ATLANTIC RECORDING
CORPORATION, a Delaware
corporation; PRIORITY RECORDS
LLC, a California limited
liability company; CAPITOL
RECORDS, INC., a Delaware
corporation; UMG RECORDINGS,
INC., a Delaware corporation;
BMG MUSIC, a New York general
partnership; RECORDING
INDUSTRY ASSOCIATION OF
AMERICA; SAFENET, INC. f/k/a
MEDIASENTRY, INC., a Delaware
corporation; and SETTLEMENT
SUPPORT CENTER, LLC, a
Washington limited liability
company,

          Defendants.

1   -   OPINION AND ORDER

**LORY RAY LYBECK**
**BENJAMIN R. JUSTUS**
Lybeck Murphy, LLP
7525 SE 24th Street, Suite 500
Mercer Island, WA 98040-2336
(206) 230-4255

**COREY D. MCGAHA**
**JAMES C. WYLY**
**LEISA B PEARLMAN**
**RICHARD A. ADAMS**
**SHIVALI SHARMA**
**REID D. MILLER**
Patton, Roberts, McWilliams, & Capshaw, LLP
Century Bank Plaza, Suite 400
2900 St. Michael Drive
Texarkana, TX 75503
(903) 334-7000

        Attorneys for Plaintiff

**KENNETH R. DAVIS, II**
**WILLIAM T. PATTON**
**PARNA A. MEHRBANI**
Lane Powell P.C.
601 S.W. Second Avenue, Suite 2100
Portland, OR 97204-3158
(503) 778-2121

**AMY BAUER**
**LINNEA BROWN**
**TIMOTHY M. REYNOLDS**
Holme Robert & Owen, LLP
1700 Lincoln Street, Suite 4100
Denver, CO 80203
(303) 866-0417

        Attorneys for Defendants

**BROWN, Judge.**

    This matter comes before the Court on Defendants' Motion
(#127) for Summary Judgment, Plaintiff's Motion (#165) to Compel
Defendants to Produce Documents, and Plaintiff's Motion (#170) to

2   -   OPINION AND ORDER

Supplement the Record on Summary Judgment.  For the reasons that follow, the Court **GRANTS** Defendants' Motion for Summary Judgment with respect to all aspects of Plaintiff's claims that arise from Defendants' initiation of civil proceedings against Plaintiff; **DENIES** Plaintiff's Motion to Compel; and **DENIES** Plaintiff's Motion to Supplement the Record.

<u>**BACKGROUND**</u>

The following facts are undisputed or, if disputed, are viewed in the light most favorable to Plaintiff Tanya Andersen.

Peer-to-peer (P2P) networks where individual users can share files via folders on their own computers (shared folders) rather than uploading them to and/or downloading them from a central server provide individuals with a simple and relatively anonymous way to upload and to download perfect copies of copyright-protected works.

In 2002 Defendants Atlantic Recording Corporation; BMG Music; Capitol Records, Inc.; Priority Records, LLC; Recording Industry Association of America (RIAA); and UMG Recordings, Inc. (hereinafter referred to collectively as Record Companies), sought to solve the problem of massive piracy of their copyrighted works through P2P systems by commencing an Enforcement Program designed to identify and to pursue individuals who directly infringe through the use of P2P

networks.

To implement the Enforcement Program, the Record Companies engaged MediaSentry, Inc.,[1] to observe and to document infringing activity by logging on to P2P networks and downloading copyrighted works while recording the Internet Protocol (IP) address of the computer or router where the shared folder was located.  MediaSentry developed automated software that queried the P2P network, placed a firewall around MediaSentry's activities to ensure there was not any interference, downloaded the copyrighted works in question, and recorded the IP address of the computer or router that contained the alleged infringer's shared folder.

On the morning of May 20, 2004, MediaSentry, using this process, observed and recorded that a person using the screen name "gotenkito" was logged on to the KaZaA network where gotenkito had a shared folder.  This shared folder held unauthorized copies of copyrighted sound recordings.  The copyrights for these recordings belong to the Record Companies. Using its automated process, MediaSentry downloaded several of the sound recordings from gotenkito's shared folder.  During this process, MediaSentry identified the IP address assigned to the

---

[1] Defendant Safenet, Inc., was known as MediaSentry at the time of the events giving rise to the issues in this matter.

4    -    OPINION AND ORDER

computer or router containing gotenkito's shared folder as
4.41.209.23.

After obtaining the IP address, the Record Companies filed
*Caroline Records, Inc. v. Does 1-175*, No. 04-CV-02028 (Doe
lawsuit), in the United States District Court for the District of
Columbia.  The Record Companies listed the IP addresses used by
gotenkito and other "Doe" defendants.  Based on the Doe lawsuit,
the Record Companies obtained a subpoena requiring Verizon
Online, the Internet Service Provider (ISP) responsible for
assigning IP address 4.41.209.23 on May 20, 2004, to identify to
whom they leased the IP address.  Verizon Online disclosed to the
Record Companies that IP address 4.41.209.23 was leased to
Plaintiff and assigned to her computer or router as of May 20,
2004, which was the date MediaSentry downloaded files from
gotenkito's shared folder on KaZaA.  Verizon Online confirmed
that information on two separate occasions.

## PROCEDURAL BACKGROUND

Based on the information obtained from Verizon Online, the
Record Companies filed a Complaint (First Action) in this Court
on June 24, 2005, alleging Plaintiff infringed their copyrights.
On September 30, 2005, and March 27, 2007, Plaintiff, as the
defendant in the first action, filed an Answer and "Second
Answer" against the Record Companies alleging Counterclaims for

5   -   OPINION AND ORDER

(1) electronic trespass; (2) computer fraud and abuse under 18 U.S.C. § 1030; (3) invasion of privacy; (4) abuse of legal process; (5) fraud and negligent misrepresentation; (6) outrage; (7) deceptive business practices; and (8) violations of Oregon's Racketeer Influenced and Corrupt Organizations Act (ORICO), Oregon Revised Statute § 166.715, *et seq.*

Meanwhile on June 22, 2007, Plaintiff filed her Complaint in this matter alleging claims against Defendants similar to the Counterclaims that she alleged in the First Action.  On August 15, 2007, Plaintiff filed a First Amended Complaint.

On September 12, 2007, the Record Companies and Defendant Settlement Support Center, LLC, filed a Motion to Dismiss Plaintiff's First Amended Complaint.  On October 22, 2007, Defendant Safenet also filed a Motion to Dismiss Andersen's First Amended Complaint.

On January 14, 2008, the Counterclaims in the First Action were dismissed without prejudice to Plaintiff to have them heard as part of this matter.

On February 19, 2008, this Court dismissed Plaintiff's First Amended Complaint on the ground that Plaintiff had not adequately stated claims for relief.  Plaintiff filed a Second Amended Complaint on March 14, 2008.  On March 31, 2008, the Court granted Plaintiff leave to file a Third Amended Complaint to correct defects in her Second Amended Complaint, which she did on

6   -   OPINION AND ORDER

April 17, 2008, but on April 21, 2008, the Court struck
Plaintiff's Third Amended Complaint and granted her leave to file
a Fourth Amended Complaint.

On May 1, 2008, Plaintiff filed her Fourth Amended Complaint
in which she alleges claims for (1) civil conspiracy against all
Defendants, (2) wrongful initiation of civil proceedings against
the Record Companies, (3) abuse of legal process against the
Record Companies, and (4) negligence and/or negligence *per se*
against all Defendants.

On April 2, 2009, Plaintiff filed a Motion for Class
Certification.

On May 8, 2009, Defendants filed their Motion for Summary
Judgment in which they seek summary judgment on all of
Plaintiff's claims on the basis of the *Noerr-Pennington* Doctrine.
*See Prof'l Real Estate Inv., Inc. v. Columbia Pictures Indus.,
Inc.*, 508 U.S. 49, 62-63 (1993).

On October 6, 2009, Plaintiff filed a Motion to Compel
Defendants to Produce Documents.

On October 19, 2009, the Court heard oral argument on
Defendants' Motion for Summary Judgment and Plaintiff's Motion to
Compel.  The Court noted Defendants' briefing only addressed
whether the *Noerr-Pennington* Doctrine bars Plaintiff's claims
arising from initiation of the First Action and did not address
whether the Doctrine bars Plaintiff's claims based on the

7   -  OPINION AND ORDER

continuation of the First Action.  Accordingly, the Court sought
clarification from Defendants as to this issue.  Defendants
conceded their Motion addressed only whether *Noerr-Pennington*
bars Plaintiff's claims arising from the initiation of the First
Action.  The Court, therefore, construed Defendants' Motion as
only against those claims arising from Defendants' initiation of
civil proceedings against her in the First Action and reserved
the issues as to (1) whether *Noerr-Pennington* bars Plaintiff's
claims arising from Defendants' continuation of civil proceedings
and (2) whether class certification is appropriate.  The Court
concluded the threshold question under *Noerr-Pennington* needed to
be resolved first because of its potential impact on the
remaining issues.  In addition, because the parties agreed
Plaintiff's Motion to Compel would be moot if the Court granted
Defendants' Motion for Summary Judgment, the Court advised it
would first resolve that Motion before addressing Plaintiff's
Motion to Compel.

On October 28, 2009, Plaintiff filed a Motion to Supplement
the Summary Judgment record in which she requests the Court to
consider certain documents that she was unable to include in her
Response to Defendants' Motion for Summary Judgment because those
documents are not in her possession.  For example, when deciding
Defendants' Motion for Summary Judgment, Plaintiff asks the Court
to consider the documents that are the subject of Plaintiff's

Motion to Compel even though the parties agreed at oral argument that these documents are not relevant to Defendants' Motion. Plaintiff also requests the Court to consider unredacted copies of the Record Companies' agreements with MediaSentry and the March 4, 2004, deposition of Gary Millin, MediaSentry's former president, which was taken in *BMG Canada v. John Doe*, a case brought in Canada by Canadian record companies.

Accordingly, Defendants' Motion for Summary Judgment against Plaintiff's claims arising from Defendants' initiation of civil proceedings, Plaintiff's Motion to Compel, and Plaintiff's Motion to Supplement the Record are currently before the Court.

## <u>DEFENDANTS' MOTION FOR<br>SUMMARY JUDGMENT</u>

### <u>Standards</u>

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id*.

An issue of fact is genuine "'if the evidence is such that a

9  -  OPINION AND ORDER

reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Id.*  "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment.  *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990).  When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9th Cir. 2004), *as amended by* 410 F.3d 1052, 1055 (9th Cir. 2005)(citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material.  *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment.  *Id.*

## DISCUSSION

Defendants contend they had an objective basis for initiating proceedings against Plaintiff under the *Noerr-Pennington* doctrine, and, therefore, Plaintiff's claims are barred to the extent they arise out of acts incidental to Defendants' initiation of litigation.  Plaintiff asserts Defendants engaged in sham litigation, which precludes protection under the *Noerr-Pennington* Doctrine.

## I.    *Noerr-Pennington Doctrine.*

"The *Noerr-Pennington* doctrine allows private citizens to exercise their First Amendment rights to petition the government without fear of antitrust liability." *Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*, 552 F.3d 1033, 1044 (9th Cir. 2009)(citation omitted).  The Doctrine has been held to apply outside of the antitrust context and "appl[ies] with full force in other statutory contexts." *Sosa v. DirecTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006).  In addition, the Doctrine has been "articulated as a principle of statutory construction rather than a privilege, . . . protects federal constitutional rights[, and, therefore,] . . . applies in all contexts," including state-law tort claims. *Theme Promotions v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008).

"[N]ot only petitions sent directly to the court in the course of litigation, but also conduct incidental to the conduct

11   -  OPINION AND ORDER

of the suit is protected by the *Noerr-Pennington* doctrine."
*Sosa*, 437 F.3d at 934-35.  Accordingly, communications between
private parties are subject to the Doctrine.  *Id.*

"An entity loses *Noerr-Pennington* immunity . . . if its
conduct falls within the 'sham' exception to the doctrine."
*Kaiser*, 552 F.3d at 1044.  There are "three situations where the
sham exception applies."  *Id.* at 1045.

> First, where the lawsuit is objectively
> baseless and the defendant's motive is
> bringing it was unlawful; second, where the
> conduct involves a series of lawsuits brought
> pursuant to a policy of starting legal
> proceedings without regard to the merits and
> for an unlawful purpose; and third, if the
> allegedly unlawful conduct consists of making
> intentional misrepresentations to the court.

*Id*.  The individual asserting the sham exception has the burden
to prove the litigation in question is without an objective
basis.  *Prof'l Real Estate Investors*, 508 U.S. at 62-63.  "Only
if challenged litigation is objectively meritless may a court
examine the litigant's subjective motivation."  *Id.* at 60.

The Ninth Circuit "do[es] not lightly conclude in any *Noerr-
Pennington* case that the litigation in question is objectively
baseless, as doing so would leave that action without the
ordinary protections afforded by the First Amendment, a result
[the court] would reach only with great
reluctance."  *White v. Lee*, 227 F.3d 1214, 1232 (9th Cir. 2000).

## II.   Whether Defendants' First Action was an objectively baseless action that precludes protection under the *Noerr-Pennington* Doctrine.

Plaintiff contends Defendants' prelitigation conduct, demand letter, and the First Action were all objectively baseless and, therefore, fall within the sham exception to the *Noerr-Pennington* Doctrine.

As noted, to establish sham litigation with respect to a single action, Plaintiff must show that action was "objectively baseless in the sense that no reasonable litigator could realistically expect success on the merits." *See Prof'l Real Estate Investors*, 508 U.S. at 60.

> The existence of probable cause to institute legal proceedings precludes a finding [of] sham litigation. The notion of probable cause, as understood and applied in the common law tort of wrongful civil proceedings, requires the plaintiff to prove the defendant lacked probable cause to institute an unsuccessful civil lawsuit. . . . Probable cause to institute civil proceedings requires no more than a reasonable belief that there is a chance that a claim may be held valid upon adjudication.

*Id.* at 62 (citations and quotations omitted).

Defendants argue the IP address of the computer that housed gotenkito's shared folder was leased to Plaintiff, and, therefore, probable cause existed to believe Plaintiff's computer was being used for infringing conduct. Defendants contend, therefore, that they had a reasonable belief that Plaintiff was the infringer and that there was "a chance" an infringement claim

13  -  OPINION AND ORDER

against Plaintiff would be "held valid upon adjudication" notwithstanding the fact that the action against Plaintiff ultimately proved unsuccessful.  Plaintiff, however, contends Defendants' Enforcement Program did not accurately identify potential infringers, and, therefore, there was not "a chance" that a claim of infringement against a user that was identified pursuant to Defendants' methods would be upheld.

In *Sosa v. DirecTV, Inc.*, the Ninth Circuit addressed a similar question.  The defendant, a satellite television company, identified a group of individuals that it suspected may have been improperly receiving its signal based on a list of those people who had purchased equipment enabling them to receive the signal without paying.  437 F.3d at 926.  The equipment, however, had other, legitimate uses.  *Id*.  The defendant, nevertheless, sent letters threatening civil actions to each of the individuals on the list unless they agreed to settle with the defendant.  *Id*. at 927.  The plaintiffs filed an action alleging these acts violated the Racketeering Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-68.  *Id*.

Although the court did not reach the question whether the litigation was sham, the court determined the defendant's activities were protected by the *Noerr-Pennington* Doctrine even though the defendant did not have any way of knowing whether the equipment was being used for the illegal downloading of satellite

14  -  OPINION AND ORDER

signals or whether any particular individual on the list had engaged in such an illegal download.  *Id*. at 941-42.

Here Defendants routinely obtained IP addresses of computers or routers that were actually used in infringing activity instead of names of persons who may have participated in illegal signal downloads.  The link between the wrongful activity and the individual both here and in *Sosa*, although by no means certain, was strong enough to support "a chance" that the defendants had correctly identified an individual engaged in wrongful activity. Moreover, linking illegal P2P sharing of copyrighted works to an individual through that individual's registered IP address has been accepted by several courts as constituting probable cause for the initiation of copyright-infringement proceedings.  *See, e.g., UMG Recordings, Inc. v. Martino*, No. 08-CV-1756, WL 1069160, at *3 and *3 n.4 (M.D. Pa. Apr. 21, 2009).  *See also Motown Record Co. v. Kovalcik*, No. 07-CV-4702, WL 455137, at *5 (E.D. Pa. Feb. 23, 2009); *Atlantic Recording Corp. v. Raleigh*, No. 06-CV-1708, WL 3890387, at *4 (E.D. Mo. Aug. 18, 2008); *Atlantic Recording Corp. v. Heslep*, No. 06-CV-132, WL 1435395, at *5 (N.D. Tex. May 16, 2007)(record companies, based on a shared folder's IP address on a P2P network, could reasonably believe infringement had occurred).

On this record, the Court concludes Defendants could have reasonably believed there was a chance that their copyright-

infringement claims against Plaintiff might have been "held valid upon adjudication" on the basis of the link between gotenkito's shared folder and the IP address leased to Plaintiff in light of the many cases in which such a link has been held to be sufficient to support probable cause to initiate an action for copyright infringement. Accordingly, the Court concludes Plaintiff has not established Defendants' First Action against Plaintiff lacked an objective basis.

## III. Whether Defendants engaged in a series of actions that preclude protection under the *Noerr-Pennington* Doctrine.

It is not disputed that Defendants' Enforcement Program targeted many individuals in a substantially similar manner as the manner in which Plaintiff was targeted. Plaintiff contends, therefore, that the Enforcement Program was the basis for a series of lawsuits brought pursuant to a policy of commencing legal proceedings without regard to the merits, and, therefore, those lawsuits fall within the sham exception to the *Noerr-Pennington* Doctrine.

"[I]f the alleged anticompetitive behavior is the filing of a series of lawsuits, the question is not whether any one of them has merit--some may turn out to, just as a matter of chance--but whether they are brought pursuant to a policy of starting legal proceedings without regard to the merits." *Kottle v. N.W. Kidney Ctrs.*, 146 F.3d 1056, 1060 (9th Cir. 1998). "The inquiry in such cases is prospective: Were the legal filings made, not out of

16    -  OPINION AND ORDER

genuine interest in redressing grievances, but as part of a
pattern or practice of successive filings undertaken essentially
for purposes of harassment?" *USS-POSCO Indus. v. BE&K Constr.
Co.*, 31 F.3d 800, 811 (9th Cir. 1994). "The fact that a small
number in the series of lawsuits turn out not to be frivolous
will not be fatal to a claim . . . [but] a batting average
exceeding .500 cannot support" a theory of sham litigation. *Id.*
In *Kaiser Foundation Health Plan, Inc. v. Abbott Labs, Inc.*, the
Ninth Circuit analyzed whether a series of lawsuits against
would-be manufacturers of a generic drug fell within this
exception. 552 F.3d at 1044.

In *Kaiser*, the court noted the plaintiff had filed seventeen
actions and had won seven and lost ten of those cases. In each
of the ten cases that the plaintiff lost, it had a plausible
argument on which it could have prevailed because the ten actions
each presented a question that had not been previously
interpreted. *Id.* at 1046. The court, although cognizant of the
plaintiff's litigiousness, nonetheless concluded there was
insufficient evidence in the record for a jury to conclude that
the plaintiff's seventeen actions constituted sham litigation.
*Id.* The court also noted the number of cases was dependent on
the number of generic manufacturers, which was a number over
which the plaintiff did not have any control. *Id.*

Here Plaintiff contends Defendants were pursuing a policy of

commencing legal proceedings without regard to the merits.
Plaintiff asserts this Court must analyze whether each action was
objectively baseless to determine whether Defendants followed
such a policy.  The Ninth Circuit noted in *USS-POSCO*, however,
that the question is whether the actions were brought as part of
a "pattern or practice of successive filings undertaken
essentially for purposes of harassment," and the court did not
analyze whether each action had an objective basis.  *Id*. at 810-
11.  Instead the Court, noting the party asserting sham
litigation has the burden of proof, concluded the plaintiff could
not meet its burden in the face of the defendant's more than
fifty percent success rate.  *Id*. at 811.

The record in this case reflects all the cases that
Defendants brought to trial have been successful.  Defendants
have also obtained summary and default judgments.  In addition,
many matters were settled.  *See Theme Promotions*, 546 F.3d at
1008 (settlement suggests the lawsuit was not objectively
baseless).  The Court also notes even though Defendants
instituted a large number of proceedings, that number was
determined by the multitude of suspected infringers, which was a
number over which Defendants did not have any control.  *See
Kaiser*, 552 F.3d at 1046 (number of cases dependent on the number
of suspected infringers).  In addition, Defendants advanced
nearly identical claims in the actions they brought against

alleged infringers, and, as noted, their theory in each was at least capable of producing a favorable result.

The Court, therefore, concludes on this record that Plaintiff has not established Defendants filed a series of lawsuits based on a policy of initiating legal proceedings without regard to the merits.

**IV.  Whether Defendants engaged in intentional misrepresentations that preclude protection under *the Noerr-Pennington* Doctrine.**

Plaintiff also contends Defendants' conduct falls within the sham exception because Defendants made intentional misrepresentations to this Court and others during the course of the Enforcement Program.

"[I]n the context of a judicial proceeding, if the alleged anticompetitve behavior consists of making intentional misrepresentations to the court, litigation can be deemed a sham if a 'party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy.'" *Kottle*, 146 F.3d at 1060. In addition, "when a plaintiff seeks damages . . . for conduct which is *prima facie* protected by the First Amendment, the chance that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required." *Id*. To show that Defendants engaged in sham litigation on the basis of misrepresentations, therefore,

19  -  OPINION AND ORDER

Plaintiff must make specific allegations that demonstrate
Defendants "so misrepresented the truth [in the underlying
proceeding] that the entire . . . proceeding was deprived of its
legitimacy." *Id*.

Here Plaintiff asserts Defendants misrepresented in the Doe
action that MediaSentry's process could be conducted by any
computer user and that MediaSentry was able to identify
individual infringing users on the basis of its process.
According to Plaintiff, Defendants' initial misrepresentation has
tainted all of the actions filed thereafter.

The parties have stipulated to the submission of the
Declaration of Jonathan Whitehead dated November 12, 2004, to
support the issuance of a subpoena to Plaintiff's ISP in the
underlying Doe matter.  At paragraphs 16 and 17, Whitehead states
RIAA downloaded and listened to samples of the music files made
available in the shared folders of each Doe defendant and,
therefore, was able to confirm that the works were copyrighted.
According to Whitehead, RIAA recorded the time and date on which
it observed the infringing activity as well as the IP address of
the computer on which the shared folder was located or router
from which the alleged infringer was operating.  In addition,
RIAA was able to determine that the IP address was being leased
by Verizon Online.

Whitehead does not state in his Declaration that RIAA was

able to identify any individual infringing users.  Repeatedly,
Whitehead testifies the IP address denoted a computer from which
infringing activity was occurring, but RIAA could not identify
who was using the computer without obtaining subscriber
information from the ISP that was responsible for leasing that
particular IP address.  Whitehead states in his Declaration that
each instance of alleged infringement is subject to human review
and that the Record Companies will use the names and addresses of
the subscribers attached to the IP addresses of the shared
folders to communicate with those individuals for the purpose of
attempting to resolve the matter, which, as noted, Defendants
have accomplished in numerous cases through their prelitigation
letters.

Plaintiff also takes issue with the fact that MediaSentry
used automated software to identify IP addresses.  Plaintiff
asserts the presence of this automated software necessarily means
Defendants deliberately misrepresented to the Court that
MediaSentry's acts were capable of being performed by any user.
There is not any evidence in the record, however, that the
automated process employed by MediaSentry incorporated any type
of activity that could not be performed by any computer user.
Specifically, the record reflects the process employed by
MediaSentry was to log onto a P2P network; search for copyrighted
material in shared folders; record the date, time, and IP address

of the shared folder; and download the material with a firewall
placed around the transaction to prevent interference.

Plaintiff contends the process described in Whitehead's
Declaration differs from that which is described in the
deposition of Gary Millin, the former President of MediaSentry.
The Court notes Millin's deposition was not taken in the matter
before this Court and that Defendants assert it is not admissible
because not all of the parties to this case were present and
represented at Millin's deposition. *See* Fed. R. Civ. P.
32(a)(1)(A).  The Court agrees.  Even if Millin's deposition were
admissible, however, it is not relevant to this Court's *Noerr-
Pennington* analysis.  For example, Plaintiff contends a portion
of Millin's deposition demonstrates the procedures employed by
MediaSentry differ from those described by Whitehead in his
Declaration.  Plaintiff points to page 15 of the deposition where
Plaintiff's attorney questions Millin about information on
MediaSentry's website that indicated MediaSentry used "Internet-
based software" and "data-mining" techniques to patrol the
Internet for infringing activity.  The Court notes even if
MediaSentry used "Internet-based software" and "data-mining"
techniques, that fact is not inconsistent with Whitehead's
Declaration because a P2P network is "Internet-based software"
and Millin later describes the data-mining conducted by
MediaSentry to consist of analyzing the found data to determine

22   -  OPINION AND ORDER

whether infringement occurred.  In addition, a generic description from MediaSentry's website describing services it could perform for its clients does not constitute a description of the process employed by MediaSentry for Defendants, especially in light of Millin's testimony that the services described by the website are not necessarily performed for each client.

The Court, therefore, concludes on this record that Plaintiff has not established Defendants made misrepresentations to such a degree that the Doe action or First Action were tainted and, as a result, deprived of their legitimacy.

**V.   Whether Defendants' Enforcement Program was incidental to the conduct of a lawsuit.**

Plaintiff also contends Defendants' Enforcement Program did not consist of activities "incidental to the conduct of a lawsuit," but were undertaken in pursuit of commercial activity, and, therefore, preclude protection under the *Noerr-Pennington* Doctrine.

Defendants, however, undertook their investigations, obtained their subpoenas, and issued their prelitigation letters for the purpose of resolving the problem, but also with the knowledge that they would bring civil actions for infringement if necessary as noted in Defendants' Motion for Leave to Take Immediate Discovery filed in the underlying *Caroline Records* matter.  Under *Sosa*, almost identical activities were determined to be protected by *Noerr-Pennington*.  *See* 437 F.3d at 939-30.

23  -  OPINION AND ORDER

The Court, therefore, concludes on this record that Defendants' Enforcement Program was incidental to the conduct of a lawsuit.

In summary, the Court concludes Defendants' conduct in initiating the First Action against Plaintiff is protected by the *Noerr-Pennington* doctrine, and, therefore, Defendants are entitled to summary judgment with respect to all of Plaintiff's claims to the extent they arise out of Defendants' initiation of the First Action.

## PLAINTIFF'S MOTION TO COMPEL AND MOTION TO SUPPLEMENT THE RECORD

In her Motion to Compel, Plaintiff requests two categories of documents:  (1) documents relating to the program that Defendants are implementing with the New York Attorney General's Office and various ISPs (NYAG documents) and (2) budget memoranda relating to the Enforcement Program.  Even though the parties agreed these documents would not be relevant to the *Noerr-Pennington* issue before the Court, Plaintiff again requests the Court in her Motion to Supplement the Record to consider the NYAG documents that are the subject of her Motion to Compel in addition to unredacted copies of the Record Companies' agreements with MediaSentry and the March 4, 2004, deposition transcript of Gary Millin, former president of MediaSentry.

Defendants contend Plaintiff's Motion to Compel is untimely

24   -  OPINION AND ORDER

because on June 16, 2009, the Court granted Plaintiff an extension to respond to Defendants' summary-judgment motion because she needed, among other things, to obtain the documents that are the subject of her Motion to Compel. Defendants contend Plaintiff did not pursue obtaining these documents, however, until the filing of her Motion Compel, and, therefore, the Court should deny the Motion. *See Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1430 (9th Cir. 1986)("the movant cannot complain if it fails to pursue discovery diligently before summary judgment").

Regardless of the Motion's timeliness, however, the Court concludes the NYAG documents are not relevant to the issue before the Court on summary judgment. Plaintiff contends the NYAG documents would demonstrate Defendants were aware of other, more effective prophylactic measures to prevent Internet piracy of Defendants' copyrighted works and would establish Defendants' identification of alleged infringers by means of an IP address was problematic. Awareness of other effective measures for combating piracy does not undermine the basis of Defendants' Motion for Summary Judgment; *i.e.*, whether probable cause existed for Defendants to institute civil copyright-infringement proceedings against alleged infringers. In addition, as the Court earlier found, Defendants' method of identifying suspected infringers by means of documenting the IP address where the P2P

network's shared folder was located is sufficient to establish probable cause for initiating civil proceedings.

Plaintiff also contends the budget memoranda contain information about the Enforcement Program's budget.  Defendant, in turn, contends the budget memoranda are not admissible.  Even if they were admissible, the Court concludes the budget memoranda are not relevant to whether Defendants had probable cause to initiate civil-infringement proceedings against Plaintiff, particularly in light of the fact that the Court has concluded the link between a shared folder's IP address on a P2P network and the lessor of that IP address provides a sufficient basis to initiate civil proceedings.

Plaintiff also requests the Court to consider the unredacted copies of the Record Companies' agreements with MediaSentry that this Court reviewed *in camera* for a February 9, 2009, conference. Although the Court concluded portions of these agreements were privileged, Plaintiff, nonetheless, requests the Court to consider them on summary judgment.  Plaintiff does not, however, articulate any specific reason that these documents are relevant to the *Noerr-Pennington* analysis.  The Court concludes the record is sufficiently developed to decide the *Noerr-Pennington* issue without consideration of these privileged agreements.

Finally, Plaintiff also requests this Court to consider the deposition transcript of Millin.  The Court, however, already

26  -  OPINION AND ORDER

found this deposition is inadmissible and not relevant to the issue currently before the Court.

On this record, therefore, the Court denies both Plaintiff's Motion to Compel and Plaintiff's Motion to Supplement the Record.


## **CONCLUSION**

For these reasons, the Court **GRANTS** Defendants' Motion (#127) with respect to all aspects of Plaintiff's claims that arise from Defendants' initiation of civil proceedings against Plaintiff; **DENIES** Plaintiff's Motion (#165) to Compel; and **DENIES** Plaintiff's Motion (#170) to Supplement the Record.

The Court directs the parties to file a status report no later than December 1, 2009, that addresses the impact of the Court's ruling on the pending Motion (#120) for Class Certification and Plaintiff's remaining claims.

IT IS SO ORDERED.

DATED this 12th day of November, 2009.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge


27  -  OPINION AND ORDER