**Lory R. Lybeck,** OSB No. 83276
lrl@lybeckmurphy.com
**Benjamin R. Justus**, *Admitted Pro Hac Vice*
brj@lybeckmurphy.com
**LYBECK MURPHY, LLP**
7525 SE 24th Street, Suite 500
Mercer Island, WA  98040-2334
Telephone:  206.230.4255
Facsimile:  206.230.7791

**Richard A. Adams**, *Admitted Pro Hac Vice*
**Leisa Beaty Pearlman**, *Admitted Pro Hac Vice*
**Corey D. McGaha**, *Admitted Pro Hac Vice*
**PATTON ROBERTS, PLLC**

Attorneys for Plaintiff

**Kenneth R. Davis, II**, OSB No. 971132
davisk@lanepowell.com
**William T. Patton**, OSB No. 973646
pattonw@lanepowell.com
**Parna A. Mehrbani**, OSB No. 053235
mehrbanip@lanepowell.com
**LANE POWELL** PC
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158
Telephone:  503.778.2100
Facsimile:  503.778.2200

**Timothy Reynolds,** *Admitted Pro Hac Vice*
**HOLME ROBERTS & OWEN LLP**

**Jeffrey S. Jacobson,** *Admitted Pro Hac Vice*
**DEBEVOISE & PLIMPTON LLP**

**Thomas M. Mullaney**, *Admitted Pro Hac Vice*
**LAW OFFICES OF THOMAS M. MULLANEY**

Attorneys for Defendants Atlantic Recording Corporation, Priority Records LLC,
Capitol Records, Inc., UMG Recordings, Inc. BMG Music, Recording Industry Association
of America, Settlement Support Center, LLC, and SafeNet, Inc., f/k/a Media Sentry, Inc.

PAGE 1 -   JOINT STATUS REPORT

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**TANYA ANDERSEN,**

Plaintiff,

v.

**ATLANTIC RECORDING CORPORATION, et al.,**

Defendants.

Civil No. 3:07-CV-934-BR

**JOINT STATUS REPORT**

By All Parties

In response to the Court's request for a joint statement included in its November 12, 2009 Order and Opinion, the parties respectfully submit the following:

## I.  PLAINTIFF'S STATEMENT

The parties conferred by telephone and email regarding a proposed joint statement, and it quickly became evident that there was little agreement as to the effect the Court's recent Opinion and Order would have on Plaintiff's claims individually and as class representative. The Court has drawn a distinction between claims arising from "Defendants' initiation of civil proceedings against Plaintiff", and claims based on "Defendants' continuation of civil proceedings". As such, Plaintiff will address the impacts on those respective categories of claims in turn.

**A.  Review of Order.**

Plaintiff respectfully disagrees with certain aspects of the Court's opinion regarding the claims arising from Defendants' initiation of civil proceedings against her. The Court's opinion did not acknowledge or discuss certain record evidence Plaintiff presented which seriously called into doubt whether Defendants could have had, at the time the "First Action" was filed, a "reasonable belief" that they would prevail in their claims against Plaintiff. This evidence included the numerous technical flaws in the automated MediaSentry process which

PAGE 2 -   JOINT STATUS REPORT

misidentified Plaintiff, the known demographic disparity between P2P infringers and ISP account holders, and the documentation of thousands of erroneous threats and lawsuits that were made as part of Defendants' scheme. All of this information was also recklessly ignored by Defendants when they repeatedly threatened and sued Plaintiff and other ISP account holders, accusing them of copyright infringement personally. Plaintiff is entitled to have this evidence weighed by the factfinder, who should determine whether or not Defendants could have had a "reasonable belief" that they would prevail against Plaintiff under the attendant circumstances.

Plaintiff is evaluating potential options available to seek immediate review of the Court's Order granting partial summary judgment to address the evidence she believes was not appropriately considered. Plaintiff is also evaluating the possibility of seeking to amend the complaint in this action.

**B.    Initiation of Claims.**

Notwithstanding the concerns set forth above, the Court's recent Order in no way forecloses Plaintiff's ability to serve as class representative with respect to claims arising from "initiation". As the evidence submitted on summary judgment demonstrates, the putative class includes, for example, entities that were targeted by Defendants despite a logical impossibility that they could have committed the alleged infringing acts, such as corporations, churches and government offices. In short, there was no reasonable or other "chance" that these allegations were accurate. But for the court's finding that Defendants are partially immune from Plaintiff's claims, her suitability as class representative on behalf of these entity class members has not been effected.

Given the procedural history of *Caroline Records, Inc., et al v. Does 1-175*, No. 1:04-cv-02028-RCL (D.D.C. 2004) and *Atlantic Recording Corp., et al. v. Andersen*, O5-CV-933AS (D.Or. 2005)(the "First Action"), no bright line exists to define where, in the Court's view, "initiation" ends and "continuation" begins. The Court's recitation of the factual and procedural background for these actions (Order, Docket #173, at 3-9) did not address the culpable and

PAGE 3 -    JOINT STATUS REPORT

offensive conduct by Defendants which transpired between the initiation of the Andersen "Doe" action and the filing of the Andersen "First Action". This included the Record Companies' false threat of massive money damages as related in a February 2005 threat letter to Plaintiff; her steadfast denial of the Record Companies' allegations made in various 2005 communications with Defendant Settlement Support Center (SSC); Plaintiff's early offer to allow Defendants to inspect her computer for evidence of infringement; Defendants' bad faith declination of that offer; and SSC's statement that it believed Plaintiff to be innocent. Regardless, Defendants refused to discontinue their threats and actions against her based on their admitted fear that doing so would encourage others to resist Defendants' demands for payment of money.[1] All of this conduct is detailed in the Fourth Amended Complaint, and is generally applicable and specifically relevant to allegations of each stated cause of action. *See* Docket #58, ¶¶7.13-7.16, 7.19-7.22, 8.2, 8.4, 8.8, 8.9, 8.19, 8.20, 8.38, 8.42, 8.45, 8.47. Proof of this conduct and these actions rendered objectively unreasonable any belief on the part of Defendants that they were likely to prevail in an action against Plaintiff. As such, they were, at minimum, charged with a duty to further investigate the claims before proceeding with a personal lawsuit against her, the "First Action". This specific conduct was not even mentioned in Defendants' motion for summary judgment, which focused only on the identification of Plaintiff as an ISP account holder associated with a suspect IP address. This may explain the omission of any related discussion of these facts in the Court's opinion.

Further clarification and guidance from the Court defining the parameters of "initiation" versus "continuation" claims is necessary. In the event the Court requests further briefing from the parties on this issue, Plaintiff is prepared to submit it on an expedited basis.

---

[1] Defendants knew that another individual had been using the screen name "gotenkito" and admitted downloading materials on the internet. Defendants' investigation of this individual and decision not to pursue him was discussed at length in the Findings and Recommendation of Judge Ashmanskas, discussed *infra*. *See also* Docket #58, at 8.14.

PAGE 4 -   JOINT STATUS REPORT

C.  **"Continuation" Claims.**

All claims against Defendants arising from the continuation of civil proceedings against Plaintiff survive.  Defendants' wrongful conduct following the initiation of the First Action is detailed in each stated cause of action in the Fourth Amended Complaint. *See* Docket #58, ¶¶7.19-7.36, 8.2, 8.4, 8.9-8.16, 8.18-8.30, 8.41-8.43. Defendants' motion for summary judgment did not address these claims.  The orders of Judge Ashmanskas and Senior Judge Redden in the First Action specifically determined that Defendants' conduct in continuing that action was objectively unreasonable.

As previously noted, the lack of clear parameters between "initiation" and "continuation" claims impedes the ability to fully discuss the impact of the Court's Order on remaining class certification issues. Clarification of this distinction will be helpful to this discussion.  All claims against all Defendants survive even without any further definition.  As alleged in the complaint, MediaSentry and Settlement Support Center knew or should have known that their misconduct would give rise to initiation *and continuation* of improper legal process against Plaintiff and the putative class.  At minimum, claims for civil conspiracy against MediaSentry and Settlement Support Center survive.

Additionally, the Court's order does not impact or moot Plaintiff's pending Motion for Class Certification.  Despite Defendants' recognition that the many thousands of cases filed were the product of an automated litigation program, they here erroneously contend that each litigated case followed its own unique course.  This position conflicts with information suggesting that these cases were universally driven by uniform "settlement" criteria, in which Defendants' graduated demands for payment from targeted individuals were based on common and reoccurring fact patterns and litigation events.  In this way, the pre-filing investigations by MediaSentry were not the only aspects of Defendants' scheme that were generic and effectively mechanized.  For all the reasons set forth in Plaintiff's motion for class certification, proceeding under Rule 23 remains the most efficacious, fair and reasonable way to adjudicate the individual

PAGE 5 -   JOINT STATUS REPORT

class members' claims, whether arising from "initiation" or "continuation" of the fraudulent and automated Hubcap litigation scheme. This is especially true where the harms caused to Plaintiff and the class were facilitated and furthered by Defendants' disproportionate legal sophistication and financial resources.

Especially because Defendants have refused to make discovery of specifically requested documents identifying generally applicable "settlement" criteria (and related directives to SSC and other settlement agents), definition of members of the class, and any cognizable sub-classes appropriately must be made to include all potentially injured plaintiffs. Neither the Court's recent ruling nor Defendants' refusal to provide information solely in their possession can or does limit or moot the claims of the individuals damaged by Defendants' wrongful continuing conduct.

As part of Plaintiff's ongoing evaluation, Plaintiff and her counsel are evaluating the desirability or need to seek to amend the complaint and motion for class certification to include an additional class representative. Plaintiff disagrees with Defendants' suggestion that she be compelled now to submit some sort of extraordinary proffer regarding her possible future requested amendments. Instead, if she so elects, she will seek amendment in the ordinary procedural course. The imposition of inordinate process in this litigation has resulted in added expense for all parties. Requiring more of the same would not further any purported goal of avoiding unnecessary cost or delay.

**D.    No Additional Motions.**

Finally, Plaintiff strongly objects to any additional motion for summary judgment by Defendants. When Defendants filed their second Rule 12 motion in April (Docket #122), the Court very clearly instructed Defendants that they would have only one more opportunity to file a dispositive motion in this case. The Court allowed Defendants the option of either standing on their Rule 12 pleading or filing for summary judgment on the issue of claimed Noerr-Pennington immunity. *See* Docket #125. Defendants chose to file a motion for **partial** summary judgment.

PAGE 6 -   JOINT STATUS REPORT

*See* Docket #126.  The Court should not now permit Defendants to file a *fourth* "dispositive" motion.

The Court's instruction, however, is not the only reason why another motion for summary judgment is inappropriate as to all claims arising from continuation.  Judge Ashmanskas and Senior Judge Redden have already determined that the Record Companies acted objectively unreasonably in continuing their civil proceedings against Plaintiff. When he issued his Findings and Recommendation granting Ms. Andersen's motion for attorney's fees and costs in the First Action, Judge Ashmanskas concluded that there was no evidence whatsoever that Ms. Andersen infringed upon copyrighted recordings, writing:

> [The Record Companies] do not specifically concede that they lacked evidence to support their claims, but that may reasonably be inferred from the timing of their stipulation—on the date their opposition to defendant's motion for summary judgment was due—and their admissions that "evidence uncovered during discovery proved inconsistent and inconclusive," which "has not been explained."…Because they chose instead to dismiss their claims with prejudice, it can reasonably be inferred that plaintiffs did not possess prima face evidence, despite being given a fair opportunity to obtain it,…
>
> …
>
> Plaintiffs' failure to contact a third party, who potentially was the actual infringer, until April 2007, as well as their position that his denials were credible, while defendant's were not, are also relevant to the third Fogerty factor—objective unreasonableness.  Without applying the benefit of hindsight, these facts indicate that, in significant ways, **plaintiffs did not conduct themselves in an objectively reasonable manner**, i.e., in a manner to be expected from a reasonable copyright holder pursuing relief from a party it believed to be infringing.
>
> …
>
> An objectively reasonable copyright holder would seek to hold liable and deter the person who actually violated the Copyright Act.
>
> …
>
> Whatever [the Record Companies'] reasons for the manner in which they have prosecuted this case, it does not appear to be justified as a reasonable exploration of the boundaries of copyright law.

PAGE 7 -   JOINT STATUS REPORT

*See* Docket #156, Ex. U, September 21, 2007 Findings and Recommendations of Judge Ashmanskas, at 8-13. Judge Ashmanskas' findings were adopted in full by Senior Judge Redden. *Id.*, Ex. V. In view of these findings, Defendants' argument in seeking another shot at summary judgment to assert that no facts can exist to dispute that they acted "objectively reasonable" in continuing claims against plaintiff and others is itself objectively unreasonable, inexplicable and contrary to the law of the case.

## II. DEFENDANTS' STATEMENT

Ms. Andersen's position, apparently, is that the Court's November 12, 2009 summary judgment decision (the "Order") (doc. no. 173) had no meaningful impact on her claims. She asserts that she can continue to pursue all the causes of action pled in her complaint, and can still represent a class, even with respect to issues on which the Court has ruled against her. Defendants can find no common ground with these unsupportable arguments. Instead, Defendants submit that the Order had the following effects on Ms. Andersen's pending Motion for Class Certification (doc. no. 120) and on her remaining claims:

**A.  Ms. Andersen's Motion for Class Certification Should Be Withdrawn Or Denied.**

Ms. Andersen's Motion for Class Certification focused almost exclusively on the Record Companies' decision to *initiate* what the Order termed the "First Action" against her, not the highly-individualized *conduct* of that First Action. All of the "facts supporting Plaintiff's allegations" outlined on pages 8-15 of Ms. Andersen's opening brief in support of certification (doc. no. 121) concerned matters that occurred prior to the initiation of the First Action. *See also id.* at 19 ("Defendants' actions towards the class . . . consisted of highly similar, if not identical, *pre-suit* investigations. . . [and] the proof required to establish the legality/illegality of the *litigation enterprise* would be the same for every Class member" (emphasis added); Plaintiff's Reply to Record Companies' Memorandum in Opposition to Plaintiff's Motion for Class Certification (Ms. Andersen's "Reply Memorandum") (doc. no. 145) at 1 ("[t]his case comes down to one issue:  whether Defendants appropriately and lawfully used MediaSentry's data

PAGE 8 -   JOINT STATUS REPORT

collection process to . . . pursue tens of thousands of federal claims for copyright infringement."). The Court concluded that the Record Companies acted both appropriately and lawfully in their initial assertion of claims.

Discarding all her prior statements, Ms. Andersen now offers three arguments, all incorrect, as to how the Order supposedly does not affect her ability to represent a putative class.

First, notwithstanding the Order's finding that the Record Companies initiated the First Action on probable cause, Ms. Andersen asserts that, though she herself was properly sued, if the Record Companies lacked probable cause to have sued *other entities* not presently before the Court, "such as corporations, churches and government offices," she still can serve as a representative for anyone else she may try to prove was wronged.[2] *See* Plaintiff's Statement, *supra* at 3. Ms. Andersen's factual premise has no support in the record and is incorrect, but even were it right, a litigant "must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court." *Sosna v. Iowa*, 419 U.S. 393, 403 (1975); *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1056 (9th Cir. 2002) (same). Because the Court has held that the Record Companies had probable cause to sue Ms. Andersen, she is not a member of, and therefore cannot represent, hypothesized persons in Oregon or elsewhere who allegedly were sued *without* probable cause.

Second, Ms. Andersen contends that she may be able to file a **Fifth** Amended Complaint "to include an additional class representative." *See supra* at 6-7. In other words, she is saying that even if *she* cannot represent a class, maybe someone else can. Substitution, at this late stage, of a new plaintiff who has yet to be identified as even existing, to refocus this case on that person's individual history in the Enforcement Program rather than Ms. Andersen's, would be inappropriate and prejudicial. It also would be futile, because the same *Noerr-Pennington* issues

---

[2] Ms. Andersen asserts that evidence exists in the summary judgment record of parties having been sued "despite a logical impossibility that they could have committed the alleged infringing acts" (*supra* at 3), but she cites no such evidence in the record, and there is none.

PAGE 9 -   JOINT STATUS REPORT

would arise: The Court already has ruled on the propriety of the Record Companies' evidence-gathering process, which Ms. Andersen always has contended was common to at least most of those who were sued.[3]

Third, Ms. Andersen argues that, despite the Court's dismissal of her pre-suit claims, the Court can certify a class to litigate "continuation" claims. Ms. Andersen's Motion for Class Certification, however, identified no predominant common questions inherent in the post-filing conduct of each Enforcement Program case, and none exist. Ms. Andersen's statement above focuses on the manner in which the Record Companies sought to settle claims before filing individual suits (*see supra* at 6), but (1) these settlement discussions were just part of the pre-filing conduct on which the Court already has ruled, and (2) settlement discussions were highly individualized, as attorney Matthew Oppenheim testified at his deposition.[4] Nowhere, not even in her statement above, has Ms. Andersen ever attempted to identify a predominant common question that could exist with respect to Enforcement Program cases after they proceeded to active litigation in federal courts around the country.

Defendants' Memorandum in Opposition to [Ms. Andersen's] Motion for Class Certification (doc. no. 138) contained extensive discussion (*e.g.,* at pp. 23-29, 37-38, 41-44) as to why "continuation" claims cannot be certified. Ms. Andersen's Reply Memorandum did not attempt to refute any of those arguments. Additionally, all of the actions Ms. Andersen claims constitute "abuse of process" in her own case (*i.e.,* Defendants' successful motion to briefly depose Ms. Andersen's daughter by telephone, and their alleged failure to pursue "the real

---

[3] To the extent that Ms. Andersen seeks to amend her Complaint, she should be required to file a formal motion asking for leave to do so, including the proposed Fifth Amended Complaint. Defendants should then be given the opportunity to oppose that motion for leave, explaining how such a motion is untimely, prejudicial and unfounded. This is the normal procedure for subsequent amendments to a complaint, and Ms. Andersen concedes above (at 6) that she must follow "the ordinary procedural course" in filing any amendment.

[4] Ms. Andersen inexplicably contends that she has been refused discovery into the conduct of settlement negotiations. *See supra* at 6. This is not true. The extent of permissible discovery on these issues was extensively litigated, the Court heard arguments on these issues on December 4, 2008, and Defendants long ago produced all documents that the Court held to be discoverable.

PAGE 10 - JOINT STATUS REPORT

'Gotenkito") obviously are unique to her own case. For these reasons, if Ms. Andersen insists that the Court issue a ruling on her pending certification motion, on the basis of the existing papers, the Court should deny certification.[5] The Court, however, may wish to defer such a ruling until Defendants have had an opportunity to seek summary judgment on the merits of Ms. Andersen's remaining claims, as explained below.

**B. Only Certain of Ms. Andersen's Claims Survived the Order.**

Ms. Andersen argues that the Order's impact on her substantive claims is limited because "no bright line exists to define where . . . 'initiation' ends and 'continuation' begins." *Supra* at 4. Ms. Andersen then asks that the line be moved to the point at which the Record Companies sued Ms. Andersen in a *Doe* action, rather than the point at which, after Verizon Online identified Ms. Andersen as the person responsible for an Internet Protocol address used for infringement, and after Ms. Andersen admitted that peer-to-peer file-sharing software had been installed on her computer (but denied infringing), the Record Companies sued her by name.

Ms. Andersen's analysis ignores the Order's plain text, which clearly explains that the Court drew the line at the point where the Record Companies sued Ms. Andersen by name. On page 5 of the Order, the Court stated that "[b]ased on the information obtained from Verizon Online, the Record Companies filed a Complaint (First Action) in this Court on June 24, 2005, alleging Plaintiff infringed their copyrights." On page 24, the Court concluded that "Defendants' conduct in initiating the First Action against Plaintiff is protected by the *Noerr-Pennington* doctrine, and, therefore, Defendants are entitled to summary judgment with respect to all of

[5] Ms. Andersen's statements suggest she may wish to file amended papers in support of class certification. If Ms. Andersen's purpose is to change her class definition yet again, Defendants request that, as a prerequisite, in the nature of a pre-motion conference, the Court should require her to file a short, plain statement describing the class she proposes to certify, how many persons she believes to be members of this class, both inside and outside Oregon, and what common question(s) she believes predominate. Defendants would request the opportunity to file a short response to that statement. Through these brief statements, the Court may be able to expeditiously rule on whether there is sufficient merit to an amended class motion to warrant full briefing.

Plaintiffs' claims to the extent they arise out of Defendants' initiation of the First Action."[6] In other words, all claims respecting conduct prior to initiation of the First Action on June 24, 2005, have been dismissed, but claims respecting conduct after initiation of the First Action survive.[7]

Ms. Andersen's Fourth Amended Complaint (doc. no. 58) ("Compl.") pled claims for civil conspiracy, wrongful initiation of civil proceedings, abuse of legal process and negligence, and also sought declaratory and/or injunctive relief. Of these, the only claims that concerned the Record Companies' alleged conduct *after* commencing the First Action are those for (1) abuse of legal process with respect to post-filing conduct; (2) negligence on the specific bases stated in Compl. ¶¶ 8.42(f)-(g) (*i.e.,* allegedly "failing to investigate the true identity of 'gotenkito'"); and (3) civil conspiracy against the Record Companies for the same conduct. Those three claims are the only ones that could have survived the Order.

The Order had the effect of dismissing Ms. Andersen's other claims, as follows:

<u>First</u>, the Order requires dismissal of Ms. Andersen's claim for wrongful initiation of civil proceedings. *See* Compl. ¶¶ 8.6-8.16. Two of the elements of a claim for wrongful initiation of civil proceedings in Oregon are "(1) [t]he commencement and prosecution by the defendant of a judicial proceeding against the plaintiff;" and "(3) ***[t]he absence of probable cause to prosecute the action***." *Alvarez v. Retail Credit Ass'n of Portland, Or., Inc.*, 381 P.2d 499, 501 (Or. 1963) (emphasis added). Because the Court found that Defendants had probable cause to commence the First Action, Defendants have prevailed on this claim.

---

[6] Unless the Court invites Defendants to respond to Ms. Andersen's contention that the Court reached this conclusion without considering issues that the parties extensively briefed and discussed at length at oral argument, Defendants will not respond, other than to say that Ms. Andersen is incorrect.

[7] Above (at 4), Ms. Andersen appears to ask the Court to reconsider its decision on the basis of arguments about how Ms. Andersen's individual case unfolded between the *Doe* stage and the filing of the First Action. None of these arguments has any factual support in the record, and, in any event, Ms. Andersen waived these arguments when she did not include them in her opposition to Defendants' summary judgment motion.

PAGE 12 - JOINT STATUS REPORT

Second, the Order similarly requires dismissal of Ms. Andersen's claims for injunctive and/or declaratory relief. *See* Compl. ¶¶ 8.47-8.49. Ms. Andersen sought an injunction to stop the Record Companies from using MediaSentry-gathered Internet Protocol addresses as the basis for lawsuits. The Order, however, found that these evidence-gathering methods were proper and gave rise to probable cause.

Third, the Order requires dismissal of Ms. Andersen's claims for negligence based on pre-filing conduct, as alleged in Compl. ¶¶ 8.32-33 (vs. MediaSentry, with respect to its investigative methods) and *id*. ¶¶ 8.34-8.40 (pleading that the Record Companies are vicariously liable for MediaSentry's alleged negligence). Here again, because the Court has ruled that MediaSentry's information, and Verizon Online's identification of Ms. Andersen as the person responsible for the Internet Protocol address observed by MediaSentry to have been used for unlawful distribution of copyrighted material, gave the Record Companies probable cause to sue Ms. Andersen, it cannot have been "negligence" for the Record Companies to have relied on this same information.

Finally, the Order requires dismissal of defendants MediaSentry (a/k/a SafeNet, Inc.) and Settlement Support Center, Inc. ("SSC") from the case entirely. MediaSentry's involvement in Ms. Andersen's case ended when it delivered to the Record Companies evidence that Internet Protocol address 4.41.209.23 had been used to distribute copies of certain sound recordings. SSC's involvement ended prior to the Record Companies' initiation of the First Action, at which point all contact between the parties occurred between the Record Companies' counsel and Ms. Andersen's counsel, with SSC no longer involved. Ms. Andersen's contention that these two defendants' involvement in the First Action continued through its prosecution, and that they

PAGE 13 - JOINT STATUS REPORT

therefore remain liable on a "conspiracy" theory (*supra* at 5), is unsupported by any facts in the record, and is not even alleged in the Complaint.[8]

**C.    Defendants Will Seek Summary Judgment On These Surviving Claims.**

The Record Companies are prepared to move for summary judgment on the merits of all of Ms. Andersen's surviving claims on or before January 8, 2010. Defendants request that the Court set that date as the deadline for them to file such a motion, with Ms. Andersen's opposition and Defendants' reply due on appropriate dates thereafter. Ms. Andersen has no basis on which to contend that a summary judgment motion is not proper or warranted here.

A summary judgment motion is ripe now because the discovery record is closed. Discovery ended on October 2, 2009, after the Court extended that deadline by three weeks at Ms. Andersen's request. *See* Scheduling Order dated Sept. 9, 2009 (doc. no. 158). Ms. Andersen adduced no facts in discovery to support her claims that the Record Companies continued to pursue litigation against her beyond a point at which they lacked probable cause to do so. Indeed, in an eight-hour deposition of the Record Companies' attorney responsible for the decisions made in Ms. Andersen's case, Mr. Oppenheim, Ms. Andersen's counsel did not ask a single question about the manner in which her case proceeded post-filing.

Although Ms. Andersen suddenly contends that Defendants should not be permitted even to seek summary judgment, the Court always has contemplated such a motion. After Defendants filed their *Noerr-Pennington* motion, the Court set a schedule pursuant to which Defendants would file a different dispositive motion, addressed to the merits of Ms. Andersen's claims, by September 28, 2009 (two weeks after discovery was to have closed). *See* Scheduling Order dated June 23, 2009 (doc. no. 136). When the Court briefly extended the discovery period, it vacated the deadline for filing dispositive motions "pending further order of the Court following

---

[8]    MediaSentry (a/k/a SafeNet, Inc.) was not a plaintiff in the First Action, and there is no allegation that it had anything to do with the post-filing conduct of the litigation against Ms. Andersen.

PAGE 14 - JOINT STATUS REPORT

resolution of the current motions," at the parties' joint request (doc. no. 158). The Court never suggested, nor has Ms. Andersen ever suggested, that Defendants should be foreclosed from filing one.

Ms. Andersen also contends that Defendants should be precluded from filing a summary judgment motion because, in her view, Magistrate Judge Ashmanskas and Senior Judge Redden already resolved the key questions in her favor. That, too, is incorrect. As Defendants explained in their *Noerr-Pennington* reply memorandum (doc. no. 160) (at 21), Judge Ashmanskas found that Ms. Andersen was a "prevailing party" under the standards of the Copyright Act, and on that basis awarded her attorneys' fees. Judge Ashmanskas had no occasion to rule upon, and did not rule upon, the very different question of whether the Record Companies committed the torts of "abuse of process" or negligence under Oregon law. The Record Companies will show, in their motion for summary judgment that, as a matter of law, they plainly did not.

[Remainder of this page intentionally left blank.]

PAGE 15 - JOINT STATUS REPORT

DATED:  December 1, 2009

| LYBECK MURPHY, LLP | LANE POWELL PC |
|---|---|
| /s/ Leisa Beaty Pearlman | /s/ Parna A. Mehrbani |
| Lory R. Lybeck, OSB No. 83276<br>Benjamin R. Justus, *Admitted Pro Hac Vice*<br>Telephone:  206.230.4255 | Kenneth R. Davis II, OSB No. 971132<br>William T. Patton, OSB No. 973646<br>Parna A. Mehrbani, OSB No. 053235<br>Telephone:  503.778.2100 |
| **Richard A. Adams**, *Admitted Pro Hac Vice*<br>radams@pattonroberts.com<br>**Leisa Beaty Pearlman**, *Admitted Pro Hac Vice*<br>lpearlman@pattonroberts.com<br>**Corey D. McGaha**, *Admitted Pro Hac Vice*<br>cmcgaha@pattonroberts.com<br>**PATTON ROBERTS, PLLC**<br><br>Attorneys for Plaintiff | Attorneys for Defendants<br><br>**Timothy Reynolds,** *Admitted Pro Hac Vice*<br>timothy.reynolds@hro.com<br>**HOLME ROBERTS & OWEN LLP**<br><br>Attorneys for Defendants Atlantic Recording Corporation, Priority Records LLC, Capitol Records, Inc., UMG Recordings, Inc., BMG Music, Recording Industry Association of America, and Settlement Support Center, LLC<br><br>**Jeffrey S. Jacobson**, *Admitted Pro Hac Vice*<br>jsjacobson@debevoise.com<br>**DEBEVOISE & PLIMPTON LLP**<br><br>Attorneys for Defendant Recording Industry Association of America<br><br>**Thomas M. Mullaney**, *Admitted Pro Hac Vice*<br>tmm@mullaw.org<br>**LAW OFFICES OF THOMAS M. MULLANEY**<br><br>Attorneys for SafeNet, Inc., f/k/a Media Sentry, Inc. |

PAGE 16 - JOINT STATUS REPORT