**Kenneth R. Davis, II**, OSB No. 971132
davisk@lanepowell.com
**William T. Patton**, OSB No. 973646
pattonw@lanepowell.com
**Parna A. Mehrbani**, OSB No. 053235
mehrbanip@lanepowell.com
**LANE POWELL PC**
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158
Telephone:  503.778.2100
Facsimile:  503.778.2200

**Timothy M. Reynolds,** *Admitted Pro Hac Vice*
**HOLME ROBERTS & OWEN LLP**

**Jeffrey S. Jacobson,** *Admitted Pro Hac Vice*
**DEBEVOISE & PLIMPTON LLP**

**Thomas M. Mullaney**, *Admitted Pro Hac Vice*
**LAW OFFICES OF THOMAS M. MULLANEY**

Attorneys for Defendants Atlantic Recording Corporation, Priority Records LLC, Capitol Records, Inc., UMG Recordings, Inc. BMG Music, Recording Industry Association of America, Settlement Support Center, LLC, and SafeNet, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **TANYA ANDERSEN,**<br><br>                          Plaintiff,<br><br>        v.<br><br>**ATLANTIC RECORDING CORPORATION**, et al.,<br><br>                          Defendants. | Civil No. 3:07-CV-934-BR<br><br>**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED MOTION FOR CLASS CERTIFICATION** |

PAGE 1 -   DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION
                 FOR LEAVE TO FILE AN AMENDED MOTION FOR CLASS CERTIFICATION

## I.    PRELIMINARY STATEMENT

This Court has ruled that the Record Companies had probable cause to sue Ms. Andersen and others for copyright infringement based on the capture of their Internet Protocol addresses in the act of distributing sound recordings.  *See* Order, dated Nov. 12, 2009 (doc. no. 173).  Because Ms. Andersen had been seeking class certification *solely* based on the Record Companies' activities up to and including the filing of these complaints, the Court denied her prior certification motion.  *See* Order, dated Jan. 5, 2010 at 6 (doc. no. 176).

Now Ms. Andersen urges that, at some point *after* the Record Companies sued her, newly-discovered facts "exonerated" her, making continued litigation against her by the Record Companies "negligent" or "abusive."  This claim relies on facts entirely unique to her. Nonetheless, she wants the Court to certify an alleged class of "falsely accused" Enforcement Program defendants against whom the Record Companies "abusively" prolonged litigation.

The Court should not certify this class for two reasons.  First, no other person shares the unique facts on which Ms. Andersen hinges her claim—the discovery of a different person using the "Gotenkito" username on an unrelated website and the Record Companies' allegedly improper deposition of Ms. Andersen's daughter.  Second, the admission ticket to Ms. Andersen's class is purported innocence:  The putative class consists of people who were "false[ly] accus[ed]," (Plaintiff's Motion for Leave to File An Amended Motion for Class Certification at 2 (doc. no. 183) (hereinafter, the "Motion"), and who "denied any wrongdoing but were subjected to abusive conduct." *Id.* at 4.  This is an improper, merits-based class definition.

Because of the inherently flawed nature of this class definition, Ms. Andersen asks the Court to focus solely on those Enforcement Program defendants who "denied wrongdoing." Motion at 4.  This nuance would not cure the problem.  Defendants frequently deny liability, regardless of the merits of a case.  Continuing litigation after a defendant denied infringement therefore proves no wrongdoing by the Record Companies.  That a defendant may have denied

708816.0001/834633.1

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

infringement does not eliminate the need to examine, on a case-by-case basis, the evidence of infringement liability gathered in each of the thousands of Enforcement Program cases, before any step in any case can be deemed "abusive."

These unavoidably individualized issues of *fact* preclude class treatment of Ms. Andersen's claims. Individual issues of *law* also predominate. Since 1998, when Rule 23(f) first allowed litigants to pursue interlocutory appeals from certification decisions, variations in state laws have led the Ninth Circuit and other Courts of Appeals uniformly to reject all putative multi-state class actions premised on state law torts.

Because Ms. Andersen's proposed class cannot satisfy Rule 23, the Court should deny as futile her motion for leave to pursue certification of this class.

## II.    ARGUMENT

### A.    Ms. Andersen Cannot Satisfy Her Burden Under Rule 23.

Ms. Andersen "bears the burden of **demonstrating**" that (1) she "has met . . . [the] requirements of Rule 23(a)"; (2) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (3) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 724 (9th Cir. 2007) (emphasis added). The Supreme Court and the Ninth Circuit require a "rigorous analysis" of whether a movant has met this burden, *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982), during which the Court is "at liberty" to consider all evidence that "goes to the requirements of Rule 23, even though the evidence may also relate to the underlying merits of the case." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992).

Ms. Andersen misapprehends this standard. She relies on a pre-*Falcon*, long discredited case, *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975), which incorrectly stated that "the court is bound to accept the substantive allegations of the complaint as true" and must ignore all evidence to the contrary. *See* Motion at 4. That standard does not govern; the *Falcon* "rigorous

PAGE 3 -    DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION
            FOR LEAVE TO FILE AN AMENDED MOTION FOR CLASS CERTIFICATION

analysis" standard does. A court must *determine* whether a cohesive, manageable class exists and cannot simply accept a movant's representations. *See, e.g., In re Schering-Plough Corp. ERISA Litig.*, 589 F.3d 585, 603 (3d Cir. 2009); *Monroe v. Charlottesville*, 579 F.3d 380, 384 (4th Cir. 2009); *Vallario v. Vandehey*, 554 F.3d 1259, 1266-67 (10th Cir. 2009); *In re IPO Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006); *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 530 n.5 (D.C. Cir. 2006); *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675-76 (7th Cir. 2001).

When a court has become familiar with a matter and concludes that "any further attempt at class certification would be futile," it need not entertain serial motions. *Mazur v. eBay Inc.*, 257 F.R.D. 563, 572 (N.D. Cal. 2009). *See, e.g., In re HP Inkjet Printer Litig.*, No. C 05-3580 JF, 2008 WL 2949265, at *7 (N.D. Cal. July 25, 2008) ("A proposed amendment to a class allegation may be deemed futile where even with the amendment class certification should be denied."); *Lymon v. Aramark Corp.*, No. Civ. 08-0386 JB/DJS (D. N.M. Dec. 12, 2009) (courts may deny leave to amend "if the proposed amendment is unlikely to create a class which will be certified pursuant to Rule 23").

**B.    Ms. Andersen's Claims Are Inherently Individual.**

**1.    Each enforcement program is factually unique.**  Class membership cannot depend on an individualized merits determination. *See, e.g., Mazur*, 257 F.R.D. at 568; *Xiufang Situ v. Leavitt,* 240 F.R.D. 551, 558 (N.D. Cal. 2007) ("The identity of class members must be ascertainable by reference to objective criteria"); *Rodriguez v. Gates,* No. CV99-13190GAF (AJWX), 2002 WL 1162675, at *8 (C.D. Cal. May 20, 2002), *citing Manual for Complex Litigation Third §* 30.14 (1995) ("Definitions should avoid criteria that are subjective . . . or that depend on the merits."). *See generally* Record Companies' Memo In Opposition To Plaintiff's Motion For Class Certification at 14-17 (doc. no. 138). Because Ms. Andersen's definition hinges on merits criteria—whether a given Enforcement Program defendant did or did not infringe, or was or was not subjected to "abusive" post-filing litigation conduct — it fails.

PAGE 4 -   DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED MOTION FOR CLASS CERTIFICATION

708816.0001/834633.1

**LANE POWELL PC**
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

Ms. Andersen recognizes this fact: thus, her Motion incorrectly asks the Court to find *any* continued litigation to be abusive *per se* once the defendant "denied any wrongdoing." Motion at 4. Whether a defendant denied liability, however, is just one fact among many. For example, in both Enforcement Program cases that have been tried to juries, the defendants initially denied liability and blamed others for the infringement. Both juries, however, found those denials false. *See Capitol Records, Inc. v. Thomas-Rasset*, __ F. Supp. 2d __, 2010 WL 291763, at *6 (D. Minn. Jan. 22, 2010) (finding that the defendant improperly tried to blame others for her own acts of infringement); *SONY BMG Music Ent'mt v. Tenenbaum*, NO. 03-11661-NG (D. Mass) (defendant acknowledged at trial that he falsely denied infringement in pretrial discovery.) *See* Transcript of July 20, 2009, at 89, attached as Exhibit 1 to the Declaration of Parna A. Mehrbani in Support of Defendants' Memorandum in Opposition to Plaintiff's Motion for Leave to File An Amended Motion for Class Certification[1] ("Mehrbani Decl."). Neither of these "deniers" could become members of an abuse of process class, nor could many others who denied liability but subsequently admitted it or were found liable by a court.

Defendants also have denied liability in cases in which they willfully destroyed evidence, subjecting them to default judgments or adverse-inference instructions. *See, e.g., Atlantic Recording Corp. v. Howell*, No. CV-06-2076-PHX-NVW (D. Ariz. Aug. 29, 2008) (attached as Exhibit 2 to the Merhbani Decl.) (entering judgment, despite defendant's denials, because the defendant intentionally erased his computer hard drive); *Motown Record Co. v. DePietro*, No. 2:04-cv-2246-ER (E.D. Pa., June 11, 2007) (attached as Exhibit 3 to the Mehrbani Decl.) (granting adverse-inference instruction because defendant destroyed evidence); *Arista Records, L.L.C. v. Tschirhart*, 241 F.R.D. 462 (W.D. Tex. 2006) (granting judgment against defendant

---

[1] Filed concurrently herewith.

PAGE 5 -   DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED MOTION FOR CLASS CERTIFICATION

because of willful spoliation). These sorts of cases further illustrate that denials, no matter how or when asserted, cannot define whether continued litigation amounted to "abuse of process."

Indeed, Ms. Andersen's own case illustrates this problem. Her "abuse" allegations do not rest solely on her assertions of innocence. Instead, she cites evidence, adduced only in her case, that she contends "exonerated" her. *See, e.g.,* Compl. ¶ 7.20 (someone else used the "Gotenkito" pseudonym on a social networking site, allegedly bolstering Ms. Andersen's denial that she was not the "Gotenkito@KaZaA" user who infringed); *id.* ¶ 7.27 (contending that inspection of Ms. Andersen's computer hard drive exculpated her).

Even taking her purportedly favorable evidence at face value, the Record Companies at all times had strong *inculpatory* evidence against her too, including (1) repeated confirmations from her Internet Service Provider that she was responsible for the specific Internet Protocol address from which "Gotenkito@KaZaA" had infringed, and (2) her admission that she had loaded a version of KaZaA on her computer.[2]

Ms. Andersen claims that Magistrate Judge Ashmanskas, when he awarded her attorneys' fees, already found the Record Companies to have engaged in "abuse," *see* Motion at 5, but Judge Ashmanskas did no such thing. He simply determined that Ms. Andersen was a "prevailing party" entitled to fees under the Copyright Act, 17 U.S.C. § 505. He did not even consider the possibility that the Record Companies had committed state law torts. A different judge reached a similar result in the only other Enforcement Program case in which a court awarded "prevailing party" fees to a defendant, *Capitol Records, Inc. v. Foster*, No. 5:04-cv-1569-W, 2007 WL 1028532, at *5 (W.D. Okla. Feb. 6, 2007).[3] The Supreme Court has made

---

[2] The Record Companies are seeking seek leave to move for summary judgment against Ms. Andersen because the facts of her case do not support her claims of abuse, negligence or civil conspiracy. *See* doc. no. 180 at 4-10.

[3] The *Foster* case involves a set of circumstances very different from, but equally as unique as Ms. Andersen's. In *Foster*, after the Record Companies sued the person responsible for a particular IP address used for infringement, that defendant ultimately identified her daughter as the person who likely committed the infringement. The Record Companies amended their complaint to name the daughter as a defendant, but continued to pursue the original defendant on

(continued . . .)

PAGE 6 -   DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION
          FOR LEAVE TO FILE AN AMENDED MOTION FOR CLASS CERTIFICATION

clear that prevailing defendants in copyright cases may receive fees without any bad faith by the plaintiff. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994).

        **2.**        **Ms. Andersen has no evidence of systematic abuse by the Record Companies.**

With respect to other cases, Ms. Andersen offers no evidence of abuses of any kind, anywhere in the Enforcement Program. She cites so-called "sample emails showing post-filing discovery abuse," appended as Exhibit F(8) to the Declaration of Benjamin Justus (doc. no. 120) ("Justus Decl."). Those e-mails, however, reflect only transient, routine discovery disagreements between counsel in two Enforcement Program cases, neither of which even led to motion practice. Ms. Andersen also alleges, without support, that "additional individuals denied engaging in infringement but decided to quietly 'settle' under coercion or false pretenses because they could not afford or muster a legal defense." Motion at 6. She does not identify even one such case by name, let alone support her claim that "a substantial number" exist (*id.*), or explain how the Court, without individual inquiries, could determine which people purportedly settled for these reasons, rather than because they infringed.

The only other argument Ms. Andersen offers to bolster her "abuse" contention is that thirteen Enforcement Program cases (out of thousands) purportedly were "dismissed once they were shown to be without merit." *See* Motion at 6. This assertion adds nothing to her proposed class motion, for three reasons.

*First*, dismissal alone, without more, cannot define abuse. In the one dismissal case Ms. Andersen cites in which the court issued any opinion at all, *Priority Records L.L.C. v. Chan*, No. 04-CV-73645-DT (E.D. Mich.), the court accepted the Record Companies' voluntary dismissal of the case and specifically rejected the defendant's request for "prevailing party" fees. The judge found that the Record Companies had taken "reasonable steps to try to prosecute this

---

(. . . continued)
a separate theory of secondary liability. The Record Companies obtained a judgment against the daughter, then voluntarily dismissed the secondary claim against the mother. It was that separate claim on which the court found the mother to have "prevailed." *See* 2007 WL 1028532 at *1.

PAGE 7 -   DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION
              FOR LEAVE TO FILE AN AMENDED MOTION FOR CLASS CERTIFICATION

case and litigate against the proper defendant(s)," while the defendant serially obstructed the case. Order dated May 19, 2005, attached as Exhibit 4 to the Mehrbani Decl., at 4.

*Second*, in *no* Enforcement Program case has a court found abuse by the Record Companies. Cases ended for many reasons, including that defendants identified others in the household as having committed the primary acts of infringement.

*Third*, and most significantly, federal judges around the country supervised every aspect of each Enforcement Program litigation. Rule 23(b)(3)(C) admonishes courts considering class certification to avoid the "undesirability of concentrating [widespread] claims in the particular forum." Ms. Andersen's proposal asks the Court to do just the opposite—to revisit thousands of prior decisions rendered by other federal district court judges, made pursuant to then-applicable state and federal precedent governing each case. This request cannot be reconciled with Rule 23(b)(3)(c) or any notions of comity.[4]

C.  **Negligence and Abuse of Process Laws Vary Widely Among the States, Precluding Nationwide Class Certification.**

Ms. Andersen's proposed class makes clear that individual fact issues predominate. Individual issues of law predominate, too, because each class member's claims for negligence and abuse of process must be evaluated according to the laws of each defendant's home state.[5] These laws vary too widely to support a nationwide class action. *See* doc. no. 138 at 19-29, 33-36. Moreover, because many state Supreme Courts have not ruled on aspects of the tort claims central to Ms. Andersen's claims, this Court would have to *predict* how each state's highest court would rule on these issues.[6]

---

[4] Even in Ms. Andersen's own case, the discovery she claims constituted "abuse"—the Record Companies' short, telephonic deposition of her daughter—was ordered, after motion practice, by a judge of this Court. *See* Docket No. 180 at 5-6.

[5] *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001) (federal courts must look to forum state's choice of law rules to determine the controlling substantive law."), *amended by* 273 F.3d 1266 (9th Cir. 2001); *Tower v. Schwabe*, 585 P.2d 662, 663 (Or. 1978) (Oregon follows the "most significant relationship" test).

[6] *See Giles v. GM Acceptance Corp.*, 494 F.3d 865, 872 (9th Cir. 2007) ("Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it."); *Zehel-Miller v. AstraZeneca Pharm., LP*, 223 F.R.D. 659, 663

(continued . . .)

PAGE 8 -   DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED MOTION FOR CLASS CERTIFICATION

Since the 1998 adoption of Rule 23(f), state law variations have caused the ultimate failure of every effort to certify a nationwide state-law tort class. *No* circuit court has held *any* category of state tort law sufficiently uniform to support nationwide class certification. *See In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1015 (7th Cir. 2002) (imposing a categorical ban on nationwide state-law class actions); *Powers v. Lycoming Engines*, 328 Fed. Appx. 121, 127 (3d Cir. 2009) (reversing class certification because district court failed to consider variations in state laws); *Cole v. GM Corp.*, 484 F.3d 717, 725-26 (5th Cir. 2007) (same); *In re St. Jude Med. Ctr.*, 425 F.3d 1116, 1120 (8th Cir. 2005) (same); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996) ("In a multi-state class action, variations in state law may swamp any common issues and defeat predominance.").

The Ninth Circuit consistently has rejected proposed classes for this very reason. *See Lozano*, 504 F.3d at 728 ("predominance was defeated because [the analysis] would necessitate a state-by-state review of contract unconscionability jurisprudence"); *Zinser*, 253 F.3d at 1189-90 (in a products liability case, nationwide certification "compound[ed] exponentially" the "proliferation of disparate factual and legal issues"); *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1230, 1234 (9th Cir. 1996) (decertifying products liability class because district court failed to consider state law variations).[7] *See also Bonlender v. American Honda Motor Co.*, 286 Fed. Appx. 414, 414-15 (9th Cir. 2008) (unpublished decision reversing certification because court failed to consider state law variations). These cases show why Ms. Andersen has not met

---

(. . . continued)
(M.D. Fla. 2004) (Absence of state guidance "would force this Court into the undesirable position of attempting to predict how their courts of last resort would resolve [the] issue. . . . There simply is no justification for embarking on so complex a path.").

[7] The following represent a small fraction of recent cases, just from within the Ninth Circuit, rejecting proposed multistate state-law classes because plaintiffs could not show uniformity of state laws: *Utility Consumers' Action Network v. Sprint Solutions, Inc.*, 259 F.R.D. 484 (S.D. Cal. 2009); *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651 (D. Nev. 2009); *Rivera v. Bio Engineered Supp. & Nutrition, Inc.*, 2008 WL 4906433, at *3 (C.D. Cal. Nov. 13, 2008); *Stearns v. Select Comfort Retail Corp.*, 2008 WL 4542967, at *7-8 (N.D. Cal. Oct. 1, 2008); *In re HP Inkjet Printer Litig.*, 2008 WL 2949265, at *7; *Estate of Felts v. Genworth Life Ins. Co.*, 250 F.R.D. 512, 526 (W.D. Wash. 2008); *Sweet v. Pfizer*, 232 F.R.D. 360, 372 (C.D. Cal. 2005).

PAGE 9 -   DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION
           FOR LEAVE TO FILE AN AMENDED MOTION FOR CLASS CERTIFICATION

her burden of presenting a "suitable and realistic plan for trial of the class claims." *Zinser*, 253 F.3d at 1189.

The Record Companies' opposition to Ms. Andersen's original class certification motion detailed the significant state-by-state variations in the common law of negligence [*see* doc. no. 138 at 33-36] and abuse of process (*see id.* at 24-30). Ms. Andersen has yet to respond to this point, either in her original reply memorandum or in her present motion. To the contrary, her original motion simply recited the elements of her causes of action and wrongly claimed that they are "almost identical in each state." Justus Decl., Ex. B, at 1. Courts uniformly reject such cursory analyses. *See, e.g., Cole*, 484 F.3d at 725-26 (rejecting attempt to "oversimplif[y] the required analysis and gloss[] over the glaring substantive legal conflicts"); *Agostino v. Quest Diagnostics, Inc.*, 256 F.R.D. 437, 452 (D.N.J. 2009) (plaintiff's "copy-and-paste compilation of the relevant provisions of state law" overstated the laws' similarities). Absent a "credibl[e] demonstrat[ion] through an 'extensive analysis' of state law variances, that class certification does not present insuperable obstacles," class certification cannot be granted. *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C. Cir. 1986); *see also Lozano*, 504 F.3d at 728.

State law as to the torts of negligence and abuse of process vary significantly. These sharp differences preclude certification of Ms. Andersen's claims on a nationwide basis regardless of how she proposes to define membership in the class.

### III.    CONCLUSION

For the foregoing reasons, the Record Companies respectfully request the Court to deny Ms. Andersen's request for leave to file an amended motion for class certification.

DATED:  February 16, 2010

                LANE POWELL PC

                By   /s/ Parna A. Mehrbani
                     Kenneth R. Davis, II, OSB No. 971132
                     William T. Patton, OSB No. 973646
                     Parna A. Mehrbani, OSB No. 053235
                     (503) 778-2100

PAGE 10 -  DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED MOTION FOR CLASS CERTIFICATION

Attorneys for Defendants Atlantic Recording Corporation, Priority Records LLC, Capitol Records, Inc., UMG Recordings, Inc., BMG Music, Recording Industry Association of America, Settlement Support Center, LLC, and SafeNet, Inc.

**Timothy Reynolds,** *Admitted Pro Hac Vice*
timothy.reynolds@hro.com
**HOLME ROBERTS & OWEN LLP**

Attorneys for Defendants Atlantic Recording Corporation, Priority Records LLC, Capitol Records, Inc., UMG Recordings, Inc., BMG Music, Recording Industry Association of America, and Settlement Support Center, LLC

**Jeffrey S. Jacobson,** *Admitted Pro Hac Vice*
jsjacobson@debevoise.com
**DEBEVOISE & PLIMPTON LLP**

Attorneys for Defendant Recording Industry Association of America

**Thomas M. Mullaney**, *Admitted Pro Hac Vice*
tmm@mullaw.org
**LAW OFFICES OF THOMAS M. MULLANEY**

Attorneys for SafeNet, Inc., f/k/a Media Sentry, Inc.

PAGE 11 - DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED MOTION FOR CLASS CERTIFICATION

708816.0001/834633.1

**LANE POWELL PC**
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200