**Kenneth R. Davis, II**, OSB No. 971132
davisk@lanepowell.com
**William T. Patton**, OSB No. 973646
pattonw@lanepowell.com
**Parna A. Mehrbani**, OSB No. 053235
mehrbanip@lanepowell.com
**LANE POWELL** PC
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158
Telephone:  503.778.2100
Facsimile:  503.778.2200

**Timothy M. Reynolds**, *Admitted Pro Hac Vice*
**HOLME ROBERTS & OWEN LLP**

**Jeffrey S. Jacobson**, *Admitted Pro Hac Vice*
**DEBEVOISE & PLIMPTON LLP**

**Thomas M. Mullaney**, *Admitted Pro Hac Vice*
**LAW OFFICES OF THOMAS M. MULLANEY**

Attorneys for Defendants Atlantic Recording Corporation, Priority Records LLC,
Capitol Records, Inc., UMG Recordings, Inc. BMG Music, Recording Industry Association
of America, Settlement Support Center, LLC, and SafeNet, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **TANYA ANDERSEN,** | Civil No. 3:07-CV-934-BR |
| Plaintiff, | |
| v. | **DECLARATION OF PARNA A. MEHRBANI IN SUPPORT OF DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED MOTION FOR CLASS CERTIFICATION** |
| **ATLANTIC RECORDING CORPORATION, et al.,** | |
| Defendants. | |

PAGE 1 -   DECLARATION OF PARNA A. MEHRBANI

I, Parna A. Mehrbani, declare and testify as follows:

1.      I am an attorney at the law firm Lane Powell PC and am one of the attorneys representing defendants in this matter.  I am knowledgeable about the facts set forth herein and make this Declaration in support of Defendants' Memorandum in Opposition to Plaintiff's Motion for Leave to File An Amended Motion for Class Certification.

2.      Attached hereto as Exhibit 1 is a true and correct copy of the Transcript of Proceedings of the July 30, 2009, trial Testimony of Joel Tenebaum, in *Capital Records, Inc., et al., et al. v. Noor Alaujan, et al.*, U.S. District Court, District of Massachusetts, Case No. CV 03-11661-NG.[1]

3.      Attached hereto as Exhibit 2 is a true and correct copy of the August 9, 2008, Order in *Atlantic Recording Corporation, et al. v. Howell*, U.S. District Court, District of Arizona, Case No. CV-06-2076-PHX-NVW.

4.      Attached hereto as Exhibit 3 is a true and correct copy of the June 11, 2007, Order in *Motown Record Co., LP, et al. v. DePietro*, U.S. District Court, Eastern District of Pennsylvania, Case No. 2:04-cv-2246-ER.

5.      Attached hereto as Exhibit 4 is a true and correct copy of the May 19, 2005, Opinion and Order in *Priority Records L.L.C., et al. v. Chan*, U.S. District Court, Eastern District of Michigan, Case No. 04-CV-73645-DT.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this 16th day of February 2010.

_____/s/ Parna A. Mehrbani_____
Parna A. Mehrbani

---

[1] Only the portion cited to in the concurrently filed Memorandum is attached hereto.  Defendants can provide the entire transcript to the Court if requested to do so.

PAGE 2 -   DECLARATION OF PARNA A. MEHRBANI

1

1       UNITED STATES DISTRICT COURT

2      FOR THE DISTRICT OF MASSACHUSETTS

3   - - - - - - - - - - - - - - - - )

4   CAPITAL RECORDS, INC., ET AL.,    )    CV. NO. 03-11661-NG

5           PLAINTIFFS          )

6   VS.                      )    COURTROOM NO. 2

7   NOOR ALAUJAN, ET AL.,             )    1 COURTHOUSE WAY

8           DEFENDANTS          )    BOSTON, MA  02210

9   - - - - - - - - - - - - - - - - -

10

11             JURY TRIAL DAY 4

12        TESTIMONY OF JOEL TENEBAUM ONLY

13

14

15             JULY 30, 2009

16              9:10 A.M.

17     BEFORE THE HONORABLE NANCY GERTNER

18     UNITED STATES DISTRICT COURT JUDGE

19

20            VALERIE A. O'HARA

21          OFFICIAL COURT REPORTER

22

23

24

25

EXHIBIT 1
Page 1 of 3

1          THE COURT:  Sustained.

2          MR. REYNOLDS:  I object.

3   Q.  Mr. Reynolds began his examination of you by asking you

4   to respond to and react to your responses to

5   interrogatory?

6   A.  Yes.

7   Q.  Were your interrogatory responses accurate?

8   A.  No.

9   Q.  Why did you lie at that point?

10  A.  It was kind of something I rushed through with my mom,

11  and I figured if you phrase things in a certain way it's not

12  like -- I don't know, it's what seemed the best response to

13  give.

14  Q.  You were on the defense, were you not?

15  A.  Yes.

16  Q.  And you were doing the best you could?

17  A.  Yes.

18  Q.  Without a lawyer advising you directly on the answers?

19  A.  My mom, but --

20  Q.  And you then in August, 2008 or was it September were,

21  became represented by me?

22  A.  Yes.

23  Q.  And almost immediately we were in deposition?

24  A.  Yes.

25  Q.  And in that deposition you made the responses that

EXHIBIT 1
Page 2 of 3

105

```
1                    C E R T I F I C A T E

2

3    UNITED STATES DISTRICT COURT )

4    DISTRICT OF MASSACHUSETTS    )

5    CITY OF BOSTON               )

6

7            I, Valerie A. O'Hara, Registered Professional

8    Reporter, do hereby certify that the foregoing transcript

9    was recorded by me stenographically at the time and place

10   aforesaid in No. 03-11661-NG, Capital Records, Inc., et al.

11   vs. Noor Alaujan, et al. and thereafter by me reduced to

12   typewriting and is a true and accurate record of the

13   proceedings.

14                           /S/ VALERIE A. O'HARA

15

16                           _____

17                           VALERIE A. O'HARA

18                           REGISTERED PROFESSIONAL REPORTER

19                           DATED NOVEMBER 23, 2009

20

21

22

23

24

25
```

EXHIBIT 1
Page 3 of 3

**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Atlantic Recording Corporation, et al., | No. CV-06-02076-PHX-NVW |
| Plaintiffs, | **ORDER** |
| vs. | |
| Pamela and Jeffrey Howell, wife and husband, | |
| Defendants. | |

This is a suit for copyright infringement brought by seven major recording companies against Defendant Jeffrey Howell ("Howell"). The recording companies allege that Howell used the KaZaA file-sharing program to download 54 of their sound recordings and to distribute them to other users of the network. The court previously denied the recording companies' Motion for Summary Judgment based in part on Howell's testimony that he had legally purchased the music at issue, that he did not place the recordings in the KaZaA shared folder, that the KaZaA program was making files in other locations on his hard drive available for download without his authorization, and that other users of the computer could be responsible for sharing the music. (Doc. # 91.) However, Howell had not cooperated with the recording companies' proper requests to conduct a forensic examination of his computer hard drive and to produce certain backup media that he supposedly created. (Doc. # 86). The court therefore granted the recording companies' motion to compel that discovery and granted them leave to take additional

EXHIBIT 2
Page 1 of 7

1  discovery. With the benefit of their additional discovery, the recording companies have

2  now moved for terminating sanctions based on Howell's willful spoliation of material

3  evidence. (Doc. # 103.)[1]

4  **I. Howell's Willful Destruction of Evidence Demands Terminating Sanctions**

5  Sanctions, including default judgment, may be imposed against a party who fails to

6  comply with the court's order to provide or permit discovery. Fed. R. Civ. P. 37(b).

7  Courts also have the inherent power to impose default judgment when "'a party has

8  engaged deliberately in deceptive practices that undermine the integrity of judicial

9  proceedings . . . , has willfully deceived the court and engaged in conduct utterly

10  inconsistent with the orderly administration of justice.'" *Leon v. IDX Sys. Corp.*, 464 F.3d

11  951, 958 (9th Cir. 2006) (quoting *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69

12  F.3d 337, 348 (9th Cir. 1995)). Factors to evaluate when considering default as a

13  sanction include: "(1) the public's interest in expeditious resolution of litigation; (2) the

14  court's need to manage its dockets; (3) the risk of prejudice to the party seeking

15  sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the

16  availability of less drastic sanctions." *Id.*

17  Howell has repeatedly destroyed evidence central to the factual allegations in this

18  case. He admits that he removed the KaZaA program from his computer and deleted the

19  contents of the shared folder shortly after receiving notice of this lawsuit. (Doc. # 106,

20  Ex. 1 at 105:19–25, 349:19–24.) Although he testified that he created DVDs to backup

21  his shared folder before he removed it (*id.*), the DVDs he produced in discovery are

22  inaccurate and unworthy of belief. The DVDs he created are not true backups because

23

24  ―――――――――――――――――

25  [1] The recording companies have also moved to dismiss Defendant Pamela Howell
   because she and Jeffrey Howell are no longer married. The recording companies named her

26  as a defendant solely for the purposes of marital community liability. Pamela Howell has
   stipulated to dismissal without prejudice. (Doc. # 113, Ex. B.) She will therefore be

27  dismissed without prejudice.

28  - 2 -

1  they do not contain information about the files' original locations.  Furthermore, the file

2  creation dates for several files on one of the DVDs suggest that Howell created the DVDs

3  well after he removed KaZaA from his computer.  The DVDs also contain files that were

4  not being shared by Howell's computer in January of 2006, so they do not accurately

5  represent the contents of his shared folder at that time. (Doc. # 103, Ex. F at ¶¶ 36–39.)

6  Howell now disavows his previous testimony that the DVDs were created to preserve the

7  evidence.  Instead, he explains that he simply wanted to keep his files for future use.

8  (Doc. # 111, Ex. A at 31:11–21.)  Howell's shifting explanations for creating the DVDs

9  calls his credibility into question, especially given that he is a sophisticated computer user

10  and knows how to make a proper backup disk.  (*Id.*; doc. # 80 at 40:1 to 41:17.)  In any

11  event, the DVDs that Howell created did not preserve the substantial amount of material

12  evidence that he destroyed by uninstalling KaZaA.

13      The recording companies' forensic examination also shows that Howell reinstalled

14  his computer's operating system on January 2, 2007, a few weeks after he had received

15  their requests for copies of various files on his computer.  (Doc. # 103, Ex. F ¶ 27.)

16  Howell also downloaded a program called Aevita Wipe & Delete in November, 2006,

17  shortly after he filed his answer in this suit.[2]  Then, in the middle of the discovery period,

18  he used that program to permanently delete all traces of certain files on his computer.

19  The Aevita software usually creates a log of the files it has deleted, but in Howell's case,

20

21  _____

22  [2]  The program is advertised as follows:

23      Aevita Wipe & Delete is a reliable and ultra-fast shredder that
    will help you securely erase any file or folder without any

24      chances for its recovery . . . the program can erase any file or
    folder by overwriting it several times, thus rendering it

25      completely unrecoverable even for the most sophisticated
    recovery software.

26

27  (Doc. # 103, Ex. G.)

28                                    - 3 -

EXHIBIT 2
Page 3 of 7

1    that log is missing. (*Id.* ¶ 29.) After taking these steps, Howell testified to facts that

2    could not be disproved because he had destroyed the pertinent evidence. He swore that

3    none of the music on his computer was downloaded through KaZaA, that none of it was

4    in his shared folder, and that the program was allowing access to other locations on his

5    hard drive.

6         Howell admitted in his deposition and at the August 25, 2008 hearing that he

7    acted with full knowledge of his duty to preserve all of the evidence relevant to the

8    recording companies' claims. (Doc. # 106, Ex. 1 at 105:19–25.) He explains, however,

9    that he removed KaZaA, reinstalled his operating system, and ran the Aevita software to

10   ensure that KaZaA would no longer function on his computer. But Howell had the means

11   to prevent KaZaA from continuing to function and also preserve the evidence. Given the

12   serious claims he was confronting, he would have done so if that evidence was as

13   powerfully exonerating as he describes. It is implausible that Howell would destroy the

14   only evidence that could exonerate him simply to remove KaZaA from his computer. It is

15   entirely incredible that his systematic and pervasive destruction of every last bit of

16   evidence pertaining to the claims against him was simply an effort to tidy up his

17   computer. The timing and character of Howell's actions show that they were deliberately

18   calculated to conceal the truth and that he willfully destroyed evidence to deceive the

19   court.

20        Howell's brazen destruction of evidence has wholly undermined the integrity of

21   these judicial proceedings. The evidence that Howell destroyed could have been used to

22   determine the origin of the music files, their locations on the hard drive, the settings and

23   integrity of the KaZaA software, and many other relevant facts. Without these facts, the

24   recording companies and the court are unable to examine the factual accuracy of

25   Howell's defenses. The expert was only able to recover a handful of file references to the

26   shared folder from the unallocated space on Howell's hard drive. That small fragment of

27   data does not prove or disprove Howell's contention that the sound recordings were not in

28   - 4 -

1    his shared folder.  The recording companies' remaining evidence regarding the origin and

2    locations of the sound files is tenuous and circumstantial.  Howell's actions have made it

3    impossible to decide this case on the merits.  The prejudice to the court and to the

4    recording companies is irretrievable.

5        Such circumstances demand the imposition of a default judgment against Howell.

6    Imposition of default judgment is an extreme sanction to be used as a last resort, but no

7    lesser sanction will adequately deter the repetition of this kind of easily accomplished and

8    highly prejudicial destruction of evidence.  "One who anticipates that compliance with

9    discovery rules, and the resulting production of damning evidence, will produce an

10    adverse judgment, will not likely be deterred from destroying that decisive evidence by

11    any sanction less than the adverse  judgment he (or she) is tempted to thus evade."

12    *Computer Assoc. Int'l, Inc. v. Am. Fundware, Inc.*, 133 F.R.D. 166, 170 (D. Colo. 1990).

13    *See also Arista Records, L.L.C. v. Tschirhart*, 241 F.R.D. 462, 465 (W.D. Tex. 2006);

14    *Cabnetware, Inc. v. Sullivan, 1991 U.S. Dist. LEXIS 20329* at *11–12 (E.D. Cal. July 15,

15    1991); *Wm. T. Thompson Co. v. General Nutrition Corp.*, 593 F. Supp. 1443, 1456 (C.D.

16    Cal. 1984).  It will not suffice to impose a presumption that the evidence lost was

17    damaging to Howell.  The evidence destroyed here was so central to the allegations in this

18    case that imposing such a presumption would effectively establish his liability.

19    Imposition of a default judgment is therefore the only appropriate sanction, both for its

20    deterrent effect and to remedy the prejudice inflicted on the recording companies and on

21    the court.

22    **IV.  Relief Will Be Granted**

23        **A.  Statutory Damages**

24        The recording companies have elected to seek minimum statutory damages under

25    17 U.S.C. § 504(c)(1) instead of proving actual injury.  The statute "provides that the

26    author's entitlement, per infringed work, is 'a sum of not less than $750 or more than

27    $30,000 as the court considers just.'"  *BMG Music v. Gonzalez*, 430 F.3d 888, 891 (7th

28

- 5 -

EXHIBIT 2
Page 5 of 7

1   Cir. 2005) (quoting 17 U.S.C. § 504(c)(1)).  No evidentiary hearing on damages is

2   necessary because the recording companies seek only minimum statutory damages, and

3   those damages are easily ascertainable from the complaint.  *Ortiz-Gonzalez v. Fonovisa*,

4   277 F.3d 59, 63–64 (1st Cir. 2002).  The requested statutory damages of $750 per sound

5   recording, a total of $40,500, will therefore be awarded.

6       **B. Injunction**

7         The recording companies also request an injunction pursuant to 17 U.S.C. § 502(a)

8   prohibiting Howell from further copyright infringement and requiring the destruction of

9   any unauthorized copies of the sound recordings that Howell may hold in any medium.

10   (Doc. # 1 ¶ 20.)  Title 17, section 502(a), United States Code, provides that "[a]ny court

11   having jurisdiction of a civil action arising under this title may . . . grant temporary and

12   final injunctions on such terms as it may deem reasonable to prevent or restrain

13   infringement of a copyright."  An injunction against a Kazaa user found to have infringed

14   copyrights may be "appropriate to ensure that the misconduct does not recur as soon as

15   the case ends."  *BMG Music*, 430 F.3d at 893 (affirming a district court order enjoining a

16   defendant from downloading copyrighted sound recordings).  An injunction will therefore

17   be entered prohibiting Howell from further downloading or distributing the recording

18   companies' copyrighted sound recordings without authorization.

19       **C. Costs**

20         The recording companies also seek, pursuant to 17 U.S.C. § 505, the cost of their

21   $350 filing fee.  That section of the Copyright Act provides, in part, that "the court in its

22   discretion may allow the recovery of full costs by or against any party other than the

23   United States or an officer thereof." 17 U.S.C. § 505. Costs have been awarded in

24   infringement cases to: "(1) deter future copyright infringement, (2) ensure that all holders

25   of copyrights which have been infringed will have equal access to the court to protect

26   their works, and (3) penalize the losing party and compensate the prevailing party." *A &*

27

28                         - 6 -

1  *N Music Corp. v. Venezia*, 733 F. Supp. 955, 959 (E.D. Pa. 1990) (citations omitted).

2  Costs will be awarded to Plaintiffs in service of these ends.

3      IT IS THEREFORE ORDERED that the Motion for Terminating Sanctions (doc. #

4  103) is granted as against Defendant Jeffrey Howell, his answer to the complaint is

5  stricken, and default judgement will be entered against him for $40,500.00 in statutory

6  damages and $350.00 in costs and for a permanent injunction.

7      IT IS FURTHER ORDERED that Plaintiff's Motion to Dismiss Pamela Howell

8  Without Prejudice (doc. # 113) is granted.

9      IT IS FURTHER ORDERED that, upon entry of the separate Judgment and

10  Permanent Injunction this day, the Clerk shall terminate this action.

11      DATED this 29th day of August, 2008.

12

13

14  _____

15  Neil V. Wake
   United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28                                 - 7 -

## Anne Allen

| | |
|---|---|
| **From:** | ecf_paed@paed.uscourts.gov |
| **Sent:** | Monday, June 11, 2007 1:08 PM |
| **To:** | paedmail@paed.uscourts.gov |
| **Subject:** | Activity in Case 2:04-cv-02246-ER MOTOWN RECORD COMPANY, L.P. et al v. DEPIETRO Order on Motion for Entry of Default |

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.

### United States District Court

### Eastern District of Pennsylvania

## Notice of Electronic Filing

The following transaction was entered on 6/11/2007 at 3:07 PM EDT and filed on 6/11/2007
**Case Name:**     MOTOWN RECORD COMPANY, L.P. et al v. DEPIETRO
**Case Number:**    2:04-cv-2246
**Filer:**
**Document Number:** 82

**Docket Text:**
ORDER THAT PLAINTIFFS' MOTION FOR SANCTIONS BASED ON DEFENDANT'S SPOLIATION OF EVIDENCE IS GRANTED IN PART AND DENIED IN PART. IT IS FURTHER ORDERED THAT DEFENDANT IS HEREBY SANCTIONED IN THE FOLLOWING MANNER: DEFENDANT IS PRECLUDED FROM OFFERING ANY TESTIMONY OR MAKING ANY ARGUMENT THAT PLAINTIFFS WOULD BE ABLE TO SUFFICIENTLY REBUT ONLY IF THEY HAD THE OPPORTUNITY TO EXAMINE THE SPOLIATION COMPUTER AND MODEM, ETC. SIGNED BY JUDGE CYNTHIA M. RUFE ON 6/11/2007. 6/11/2007 ENTERED AND COPIES MAILED AND E-MAILED.(mbh, )

**2:04-cv-2246 Notice has been electronically mailed to:**
HOWARD M. KLEIN hklein@cogr.com, dfunston@cogr.com
ANDREW HANAN ahanan@cogr.com
JENNIFER K. WELSH jwelsh@cogr.com
RICHARD L. GABRIEL richard.gabriel@hro.com, anne.allen@hro.com

**2:04-cv-2246 Notice will not be electronically mailed to:**

JEFFREY C. BLAIR
1700 LINCOLN ST., SUITE 4100
DENVER, CO 80203-4541

EVE G. BURTON
1700 LINCOLN ST., SUITE 4100
DENVER, CO 80203-4541

TIMOTHY E. CONGROVE
2555 GRAND BLVD
KANSAS CITY, MO 64108

STACEY E. DEERE
SHOOK HARDY & BACON LLP
2555 GRAND BLVD
KANSAS CITY, MO 64108

THERESA DEPIETRO
1121 FOLSON AVENUE
PROSPECT PARK, PA 19076

THERESE P. MILLER
SHOOK, HARDY & BACON, LLP
2555 GRAND BOULEVARD
KANSAS CITY, MO 64108

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1001600548 [Date=6/11/2007] [FileNumber=2800343-0
] [16e0c884a7dae68df165a9cd1606a6ea0c7ea5665e5b679e39b68f2e7722b426f68
f71d66bc19f5e3225a9acd2f24477ba13713a629496b40ea9bdbda3d525a2]]

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **MOTOWN RECORD CO., LP, et al.,** | : | |
| **Plaintiffs,** | : | |
| v. | : | **CIVIL NO. 04-CV-2246** |
| | : | |
| **THERESA DePIETRO,** | : | |
| **Defendant.** | : | |

## ORDER

**AND NOW,** this 11th day of June 2007, upon consideration of Plaintiffs' Motion for

Sanctions Based on Defendant's Spoliation of Evidence [Doc. # 60] and Defendant's Request to

Deny Plaintiffs' Motion [Doc. # 67], and after a hearing held in this matter on May 4, 2007, it is

hereby **ORDERED** that Plaintiffs' Motion is **GRANTED IN PART** and **DENIED IN PART,** as

follows:

(1)    Plaintiffs' Motion is **GRANTED** inasmuch as it seeks sanctions for
Defendant's spoliation; and

(2)    Plaintiffs' Motion is **DENIED** inasmuch as it seeks the entry of default
judgment as the proper sanction.[1]

---

[1] At the May 4, 2007 Hearing on Plaintiffs' Motion, the Court found that DePietro's "computer and cable modem were both disposed of . . . after this lawsuit was noticed." N.T. 5/4/07 [Doc. # 81], at 34. DePietro destroyed this equipment with knowledge of her duty to conserve relevant evidence and in an attempt to protect herself from Plaintiffs' claims. Because DePietro thereby robbed Plaintiffs of any opportunity to examine the equipment, they are substantially prejudiced. Accordingly, the Court concludes that DePietro is responsible for spoliation of evidence, and she is therefore subject to sanctions.

The act of spoliation may give rise to various types of sanctions. Some available sanctions include the suppression of evidence, an adverse-inference instruction, fines, attorneys' fees or costs, and the ultimate of all spoliation sanctions—the entry of default judgment. See Paramount Pictures Corp. v. Davis, 234 F.R.D. 102, 110–11 (E.D. Pa. 2005). The decision of which sanction(s) to impose is within the discretion of the Court. Id. at 111. In choosing an appropriate sanction, however, the Court should "select the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim." Id. Entering default judgment against the spoliating party should be considered only as a "'last resort,' to be imposed only if no alternative remedy by way of a lesser, but equally efficient sanction is available." Baliotis v. McNeil, 870 F. Supp. 1285, 1289 (M.D. Pa. 1994).

In this case, while DePietro's wrongful conduct certainly warrants sanctions, the Court is not convinced that the entry of default judgment is appropriate. Even without examining DePietro's computer and modem, Plaintiffs

EXHIBIT 3
Page 3 of 5

It is **FURTHER ORDERED** that Defendant is hereby **SANCTIONED** in the following manner:

(1)    Defendant is precluded from offering any testimony—whether lay or expert—or making any argument that Plaintiffs would be able to sufficiently rebut only if they had the opportunity to examine the spoliated computer and modem. Specifically, Defendant **may not** offer any evidence or argument:

    (a)    that a third-party hacked into her computer and downloaded the relevant media files onto her computer;

    (b)    that the "remote desktop" feature was enabled and no passwords were defined, thereby allowing a third-party intruder to connect to her computer; or

    (c)    that a virus caused the computer to download the relevant media files.[2]

(2)    The Court will give an adverse-inference instruction—also known as the "spoliation inference"—in its jury instructions, informing the jurors that they may infer that the destroyed evidence, if it had been preserved, would have been unfavorable to DePietro's position.[3]

---

have obtained and developed evidence linking her to the infringement. While this evidence may be stronger if buttressed by information that could have been obtained from the discarded equipment, it is nonetheless sufficient to proceed against DePietro at trial and to, theoretically, carry their burden of proof. This is especially true in light of the alternative sanctions that the Court will impose against DePietro. Even DePietro is entitled to her day in court; albeit a day on which her defenses will be greatly limited, and the jury will be informed that she knowingly discarded important, and likely damaging, evidence. Therefore, the Court will not enter default judgment against DePietro based on the spoliation.

    [2] While the Court is unwilling to enter judgment against DePietro, it will exercise its sanction power in this case by precluding her from offering evidence that would be subject to rebuttal if Plaintiffs had been granted the opportunity to examine her computer and modem. DePietro's own alleged expert confirmed that, if given the opportunity to examine the discarded equipment, he—or any other expert, including Plaintiffs'—would be able to determine the viability of the various defense theories involving an "outside attacker" who infiltrated her computer and downloaded the media files. See, e.g., Magee Dep. 43:12–16, 63:9–12, May 22, 2006. Since DePietro's conduct prevented Plaintiffs from obtaining the information necessary to conclusively refute these theories, the Court deems it appropriate to preclude DePietro from offering them to the jury through testimony or argument. Allowing otherwise would reward DePietro for her misconduct.

    [3] Levying the spoliation-inference sanction against a party accused of destroying evidence is appropriate when: (1) the relevant evidence was within the accused party's control; (2) the party actually suppressed, withheld, or destroyed the evidence; (3) the evidence destroyed or withheld was relevant to the opposing party's claims or the

-2-

EXHIBIT 3
Page 4 of 5

It is so **ORDERED**.

                                        **BY THE COURT:**


                                        /s/ Cynthia M. Rufe
                                        **CYNTHIA M. RUFE, J.**

---

accused party's claims; and (4) it was reasonably foreseeable that the evidence would later be discoverable by the opposing party.  Davis, 234 F.R.D. at 112 (citing Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 334 (3d Cir. 1995); Mosaid Techs., Inc. v. Samsung Elecs. Co., 348 F. Supp. 2d 332, 335 (D.N.J. 2004)).

    In this case, the spoliation-inference sanction is appropriate because: (1) the computer and modem were within DePietro's control at all times; (2) she intentionally destroyed or suppressed both pieces of evidence—by throwing out the computer and returning the modem to her Internet provider—after learning of the pending action against her; (3) examination of the computer and modem would have provided significant, if not conclusive, evidence to Plaintiffs; and (4) considering the importance of her computer and modem to the claims of illegal downloading and distribution, it was foreseeable that her computer and modem would be discoverable by Plaintiffs. Therefore, the factfinder must be informed of the spoliation and be permitted to infer that the evidence would have yielded information adverse to DePietro's claims of innocence.

EXHIBIT 3
Page 5 of 5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRIORITY RECORDS L.L.C.,
ELEKTRA ENTERTAINMENT GROUP
INC., MOTOWN RECORDS COMPANY, L.P.,
WARNER BROS. RECORDS, INC., SONY
MUSIC ENTERTAINMENT INC., UMG
RECORDINGS, INC., and ARISTA
RECORDS, INC.,                                              CASE NO. 04-CV-73645-DT
                                                            HON. LAWRENCE P. ZATKOFF

       Plaintiffs,

vs.

CANDY CHAN,

       Defendant.
_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on Plaintiffs' Motion to Dismiss Candy Chan with prejudice
(Docket # 25). Defendant has filed a response and the reply period has expired. The facts and legal
arguments are adequately set forth in the briefs submitted. Therefore, finding that the determination
of the issues will not be aided by oral argument, and pursuant to E.D. Mich. Local R. 7.1(e), this
Court ORDERS that Defendants' Motion to Dismiss be decided upon the briefs submitted, without
this Court entertaining oral arguments. For the reasons that follow, Plaintiffs' Motion to Dismiss
is GRANTED. Accordingly, Candy Chan's Motion to Compel (Docket #18) and the parties
Stipulation to Continue Without Date (Docket #26) are hereby DISMISSED AS MOOT.

EXHIBIT 4
Page 1 of 5

## II. BACKGROUND

Plaintiffs filed the instant suit against Candy Chan because an e-mail address at an Internet Protocol ("IP") address registered to Candy Chan allegedly was used to copy files of the Plaintiffs and participate in the peer-to-peer distribution of such files. Plaintiffs therefore commenced this lawsuit and named her as the Defendant. A scheduling conference was held on December 14, 2004, at which time Candy Chan's counsel revealed for the first time that one of her children might have used the e-mail address in question ("*spicybrwneyedgrl@fileshare*"). The Court adjourned the scheduling conference for 60 days in order to allow Plaintiffs to add any necessary parties and amend their Complaint, if necessary. In an effort to satisfy the Court's directive to add parties within the 60-day adjournment period, Plaintiffs sent letters and interrogatories to Candy Chan and her counsel in an effort to determine who the appropriate defendant(s) might be. On February 8, 2005, at a deposition held because Candy Chan had not previously disclosed which of her children might have used the e-mail address, Candy Chan indicated that her daughter, Brittany Chan, used that e-mail address. The parties stipulated to delay the scheduling conference set for February 28, 2005, and to extend the time in which Plaintiffs could file an amended complaint.

Plaintiffs filed a motion for leave to file an Amended Complaint to add Brittany Chan as a defendant and voluntarily dismiss Candy Chan as a defendant without prejudice, without costs to either party. Candy Chan opposed the motion, and asserted that Plaintiffs used a shotgun approach to pursue this action, threatened to sue all of Candy Chan's children and engaged in abusive behavior in an attempt to utilize the court as a collection agency. At a hearing held on March 15, 2005, the Court granted Plaintiffs' motion for leave to add Brittany Chan as a defendant but stated that it would only permit Plaintiffs to voluntarily dismiss Candy Chan if such dismissal was with prejudice. At that time, Plaintiffs withdrew their motion to voluntarily dismiss Candy Chan without prejudice. Subsequent to the March 15, 2005, hearing, Plaintiffs reversed course and now desire to dismiss Candy Chan with prejudice. In a letter to her counsel, Plaintiffs sought concurrence in dismissing Candy Chan with prejudice. Candy Chan's counsel refused to consent to such a

2

EXHIBIT 4
Page 2 of 5

dismissal, even though Plaintiffs agreed to permit her counsel to seek attorney fees (provided Plaintiffs could oppose such motion). Candy Chan filed a response to Plaintiffs' motion to dismiss with prejudice, but other than a conclusory statement in closing, never actually opposed the voluntary dismissal with prejudice. Rather, her response brief focuses on her entitlement to attorney fees as a prevailing party.

## III. OPINION

The Sixth Circuit has identified four factors to consider in determining whether to grant a voluntary dismissal: (1) the amount of time and effort the defendant has incurred in preparing for trial; (2) any lack of diligence on the part of plaintiff in prosecuting the action; (3) the plaintiff's failure to explain the need for a dismissal; and (4) whether the defendant has filed a motion for summary judgment. *Grover by Grover v. Eli Lilly & Co.*, 33 F.3d 716, 718 (6th Cir. 1994).

Here, Candy Chan does not oppose Plaintiffs' motion to voluntarily dismiss Candy Chan with prejudice. In addition, the Court finds that (a) Candy Chan has not spent time preparing for trial, (b) Plaintiffs have not failed to attempt to prosecute the correct party in this action, (c) Plaintiffs have provided a reasonable explanation for why Candy Chan was a party and why Plaintiffs no longer desire to proceed against her, and (d) Candy Chan has not filed a motion for summary judgment or any similar dispositive motion. Therefore, the Court concludes that a dismissal of Candy Chan as a defendant in this action with prejudice is appropriate. Accordingly, Plaintiffs' motion to voluntarily dismiss Candy Chan with prejudice is GRANTED.

The Court now turns to the issue of whether an award of attorney fees is appropriate in this case. Candy Chan implores the Court to exercise its power to treat the voluntarily dismissal of Candy Chan as an adjudication on the merits pursuant to Fed. R. Civ. P. 41(b). Candy Chan notes, 17 U.S.C. § 505 would then authorize the Court to, in its discretion, award Candy Chan reasonable attorney fees as the prevailing party. Candy Chan suggests an award of attorney fees is particularly appropriate where, as in this case, the Plaintiffs have repeatedly brought claims and then dismissed

3

EXHIBIT 4
Page 3 of 5

them after inflicting substantial litigation costs on the opposing party. *Relying on Aerotech, Inc. v. Estes*, 110 F.3d 1523 (10th Cir. 1997).

The Court need not determine whether the dismissal of Candy Chan with prejudice constitutes an adjudication on the merits. Rather, in exercising its discretion, the Court concludes that Candy Chan would not be entitled to attorney fees in conjunction with this case, even if the dismissal were considered an adjudication on the merits. Since filing this action, Plaintiffs have taken reasonable steps to try to prosecute this case and litigate against the proper defendant(s). They brought suit against Candy Chan because she was the registered user for the IP address from which the allegedly improper downloading and file sharing occurred. As evidenced by their letters and motions, Plaintiffs have been trying to take action against only those party responsible. To the extent Candy Chan has incurred legal fees in this action, such fees are primarily the result of tactics designed to impede the ability of Plaintiffs to prosecute this action in an efficient manner. In addition, the Court finds that the reason Plaintiffs have repeatedly filed motions is because Candy Chan has not agreed to fairly simple mechanisms which would accomplish the same objectives that the filing of motions has accomplished. Therefore, Candy Chan's request for attorney fees is denied.

## IV. CONCLUSION

Accordingly, and for the reasons set forth above, Plaintiffs' Motion to Dismiss Candy Chan with prejudice is GRANTED, and Candy Chan is hereby DISMISSED WITH PREJUDICE. The Court notes that Plaintiffs have failed to add any additional person(s) as a party in this case, notwithstanding the Court granting them leave to do so over two months ago. Therefore, the Court

4

EXHIBIT 4
Page 4 of 5

DISMISSES Plaintiffs' case WITHOUT PREJUDICE as to any persons other than Candy Chan.

Judgment shall be entered accordingly.

    IT IS SO ORDERED.


                                        s/Lawrence P. Zatkoff
                                        LAWRENCE P. ZATKOFF
                                        UNITED STATES DISTRICT JUDGE

Dated:  May 19, 2005

## CERTIFICATE OF SERVICE

    The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on May 19, 2005.

                                          s/Marie E. Verlinde
                                        Case Manager
                                        (810) 984-3290

EXHIBIT 4
Page 5 of 5