**Kenneth R. Davis, II**, OSB No. 971132
davisk@lanepowell.com
**William T. Patton**, OSB No. 973646
pattonw@lanepowell.com
**Parna A. Mehrbani**, OSB No. 053235
mehrbanip@lanepowell.com
**LANE POWELL PC**
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158
Telephone:  503.778.2100
Facsimile:  503.778.2200

**Timothy M. Reynolds,** *Admitted Pro Hac Vice*
**HOLME ROBERTS & OWEN LLP**

**Jeffrey S. Jacobson,** *Admitted Pro Hac Vice*
**DEBEVOISE & PLIMPTON LLP**

**Thomas M. Mullaney**, *Admitted Pro Hac Vice*
**LAW OFFICES OF THOMAS M. MULLANEY**

Attorneys for Defendants Atlantic Recording Corporation, Priority Records LLC, Capitol Records, Inc., UMG Recordings, Inc. BMG Music, Recording Industry Association of America, Settlement Support Center, LLC, and SafeNet, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **TANYA ANDERSEN,**<br><br>Plaintiff,<br><br>v.<br><br>**ATLANTIC RECORDING CORPORATION, et al.,**<br><br>Defendants. | Civil No. 3:07-CV-934-BR<br><br>**DEFENDANTS' MEMORANDUM IN RESPONSE TO PLAINTIFF'S OPPOSITION TO THE DISMISSAL OF DEFENDANTS MEDIASENTRY AND SETTLEMENT SUPPORT CENTER** |

PAGE 1 -   DEFENDANTS' MEMORANDUM IN RESPONSE TO PLAINTIFF'S OPPOSITION TO THE DISMISSAL OF DEFENDANTS MEDIASENTRY AND SETTLEMENT SUPPORT CENTER

708816.0001/834745.1

**LANE POWELL PC**
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

I.     **INTRODUCTION**

SafeNet, Inc. ("MediaSentry") and Settlement Support Center, LLC ("SSC") had no involvement in the Record Companies' continuation of their lawsuit against Ms. Andersen. Ms. Andersen does not dispute this fact. Before the Record Companies filed their lawsuit against Ms. Andersen, MediaSentry collected evidence showing that an infringer used Internet Protocol ("IP") address 4.41.209.23 on May 20, 2004, to distribute the Record Companies' copyrighted sound recordings without permission. SSC communicated with Ms. Andersen, on the Record Companies' behalf, to try to resolve the matter without need for a lawsuit, but had no contact with her after the lawsuit began. Because this Court rejected all of Ms. Andersen's claims concerning Defendants' pre-litigation activities, and granted summary judgment for Defendants "with respect to all aspects of Plaintiff's claims that arise from Defendants' initiation" of the lawsuit against Ms. Andersen on June 24, 2005 (doc. no. 173 at 27), the Court should confirm its January 6, 2010 show-cause ruling (doc. no. 176 at 4-6) and dismiss MediaSentry and SSC from this matter with prejudice.

Ms. Andersen's opposition to MediaSentry's and SSC's dismissal merely reiterates the claims this Court rejected. She argues that MediaSentry supposedly knew of some undefined errors in its procedures and that SSC coerced and threatened her and others. Plaintiff's Opposition to the Dismissal of Defendants MediaSentry and Settlement Support Center (doc. no. 178) ("Resp.") at 1, 3. The Court held, however, that MediaSentry's evidence sufficiently supported the Record Companies' claim against Ms. Andersen (*id.* at 15), that MediaSentry and the Record Companies truthfully represented that evidence in court submissions (*id.* at 20-21), and that the Record Companies' pre-litigation communications, including those by SSC, were valid conduct incidental to litigation and, thus, protected by the *Noerr-Pennington* doctrine. *Id.* at 23-24. Ms. Andersen's brief offers nothing new, nor could it.

On these facts, both of Ms. Andersen's proposed bases for keeping MediaSentry and SSC in this case fail. Ms. Andersen posits a "conspiracy" to sue her wrongfully, which she contends

PAGE 2 -    DEFENDANTS' MEMORANDUM IN RESPONSE TO PLAINTIFF'S OPPOSITION TO THE DISMISSAL OF DEFENDANTS MEDIASENTRY AND SETTLEMENT SUPPORT CENTER

708816.0001/834745.1

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

began with MediaSentry's investigation, and continued through SSC's pre-suit negotiations. Resp. at 5-6. The Court held, however, that MediaSentry and SSC acted in a protected manner. Even were Ms. Andersen not inappropriately trying to resurrect dismissed claims by labeling them as the beginnings of a "conspiracy," Ms. Andersen cannot establish the elements of a conspiracy claim. Neither MediaSentry nor SSC shared any "common objective" with the Record Companies concerning the Record Companies' continuation of the lawsuit, neither had any "connection to" the continued litigation, and neither had any "intent to cause injury" to Ms. Andersen.

Ms. Andersen also argues that MediaSentry and SSC acted negligently, but the conduct she alleges to support this argument all occurred prior to the Record Companies' filing of their suit against Ms. Andersen. The Court has already dismissed those claims. Further, Ms. Andersen cannot establish the necessary elements of a negligence claim against either MediaSentry or SSC.

For all these reasons, as explained in more detail below, the Court should dismiss SSC and MediaSentry as defendants in this matter.

## II.    ARGUMENT

A.    *Noerr Pennington* Bars Ms. Andersen's Claims Against MediaSentry And SSC.

The Court ruled against Ms. Andersen on all her claims except those "based on Defendants' conduct that allegedly took place after June 24, 2005" (the date the Record Companies filed their lawsuit against her). Doc. no. 176 at 3-4. Ms. Andersen's present claim is that the Record Companies continued their suit after the evidence adduced in her case supposedly had exonerated her. This claim has nothing to do with MediaSentry or SSC. The Court found that their involvement ended before the Record Companies started their lawsuit. *See id.* at 5. Ms. Andersen's brief does not challenge that finding.

Ms. Andersen's brief, instead, only reiterates the pre-suit claims the Court rejected. Ms. Andersen contends that MediaSentry "knew that many, like Plaintiff, would be erroneously

PAGE 3 -    DEFENDANTS' MEMORANDUM IN RESPONSE TO PLAINTIFF'S OPPOSITION TO THE DISMISSAL OF DEFENDANTS MEDIASENTRY AND SETTLEMENT SUPPORT CENTER

708816.0001/834745.1

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

targeted" (Resp. at 1), but Ms. Andersen already litigated, and lost, on this exact contention at the *Noerr-Pennington* summary judgment stage. Doc. no. 173 at 14-16. She also asserts that "MediaSentry is known to have actively participated on behalf of the RIAA and its members throughout the course of publicly litigated cases" (Resp. at 2), but she fails to explain how MediaSentry's involvement in other cases has anything to do with this one. And, in granting summary judgment against Ms. Andersen, the Court rejected Ms. Andersen's contention that the Record Companies misstated MediaSentry's sources and methods. *See* doc. no. 173 at 19-23.[1]

The record also shows that SSC's involvement in the underlying case ended before the Record Companies filed it. Compl. ¶¶ 7.14 to 7.17. Indeed, Ms. Andersen's Response specifically acknowledges that SSC was involved in settlement negotiations "before" the lawsuit. Resp. at 4. Ms. Andersen asserts that the Record Companies settled many claims against alleged infringers "*after* an individual lawsuit had been filed." *Id.* That is true, but Ms. Andersen provides no evidence (and none exists) that SSC had any involvement in her case after the Record Companies filed it, let alone any evidence that SSC was involved in any post-filing settlement discussions.

The Court correctly concluded that MediaSentry's and SSC's involvement in the Record Companies' lawsuit against Ms. Andersen ended before the Record Companies filed it. *See* doc. no. 179 at 4-5. Because the *Noerr-Pennington* doctrine bars all Ms. Andersen's pre-suit claims, the Court should dismiss MediaSentry and SSC from this case.

B.   **Ms. Andersen's Civil Conspiracy Allegations Fail.**

Despite the clarity of the Court's *Noerr-Pennington* ruling, Ms. Andersen contends that she may still sue MediaSentry and SSC for their *Noerr-Pennington*-protected pre-suit activities

---

[1] Moreover, in the two cases Ms. Andersen cites by to support her assertion, MediaSentry's witness provided a truthful recounting of the steps MediaSentry took to gather evidence against alleged infringers. The jury in each of these cases relied on MediaSentry's evidence (and testimony) to find the defendants liable for willful copyright infringement. *See Capitol Records, Inc. v. Thomas-Rasset*, No. 06cv1497-MJD/RLE (D. Minn.); *Sony BMG Music Entm't v. Tenenbaum*, No. 03-11661-NG (D. Mass.).

PAGE 4 -   DEFENDANTS' MEMORANDUM IN RESPONSE TO PLAINTIFF'S OPPOSITION TO THE DISMISSAL OF DEFENDANTS MEDIASENTRY AND SETTLEMENT SUPPORT CENTER

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

708816.0001/834745.1

under the guise of a "conspiracy" claim. This argument fails on multiple grounds. The Court's finding that SSC and MediaSentry did nothing wrong precludes Ms. Andersen from arguing that these same acts furthered a conspiracy. Just as importantly, Ms. Andersen's brief demonstrates that she cannot prove the elements of a conspiracy claim.

"A civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by unlawful means." *Yanney v. Koehler*, 935 P.2d 1235, 1238 (Or. App. 1997) (quotation omitted).[2] "It is not a separate tort or basis for recovery but, rather, a theory of mutual agency under which a conspirator becomes jointly liable for the tortious conduct of his or her coconspirators." *Id.* (citing *Granewich v. Harding*, 985 P.2d 788, 792 (Or. 1999)).

To be liable, each participant in the conspiracy "must at least share the common objective of the conspiracy." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (9th Cir. 1989). Each alleged participant also "must be connected to the tortious conduct that gives rise to liability." *Mason v. Mt. St. Joseph, Inc.*, 203 P.3d 329, 336-37 (Or. App. 2009). In all cases, "the primary purpose of a civil conspiracy must be to cause injury to another." *Yanney*, 935 P.2d at 1239 (citing *Bonds v. Landers*, 566 P.2d 513, 516 (1977)). Here, Ms. Andersen can show none of these elements.

First, Ms. Andersen cannot show that MediaSentry or SSC shared any "common objective" with the Record Companies concerning the Record Companies' continuation of their lawsuit against her. She argues hyperbolically that the underlying lawsuit was "continued in the face of obvious exculpatory evidence" (Resp. at 6-7), but offers nothing to suggest that either MediaSentry or SSC had any knowledge of the alleged exculpatory evidence or the continuation

---

[2] A claim for civil conspiracy requires proof of: "(1) Two or more persons . . . ; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Id.* (quotation omitted).

PAGE 5 -   DEFENDANTS' MEMORANDUM IN RESPONSE TO PLAINTIFF'S OPPOSITION TO THE DISMISSAL OF DEFENDANTS MEDIASENTRY AND SETTLEMENT SUPPORT CENTER

of the lawsuit.[3] Ms. Andersen also makes vague assertions that (1) MediaSentry "was involved" in the process by which her Internet Service Provider, Verizon, twice confirmed that she was responsible for the IP address through which the infringement occurred, and (2) SSC received "post-filing" income and played an "inferred role" in "post-filing" settlement discussions in the underlying case. *Id.* at 7. These assertions, however, have no basis in fact, are not supported by the record, and do not, in any event, suggest any common objective to accomplish an unlawful purpose. Indeed, Ms. Andersen's Response cites no evidence that MediaSentry or SSC even knew that the Record Companies had filed a lawsuit against Ms. Andersen, let alone that they shared any "common objective" with the Record Companies concerning the continuation of the lawsuit. Absent proof of a common objective concerning the continuation of the lawsuit against her, Ms. Andersen's conspiracy theory fails. *See Yanney*, 935 P.2d at 1238 (dismissing complaint where the plaintiff's allegations were "not sufficient to show a meeting of the minds" that one defendant would assist another in subsequent acts of fraud against the plaintiff).

Second, Ms. Andersen cannot show that MediaSentry or SSC were in any way "connected to" the Record Companies' alleged tortious conduct in continuing the lawsuit. The Court has already ruled that MediaSentry and SSC are immune from suit concerning their *pre-litigation* conduct. Doc. no. 173 at 13-16; doc. no. 176 at 4-5. And, as discussed above, nothing in the record suggests that either MediaSentry or SSC had any information concerning the alleged *post-filing* conduct that gives rise to Ms. Andersen's remaining claims against the Record Companies. There is no evidence that either of these entities had any knowledge of Ms. Andersen's "real" infringer theory, that either of them engaged in any discovery, or that

---

[3] Ms. Andersen's mere denial of infringement to SSC representatives is not "exculpatory." *See Thomas-Rasset*, No. 06cv1497-MJD/RLE (jury found willful copyright infringement despite the defendant's sworn denials); *Atlantic Recording Corp. v. Heslep*, 2007 U.S. Dist. LEXIS 35824, at *20 (N.D. Tex. May 16, 2007) (holding that the record companies' investigation of infringement and efforts to resolve the case were "more than reasonable" despite the defendant's sworn denial of responsibility).

PAGE 6 -   DEFENDANTS' MEMORANDUM IN RESPONSE TO PLAINTIFF'S OPPOSITION TO THE DISMISSAL OF DEFENDANTS MEDIASENTRY AND SETTLEMENT SUPPORT CENTER

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
708816.0001/834745.1
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

either of them played any role in the Record Companies' continuation of the case against Ms. Andersen. Because nothing in the record connects MediaSentry or SSC to the *post-filing* conduct that forms the basis of Ms. Andersen's remaining claims, these entities cannot be held liable for that alleged tortious conduct. *See Mason*, 203 P.3d at 336-37 (defendant's conduct in purchasing asbestos products and directing their use cannot support a conspiracy claim based on another defendant's distribution of those products).

Relying on *Osborne v. Fadden*, 201 P.3d 278 (Or. App. 2009), Ms. Andersen contends that a defendant may be held liable for providing information concerning the plaintiff to an alleged co-conspirator that results in harm to the plaintiff. Resp. at 6. Ms. Andersen misreads the holding in *Osborne* and her reliance on that case is misplaced. *Osborne* involved allegations that two defendants had conspired with one another to harass the plaintiffs by, among things, signing the plaintiffs up for subscriptions and opening bogus credit card accounts that ruined the plaintiffs' credit. *Osborne*, 201 P.3d at 280-81. One of the defendants admitted responsibility, while a second denied it. *Id.* The court held that, because the subscriptions and credit applications contained information known only to the second defendant, there was sufficient evidence to demonstrate that the defendants acted in concert to harass the plaintiffs, despite the second defendant's denials. *Id.* at 282. *Osborne* does not hold or even suggest that a defendant who *lawfully* provides *truthful* information to a third party may be held liable for the alleged downstream tortious acts of that third party.

Third, Ms. Andersen cannot show that MediaSentry or SSC had any intention to cause her injury. Ms. Andersen posits a "conspiracy" to "extort," in which SSC allegedly "agreed in writing with the RIAA to coerce and threaten targeted individuals in order to collect 'settlement' payments, while admitting here Ms. Andersen had been erroneously targeted and pursued." Resp. at 1. This allegation, however, has absolutely no factual support. The record contains no evidence of any "writing" in which SSC "agreed" to "coerce and threaten" anyone. Nor does it

PAGE 7 -   DEFENDANTS' MEMORANDUM IN RESPONSE TO PLAINTIFF'S OPPOSITION TO THE DISMISSAL OF DEFENDANTS MEDIASENTRY AND SETTLEMENT SUPPORT CENTER

708816.0001/834745.1

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

contain any "admission" by SSC that Ms. Andersen had been erroneously targeted and pursued.[4] Moreover, all of these allegations relate only to pre-litigation conduct that is protected by *Noerr-Pennington*. Therefore, they cannot form the basis of any claims by Ms. Andersen against MediaSentry or SSC.

Finally, Ms. Andersen argues that the conspiracy allegations in her Fourth Amended Complaint support "all Defendants' liability as co-conspirators." Resp. at 7, citing Compl. ¶¶ 8.1-8.5. Stripped of unsupportable hyperbole and conclusory statements, the allegations on which Ms. Andersen relies all relate to Defendants' legitimate pre-litigation conduct in investigating claims of copyright infringement and attempting to resolve them through settlement. The Court has already determined that *Noerr-Pennington* bars Ms. Andersen's claims based on these allegations. Doc. no. 176 at 5.

For all these reasons, Ms. Andersen's effort to hold MediaSentry and SSC liable under a theory of conspiracy fail.[5]

**C.    Ms. Andersen's Negligence Allegations Also Fail.**

Ms. Andersen next contends that MediaSentry and SSC can be held liable for their "direct acts of negligence which proximately caused harm" to her. Resp. at 5. This argument fails for at least three reasons.

First, Ms. Andersen's allegations of negligence by MediaSentry and SSC all relate to conduct that occurred *before* the Record Companies filed their lawsuit against her.

---

[4] Even if these allegations had a factual basis, which they do not, a corporation cannot conspire with its own agent. *See, e.g., Bliss v. Southern Pacific Co.*, 321 P.2d 324, 328 (1958). Here, SSC acted as the Record Companies' agent in pursuing settlement discussions with Ms. Andersen. Thus, any conspiracy-based claims based on SSC's settlement activity fail as a matter of law.

[5] In addition, a "claim for civil conspiracy is entirely dependent on underlying" substantive claims; where "the underlying claims fail, [the] civil conspiracy claim must also fail." *Oregon Laborers-Employers Health & Welfare Trust Fund v. Phillip Morris*, 185 F.3d 957, 969 (9th Cir. 1999). As set forth in the Record Companies' Motion For Leave To File Motion For Summary Judgment ("Motion for Leave") (doc. no. 180 at 10), because each of Ms. Andersen's substantive claims fail, so too must her civil conspiracy claim fail. Defendants incorporate herein the arguments set forth in their Motion for Leave.

PAGE 8 -   DEFENDANTS' MEMORANDUM IN RESPONSE TO PLAINTIFF'S OPPOSITION TO THE DISMISSAL OF DEFENDANTS MEDIASENTRY AND SETTLEMENT SUPPORT CENTER

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

708816.0001/834745.1

Ms. Andersen repeats her vacuous contentions that MediaSentry "implemented a scheme that it knew was prone to misidentify individuals and cause them to be subjected to threats and lawsuits" by the Record Companies (Resp. at 8), and that SSC failed "to respond to exculpatory information provided in the course of conversations" with Ms. Andersen before the Record Companies filed their lawsuit. *Id.* at 9. Not only do these allegations have no basis in fact, but the Court has ruled that, under *Noerr-Pennington*, Ms. Andersen cannot rely on such allegations of *pre-litigation* conduct to state claims against MediaSentry, SSC, or any other Defendant in this case. *See* doc. no. 176 at 3-4.

Second, the Court should reject Ms. Andersen's argument that she may pursue claims against MediaSentry and SSC based on *pre-litigation* conduct that caused harm "which was fully manifest only *after*" the Record Companies filed their case against her. Resp. at 7. Ms. Andersen does not and could not cite any authority for this argument. Indeed, if this argument were correct, which it is not, it would render the entire *Noerr-Pennington* doctrine meaningless because any plaintiff could simply avoid the doctrine by claiming ongoing harm.

Finally, Ms. Andersen cannot establish the essential elements of a negligence claim against MediaSentry or SSC. Negligence requires proof that, *inter alia*, the defendant's conduct caused a foreseeable risk of harm to an interest of a kind that the law protects against negligent invasion. *Solberg v. Johnson*, 760 P.2d 867, 870 (Or. 1988). Oregon adheres to the common law "impact rule," which bars negligence actions for emotional injuries unless the plaintiff also sustained a physical impact or injury due to the defendant's alleged conduct. *Hammond v. Central Lane Commc'n Ctr.*, 816 P.2d 593, 597 (Or. 1991) (affirming summary judgment against the plaintiff who produced no evidence of any physical impact or injury on grounds that she had not shown harm to any "'legally protected interest'"). Here, as discussed in the Record Companies' Motion For Leave (doc. no. 180 at 8-10), Ms. Andersen alleges only emotional damages. Compl. ¶¶ 7.25, 7.26, 8.43. She does not and could not allege any physical impact or injury from any alleged negligent investigation by MediaSentry or settlement efforts by SSC.

PAGE 9 -   DEFENDANTS' MEMORANDUM IN RESPONSE TO PLAINTIFF'S OPPOSITION TO THE DISMISSAL OF DEFENDANTS MEDIASENTRY AND SETTLEMENT SUPPORT CENTER

708816.0001/834745.1

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

Absent physical impact or injury, Ms. Andersen cannot show harm to any legally protected interest and her negligence claim fails.

Ms. Andersen cites *Mendive v. Children's Services Div.*, 794 P.2d 807 (Or. App. 1990), for the proposition that "Oregon courts have recognized that claims for common law negligence can be based on negligent investigation."  Resp. at 8.  *Mendive* says no such thing and has no application to the facts of this case.  *Mendive* gives parents a cause of action against state case workers who wrongfully interfere with a parent/child "custodial relationship," a legally protected interest.  *See* 794 P.2d at 807.  Oregon law allows state officials to take a child into state custody only where the child's situation "reasonably appear[s] to be such as to jeopardize the child's welfare."  ORS 418.762, *quoted in Mendive*, 794 P.2d at 808 n.2.  The parents in *Mendive* alleged that a state case worker had taken their child into custody without having first reviewed the case file, which would have shown that one of the children had earlier made false accusations of abuse.  *Mendive*, 794 P.2d at 808.  Under the circumstances presented in that case, the court recognized a claim "based on a negligent investigation by a child protective services worker." *Edwards v. State*, 175 P.3d 490, 493 (Or. App. 2007).  In the twenty years since the Oregon Court of Appeals decided *Mendive*, no court has ever applied its holding outside the circumstances of a claim against a state worker for negligent interference with a parent/child custodial relationship, circumstances that are obviously not present in this case.[6]  Therefore, Ms. Andersen cannot rely on *Mendive* to support her negligence theory.

For all these reasons, the Court should reject Ms. Andersen's negligence argument.

### III.  CONCLUSION

For the foregoing reasons, Defendants ask that MediaSentry and Settlement Support Center be dismissed from this case with prejudice.

---

[6] *Edwards*, the only case to cite *Mendive* in twenty years, also involved allegations that a state case worker had failed to follow proper procedure when taking a child into state custody. *Edwards*, 175 P.3d at 493-94.

PAGE 10 - DEFENDANTS' MEMORANDUM IN RESPONSE TO PLAINTIFF'S OPPOSITION TO THE DISMISSAL OF DEFENDANTS MEDIASENTRY AND SETTLEMENT SUPPORT CENTER

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

708816.0001/834745.1

DATED: February 16, 2010

LANE POWELL PC

By  /s/ Parna A. Mehrbani
    Kenneth R. Davis, II, OSB No. 971132
    William T. Patton, OSB No. 973646
    Parna A. Mehrbani, OSB No. 053235
    (503) 778-2100

Attorneys for Defendants Atlantic Recording Corporation, Priority Records LLC, Capitol Records, Inc., UMG Recordings, Inc., BMG Music, Recording Industry Association of America, Settlement Support Center, LLC, and SafeNet, Inc., f/k/a Media Sentry, Inc.

**Timothy M. Reynolds,** *Admitted Pro Hac Vice*
timothy.reynolds@hro.com
**HOLME ROBERTS & OWEN LLP**

Attorneys for Defendants Atlantic Recording Corporation, Priority Records LLC, Capitol Records, Inc., UMG Recordings, Inc., BMG Music, Recording Industry Association of America, and Settlement Support Center, LLC

**Jeffrey S. Jacobson,** *Admitted Pro Hac Vice*
jsjacobson@debevoise.com
**DEBEVOISE & PLIMPTON LLP**

Attorneys for Defendant Recording Industry Association of America

**Thomas M. Mullaney**, *Admitted Pro Hac Vice*
tmm@mullaw.org
**LAW OFFICES OF THOMAS M. MULLANEY**

Attorneys for SafeNet, Inc.

PAGE 11 - DEFENDANTS' MEMORANDUM IN RESPONSE TO PLAINTIFF'S OPPOSITION TO THE DISMISSAL OF DEFENDANTS MEDIASENTRY AND SETTLEMENT SUPPORT CENTER

708816.0001/834745.1

**LANE POWELL PC**
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200