IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| TANYA ANDERSEN, | 07-CV-934-BR |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| ATLANTIC RECORDING CORPORATION, a Delaware corporation; PRIORITY RECORDS LLC, a California limited liability company; CAPITOL RECORDS, INC., a Delaware corporation; UMG RECORDINGS, INC., a Delaware corporation; BMG MUSIC, a New York general partnership; RECORDING INDUSTRY ASSOCIATION OF AMERICA; SAFENET, INC. f/k/a MEDIASENTRY, INC., a Delaware corporation; and SETTLEMENT SUPPORT CENTER, LLC, a Washington limited liability company, | |
| Defendants. | |

1 - OPINION AND ORDER

**LORY RAY LYBECK**
**BENJAMIN R. JUSTUS**
Lybeck Murphy, LLP
7525 S.E. 24th Street, Suite 500
Mercer Island, WA 98040-2336
(206) 230-4255

**COREY D. MCGAHA**
**LEISA B PEARLMAN**
**RICHARD A. ADAMS**
**REID D. MILLER**
Patton, Roberts, McWilliams, & Capshaw, LLP
Century Bank Plaza, Suite 400
2900 St. Michael Drive
Texarkana, TX 75503
(903) 334-7000

          Attorneys for Plaintiff

**KENNETH R. DAVIS, II**
**WILLIAM T. PATTON**
**PARNA A. MEHRBANI**
Lane Powell P.C.
601 S.W. Second Avenue, Suite 2100
Portland, OR 97204-3158
(503) 778-2121

**AMY BAUER**
**LINNEA BROWN**
**TIMOTHY M. REYNOLDS**
Holme Robert & Owen, LLP
1700 Lincoln Street, Suite 4100
Denver, CO 80203
(303) 866-0417

          Attorneys for Defendants


**BROWN, Judge.**

     This matter comes before the Court on Plaintiff Tanya

Andersen's Opposition (#178) to Dismissal of Defendants

MediaSentry and Settlement Support Center (SSC); Andersen's

Motion (#183) for Leave to File an Amended Motion for Class

2 - OPINION AND ORDER

Certification; and Motion (#179) of Defendants Atlantic Recording
Corporation, Priority Records LLC, Capitol Records, Inc., UMG
Recordings, Inc., BMG Music, and Recording Industry Association
of America (Record Company Defendants) for Leave to File Motion
for Summary Judgment.

     For the reasons that follow, the Court declines to reverse
its dismissal of Defendants MediaSentry and SSC and, therefore,
**DISMISSES** Andersen's claims against them **with prejudice**; **DENIES**
Andersen's Motion for Leave to File an Amended Motion for Class
Certification; and **GRANTS in part** and **DENIES in part** Record
Company Defendants' Motion for Leave to File Motion for Summary
Judgment.


## BACKGROUND

     The parties are familiar with the facts from numerous prior
Opinions and Orders and, therefore, the Court will not repeat
them.


## PROCEDURAL BACKGROUND

     On June 24, 2005, Defendants Atlantic Recording Corporation;
Priority Records LLC; Capitol Records, Inc.; UMG Recordings,
Inc.; and BMG Music filed an action against Andersen in this
Court (*Andersen I*) alleging Andersen infringed their copyrights.
     On September 30, 2005, and March 27, 2007, Andersen filed an

3 - OPINION AND ORDER

Answer and "Second Answer" against the defendants in *Andersen I*
alleging Counterclaims for (1) electronic trespass; (2) computer
fraud and abuse under 18 U.S.C. § 1030; (3) invasion of privacy;
(4) abuse of legal process; (5) fraud and negligent
misrepresentation; (6) outrage; (7) deceptive business practices;
and (8) violations of Oregon's Racketeer Influenced and Corrupt
Organizations Act (ORICO), Oregon Revised Statute § 166.715, *et
seq*.

On June 22, 2007, while *Andersen I* was still pending,
Andersen filed this action (*Andersen II*) against Record Company
Defendants; Safenet, Inc. f/k/a MediaSentry, Inc.; and SSC, LLC,
in which she alleged claims for (1) negligence; (2) fraud and
negligent misrepresentation; (3) violations of ORICO;
(4) violations of the federal Racketeering Influenced Corrupt
Organization Act (RICO), 18 U.S.C. § 1962(c) and (d); (5) abuse
of legal process; (6) malicious prosecution; (7) outrage and
intentional infliction of emotional distress; (8) violation
of the Computer Fraud and Abuse Act (CFAA), 18 U.S.C.
§ 1030(a)(5)(B)(I); (9) trespass to chattels; (10) invasion
of privacy; (11) libel and slander; (12) deceptive business
practices; and (13) misuse of copyright laws based on the same
facts as her Counterclaims in *Andersen I*.

On August 15, 2007, Andersen filed a First Amended Complaint
in *Andersen II* as a class action and alleged claims for

4 - OPINION AND ORDER

(1) negligence, (2) fraud and negligent misrepresentation,
(3) violations of RICO, (4) abuse of legal process, (5) malicious
prosecution, (6) outrage and intentional infliction of emotional
distress, (7) violation of CFAA, (8) trespass to chattels,
(9) invasion of privacy, (10) libel and slander, (11) deceptive
business practices, (12) misuse of copyright laws, and (13) civil
conspiracy.

On September 12, 2007, and October 22, 2007, Defendants in
*Andersen II* filed Motions to Dismiss Plaintiff's First Amended
Complaint.

On January 14, 2008, the Court dismissed without prejudice
Andersen's Counterclaims in *Andersen I* to allow Andersen to bring
those claims in *Andersen II*.

On February 19, 2008, this Court dismissed Andersen's First
Amended Complaint in *Andersen II* on the ground that Andersen had
not adequately stated claims for relief.

On March 14, 2008 Andersen filed a Second Amended Complaint
in *Andersen II* as a class action and alleged claims for
(1) negligence; (2) intentional infliction of emotional distress;
(3) violations of RICO; (4) violations of ORICO; (5) civil
conspiracy; (6) wrongful initiation of civil proceedings;
(7) abuse of legal process; (8) defamation; (9) false light;
(10) violations of Oregon Unlawful Trade Practices Act (UTPA),
Oregon Revised Statute § 646.6-5, *et seq.*; (11) negligent

misrepresentation; (12) fraud; (13) invasion of privacy;
(14) violation of CFAA; and (15) trespass to chattels.

On March 31, 2008, the Court granted Andersen leave to file
a Third Amended Complaint in *Andersen II* to correct the defects
in her Second Amended Complaint as noted by the Court.

On April 17, 2008, Andersen filed a Third Amended Complaint
in *Andersen II*.  On April 21, 2008, the Court struck Andersen's
Third Amended Complaint and granted her leave to file a Fourth
Amended Complaint.

On May 1, 2008, Andersen filed her Fourth Amended Complaint
in *Andersen II* as a class action alleging claims for (1) civil
conspiracy against all Defendants, (2) wrongful initiation of
civil proceedings against Record Company Defendants, (3) abuse
of legal process against Record Company Defendants, and
(4) negligence against all Defendants.

On April 2, 2009, Andersen filed a Motion for Class
Certification.

On May 8, 2009, Defendants filed a Motion seeking summary
judgment as to all of Andersen's claims on the basis of the
*Noerr-Pennington* Doctrine.  *See Prof'l Real Estate Inv., Inc. v.
Columbia Pictures Indus., Inc.*, 508 U.S. 49, 62-63 (1993).

On October 19, 2009, the Court heard oral argument on
Defendants' Motion for Summary Judgment.  The Court noted and
Defendants acknowledged their Motion only addressed whether the

6 - OPINION AND ORDER

*Noerr-Pennington* Doctrine bars Andersen's claims arising from the initiation of *Andersen I* and did not address whether the Doctrine bars Andersen's claims based on the continuation of *Andersen I*. The Court, therefore, found Defendants' Motion as proceeding only against those claims arising from Defendants' initiation of civil proceedings in *Andersen I* and the "conduct incidental to" the initiation of *Andersen I*.  See *Sosa v. DirecTV, Inc.*, 437 F.3d 923, 934-35 (9th Cir. 2006).  Accordingly, the Court declined to address at that time (1) whether *Noerr-Pennington* barred Andersen's claims arising from Defendants' continuation of civil proceedings and (2) whether class certification was appropriate.

On November 12, 2009, the Court issued an Opinion and Order in which it granted Defendants' Motion for Summary Judgment as to all aspects of Andersen's claims that arise from Defendants' initiation of civil proceedings in *Andersen I* on the ground that this aspect of Andersen's claims is barred by the *Noerr-Pennington* Doctrine.

On December 1, 2009, the parties filed a Joint Status Report in which they disagreed as to the issues remaining to be resolved in *Andersen II* after the Court's November 12, 2009, Opinion and Order.

On January 6, 2010, the Court issued an Opinion and Order in *Andersen II* in which it concluded Andersen's claims for civil conspiracy, abuse of legal process, and negligence survived only

to the extent that they are based on Defendants' actions that
allegedly took place after the initiation of *Andersen I*.   The
Court also

1.  dismissed Andersen's claim for wrongful initiation of
    civil process,

2.  dismissed Andersen's claims for injunctive and/or
    declaratory relief prohibiting Record Company
    Defendants from using MediaSentry-gathered IP addresses
    as the basis for any legal action,

3.  denied Andersen's Motion for Class Certification;

4.  denied Andersen's request for leave to file a Fifth
    Amended Complaint "to include an additional class
    representative,"

5.  directed Andersen to show cause in writing why the
    Court should not dismiss her claims against MediaSentry
    and/or SSC,

6.  granted Andersen leave to file another class-
    certification motion based on the existing record, and

7.  granted Record Company Defendants leave to file a
    motion for leave to file another motion for summary
    judgment.

On January 22, 2010, Andersen filed an Opposition to the
Dismissal of Defendants MediaSentry and SSC.   On January 27,
2010, Andersen filed a Motion for Leave to File an Amended Motion

for Class Certification.  On that same date, Record Company
Defendants filed a Motion for Leave to File Motion for Summary
Judgment.

At some point after January 22, 2010, Andersen filed a
Petition for Writ of Mandamus with the Ninth Circuit in which she
seeks a review of this Court's decision to deny her initial
Motion for Class Certification on the ground that the Court's
November 12, 2009, and January 6, 2010, Opinions and Orders
contained "virtually no analysis" as to Andersen's initial Motion
for Class Certification.  On February 22, 2010, the Court held a
conference as to Andersen's Petition for Writ of Mandamus and
concluded there was not any basis to stay the Motions currently
before the Court.  Accordingly, the Court addresses below
Andersen's arguments and analysis as to her initial Motion for
Class Certification and her pending Motion for Leave to File an
Amended Motion for Class Certification.


### ANDERSEN'S OPPOSITION (#178) TO THE DISMISSAL OF DEFENDANTS MEDIASENTRY AND SETTLEMENT SUPPORT CENTER

As noted, the Court concluded in its November 12, 2009,
Opinion and Order that all aspects of Andersen's claims that
arise from Defendants' initiation of civil proceedings in
*Andersen I* are barred by the *Noerr-Pennington* Doctrine.  In its
January 6, 2010, Opinion and Order, the Court noted the record
reflects MediaSentry and SSC's alleged conduct incidental to the

9 - OPINION AND ORDER

initiation of *Andersen I* ended before Record Company Defendants
filed *Andersen I*. Accordingly, the Court requested Andersen to
show cause why MediaSentry and SSC should not be dismissed.

**I.    Andersen's civil-conspiracy claim**.

In her Opposition Andersen reiterates the arguments rejected
by the Court in its November 12, 2009, Opinion and Order as to
Andersen's civil-conspiracy claim against MediaSentry and SSC.
For example, Andersen asserts MediaSentry "knew that many, like
Plaintiff, would be erroneously targeted." In its November 12,
2009, Opinion and Order, however, the Court found Andersen's
assertion was not sufficient to defeat summary judgment as to her
claim for civil conspiracy. Andersen also asserts "MediaSentry
is known to have actively participated on behalf of RIAA and its
members throughout the course of publicly litigated cases."
MediaSentry's alleged general participation through the course of
litigation in other unspecified cases, however, is irrelevant to
MediaSentry's actions in this matter.

In addition, under Oregon law "[a] civil conspiracy is a
combination of two or more persons by concerted action to
accomplish an unlawful purpose, or to accomplish some purpose not
in itself unlawful by unlawful means." *Yanney v. Koehler*, 147
Or. App. 269, 273 (1997). The Court has found MediaSentry and
SSC are immune from suit for their pre-*Andersen I* conduct, and,
accordingly, such conduct may not form the basis of a civil-

10 - OPINION AND ORDER

conspiracy claim.  *See Or. Laborers-Employers Health & Welfare Trust Fund v. Phillip Morris*, 185 F.3d 957, 969 (9th Cir. 1999)(a "claim for civil conspiracy is entirely dependent on underlying" substantive claims, and, therefore, "civil conspiracy claim must . . . fail" when "the underlying claims fail.").  Moreover, Andersen has not pled or provided any evidence to support her assertion that MediaSentry and SSC shared a "concerted action" with Record Company Defendants to continue the action against Andersen.  The Court finds the record does not support any inference that either MediaSentry or SSC was aware of or played any role in Record Company Defendants' decision to continue litigating *Andersen I*.  Thus, Andersen has not established MediaSentry or SSC participated in any concerted action to continue the *Andersen I* litigation.

**II.  Andersen's negligence claim.**

In her Opposition, Andersen asserts MediaSentry and SSC are liable for their "direct acts of negligence which proximately caused harm" to Andersen.  As the Court has noted, however, Andersen's allegations of negligence by MediaSentry and SSC involve conduct incidental to initiation of *Andersen I* and, therefore, any claim based on that conduct is barred by the *Noerr-Pennington* Doctrine.  In addition, Andersen does not cite any authority to support her assertion that she may pursue claims against MediaSentry and SSC based on their conduct incidental to

11 - OPINION AND ORDER

the initiation of *Andersen I* even if that conduct caused harm
that "was fully manifest only after" the initiation of *Andersen
I*.  If the Court were to adopt Andersen's theory, it would
seriously undermine the *Noerr-Pennington* Doctrine.  Thus, in the
absence of authority that establishes a plaintiff may avoid the
reach of the *Noerr-Pennington* Doctrine by asserting ongoing harm,
the Court declines to adopt such an exception.

On this record, the Court concludes Andersen has not shown
cause for the Court to reverse its decision to dismiss Andersen's
claims against MediaSentry and SSC.  Accordingly, the Court
dismisses Andersen's claims against MediaSentry and SSC with
prejudice.

## ANDERSEN'S MOTION (#183) FOR LEAVE TO FILE AN AMENDED MOTION FOR CLASS CERTIFICATION

In its January 5, 2010, the Court denied Andersen's Motion
for Class Certification because it was based substantially on
alleged conduct by Defendants that occurred incidental to the
initiation of *Andersen I* and that the Court concluded was not
actionable.  Andersen, nevertheless, seeks leave to file an
amended motion for class certification.

### I.  Standards

Federal Rule of Civil Procedure 23(a) and (b) provide in
pertinent part:

12 - OPINION AND ORDER

    **(a) Prerequisites.**  One or more members of a class
may sue or be sued as representative parties on
behalf of all members only if:

        (1) the class is so numerous that joinder of
        all members is impracticable;

        (2) there are questions of law or fact common
        to the class;

        (3) the claims or defenses of the
        representative parties are typical of the
        claims or defenses of the class; and

        (4) the representative parties will fairly
        and adequately protect the interests of the
        class.

    **(b) Types of Class Actions.**  A class action may be
maintained if Rule 23(a) is satisfied and if:

                * * *

    3) the court finds that the questions of law or
fact common to class members predominate over any
questions affecting only individual members, and
that a class action is superior to other available
methods for fairly and efficiently adjudicating
the controversy.

    The decision to grant or to deny class certification is
within the trial court's discretion.  *Narouz v. Charter Commun'c,
LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).  "To obtain class
certification, a class plaintiff has the burden of showing that
the requirements of Rule 23(a) are met and that the class is
maintainable pursuant to Rule 23(b)."  *Id.* (citing *Amchem Prods.,
Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).  "When considering
class certification under Rule 23, district courts are not only
at liberty to, but must, perform a rigorous analysis to ensure

that the prerequisites of Rule 23(a) have been satisfied." *Dukes v. Wal-Mart Stores, Inc.*, Nos. 04-16688, 04-16720, 2010 WL 1644259, at *4 (9th Cir. Apr. 26, 2010). *See also Lozano v. AT&T Wireless Serv., Inc.*, 504 F.3d 718, 730 (9th Cir. 2007)("[A] class may be certified only if the district court is satisfied after a rigorous analysis that the prerequisites of Rule 23(a) have been met.")(quotation omitted).

"Although some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a), it is improper to advance a decision on the merits to the certification stage." *Dukes*, 2010 WL 1644259, at *9 (quotation omitted). Nevertheless, the Ninth Circuit has also "recognized . . . *Falcon* contemplated cases in which 'the issues are plain enough from the pleadings' and do not require analysis beyond those papers." *Id.*, at *10 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)). *See also Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 961 (9th Cir. 2005)("The Supreme Court thus recognized over twenty years ago that a rigorous analysis does not always result in a lengthy explanation or in-depth review of the record.").

## II. Andersen has not established her proposed class would meet the requirements of Rule 23(b).

Andersen asserts she "represents a certifiable class of individuals subject to abusive and unlawful post-filing

14 - OPINION AND ORDER

'continuation'" of litigation.  Record Company Defendants assert
Andersen proposes an improper merit-based class definition and
state tort laws vary too widely to support a nationwide class in
this matter.

Nevertheless, Andersen seeks leave to file an amended motion
for class certification to certify a nationwide class of
individuals who were sued personally for copyright infringement
allegedly arising from file-sharing, downloading, or other
similar activities; who did not violate copyright laws; and who
denied any wrongdoing but were subjected to abusive conduct after
the filing of an "individual named lawsuit."

**A.    Andersen's proposed class would require the Court to
engage in an impermissible analysis of the merits of
each class member's claim.**

As noted, to certify a class under Rule 23(b)(3), the
Court must find "questions of law or fact common to class members
predominate over any questions affecting only individual members,
and that a class action is superior to other available methods
for fairly and efficiently adjudicating the controversy."

Record Company Defendants contend the Court would have
to engage in an analysis of the merits of each putative class
member's claim to determine whether questions of fact common to
class members predominate over questions affecting individual
members because the Court would have to determine whether each
class member violated copyright laws.

15 - OPINION AND ORDER

Andersen contends the Court would not have to examine the merits of each potential class member's claim because the Court could find any continued litigation by Record Company Defendants to be abusive *per se* when an individual (*i.e.*, potential class member) sued by Record Company Defendants for alleged illegal downloading denied any wrongdoing. Andersen cites several cases in her Memorandum that she contends establish courts have dismissed actions of record companies against individuals for such alleged conduct on the ground that those actions lacked merit.[1] *See, e.g., Atlantic v. Zuleta*, No. 06-CV-1221 (N.D. Ga.); *BMG Music v. Thao*, No. 07CV-143 (B.D. Wis.); *Elektra v. Dennis*, No. 07-CV-39 DPJ-JCS (S.D. Miss.); *Elektra v. Wilke*, No. 06-C-2717 (N.D. Ill.); *Interscope Records v. Leadbetter*, No. C05-1149-MJP-RSL, 2006 WL 3858397 (W.D. Wash. Dec. 29, 2006); *Priority Records LLC v. Chan*, No. 04-CV-73645-DT, 2005 WL 2277107 (E.D. Mich. May 19, 2005); *Sony BMG v. Merchant*, No. 07-CV-00340-DFL-DAD (E.D. Cal.); *Virgin Records Am., Inc. v. Marson*, No. 05-CV-03201 RGK (C.D. Cal.); *Warner v. Maravilla*, No. 05-CV-03149-GPS (C.D. Cal.); *Warner v. Pidgeon*, No. 06-CV12838-PJD-DAS (E.D. Mich.); *Warner v. Stubbs*, No. Civ. 06-793-VML (W.D. Okla.).

---

[1] The Court could not find the majority of these unpublished cases cited by Andersen, and Andersen did not attach them to her Motion or identify any place in the record where the Court might find them.

16 - OPINION AND ORDER

The Court notes the above cases that the Court was able
to review merely underscore the different circumstances
underlying actions in which record companies brought actions
against individuals who denied wrongdoing.  For example, the
record companies in *Interscope* amended their complaint after
discovery to add claims against the defendant's son and then
brought a separate action against the defendant's fiánce.  2007
WL 1217705, at *2.  The court granted the parties' stipulated
motion to dismiss the defendant without prejudice and denied the
parties' cross-motions for summary judgment as to the defendant's
son on the ground that material issues of fact existed as to
which member of the defendant's household had downloaded the
copyrighted materials.  *Id.*, at *7.  Ultimately the court denied
the defendant's request for attorneys' fees on the ground that
the defendant was not a prevailing party.  *Id.*

Similarly, the court in *Chan* allowed the record company
to amend its complaint after discovery to add the defendant's
daughter as a defendant and to voluntarily dismiss the defendant.
2005 WL 2277107, at *2.  The court denied the defendant's request
for fees as prevailing party on the ground that, among other
things, "even if the dismissal were considered an adjudication on
the merits[,] . . . Plaintiffs have taken reasonable steps to try
to prosecute this case and litigate against the proper
defendant(s). They brought suit against [the defendant] because

17 - OPINION AND ORDER

she was the registered user for the IP address from which the
allegedly improper downloading and file sharing occurred." *Id.*

In addition, Record Company Defendants point to several
cases in which actions have been brought against individuals for
illegally downloading copyrighted material; the individuals
denied wrongdoing; and juries, nevertheless, concluded the
individuals were liable.  For example, in *Capitol Records Inc. v.
Thomas-Rasset* the record company brought an action against the
defendant alleging she illegally downloaded sound recordings.
Civil No. 06-1497 (MJD/RLE), 2010 WL 291763, at *1 (D. Minn.
Jan. 22, 2010).  A jury found the defendant had willfully
infringed the plaintiff's sound recordings.  The court then
granted a motion for new trial, and a jury again found at the
second trial that the defendant had willfully infringed the
plaintiff's sound recordings.  *Id.*, at *2.  The court reduced the
damages awarded to the plaintiff, but noted the defendant

> refused to accept responsibility for downloading
> and distributing the infringing sound recordings.
> [The defendant] previously provided sworn
> interrogatory answers that there had never been
> any type of online media distribution on her
> computer in the three years before the Complaint
> was filed and that she did not contend that anyone
> else was responsible for the infringement. Despite
> never implicating others during her depositions or
> testimony in the previous trial, in this second
> trial, she suddenly leveled new accusations
> against her children and ex-boyfriend, asserting
> that they might have committed the infringement.

*Id.*, at *6.  In other cases, the defendants denied wrongdoing,

but willfully destroyed evidence and were sanctioned as a result.
For example, in *Atlantic Recording Corp. v. Howell* the record
companies brought an action against the defendant for illegally
downloading copyrighted sound recordings.  No. CV-06-02076-
PHX-NVW, 2008 WL 4080008, at *1 (D. Ariz. Aug. 29, 2008).  The
defendant testified he had legally purchased the copyrighted
sound recordings.  The court, however, imposed the sanction of
default judgment against the defendant when it was revealed
during discovery that the defendant had willfully and repeatedly
destroyed evidence in a way that the court found was
"deliberately calculated to conceal the truth and . . . to
deceive the court."  *Id.*, at *2-3.  *See also Arista Records,
L.L.C. v. Tschirhart*, 241 F.R.D. 462, 466 (W.D. Tex. 2006)(court
imposed sanction of default judgment when the defendant denied
illegally downloading copyrighted sound recordings but destroyed
evidence, which the court concluded showed "blatant contempt
for this Court and a fundamental disregard for the judicial
process.").

        These cases undermine Andersen's assertion that the
Court could find any continued litigation by Record Company
Defendants to be abusive *per se* after a potential class member
denied any wrongdoing.  Thus, the analysis of the proposed
certification would place this Court in the position that the
Ninth Circuit cautioned against in *Dukes (i.e.*, the evidence on

which Andersen would rely to establish commonality does not just overlap with the merits - it is the merits). *See Dukes*, 2010 WL 1644259, at *14 (Often in "pattern and practice" class-action discrimination cases, "the plaintiff's statistical evidence does not overlap with the merits, it largely *is* the merits.  This means that disputes over whose statistics are more persuasive are often not disputes about whether the plaintiffs raise common issues or questions, but are really arguments going to proof of the merits.").

Based on this record, the Court finds certification of the class most recently proposed by Andersen would require the Court to engage in an impermissible merit-based inquiry as to each class member's claim.  Accordingly, the Court concludes Andersen has not established that her proposed class would meet the requirements of Rule 23(b)(3).

**B.    Individual issues of law predominate**.

As noted, Rule 23(b)(3) requires common questions of law to predominate over questions affecting individual members.

Record Company Defendants assert individual questions of law would predominate over members of Andersen's proposed class because each class member's claims for negligence and abuse of process would have to be evaluated according to the elements of the tort laws of each class member's home state and those laws vary considerably from state to state.  Record Company Defendants

20 - OPINION AND ORDER

rely on *Lozano v. AT&T Wireless Service, Inc.*, among other cases, to support their assertion.  In *Lozano*, the Ninth Circuit held the district court did not abuse its discretion when it declined to certify a national class on the ground that individual issues of law predominated because the plaintiff's "intent to seek arbitration of the class would necessitate a state-by-state review of contract conscionability jurisprudence." *Lozano*, 504 F.3d at 728.  *See also Bonlender v. Am. Honda Motor Co., Inc.*, No. 07-55258, 2008 WL 2873264, at *1 (9th Cir. Jul. 22, 2008) (district court abused its discretion by certifying a nationwide class without considering whether "variations in applicable state laws defeated Rule 23(b)(3)'s predominance requirement."). Record Company Defendants also rely on numerous district court cases in the Ninth Circuit in which the courts declined to certify nationwide classes due to the fact that individual issues of law predominated.  *See, e.g., Utility Consumers' Action Network v. Sprint Solutions, Inc*., 259 F.R.D. 484, 487-88 (S.D. Cal. 2009)(certifying a nationwide class action was not a "superior method of adjudicating the Plaintiffs' claims" because "[t]he application of several state laws to one action would make the trial exceedingly complex[, and][i]nstructing a jury on varying standards and legal theories is not as simple as plaintiffs suggest."), and *Rivera v. Bio Engineered Supple. & Nutrition, Inc*., No. SACV 07-1306 JVS (RNBx), 2008 WL 4906433, at

21 - OPINION AND ORDER

*3 (C.D. Cal. Nov. 13, 2008)(denied the plaintiff's request to
certify nationwide class because "there are material differences
among the 50 states with regard to the law of unjust enrichment
and fraud.  The Ninth Circuit has found that 'when more than a
few state laws differ, [the] court would be faced with [the]
impossible task of instructing [the] jury on [the] relevant
law.'")(quoting *Zinser v. Accufix Res. Inst., Inc.*, 253 F.3d
1180, 1189 (9th Cir. 2001)).  In addition, in their Memorandum in
Opposition to Andersen's initial Motion for Class Certification,
Record Company Defendants note significant differences between
the laws of various states related to Andersen's claims.  For
example, states do not agree on what constitutes abuse of
process, and only a minority of state supreme courts have defined
process.  Similarly, Record Company Defendants note state courts
have interpreted duty and proximate cause differently when
resolving negligence claims.

     The Court notes Andersen attached a number of exhibits
to the Declaration of Benjamin Justus filed in support of
Andersen's initial Motion for Class Certification.  These
exhibits are titled "Fifty State Analysis of a Claim for Abuse of
Process," "Fifty State Analysis of a Negligence Cause of Action,"
and "Fifty State Analysis of Civil Conspiracy Cause of Action."
The exhibits, however, merely recite the elements of Andersen's
claims for abuse of process, negligence, and civil conspiracy in

22 - OPINION AND ORDER

various states without an analysis of how those elements are interpreted or analyzed by the various states. Such a summary approach to evaluation of the laws of various states have been rejected by courts as overstating the similarities of various state laws. *See, e.g., Cole v. Gen. Motors Corp.*, 484 F.3d 717, 725-26 (5th Cir. 2007)(denied the plaintiff's motion for class certification on the ground that the plaintiffs' "assertion of predominance relied primarily on the textual similarities of each jurisdiction's applicable law and on the general availability of legal protection in each jurisdiction. . . . Plaintiffs' largely textual presentation of legal authority oversimplified the required analysis and glossed over the glaring substantive legal conflicts among the applicable laws of each jurisdiction."), and *Agostino v. Quest Diagnostics, Inc*., 256 F.R.D. 437, 452 (D.N.J. 2009)("Plaintiffs have overstated the similarity among state hold harmless provisions.").

On this record, the Court concludes Andersen has not established that her proposed class would meet the requirements of Rule 23(b). Accordingly, the Court denies Andersen's Motion for Leave to File an Amended Motion for Class Certification as futile.

## RECORD COMPANY DEFENDANTS' MOTION FOR LEAVE TO FILE MOTION FOR SUMMARY JUDGMENT

Record Company Defendants seek leave to file a motion for

23 - OPINION AND ORDER

summary judgment as to Andersen's remaining claims of abuse of
legal process, negligence, and civil conspiracy related to Record
Company Defendants' alleged conduct after the filing of *Andersen
I*.

**I.    Andersen's claim for abuse of legal process.**

In her Fourth Amended Complaint, Andersen alleges Record
Company Defendants continued with *Andersen I*

> not for purposes of protecting or vindicating the
> copyrights purportedly at issue, but instead for
> the primary unlawful purpose of intimidating
> Plaintiff and the general public in order to
> maintain and preserve as long as possible their
> monopolistic control over the world's market for
> the distribution of sound recordings.

Fourth Am. Compl. at ¶ 8.18.

Record Company Defendants contend Andersen cannot adduce any
facts "beyond unsupported accusations" to establish the elements
of her claim for abuse of legal process.

**A.    Standards**

"An abuse of process is the 'perversion of legal
procedure to accomplish an ulterior purpose when the procedure is
commenced in proper form and with probable cause.'" *Acro-Tech,
Inc. v. Robert Jackson Family Trust*, No. 01-447-KI, 2001 WL
1471753, at *8 (D. Or. Sept. 6, 2001)(quoting *Kelly v. McBarron*,
258 Or. 149, 154 (1971)). The Oregon Supreme Court has described
the elements of a claim for abuse of process as follows:

> [F]irst, an ulterior purpose, and second, a wilful

act in the use of the process not proper in the
regular conduct of the proceeding.  Some definite
act or threat not authorized by the process, or
aimed at an objective not legitimate in the use of
the process, is required; and there is no
liability where the defendant has done nothing
more than carry out the process to its authorized
conclusion, even though with bad intentions.  The
improper purpose usually takes the form of
coercion to obtain a collateral advantage, not
properly involved in the proceeding itself, such
as the surrender of property or the payment of
money, by the use of the process as a threat or a
club.

*Larsen v. Cred. Bur.*, 279 Or. 405, 408 (1977)(quoting Prosser,

Law of Torts 857, § 121 (1971)).

**B.  Analysis**

Record Company Defendants allege, among other things,

that there is "no objective proof" in the record to establish

that they should have pursued "Gotenkito" for the alleged illegal

downloading because the record reflects Verizon provided Record

Company Defendants with three separate confirmations that the

Internet address in question belonged to Andersen.

After a review of the record, including the parties'

Motions, the Court concludes Andersen has likely pled and adduced

sufficient evidence to establish a genuine issue of material fact

exists as to her contentions that (1) Gotenkito might have been

the person who actually downloaded the copyrighted materials,

and, therefore, Record Company Defendants should have

investigated the individual with that username on MySpace and

(2) Record Company Defendants did not do so in order to secure an

25 - OPINION AND ORDER

unjustified settlement from Andersen.  Thus, it would be futile for Record Company Defendants to be granted leave to file a motion for summary judgment as to this claim.

Accordingly, in the exercise of its discretion and inherent power to manage its docket, the Court declines to allow Record Company Defendants to file summary judgment as to Andersen's claim for abuse of legal process.

## II.  Andersen's negligence claim.

After the Court's ruling as to the applicability of the *Noerr-Pennington* Doctrine, Andersen's remaining claims of negligence in this matter are:  Record Company Defendants were negligent when they (1) "prosecut[ed] baseless sham litigation against Plaintiff" and (2) failed to "properly investigate the true identity of 'Gotenkito' after his true identity was known to them."

Record Company Defendants seek leave to move for summary judgment against Andersen's negligence claims on the grounds that Andersen's emotional harm is not compensable under Oregon law and Andersen has not established Record Company Defendants owed her a special duty of care.

### A.  Standards

To state a claim in negligence under Oregon law, "a plaintiff must allege facts . . . that show . . . the defendant owed a duty of care, . . . the defendant breached the duty[,] and

26 - OPINION AND ORDER

. . . the breach was the cause in fact of some legally cognizable damage to plaintiff." *Cook v. Sch. Dist. UH3J*, 83 Or. App. 292, 294 (1987)(citation omitted).

**B.    Emotional harm for negligence is not compensable under Oregon law.**

To the extent Andersen seeks to recover damages for emotional distress due to Recording Company Defendants' alleged negligence, Oregon courts "have recognized claims for emotional distress caused by ordinary negligence, but only if the distress is accompanied by physical impact." *Lowe v. Philip Morris USA, Inc.*, 207 Or. App. 532, 551 (2006)(citing *Simons v. Beard*, 188 Or. App. 370, 375 (2003)). *See also Chouinard v. Health Ventures*, 179 Or. App. 507, 515 (2002)(no recovery for emotional distress caused by failure to initially diagnose cancerous tumor in the absence of manifest physical impact); *McCulloch v. Price Waterhouse LLP*, 157 Or. App. 237, 252 (1998)(plaintiff could not recover from accountant for emotional distress caused by his negligence); *Flowers v. Bank of Am.*, 67 Or. App. 791, 794 (1984)(plaintiff could not recover for emotional distress caused when restaurant negligently failed to honor his credit card).

Andersen does not allege any physical impact or physical injuries from Record Company Defendants' continuation of *Andersen I* and/or failure to investigate Gotenkito nor does the record before the Court suggest Andersen suffered any physical impact or harm as a result of Record Company Defendants' alleged

27 - OPINION AND ORDER

negligence.

**C.    Andersen has not established a special relationship existed between her and Record Company Defendants that created a heightened duty of care on the part of Record Company Defendants and liability for Andersen's economic losses.**

To the extent Andersen seeks to recover economic damages for Record Company Defendants' alleged negligence, under Oregon law "one ordinarily is not liable for negligently causing a stranger's purely economic loss without injuring his person or property" even if the harm is a foreseeable consequence of negligent conduct. *Onita Pac. Corp. v. Trustees of Bronson*, 315 Or. 149, 159 (1992).

> As with claims for emotional distress, negligence claims for purely economic harm would seem to fall prey to the general rule that requires proof of physical harm. And, in Oregon, that is the general rule. Under what is known as the "economic loss doctrine," one ordinarily is not liable for negligently causing a stranger's purely economic loss without injuring his or her person or property. *Hale v. Groce*, 304 Or. 281, 284, 744 P.2d 1289 (1987).
>
> In Oregon, however, the courts have fashioned an exception to the general rule. One may be liable in negligence for purely economic harm, but only if the harm is predicated on a heightened duty of the negligent actor to the injured party beyond the common-law duty to exercise reasonable care to prevent foreseeable harm. *Oregon Steel Mills, Inc. v. Coopers Lybrand, LLP*, 336 Or. 329, 340-42, 83 P.3d 322 (2004). The courts have looked for a special relationship between the parties that creates a heightened duty on the part of the defendant. *Conway v. Pacific University*, 324 Or. 231, 239-40, 924 P.2d 818 (1996).

*Lowe*, 207 Or. App. at 552-53. Oregon courts have imposed a

28 - OPINION AND ORDER

heightened duty of care in a variety of relationships that
include attorneys and physicians as to their clients and
patients.  *See Chocktoot v. Smith*, 280 Or. 567, 570 (1977)
(attorneys), and *Dowell v. Mossberg*, 226 Or. 173, 190 (1961)
(physicians).  Other relationships in which Oregon courts have
imposed a heightened duty of care are "summarized . . . as those
in which the party who owes a duty of care is acting, at least in
part, . . . to further the economic interests of the client, the
person owed the duty of care."  *Conway v. Pac. Univ.,* 324 Or.
231, 240 (1996) (quotation omitted).  *See, e.g., Hampton Tree
Farms, Inc. v. Jewett*, 320 Or. 599, 617 (1995)(creditor who
agreed to represent log seller for the purpose of selling the
latter's company acted as seller's agent and, therefore, owed
seller a duty to act with due care and in seller's interests);
*Lindland v. United Bus. Inv.*, 298 Or. 318, 322-24 (1984)(real-
estate broker acting as seller's agent owed seller duty to
exercise due care and to disclose material facts); *Strickland v.
Arnold Thomas Seed*, 277 Or. 165, 169-70 (1977)(agent for
marketing pool of seed growers deemed to be trustee who owed
fiduciary duty to growers); *Harper v. Interstate Brewery Co.*, 168
Or. 26, 37 (1942)(pledgees exercising a power of sale, shippers,
and bailors must exercise due care in behalf of their pledgors
and customers).

        In her Fourth Amended Complaint Andersen alleges only a

29 - OPINION AND ORDER

general duty by Record Company Defendants to act "reasonably, responsibly and legally."  In addition, it does not appear on this record that Andersen could allege a special relationship between the parties that would create a heightened duty on the part of the Record Company Defendants in light of the fact that Andersen was not a client of Record Company Defendants and there is not any indication that Record Company Defendants were required to act in Andersen's economic interest.

The Court, therefore, in the exercise of its discretion, concludes Record Company Defendants have established a basis for seeking summary judgment as to Andersen's claim for negligence. Accordingly, the Court grants Record Company Defendants' Motion for Leave to File a Motion for Summary Judgment as to Andersen's remaining negligence claim relating to Record Company Defendants' actions after initiation of *Andersen I*.

<u>CONCLUSION</u>

For these reasons, the Court declines to reverse dismissal of Defendants MediaSentry and SSC, and, therefore, **DISMISSES** Andersen's claims against those Defendants **with prejudice**; **DENIES** Andersen's Motion (#183) for Leave to File an Amended Motion for Class Certification; and **GRANTS in part** and **DENIES in part** Defendants' Motion (#179) for Leave to File Motion for Summary Judgment as follows:

30 - OPINION AND ORDER

1.   **DENIES** Defendants' Motion for Leave as to Andersen's claim for abuse of legal process and

2.   **GRANTS** Defendant's Motion for Leave as to Andersen's claim for negligence.

The Court **DIRECTS** the parties to confer and to submit no later than **May 27, 2010**, a jointly proposed schedule to complete Record Company Defendants' motion for summary judgment as to Andersen's negligence claim and to submit the pretrial order and pretrial documents necessary to try all of Andersen's remaining claims, including at least three (3) mutually acceptable dates for jury trial.  The Court then will schedule a Rule 16 conference to address the parties' proposals.

IT IS SO ORDERED.

DATED this 4th day of May, 2010.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District


31 - OPINION AND ORDER

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

TANYA ANDERSEN,                                        07-CV-934-BR

          Plaintiff,                          OPINION AND ORDER

v.

ATLANTIC RECORDING
CORPORATION, a Delaware
corporation; PRIORITY RECORDS
LLC, a California limited
liability company; CAPITOL
RECORDS, INC., a Delaware
corporation; UMG RECORDINGS,
INC., a Delaware corporation;
BMG MUSIC, a New York general
partnership; RECORDING
INDUSTRY ASSOCIATION OF
AMERICA; SAFENET, INC. f/k/a
MEDIASENTRY, INC., a Delaware
corporation; and SETTLEMENT
SUPPORT CENTER, LLC, a
Washington limited liability
company,

          Defendants.

1 - OPINION AND ORDER

**LORY RAY LYBECK**
**BENJAMIN R. JUSTUS**
Lybeck Murphy, LLP
7525 S.E. 24th Street, Suite 500
Mercer Island, WA 98040-2336
(206) 230-4255

**COREY D. MCGAHA**
**LEISA B PEARLMAN**
**RICHARD A. ADAMS**
**REID D. MILLER**
Patton, Roberts, McWilliams, & Capshaw, LLP
Century Bank Plaza, Suite 400
2900 St. Michael Drive
Texarkana, TX 75503
(903) 334-7000

            Attorneys for Plaintiff

**KENNETH R. DAVIS, II**
**WILLIAM T. PATTON**
**PARNA A. MEHRBANI**
Lane Powell P.C.
601 S.W. Second Avenue, Suite 2100
Portland, OR 97204-3158
(503) 778-2121

**AMY BAUER**
**LINNEA BROWN**
**TIMOTHY M. REYNOLDS**
Holme Robert & Owen, LLP
1700 Lincoln Street, Suite 4100
Denver, CO 80203
(303) 866-0417

            Attorneys for Defendants


**BROWN, Judge.**

     This matter comes before the Court on Plaintiff Tanya

Andersen's Opposition (#178) to Dismissal of Defendants

MediaSentry and Settlement Support Center (SSC); Andersen's

Motion (#183) for Leave to File an Amended Motion for Class

2 - OPINION AND ORDER

Certification; and Motion (#179) of Defendants Atlantic Recording
Corporation, Priority Records LLC, Capitol Records, Inc., UMG
Recordings, Inc., BMG Music, and Recording Industry Association
of America (Record Company Defendants) for Leave to File Motion
for Summary Judgment.

For the reasons that follow, the Court declines to reverse
its dismissal of Defendants MediaSentry and SSC and, therefore,
**DISMISSES** Andersen's claims against them **with prejudice**; **DENIES**
Andersen's Motion for Leave to File an Amended Motion for Class
Certification; and **GRANTS in part** and **DENIES in part** Record
Company Defendants' Motion for Leave to File Motion for Summary
Judgment.


## BACKGROUND

The parties are familiar with the facts from numerous prior
Opinions and Orders and, therefore, the Court will not repeat
them.


## PROCEDURAL BACKGROUND

On June 24, 2005, Defendants Atlantic Recording Corporation;
Priority Records LLC; Capitol Records, Inc.; UMG Recordings,
Inc.; and BMG Music filed an action against Andersen in this
Court (*Andersen I*) alleging Andersen infringed their copyrights.

On September 30, 2005, and March 27, 2007, Andersen filed an

3 - OPINION AND ORDER

Answer and "Second Answer" against the defendants in *Andersen I*
alleging Counterclaims for (1) electronic trespass; (2) computer
fraud and abuse under 18 U.S.C. § 1030; (3) invasion of privacy;
(4) abuse of legal process; (5) fraud and negligent
misrepresentation; (6) outrage; (7) deceptive business practices;
and (8) violations of Oregon's Racketeer Influenced and Corrupt
Organizations Act (ORICO), Oregon Revised Statute § 166.715, *et
seq*.

     On June 22, 2007, while *Andersen I* was still pending,
Andersen filed this action (*Andersen II*) against Record Company
Defendants; Safenet, Inc. f/k/a MediaSentry, Inc.; and SSC, LLC,
in which she alleged claims for (1) negligence; (2) fraud and
negligent misrepresentation; (3) violations of ORICO;
(4) violations of the federal Racketeering Influenced Corrupt
Organization Act (RICO), 18 U.S.C. § 1962(c) and (d); (5) abuse
of legal process; (6) malicious prosecution; (7) outrage and
intentional infliction of emotional distress; (8) violation
of the Computer Fraud and Abuse Act (CFAA), 18 U.S.C.
§ 1030(a)(5)(B)(I); (9) trespass to chattels; (10) invasion
of privacy; (11) libel and slander; (12) deceptive business
practices; and (13) misuse of copyright laws based on the same
facts as her Counterclaims in *Andersen I*.

     On August 15, 2007, Andersen filed a First Amended Complaint
in *Andersen II* as a class action and alleged claims for

4 - OPINION AND ORDER

(1) negligence, (2) fraud and negligent misrepresentation, (3) violations of RICO, (4) abuse of legal process, (5) malicious prosecution, (6) outrage and intentional infliction of emotional distress, (7) violation of CFAA, (8) trespass to chattels, (9) invasion of privacy, (10) libel and slander, (11) deceptive business practices, (12) misuse of copyright laws, and (13) civil conspiracy.

On September 12, 2007, and October 22, 2007, Defendants in *Andersen II* filed Motions to Dismiss Plaintiff's First Amended Complaint.

On January 14, 2008, the Court dismissed without prejudice Andersen's Counterclaims in *Andersen I* to allow Andersen to bring those claims in *Andersen II*.

On February 19, 2008, this Court dismissed Andersen's First Amended Complaint in *Andersen II* on the ground that Andersen had not adequately stated claims for relief.

On March 14, 2008 Andersen filed a Second Amended Complaint in *Andersen II* as a class action and alleged claims for (1) negligence; (2) intentional infliction of emotional distress; (3) violations of RICO; (4) violations of ORICO; (5) civil conspiracy; (6) wrongful initiation of civil proceedings; (7) abuse of legal process; (8) defamation; (9) false light; (10) violations of Oregon Unlawful Trade Practices Act (UTPA), Oregon Revised Statute § 646.6-5, *et seq.*; (11) negligent

5 - OPINION AND ORDER

misrepresentation; (12) fraud; (13) invasion of privacy;
(14) violation of CFAA; and (15) trespass to chattels.

On March 31, 2008, the Court granted Andersen leave to file
a Third Amended Complaint in *Andersen II* to correct the defects
in her Second Amended Complaint as noted by the Court.

On April 17, 2008, Andersen filed a Third Amended Complaint
in *Andersen II*.  On April 21, 2008, the Court struck Andersen's
Third Amended Complaint and granted her leave to file a Fourth
Amended Complaint.

On May 1, 2008, Andersen filed her Fourth Amended Complaint
in *Andersen II* as a class action alleging claims for (1) civil
conspiracy against all Defendants, (2) wrongful initiation of
civil proceedings against Record Company Defendants, (3) abuse
of legal process against Record Company Defendants, and
(4) negligence against all Defendants.

On April 2, 2009, Andersen filed a Motion for Class
Certification.

On May 8, 2009, Defendants filed a Motion seeking summary
judgment as to all of Andersen's claims on the basis of the
*Noerr-Pennington* Doctrine.  *See Prof'l Real Estate Inv., Inc. v.
Columbia Pictures Indus., Inc.*, 508 U.S. 49, 62-63 (1993).

On October 19, 2009, the Court heard oral argument on
Defendants' Motion for Summary Judgment.  The Court noted and
Defendants acknowledged their Motion only addressed whether the

6 - OPINION AND ORDER

*Noerr-Pennington* Doctrine bars Andersen's claims arising from the initiation of *Andersen I* and did not address whether the Doctrine bars Andersen's claims based on the continuation of *Andersen I*. The Court, therefore, found Defendants' Motion as proceeding only against those claims arising from Defendants' initiation of civil proceedings in *Andersen I* and the "conduct incidental to" the initiation of *Andersen I*.  See *Sosa v. DirecTV, Inc.*, 437 F.3d 923, 934-35 (9th Cir. 2006).  Accordingly, the Court declined to address at that time (1) whether *Noerr-Pennington* barred Andersen's claims arising from Defendants' continuation of civil proceedings and (2) whether class certification was appropriate.

On November 12, 2009, the Court issued an Opinion and Order in which it granted Defendants' Motion for Summary Judgment as to all aspects of Andersen's claims that arise from Defendants' initiation of civil proceedings in *Andersen I* on the ground that this aspect of Andersen's claims is barred by the *Noerr-Pennington* Doctrine.

On December 1, 2009, the parties filed a Joint Status Report in which they disagreed as to the issues remaining to be resolved in *Andersen II* after the Court's November 12, 2009, Opinion and Order.

On January 6, 2010, the Court issued an Opinion and Order in *Andersen II* in which it concluded Andersen's claims for civil conspiracy, abuse of legal process, and negligence survived only

to the extent that they are based on Defendants' actions that
allegedly took place after the initiation of *Andersen I*.  The
Court also

1.   dismissed Andersen's claim for wrongful initiation of
     civil process,

2.   dismissed Andersen's claims for injunctive and/or
     declaratory relief prohibiting Record Company
     Defendants from using MediaSentry-gathered IP addresses
     as the basis for any legal action,

3.   denied Andersen's Motion for Class Certification;

4.   denied Andersen's request for leave to file a Fifth
     Amended Complaint "to include an additional class
     representative,"

5.   directed Andersen to show cause in writing why the
     Court should not dismiss her claims against MediaSentry
     and/or SSC,

6.   granted Andersen leave to file another class-
     certification motion based on the existing record, and

7.   granted Record Company Defendants leave to file a
     motion for leave to file another motion for summary
     judgment.

On January 22, 2010, Andersen filed an Opposition to the
Dismissal of Defendants MediaSentry and SSC.  On January 27,
2010, Andersen filed a Motion for Leave to File an Amended Motion

8 - OPINION AND ORDER

for Class Certification.  On that same date, Record Company
Defendants filed a Motion for Leave to File Motion for Summary
Judgment.

At some point after January 22, 2010, Andersen filed a
Petition for Writ of Mandamus with the Ninth Circuit in which she
seeks a review of this Court's decision to deny her initial
Motion for Class Certification on the ground that the Court's
November 12, 2009, and January 6, 2010, Opinions and Orders
contained "virtually no analysis" as to Andersen's initial Motion
for Class Certification.  On February 22, 2010, the Court held a
conference as to Andersen's Petition for Writ of Mandamus and
concluded there was not any basis to stay the Motions currently
before the Court.  Accordingly, the Court addresses below
Andersen's arguments and analysis as to her initial Motion for
Class Certification and her pending Motion for Leave to File an
Amended Motion for Class Certification.


### ANDERSEN'S OPPOSITION (#178) TO THE DISMISSAL OF DEFENDANTS MEDIASENTRY AND SETTLEMENT SUPPORT CENTER

As noted, the Court concluded in its November 12, 2009,
Opinion and Order that all aspects of Andersen's claims that
arise from Defendants' initiation of civil proceedings in
*Andersen I* are barred by the *Noerr-Pennington* Doctrine.  In its
January 6, 2010, Opinion and Order, the Court noted the record
reflects MediaSentry and SSC's alleged conduct incidental to the

9 - OPINION AND ORDER

initiation of *Andersen I* ended before Record Company Defendants
filed *Andersen I*.  Accordingly, the Court requested Andersen to
show cause why MediaSentry and SSC should not be dismissed.

**I.    Andersen's civil-conspiracy claim**.

In her Opposition Andersen reiterates the arguments rejected
by the Court in its November 12, 2009, Opinion and Order as to
Andersen's civil-conspiracy claim against MediaSentry and SSC.
For example, Andersen asserts MediaSentry "knew that many, like
Plaintiff, would be erroneously targeted."  In its November 12,
2009, Opinion and Order, however, the Court found Andersen's
assertion was not sufficient to defeat summary judgment as to her
claim for civil conspiracy.  Andersen also asserts "MediaSentry
is known to have actively participated on behalf of RIAA and its
members throughout the course of publicly litigated cases."
MediaSentry's alleged general participation through the course of
litigation in other unspecified cases, however, is irrelevant to
MediaSentry's actions in this matter.

In addition, under Oregon law "[a] civil conspiracy is a
combination of two or more persons by concerted action to
accomplish an unlawful purpose, or to accomplish some purpose not
in itself unlawful by unlawful means."  *Yanney v. Koehler*, 147
Or. App. 269, 273 (1997).  The Court has found MediaSentry and
SSC are immune from suit for their pre-*Andersen I* conduct, and,
accordingly, such conduct may not form the basis of a civil-

10 - OPINION AND ORDER

conspiracy claim.  *See Or. Laborers-Employers Health & Welfare Trust Fund v. Phillip Morris*, 185 F.3d 957, 969 (9th Cir. 1999)(a "claim for civil conspiracy is entirely dependent on underlying" substantive claims, and, therefore, "civil conspiracy claim must . . . fail" when "the underlying claims fail.").  Moreover, Andersen has not pled or provided any evidence to support her assertion that MediaSentry and SSC shared a "concerted action" with Record Company Defendants to continue the action against Andersen.  The Court finds the record does not support any inference that either MediaSentry or SSC was aware of or played any role in Record Company Defendants' decision to continue litigating *Andersen I*.  Thus, Andersen has not established MediaSentry or SSC participated in any concerted action to continue the *Andersen I* litigation.

## II.  Andersen's negligence claim.

In her Opposition, Andersen asserts MediaSentry and SSC are liable for their "direct acts of negligence which proximately caused harm" to Andersen.  As the Court has noted, however, Andersen's allegations of negligence by MediaSentry and SSC involve conduct incidental to initiation of *Andersen I* and, therefore, any claim based on that conduct is barred by the *Noerr-Pennington* Doctrine.  In addition, Andersen does not cite any authority to support her assertion that she may pursue claims against MediaSentry and SSC based on their conduct incidental to

11 - OPINION AND ORDER

the initiation of *Andersen I* even if that conduct caused harm
that "was fully manifest only after" the initiation of *Andersen
I*.  If the Court were to adopt Andersen's theory, it would
seriously undermine the *Noerr-Pennington* Doctrine.  Thus, in the
absence of authority that establishes a plaintiff may avoid the
reach of the *Noerr-Pennington* Doctrine by asserting ongoing harm,
the Court declines to adopt such an exception.

On this record, the Court concludes Andersen has not shown
cause for the Court to reverse its decision to dismiss Andersen's
claims against MediaSentry and SSC.  Accordingly, the Court
dismisses Andersen's claims against MediaSentry and SSC with
prejudice.

## ANDERSEN'S MOTION (#183) FOR LEAVE TO FILE AN AMENDED MOTION FOR CLASS CERTIFICATION

In its January 5, 2010, the Court denied Andersen's Motion
for Class Certification because it was based substantially on
alleged conduct by Defendants that occurred incidental to the
initiation of *Andersen I* and that the Court concluded was not
actionable.  Andersen, nevertheless, seeks leave to file an
amended motion for class certification.

**I.  Standards**

Federal Rule of Civil Procedure 23(a) and (b) provide in
pertinent part:

12 - OPINION AND ORDER

**(a) Prerequisites.**  One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

**(b) Types of Class Actions.**  A class action may be maintained if Rule 23(a) is satisfied and if:

\* \* \*

3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

The decision to grant or to deny class certification is within the trial court's discretion.  *Narouz v. Charter Commun'c, LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).  "To obtain class certification, a class plaintiff has the burden of showing that the requirements of Rule 23(a) are met and that the class is maintainable pursuant to Rule 23(b)."  *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).  "When considering class certification under Rule 23, district courts are not only at liberty to, but must, perform a rigorous analysis to ensure

13 - OPINION AND ORDER

that the prerequisites of Rule 23(a) have been satisfied." *Dukes v. Wal-Mart Stores, Inc.*, Nos. 04-16688, 04-16720, 2010 WL 1644259, at *4 (9th Cir. Apr. 26, 2010). *See also Lozano v. AT&T Wireless Serv., Inc.*, 504 F.3d 718, 730 (9th Cir. 2007)("[A] class may be certified only if the district court is satisfied after a rigorous analysis that the prerequisites of Rule 23(a) have been met.")(quotation omitted).

"Although some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a), it is improper to advance a decision on the merits to the certification stage." *Dukes*, 2010 WL 1644259, at *9 (quotation omitted). Nevertheless, the Ninth Circuit has also "recognized . . . *Falcon* contemplated cases in which 'the issues are plain enough from the pleadings' and do not require analysis beyond those papers." *Id.*, at *10 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)). *See also Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 961 (9th Cir. 2005)("The Supreme Court thus recognized over twenty years ago that a rigorous analysis does not always result in a lengthy explanation or in-depth review of the record.").

## II. Andersen has not established her proposed class would meet the requirements of Rule 23(b).

Andersen asserts she "represents a certifiable class of individuals subject to abusive and unlawful post-filing

14 - OPINION AND ORDER

'continuation'" of litigation.  Record Company Defendants assert
Andersen proposes an improper merit-based class definition and
state tort laws vary too widely to support a nationwide class in
this matter.

Nevertheless, Andersen seeks leave to file an amended motion
for class certification to certify a nationwide class of
individuals who were sued personally for copyright infringement
allegedly arising from file-sharing, downloading, or other
similar activities; who did not violate copyright laws; and who
denied any wrongdoing but were subjected to abusive conduct after
the filing of an "individual named lawsuit."

**A.    Andersen's proposed class would require the Court to
engage in an impermissible analysis of the merits of
each class member's claim.**

As noted, to certify a class under Rule 23(b)(3), the
Court must find "questions of law or fact common to class members
predominate over any questions affecting only individual members,
and that a class action is superior to other available methods
for fairly and efficiently adjudicating the controversy."

Record Company Defendants contend the Court would have
to engage in an analysis of the merits of each putative class
member's claim to determine whether questions of fact common to
class members predominate over questions affecting individual
members because the Court would have to determine whether each
class member violated copyright laws.

15 - OPINION AND ORDER

Andersen contends the Court would not have to examine the merits of each potential class member's claim because the Court could find any continued litigation by Record Company Defendants to be abusive *per se* when an individual (*i.e.*, potential class member) sued by Record Company Defendants for alleged illegal downloading denied any wrongdoing. Andersen cites several cases in her Memorandum that she contends establish courts have dismissed actions of record companies against individuals for such alleged conduct on the ground that those actions lacked merit.[1] *See, e.g., Atlantic v. Zuleta*, No. 06-CV-1221 (N.D. Ga.); *BMG Music v. Thao*, No. 07CV-143 (B.D. Wis.); *Elektra v. Dennis*, No. 07-CV-39 DPJ-JCS (S.D. Miss.); *Elektra v. Wilke*, No. 06-C-2717 (N.D. Ill.); *Interscope Records v. Leadbetter*, No. C05-1149-MJP-RSL, 2006 WL 3858397 (W.D. Wash. Dec. 29, 2006); *Priority Records LLC v. Chan*, No. 04-CV-73645-DT, 2005 WL 2277107 (E.D. Mich. May 19, 2005); *Sony BMG v. Merchant*, No. 07-CV-00340-DFL-DAD (E.D. Cal.); *Virgin Records Am., Inc. v. Marson*, No. 05-CV-03201 RGK (C.D. Cal.); *Warner v. Maravilla*, No. 05-CV-03149-GPS (C.D. Cal.); *Warner v. Pidgeon*, No. 06-CV12838-PJD-DAS (E.D. Mich.); *Warner v. Stubbs*, No. Civ. 06-793-VML (W.D. Okla.).

---

[1] The Court could not find the majority of these unpublished cases cited by Andersen, and Andersen did not attach them to her Motion or identify any place in the record where the Court might find them.

16 - OPINION AND ORDER

The Court notes the above cases that the Court was able to review merely underscore the different circumstances underlying actions in which record companies brought actions against individuals who denied wrongdoing.  For example, the record companies in *Interscope* amended their complaint after discovery to add claims against the defendant's son and then brought a separate action against the defendant's fiánce.  2007 WL 1217705, at *2.  The court granted the parties' stipulated motion to dismiss the defendant without prejudice and denied the parties' cross-motions for summary judgment as to the defendant's son on the ground that material issues of fact existed as to which member of the defendant's household had downloaded the copyrighted materials.  *Id.*, at *7.  Ultimately the court denied the defendant's request for attorneys' fees on the ground that the defendant was not a prevailing party.  *Id.*

Similarly, the court in *Chan* allowed the record company to amend its complaint after discovery to add the defendant's daughter as a defendant and to voluntarily dismiss the defendant. 2005 WL 2277107, at *2.  The court denied the defendant's request for fees as prevailing party on the ground that, among other things, "even if the dismissal were considered an adjudication on the merits[,] . . . Plaintiffs have taken reasonable steps to try to prosecute this case and litigate against the proper defendant(s). They brought suit against [the defendant] because

17 - OPINION AND ORDER

she was the registered user for the IP address from which the
allegedly improper downloading and file sharing occurred." *Id.*

        In addition, Record Company Defendants point to several
cases in which actions have been brought against individuals for
illegally downloading copyrighted material; the individuals
denied wrongdoing; and juries, nevertheless, concluded the
individuals were liable.  For example, in *Capitol Records Inc. v.
Thomas-Rasset* the record company brought an action against the
defendant alleging she illegally downloaded sound recordings.
Civil No. 06-1497 (MJD/RLE), 2010 WL 291763, at *1 (D. Minn.
Jan. 22, 2010).  A jury found the defendant had willfully
infringed the plaintiff's sound recordings.  The court then
granted a motion for new trial, and a jury again found at the
second trial that the defendant had willfully infringed the
plaintiff's sound recordings.  *Id.*, at *2.  The court reduced the
damages awarded to the plaintiff, but noted the defendant

> refused to accept responsibility for downloading
> and distributing the infringing sound recordings.
> [The defendant] previously provided sworn
> interrogatory answers that there had never been
> any type of online media distribution on her
> computer in the three years before the Complaint
> was filed and that she did not contend that anyone
> else was responsible for the infringement. Despite
> never implicating others during her depositions or
> testimony in the previous trial, in this second
> trial, she suddenly leveled new accusations
> against her children and ex-boyfriend, asserting
> that they might have committed the infringement.

*Id.*, at *6.  In other cases, the defendants denied wrongdoing,

18 - OPINION AND ORDER

but willfully destroyed evidence and were sanctioned as a result. For example, in *Atlantic Recording Corp. v. Howell* the record companies brought an action against the defendant for illegally downloading copyrighted sound recordings.  No. CV-06-02076-PHX-NVW, 2008 WL 4080008, at *1 (D. Ariz. Aug. 29, 2008).  The defendant testified he had legally purchased the copyrighted sound recordings.  The court, however, imposed the sanction of default judgment against the defendant when it was revealed during discovery that the defendant had willfully and repeatedly destroyed evidence in a way that the court found was "deliberately calculated to conceal the truth and . . . to deceive the court." *Id.*, at *2-3.  *See also Arista Records, L.L.C. v. Tschirhart*, 241 F.R.D. 462, 466 (W.D. Tex. 2006)(court imposed sanction of default judgment when the defendant denied illegally downloading copyrighted sound recordings but destroyed evidence, which the court concluded showed "blatant contempt for this Court and a fundamental disregard for the judicial process.").

These cases undermine Andersen's assertion that the Court could find any continued litigation by Record Company Defendants to be abusive *per se* after a potential class member denied any wrongdoing.  Thus, the analysis of the proposed certification would place this Court in the position that the Ninth Circuit cautioned against in *Dukes (i.e.*, the evidence on

19 - OPINION AND ORDER

which Andersen would rely to establish commonality does not just overlap with the merits - it is the merits). *See Dukes*, 2010 WL 1644259, at *14 (Often in "pattern and practice" class-action discrimination cases, "the plaintiff's statistical evidence does not overlap with the merits, it largely *is* the merits.  This means that disputes over whose statistics are more persuasive are often not disputes about whether the plaintiffs raise common issues or questions, but are really arguments going to proof of the merits.").

Based on this record, the Court finds certification of the class most recently proposed by Andersen would require the Court to engage in an impermissible merit-based inquiry as to each class member's claim.  Accordingly, the Court concludes Andersen has not established that her proposed class would meet the requirements of Rule 23(b)(3).

**B.  Individual issues of law predominate**.

As noted, Rule 23(b)(3) requires common questions of law to predominate over questions affecting individual members.

Record Company Defendants assert individual questions of law would predominate over members of Andersen's proposed class because each class member's claims for negligence and abuse of process would have to be evaluated according to the elements of the tort laws of each class member's home state and those laws vary considerably from state to state.  Record Company Defendants

20 - OPINION AND ORDER

rely on *Lozano v. AT&T Wireless Service, Inc.*, among other cases, to support their assertion.  In *Lozano*, the Ninth Circuit held the district court did not abuse its discretion when it declined to certify a national class on the ground that individual issues of law predominated because the plaintiff's "intent to seek arbitration of the class would necessitate a state-by-state review of contract conscionability jurisprudence." *Lozano*, 504 F.3d at 728.  *See also Bonlender v. Am. Honda Motor Co., Inc.*, No. 07-55258, 2008 WL 2873264, at *1 (9th Cir. Jul. 22, 2008) (district court abused its discretion by certifying a nationwide class without considering whether "variations in applicable state laws defeated Rule 23(b)(3)'s predominance requirement."). Record Company Defendants also rely on numerous district court cases in the Ninth Circuit in which the courts declined to certify nationwide classes due to the fact that individual issues of law predominated.  *See, e.g., Utility Consumers' Action Network v. Sprint Solutions, Inc.*, 259 F.R.D. 484, 487-88 (S.D. Cal. 2009)(certifying a nationwide class action was not a "superior method of adjudicating the Plaintiffs' claims" because "[t]he application of several state laws to one action would make the trial exceedingly complex[, and][i]nstructing a jury on varying standards and legal theories is not as simple as plaintiffs suggest."), and *Rivera v. Bio Engineered Supple. & Nutrition, Inc.*, No. SACV 07-1306 JVS (RNBx), 2008 WL 4906433, at

21 - OPINION AND ORDER

*3 (C.D. Cal. Nov. 13, 2008)(denied the plaintiff's request to certify nationwide class because "there are material differences among the 50 states with regard to the law of unjust enrichment and fraud.  The Ninth Circuit has found that 'when more than a few state laws differ, [the] court would be faced with [the] impossible task of instructing [the] jury on [the] relevant law.'")(quoting *Zinser v. Accufix Res. Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001)).  In addition, in their Memorandum in Opposition to Andersen's initial Motion for Class Certification, Record Company Defendants note significant differences between the laws of various states related to Andersen's claims.  For example, states do not agree on what constitutes abuse of process, and only a minority of state supreme courts have defined process.  Similarly, Record Company Defendants note state courts have interpreted duty and proximate cause differently when resolving negligence claims.

The Court notes Andersen attached a number of exhibits to the Declaration of Benjamin Justus filed in support of Andersen's initial Motion for Class Certification.  These exhibits are titled "Fifty State Analysis of a Claim for Abuse of Process," "Fifty State Analysis of a Negligence Cause of Action," and "Fifty State Analysis of Civil Conspiracy Cause of Action." The exhibits, however, merely recite the elements of Andersen's claims for abuse of process, negligence, and civil conspiracy in

22 - OPINION AND ORDER

various states without an analysis of how those elements are interpreted or analyzed by the various states.  Such a summary approach to evaluation of the laws of various states have been rejected by courts as overstating the similarities of various state laws.  *See, e.g., Cole v. Gen. Motors Corp.*, 484 F.3d 717, 725-26 (5th Cir. 2007)(denied the plaintiff's motion for class certification on the ground that the plaintiffs' "assertion of predominance relied primarily on the textual similarities of each jurisdiction's applicable law and on the general availability of legal protection in each jurisdiction. . . .  Plaintiffs' largely textual presentation of legal authority oversimplified the required analysis and glossed over the glaring substantive legal conflicts among the applicable laws of each jurisdiction."), and *Agostino v. Quest Diagnostics, Inc.*, 256 F.R.D. 437, 452 (D.N.J. 2009)("Plaintiffs have overstated the similarity among state hold harmless provisions.").

On this record, the Court concludes Andersen has not established that her proposed class would meet the requirements of Rule 23(b).  Accordingly, the Court denies Andersen's Motion for Leave to File an Amended Motion for Class Certification as futile.

## RECORD COMPANY DEFENDANTS' MOTION FOR LEAVE TO FILE MOTION FOR SUMMARY JUDGMENT

Record Company Defendants seek leave to file a motion for

23 - OPINION AND ORDER

summary judgment as to Andersen's remaining claims of abuse of legal process, negligence, and civil conspiracy related to Record Company Defendants' alleged conduct after the filing of *Andersen I*.

**I.   Andersen's claim for abuse of legal process.**

In her Fourth Amended Complaint, Andersen alleges Record Company Defendants continued with *Andersen I*

> not for purposes of protecting or vindicating the copyrights purportedly at issue, but instead for the primary unlawful purpose of intimidating Plaintiff and the general public in order to maintain and preserve as long as possible their monopolistic control over the world's market for the distribution of sound recordings.

Fourth Am. Compl. at ¶ 8.18.

Record Company Defendants contend Andersen cannot adduce any facts "beyond unsupported accusations" to establish the elements of her claim for abuse of legal process.

**A.   Standards**

"An abuse of process is the 'perversion of legal procedure to accomplish an ulterior purpose when the procedure is commenced in proper form and with probable cause.'" *Acro-Tech, Inc. v. Robert Jackson Family Trust*, No. 01-447-KI, 2001 WL 1471753, at *8 (D. Or. Sept. 6, 2001)(quoting *Kelly v. McBarron*, 258 Or. 149, 154 (1971)). The Oregon Supreme Court has described the elements of a claim for abuse of process as follows:

[F]irst, an ulterior purpose, and second, a wilful

24 - OPINION AND ORDER

act in the use of the process not proper in the
regular conduct of the proceeding.  Some definite
act or threat not authorized by the process, or
aimed at an objective not legitimate in the use of
the process, is required; and there is no
liability where the defendant has done nothing
more than carry out the process to its authorized
conclusion, even though with bad intentions.  The
improper purpose usually takes the form of
coercion to obtain a collateral advantage, not
properly involved in the proceeding itself, such
as the surrender of property or the payment of
money, by the use of the process as a threat or a
club.

*Larsen v. Cred. Bur.*, 279 Or. 405, 408 (1977)(quoting Prosser,

Law of Torts 857, § 121 (1971)).

   **B.  Analysis**

      Record Company Defendants allege, among other things,

that there is "no objective proof" in the record to establish

that they should have pursued "Gotenkito" for the alleged illegal

downloading because the record reflects Verizon provided Record

Company Defendants with three separate confirmations that the

Internet address in question belonged to Andersen.

      After a review of the record, including the parties'

Motions, the Court concludes Andersen has likely pled and adduced

sufficient evidence to establish a genuine issue of material fact

exists as to her contentions that (1) Gotenkito might have been

the person who actually downloaded the copyrighted materials,

and, therefore, Record Company Defendants should have

investigated the individual with that username on MySpace and

(2) Record Company Defendants did not do so in order to secure an

25 - OPINION AND ORDER

unjustified settlement from Andersen.  Thus, it would be futile
for Record Company Defendants to be granted leave to file a
motion for summary judgment as to this claim.

        Accordingly, in the exercise of its discretion and
inherent power to manage its docket, the Court declines to allow
Record Company Defendants to file summary judgment as to
Andersen's claim for abuse of legal process.

## II.  Andersen's negligence claim.

        After the Court's ruling as to the applicability of the
*Noerr-Pennington* Doctrine, Andersen's remaining claims of
negligence in this matter are:  Record Company Defendants were
negligent when they (1) "prosecut[ed] baseless sham litigation
against Plaintiff" and (2) failed to "properly investigate the
true identity of 'Gotenkito' after his true identity was known to
them."

        Record Company Defendants seek leave to move for summary
judgment against Andersen's negligence claims on the grounds that
Andersen's emotional harm is not compensable under Oregon law and
Andersen has not established Record Company Defendants owed her a
special duty of care.

### A.  Standards

        To state a claim in negligence under Oregon law, "a
plaintiff must allege facts . . . that show . . . the defendant
owed a duty of care, . . . the defendant breached the duty[,] and

. . . the breach was the cause in fact of some legally cognizable damage to plaintiff." *Cook v. Sch. Dist. UH3J*, 83 Or. App. 292, 294 (1987)(citation omitted).

**B.    Emotional harm for negligence is not compensable under Oregon law.**

To the extent Andersen seeks to recover damages for emotional distress due to Recording Company Defendants' alleged negligence, Oregon courts "have recognized claims for emotional distress caused by ordinary negligence, but only if the distress is accompanied by physical impact." *Lowe v. Philip Morris USA, Inc.*, 207 Or. App. 532, 551 (2006)(citing *Simons v. Beard*, 188 Or. App. 370, 375 (2003)).  *See also Chouinard v. Health Ventures*, 179 Or. App. 507, 515 (2002)(no recovery for emotional distress caused by failure to initially diagnose cancerous tumor in the absence of manifest physical impact); *McCulloch v. Price Waterhouse LLP*, 157 Or. App. 237, 252 (1998)(plaintiff could not recover from accountant for emotional distress caused by his negligence); *Flowers v. Bank of Am.*, 67 Or. App. 791, 794 (1984)(plaintiff could not recover for emotional distress caused when restaurant negligently failed to honor his credit card).

Andersen does not allege any physical impact or physical injuries from Record Company Defendants' continuation of *Andersen I* and/or failure to investigate Gotenkito nor does the record before the Court suggest Andersen suffered any physical impact or harm as a result of Record Company Defendants' alleged

27 - OPINION AND ORDER

negligence.

**C.  Andersen has not established a special relationship existed between her and Record Company Defendants that created a heightened duty of care on the part of Record Company Defendants and liability for Andersen's economic losses.**

To the extent Andersen seeks to recover economic damages for Record Company Defendants' alleged negligence, under Oregon law "one ordinarily is not liable for negligently causing a stranger's purely economic loss without injuring his person or property" even if the harm is a foreseeable consequence of negligent conduct. *Onita Pac. Corp. v. Trustees of Bronson*, 315 Or. 149, 159 (1992).

> As with claims for emotional distress, negligence claims for purely economic harm would seem to fall prey to the general rule that requires proof of physical harm. And, in Oregon, that is the general rule. Under what is known as the "economic loss doctrine," one ordinarily is not liable for negligently causing a stranger's purely economic loss without injuring his or her person or property. *Hale v. Groce*, 304 Or. 281, 284, 744 P.2d 1289 (1987).
>
> In Oregon, however, the courts have fashioned an exception to the general rule. One may be liable in negligence for purely economic harm, but only if the harm is predicated on a heightened duty of the negligent actor to the injured party beyond the common-law duty to exercise reasonable care to prevent foreseeable harm. *Oregon Steel Mills, Inc. v. Coopers Lybrand, LLP*, 336 Or. 329, 340-42, 83 P.3d 322 (2004). The courts have looked for a special relationship between the parties that creates a heightened duty on the part of the defendant. *Conway v. Pacific University*, 324 Or. 231, 239-40, 924 P.2d 818 (1996).

*Lowe*, 207 Or. App. at 552-53. Oregon courts have imposed a

28 - OPINION AND ORDER

heightened duty of care in a variety of relationships that
include attorneys and physicians as to their clients and
patients.  *See Chocktoot v. Smith*, 280 Or. 567, 570 (1977)
(attorneys), and *Dowell v. Mossberg*, 226 Or. 173, 190 (1961)
(physicians).  Other relationships in which Oregon courts have
imposed a heightened duty of care are "summarized . . . as those
in which the party who owes a duty of care is acting, at least in
part, . . . to further the economic interests of the client, the
person owed the duty of care."  *Conway v. Pac. Univ.*, 324 Or.
231, 240 (1996) (quotation omitted).  *See, e.g., Hampton Tree
Farms, Inc. v. Jewett*, 320 Or. 599, 617 (1995)(creditor who
agreed to represent log seller for the purpose of selling the
latter's company acted as seller's agent and, therefore, owed
seller a duty to act with due care and in seller's interests);
*Lindland v. United Bus. Inv.*, 298 Or. 318, 322-24 (1984)(real-
estate broker acting as seller's agent owed seller duty to
exercise due care and to disclose material facts); *Strickland v.
Arnold Thomas Seed*, 277 Or. 165, 169-70 (1977)(agent for
marketing pool of seed growers deemed to be trustee who owed
fiduciary duty to growers); *Harper v. Interstate Brewery Co.*, 168
Or. 26, 37 (1942)(pledgees exercising a power of sale, shippers,
and bailors must exercise due care in behalf of their pledgors
and customers).

     In her Fourth Amended Complaint Andersen alleges only a

29 - OPINION AND ORDER

general duty by Record Company Defendants to act "reasonably, responsibly and legally."  In addition, it does not appear on this record that Andersen could allege a special relationship between the parties that would create a heightened duty on the part of the Record Company Defendants in light of the fact that Andersen was not a client of Record Company Defendants and there is not any indication that Record Company Defendants were required to act in Andersen's economic interest.

The Court, therefore, in the exercise of its discretion, concludes Record Company Defendants have established a basis for seeking summary judgment as to Andersen's claim for negligence. Accordingly, the Court grants Record Company Defendants' Motion for Leave to File a Motion for Summary Judgment as to Andersen's remaining negligence claim relating to Record Company Defendants' actions after initiation of *Andersen I*.


## CONCLUSION

For these reasons, the Court declines to reverse dismissal of Defendants MediaSentry and SSC, and, therefore, **DISMISSES** Andersen's claims against those Defendants **with prejudice; DENIES** Andersen's Motion (#183) for Leave to File an Amended Motion for Class Certification; and **GRANTS in part** and **DENIES in part** Defendants' Motion (#179) for Leave to File Motion for Summary Judgment as follows:

30 - OPINION AND ORDER

1.  **DENIES** Defendants' Motion for Leave as to Andersen's claim for abuse of legal process and

2.  **GRANTS** Defendant's Motion for Leave as to Andersen's claim for negligence.

The Court **DIRECTS** the parties to confer and to submit no later than **May 27, 2010**, a jointly proposed schedule to complete Record Company Defendants' motion for summary judgment as to Andersen's negligence claim and to submit the pretrial order and pretrial documents necessary to try all of Andersen's remaining claims, including at least three (3) mutually acceptable dates for jury trial.  The Court then will schedule a Rule 16 conference to address the parties' proposals.

IT IS SO ORDERED.

DATED this 4th day of May, 2010.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District

31 - OPINION AND ORDER