**Kenneth R. Davis, II**, OSB No. 97113
davisk@lanepowell.com
**William T. Patton**, OSB No. 97364
pattonw@lanepowell.com
**Parna A. Mehrbani**, OSB No. 05323
mehrbanip@lanepowell.com
**LANE POWELL PC**
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158
Telephone: 503.778.2100
Facsimile: 503.778.2200

**Timothy Reynolds,** *Admitted Pro Hac Vice*
**HOLME ROBERTS & OWEN LLP**

**Bruce P. Keller,** *Admitted Pro Hac Vice*
**Jeffrey S. Jacobson,** *Admitted Pro Hac Vice*
**DEBEVOISE & PLIMPTON LLP**

Attorneys for Defendants Atlantic Recording Corporation, Priority Records LLC, Capitol Records, LLC, UMG Recordings, Inc. Arista Music, and Recording Industry Association of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| **TANYA ANDERSEN,** | | Civil No. 3:07-CV-934-BR |
| | Plaintiff, | |
| v. | | **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON MS. ANDERSEN'S NEGLIGENCE CLAIM** |
| **ATLANTIC RECORDING CORPORATION, et al.,** | | |
| | Defendants. | |

PAGE 1 -   MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON MS. ANDERSEN'S NEGLIGENCE CLAIM

# I. PRELIMINARY STATEMENT

This Court long has recognized that Plaintiff Tanya Andersen's negligence claim does not pass muster under Oregon law. In February, 2008, in the context of dismissing the negligence and other claims from Ms. Andersen's Second Amended Complaint, the Court stated:

> I'm doubtful, Mr. Lybeck, that there is a common law negligence claim here. . . . I don't think you have alleged, and I'm not sure if you can [allege] . . . facts that state a basis for a duty of care by each defendant, when the entire tenor of your complaint is not about negligence at all.
>
> The tenor of your complaint is that the defendants engaged in a pattern of so-called investigation, intimidation, coercion and threats. None of that core set of conduct that you are seeking to attach seems to fit my understanding of Oregon common law of negligence, where there is a duty to act reasonably and to avoid foreseeable injury to others.
>
> * * *
>
> So the negligence claim presently doesn't state a claim because it's not evident, from the face of the complaint, that there is a common law duty that the defendants breached that caused harm, or that there was some kind of special relationship between them.

(Feb. 13, 2008 Tr. at 15-16.)

Ms. Andersen nonetheless persisted in pleading this claim but, not surprisingly, she never adduced any facts to support it. Nor could she have done so. Oregon flatly precludes negligence claims for emotional injuries absent a physical impact (as opposed to mental distress), unless a "special relationship" exists between the plaintiff and the defendant. *See* Doc. No. 192 (May 4, 2010, Opinion and Order) at 27-28. Ms. Andersen alleges neither of these elements and the undisputed record confirms their absence: She experienced no physical impact and her sole relationship with the Record Companies was as adversaries in a copyright infringement case — far from the narrow "special relationship" exception to the impact rule. *See id.* at 28-30.

PAGE 2 -   MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON MS. ANDERSEN'S NEGLIGENCE CLAIM

For these reasons, as explained further below, the Record Companies respectfully request that the Court grant summary judgment in their favor on Ms. Andersen's negligence claim.[1]

## II. FACTUAL BACKGROUND

This Court dismissed last year all of Ms. Andersen's claims "arising out of [the Record Companies June 20, 2005] initiation" of their lawsuit against Ms. Andersen.  Doc. No. 173 (Opinion and Order dated Nov. 12, 2009) at 24.  Ms. Andersen's only surviving claims are that the modest discovery the Record Companies took in the case before voluntarily dismissing it — which comprised inspecting Ms. Andersen's computer, deposing her and the three other people she said regularly used her computer, and taking limited written discovery, all during an eight-month period — constituted either negligence or "abuse of process" under Oregon law.

The Court's November 12, 2009, Order (Doc. No. 173) summarized the objective facts that gave the Record Companies probable cause to sue Ms. Andersen.  In brief, on May 20, 2004, a person using the screen name "Gotenkito@KaZaA" used Internet Protocol address 4.41.209.23 to distribute many copyrighted sound recordings over a peer-to-peer Internet network.  Although Ms. Andersen notes that Chad Alstad, a resident of Everett, Washington, used the alias "Gotenkito" on his personal MySpace page on the Internet, Verizon Online identified Ms. Andersen, and not Mr. Alstad or anyone else, as the person responsible for IP address 4.41.209.23.  Verizon's certainty about its identification of Ms. Andersen never changed at any point during the case.  Twice, Verizon reconfirmed that the IP address in question was Ms. Andersen's.  *See* Doc. No. 130 (Declaration of Jeffrey S. Jacobson, Esq., in Support of Defendants' Motion for Summary Judgment, submitted on May 8, 2009) at ¶¶ 5-6 & Exs. A-B.

---

[1]    In the absence of *any* factual dispute on this issue, summary judgment is warranted.  Fed. R. Civ. P. 56(c) "authorizes summary judgment if no genuine issue of material fact exists regarding any material fact and the moving party is entitled to judgment as a matter of law," *Hummasti v. Ali*, No. 06-CV-1710-BR, 2009 WL 789679, at *2 (D. Or. Mar. 23, 2009).

Ms. Andersen, moreover, admitted having installed the "KaZaA Lite" peer-to-peer sharing software on her computer. She asserted that "a friend," Ania Bruns, installed this software on her computer unbidden. *See, e.g., Atlantic Recording Corp. v. Andersen*, No. CV 05 933 AS (D. Or.) ("*Andersen I*") Doc. No. 69-2, at 2 (Ex. B to Defendant's Response to Plaintiff's Motion to Compel Deposition and to Extend Deadlines, dated Nov. 27, 2006). Ms. Bruns, however, contradicted Ms. Andersen's account. She said she had never visited the KaZaA website and did not recall ever having installed KaZaA software on Ms. Andersen's or any other computer. *See* Declaration of David Tonini ("Tonini Decl.") Ex. 8. Ms. Andersen never has explained this severe incongruity.

Verizon's multiple confirmations that it assigned IP address 4.41.209.23 to Ms. Andersen gave the Record Companies probable cause to suspect she had distributed copyrighted sound recordings. Ms. Andersen's assertion that Ms. Bruns installed KaZaA Lite on her computer — an assertion directly at odds with Ms. Bruns' denial of having done so — did not extinguish that probable cause. Indeed, during the pendency of the Record Companies' enforcement program, many, many people initially denied having distributed sound recordings, as Ms. Andersen did, but later admitted it. *See, e.g.,* Tonini Decl. Ex. 1 (portion of trial transcript in *SONY BMG Music Ent'mt v. Tenenbaum*, Civ. No. 07-11446-NG (D. Mass.), in which the defendant admitted that, during pretrial discovery, he falsely denied infringement). For this reason, the Record Companies could not take Ms. Andersen's denial at face value, but instead proceeded to take limited discovery into their infringement claims.

The Record Companies began, as they did in most cases, by serving written discovery on Ms. Andersen asking, among other things, how many computers she owned. Ms. Andersen refused to answer this written discovery, insisting that the Record Companies' must begin by inspecting her computer. On March 17, 2006, Magistrate Judge Ashmanskas ordered a stay of the case "pending conclusion of computer hard drive examination by a neutral expert."

PAGE 4 -   MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON MS. ANDERSEN'S NEGLIGENCE CLAIM

*Andersen I* Doc. No. 42. Even after Judge Ashmanskas granted a second motion to compel on June 5, 2006 (*Andersen I* Doc. No. 50), however, Ms. Andersen still fought aspects of the inspection. *See Andersen I* Doc. Nos. 55-58. The Record Companies thus did not begin their inspection until September 18, 2006. *See Andersen I* Doc. No. 80 (declaration of plaintiffs' expert).

The Record Companies' inspection of Ms. Andersen's hard drive did not yield evidence of the sound recordings "Gotenkito" had distributed. *See Andersen I* Doc. No. 80. Although the Record Companies recognize why Ms. Andersen believes this established her innocence, an alternate explanation also existed: In other enforcement program cases, the accused infringers tampered with their computers to destroy evidence. The Record Companies, still possessed of objective evidence from Verizon pointing only to Ms. Andersen, could not ignore the possibility that she, too, might have altered her computer prior to the inspection, or produced a different computer entirely than the one she had used in May, 2004.

In *Capitol Records, Inc. v. Thomas-Rasset*, No. 06 CV 1497 (D. Minn.), for example, the defendant replaced her computer's hard drive after her infringement was discovered, and then lied to her own expert about it. *See* Tonini Decl. ¶ 3 & Ex. 2. *See also, e.g., Atlantic Recording Corp. v. Howell*, No. CV-06-2076-PHX-NVW (Doc. No. 115) (D. Ariz. Aug. 29, 2008) (entering judgment, despite defendant's denials, because the defendant intentionally erased his hard drive); *Motown Record Co. v. DePietro*, No. 2:04-cv-2246-ER (E.D. Pa., June 11, 2007) (Doc. No. 82) (granting adverse-inference instruction because defendant spoliated evidence); *Arista Records, L.L.C. v. Tschirhart*, 241 F.R.D. 462, 466 (W.D. Tex. 2006) (granting judgment for the Record Companies because of willful spoliation) (attached as Tonini Decl. Exs. 3-5.)

Hampered by Ms. Andersen's refusal to provide written discovery, the Record Companies could look only to her online public message board postings for information about her computer ownership and usage. In one such posting, dated February 19, 2005, Ms. Andersen

PAGE 5 -   MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
          JUDGMENT ON MS. ANDERSEN'S NEGLIGENCE CLAIM

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

discussed having owned a computer "for about a year" which she had "started adding to" and "updating." Tonini Decl. Ex. 7. Because Ms. Andersen produced a much older, 2002-era computer for inspection, her 2005 statement that she had a year-old computer fueled suspicion that the computer she produced for inspection was not her only one.

Ms. Andersen resisted testifying under oath about these issues. On January 16, 2007, Ms. Andersen's counsel advised that she would not agree to be deposed until the Record Companies responded to written discovery she had only just served. *See Andersen I* Doc. No. 86-1 (Declaration of Amy Bauer in Support of Plaintiffs' Motion to Compel, dated February 6, 2007), at Ex. 1. On February 6, 2007, the Record Companies therefore moved to compel Ms. Andersen's deposition. *See Andersen I* Doc. No. 85. Judge Ashmanskas granted this motion on March 1, directing Ms. Andersen to appear "on a date certain on or before March 31, 2007." *Andersen I* Doc. No. 92. The Record Companies deposed her on March 29.

Ms. Andersen testified that the 2002 computer she produced for inspection was the only one she had. With respect to her February, 2005, online forum posting, in which she said she had owned a computer "for about a year," she said she had intentionally misrepresented the age of her computer on the forum because she "d[idn't] want to make it sound like I have something really, really old." Tonini Decl. Ex. 6. As for her statement that she had "started adding to [her computer] and updating it," Ms. Andersen testified she meant only that she had purchased a "memory stick" for it. *Id.* Notably, however, when Ms. Andersen produced her computer for inspection, she produced no memory stick, on which sound recordings could have been stored as easily as on the hard drive. Tonini Decl. ¶ 10.

Thus, at the mid-May, 2007, close of discovery, the facts could be summarized fairly as follows: Verizon repeatedly identified Ms. Andersen and no one else as the owner of the IP address from which infringement occurred. Ms. Andersen acknowledged having installed KaZaA Lite peer-to-peer software on her computer, blaming Ms. Bruns for putting it there, but

PAGE 6 -   MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON MS. ANDERSEN'S NEGLIGENCE CLAIM

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

Ms. Bruns denied having done so. The four-year-old computer Ms. Andersen produced did not have the expected sound recordings on it, but in an online posting made around the time the Record Companies first contacted her, she discussed having had a computer "for about a year" which she was "updating." At deposition, Ms. Andersen said she had intentionally misstated the age of her computer and had not really "add[ed] to it" or "update[ed] it."[2]

While pursuing modest discovery from Ms. Andersen, the Record Companies also interviewed Mr. Alstad. He denied having used KaZaA to download any sound recordings, did not admit using the handle "Gotenkito" on KaZaA or any other website other than MySpace, and denied knowing Ms. Andersen or having ever been at her home, where Verizon said the infringement occurred. *Andersen I* Doc. No. 144-1 (Declaration of Amy Bauer dated Aug. 10, 2007), Ex. F. at 2-3. Absent information from the ISP inculpating anyone other than Ms. Andersen, and without any kind of admission from Mr. Alstad, the Record Companies had no basis on which to pursue Mr. Alstad for infringement. Simply put, the Record Companies had none of the evidence against Mr. Alstad that gave them probable cause to pursue Ms. Andersen.

After finishing discovery, the Record Companies viewed the record as inconclusive with respect to Ms. Andersen's responsibility for the infringement that occurred from her IP address. On June 1, 2007, just 15 days after taking their fourth and last deposition, the Record Companies discontinued their claims voluntarily. *See Andersen I* Doc. No. 129.

---

[2]   The Record Companies took a total of four depositions in the case: Ms. Andersen's on March 29 and those of Ms. Bruns and Ms. Andersen's daughters, Kylee and Lindsay Andersen, on May 15. Ms. Andersen had identified her daughters as witnesses with relevant knowledge and who had access to and used her computer. Ms. Andersen successfully moved Judge Ashmanskas to require that Kylee Andersen's deposition occur telephonically, and the telephonic deposition lasted less than an hour.

PAGE 7 -   MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON MS. ANDERSEN'S NEGLIGENCE CLAIM

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

Ms. Andersen argued that she had "prevailed" in the case and that the Court therefore should award her attorneys' fees under Section 505 of the Copyright Act. The Record Companies vigorously resisted Ms. Andersen's fee motion, contending, among other things, that:

> There is no evidence to suggest that Mr. Alstad used "gotenkito" anywhere other than his MySpace.com page, and [Ms. Andersen] put forth no evidence to the contrary. . . . The technical information and evidence in this case indicate that the infringement occurred in the home of a Verizon subscriber without the use of any type of wireless [router]. On three separate occasions, Verizon identified the subscriber as [Ms. Andersen]. Both the third party, Mr. Alstad, and [Ms. Andersen] acknowledge that they do not know each other, and there has never been anything to suggest that Mr. Alstad ever used Verizon (let alone [Ms. Andersen's] Verizon account), had ever been in the State of Oregon, or had any other possible connection to the infringement alleged in this case.

*Andersen I* Doc. No. 153 at 2-3.

Judge Ashmanskas accepted the Record Companies' characterization of the record as "inconclusive" as to whether Ms. Andersen or someone else had infringed. *Andersen I* Doc. No. 151 (9/21/2007 Findings & Recommendations), at 12. Nevertheless, Judge Ashmanskas awarded Ms. Andersen's fees in an amount later determined to be over $108,000.00.

### III. ARGUMENT

Ms. Andersen's negligence claim, like her claim for "abuse of process," rests on her assertion that the Record Companies should have discontinued their case against her earlier than June 1, 2007, and instead pursued Mr. Alstad. Verizon, however, never wavered in its identification of Ms. Andersen as the person to whom it had assigned the IP address from which massive infringement occurred. The discovery record never conclusively exculpated Ms. Andersen and the Record Companies consistently lacked probable cause to believe that Mr. Alstad, rather than Ms. Andersen, was the "Gotenkito@KaZaA" infringer. Not only does Ms. Andersen's negligence claim therefore fail as a matter of undisputed *fact*, because she cannot identify any duty the Record Companies owed to her on which they failed to execute, it also fails as a matter of *law*, because Ms. Andersen cannot and does not allege either a physical

PAGE 8 -   MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON MS. ANDERSEN'S NEGLIGENCE CLAIM

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

impact from the Record Companies' suit against her or the existence of a "special relationship" between her and the Record Companies that might excuse her from satisfying the impact requirement.

## A.    Oregon Precludes Emotional Distress Damages Based on Negligence, Absent a Physical Impact.

As the Court noted in its May 4 Order granting leave for this motion, "Oregon courts 'have recognized claims for emotional distress caused by ordinary negligence, but only if the distress is accompanied by physical impact.'"  Doc. No. 192 at 27, *quoting Lowe v. Philip Morris USA, Inc.*, 207 Or. App. 532, 551, 142 P.3d 1079 (2006).  Ms. Andersen cannot satisfy this prerequisite:  She "does not allege any physical impact or physical injuries from Record Company Defendants' continuation of *Andersen I* and/or failure to investigate [the identity of] Gotenkito, nor does the record before the Court suggest Andersen suffered any physical impact or harm as a result of Record Company Defendants alleged negligence."  *Id.* at 27-28.  The new theories of recovery Ms. Andersen has raised after the close of discovery, for "lost wages" and a new diagnosis of "post-traumatic stress," similarly do not satisfy Oregon's "impact rule."[3]

Oregon courts have explained that the purpose of the impact rule is to ensure that those lacking physical injuries cannot sue in negligence for emotional distress.  In *Lowe*, a former smoker who had suffered no adverse health effects, but feared the prospect of future lung cancer, sued tobacco companies for the emotional harm caused by that fear.  The Court of Appeals rejected the claim as inadequate because that type of mental distress needs to be accompanied by a concrete physical impact.  *Id.* at 551-54.  *See also Hammond v. Central Lane Commc'n Ctr.*,

---

[3]    The Record Companies noted in the Joint Status Report submitted on July 7, 2010, that Ms. Andersen only now, long after the close of discovery, has (1) served an "amended interrogatory response" indicating her intent to pursue a theory of lost wages, and (2) will present testimony, including from a previously-undisclosed medical professional, about newly-experienced "flashbacks" to her time as a defendant and a new psychiatric diagnosis. The Court advised that it considered these issues premature but would consider them if they persist.

PAGE 9 -    MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON MS. ANDERSEN'S NEGLIGENCE CLAIM

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

312 Or. 17, 816 P.2d 593 (1991) (no emotional distress damages for alleged negligence by 911 operator absent physical impact). Any other rule, the court said, could create the substantial risk of compensation for "evanescent" and "easily counterfeited" mental disturbances. *Lowe,* 207 Or. App. at 552, *quoting Prosser and Keaton on the Law of Torts* at 361. The physical impact rule "guarantee[s] that the mental disturbance is genuine." *Id. Hammond* reaffirmed this rule. *See* 312 Or. at 31.

Ms. Andersen suffered no physical impact. She has alleged only the kind of emotional difficulties that Oregon courts hold not to provide an adequate basis for negligence claims. Ms. Andersen, moreover, experienced these difficulties long before the Record Companies sued her in June, 2005. As her Complaint alleges, "*[i]n May 2004*, for health reasons, [she] had been forced to leave her position as a case manager at the [Oregon] Department of Justice[,] . . . and she was surviving on disability benefits for painful physical illness, which contributed to stress related anxiety and depression." Fourth Amended Complaint ¶ 7.25 (emphasis added).

**B.    The Record Companies Had No "Special Relationship" With Ms. Andersen Allowing Her to Maintain a Claim in the Absence of a Physical Impact.**

The Court's May 4 Order noted that when a plaintiff seeks recovery not for mental distress, but for economic harm, an "exception [exists] to th[is] general rule" that no claim can be maintained without physical impact: "One may be liable in negligence for purely economic harm . . . but only if the harm is predicated on a heightened duty of the negligent actor to the injured party beyond the common-law duty to exercise reasonable care." Doc. No. 192 at 28, *quoting Oregon Steel Mills*, 336 Or. 329, 340-42, 83 P.3d 322 (2004).[4] Ms. Andersen, however, does not and could not allege that the Record Companies owed her such a heightened duty.

---

[4]    In *Conway v. Pacific University*, 324 Or. 231, 238-41, 924 P.2d 818 (1996), the Oregon Supreme Court described the very limited types of relationships that would fall under this exception:

> [A] heightened duty of care exists [when] the party who owes the duty has a *special responsibility* toward the other party. This is so
>
> (continued . . .)

PAGE 10 - MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON MS. ANDERSEN'S NEGLIGENCE CLAIM

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

As the Court stated, the only types of relationships creating a heightened duty are those involving "attorneys and physicians as to their clients and patients" and, in limited cases, parties "acting, at least in part, to further the economic interests of [a] client," such as an agent with respect to his or her principal. Doc. No. 192 at 29 (citations omitted). The Court contrasted those relationships of trust with Ms. Andersen's allegations that the Record Companies had only a general duty to her to act reasonably, and no more. *Id.* at 29-30.[5] The Court therefore concluded that Ms. Andersen could not rely on the "special relationship" exception because she "was not a client of Record Company Defendants and there is not any indication that Record Company Defendants were required to act in [her] economic interest." *Id.*

That conclusion was well grounded. Between adverse litigants, *no* relationship of trust exists. Litigation is a classic example of parties "acting in their *own* behalf, each for their own benefit," where no heightened duty can exist. *Conway*, 324 Or. at 242 (emphasis in original). *See also Onita Pacific Corp. v. Bronson*, 315 Or. 149, 161, 843 P.2d 890 (1992) (no special relationship among parties negotiating a land sale contract because they were "two adversarial parties negotiating at arm's length to further their own economic interests.")

---

(. . . continued)
> because the party who is owed the duty effectively has authorized the party who owes the duty to exercise independent judgment in the former party's behalf and in the former party's interest. In doing so, the party who is owed the duty is placed in a position of reliance upon the party who owes the duty; that is, because the former has given responsibility and control over the situation at issue to the latter, the former has a right to rely upon the latter to achieve the desired outcome or resolution.

[5]   Ms. Andersen's Fourth Amended Complaint (at ¶¶ 8.37-8.40) alleged a heightened duty only with respect to her now-dismissed claims against former defendant MediaSentry. She alleges a "general duty" with respect to the Record Companies' own activities. *Id.* ¶¶ 8.41-8.43.

PAGE 11 - MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON MS. ANDERSEN'S NEGLIGENCE CLAIM

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

It is for this reason Oregon cases have made clear that, even where a relationship of mutual interest and trust exists, if that relationship has a primarily economic focus, such as that between an insurer and an insured or an accountant and a client, negligence in that relationship still cannot give rise to claims for related emotional damages. In *McCulloch v. Price Waterhouse, LLP*, 157 Or. App. 237, 971 P.2d 414 (1998), for example, a plaintiff sued for emotional distress allegedly caused by the defendants' accounting negligence and breach of fiduciary duty. The Court of Appeals rejected the claim, finding that "[e]ven though the relationship is fiduciary in nature, it is fundamentally an economic one" that was "not of sufficient importance to warrant an award of damages for emotional distress." *Id.* at 252. *See also Dezsofi v. USF Reddaway, Inc.*, Civ. No. 06-6051-TC, 2007 WL 1975633 (D. Or. July 6, 2007) (no sufficiently special relationship to justify emotional distress damages in suit by employee against employer); *Eastwood v. American Family Mut. Ins. Co.*, Civ. No. 05-1579-HA, 2006 WL 2934260 (D. Or. Oct. 12, 2006) (because relationship between insurer and insured is "primarily economic in nature," the plaintiff could not recover emotional distress damages).

Because Ms. Andersen does not and cannot claim to have suffered any physical impact from the allegedly negligent act of not pursuing Mr. Alstad in lieu of her and because she affirmatively alleges that there was no special relationship of trust with the Record Companies, she can recover neither emotional nor economic damages under a negligence theory as a matter of law. The Court, therefore, should dismiss Ms. Andersen's negligence claim.

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

## IV. CONCLUSION

For the foregoing reasons, the Record Companies respectfully request that the Court grant summary judgment in their favor on Ms. Andersen's negligence claim.

DATED: July 23, 2010

LANE POWELL PC

By _____
    Kenneth R. Davis, II, OSB No. 971132
    William T. Patton, OSB No. 973646
    Parna A. Mehrbani, OSB No. 053235
    (503) 778-2100

PAGE 13 - MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON MS. ANDERSEN'S NEGLIGENCE CLAIM