IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

TANYA ANDERSEN,

        Plaintiff,

v.

ATLANTIC RECORDING
CORPORATION, a Delaware
corporation; PRIORITY RECORDS
LLC, a California limited
liability company; CAPITOL
RECORDS, INC., a Delaware
corporation; UMG RECORDINGS,
INC., a Delaware corporation;
BMG MUSIC, a New York general
partnership; RECORDING
INDUSTRY ASSOCIATION OF
AMERICA; SAFENET, INC. f/k/a
MEDIASENTRY, INC., a Delaware
corporation; and SETTLEMENT
SUPPORT CENTER, LLC, a
Washington limited liability
company,

        Defendants.

07-CV-934-BR

OPINION AND ORDER

1 - OPINION AND ORDER

**LORY RAY LYBECK**
**BENJAMIN R. JUSTUS**
Lybeck Murphy, LLP
7525 S.E. 24th Street, Suite 500
Mercer Island, WA 98040-2336
(206) 230-4255

**COREY D. MCGAHA**
**LEISA B PEARLMAN**
**RICHARD A. ADAMS**
**REID D. MILLER**
Patton, Roberts, McWilliams, & Capshaw, LLP
Century Bank Plaza, Suite 400
2900 St. Michael Drive
Texarkana, TX 75503
(903) 334-7000

      Attorneys for Plaintiff

**KENNETH R. DAVIS, II**
**WILLIAM T. PATTON**
**PARNA A. MEHRBANI**
Lane Powell P.C.
601 S.W. Second Avenue, Suite 2100
Portland, OR 97204-3158
(503) 778-2121

**LINNEA BROWN**
**TIMOTHY M. REYNOLDS**
Holme Robert & Owen, LLP
1700 Lincoln Street, Suite 4100
Denver, CO 80203
(303) 866-0417

**BRUCE P. KELLER**
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
(212) 909-6118

      Attorneys for Defendants

**BROWN, Judge.**

    This matter comes before the Court on Defendants' Motion

2 - OPINION AND ORDER

(#202) for Summary Judgment as to Plaintiff Tanya Andersen's Negligence Claim.  For the reasons that follow, the Court **GRANTS** Defendants' Motion.

## FACTUAL BACKGROUND

The parties are familiar with the facts from numerous prior Opinions and Orders, and, therefore, the Court will not repeat them.

## PROCEDURAL BACKGROUND

On June 24, 2005, Defendants Atlantic Recording Corporation; Priority Records LLC; Capitol Records, Inc.; UMG Recordings, Inc.; and BMG Music filed an action against Andersen in this Court (*Andersen I*) alleging Andersen infringed their copyrights.

On September 30, 2005, and March 27, 2007, Andersen filed an Answer and "Second Answer" against the defendants in *Andersen I* alleging Counterclaims for (1) electronic trespass; (2) computer fraud and abuse under 18 U.S.C. § 1030; (3) invasion of privacy; (4) abuse of legal process; (5) fraud and negligent misrepresentation; (6) outrage; (7) deceptive business practices; and (8) violations of Oregon's Racketeer Influenced and Corrupt Organizations Act (ORICO), Oregon Revised Statute § 166.715, *et seq*.

On June 22, 2007, while *Andersen I* was still pending,

3 - OPINION AND ORDER

Andersen filed this action (*Andersen II*) against Record Company Defendants; Safenet, Inc. f/k/a MediaSentry, Inc.; and SSC, LLC, in which she alleged claims for (1) negligence; (2) fraud and negligent misrepresentation; (3) violations of ORICO; (4) violations of the federal Racketeering Influenced Corrupt Organization Act (RICO), 18 U.S.C. § 1962(c) and (d); (5) abuse of legal process; (6) malicious prosecution; (7) outrage and intentional infliction of emotional distress; (8) violation of the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030(a)(5)(B)(I); (9) trespass to chattels; (10) invasion of privacy; (11) libel and slander; (12) deceptive business practices; and (13) misuse of copyright laws based on the same facts as her Counterclaims in *Andersen I*.

On August 15, 2007, Andersen filed a First Amended Complaint in *Andersen II* as a class action and alleged claims for (1) negligence, (2) fraud and negligent misrepresentation, (3) violations of RICO, (4) abuse of legal process, (5) malicious prosecution, (6) outrage and intentional infliction of emotional distress, (7) violation of CFAA, (8) trespass to chattels, (9) invasion of privacy, (10) libel and slander, (11) deceptive business practices, (12) misuse of copyright laws, and (13) civil conspiracy.

On September 12, 2007, and October 22, 2007, Defendants in *Andersen II* filed Motions to Dismiss Plaintiff's First Amended

4 - OPINION AND ORDER

Complaint.

On January 14, 2008, the Court dismissed without prejudice Andersen's Counterclaims in *Andersen I* to allow Andersen to bring those claims in *Andersen II*.

On February 19, 2008, this Court dismissed Andersen's First Amended Complaint in *Andersen II* on the ground that Andersen had not adequately stated claims for relief.

On March 14, 2008, Andersen filed a Second Amended Complaint in *Andersen II* as a class action and alleged claims for (1) negligence; (2) intentional infliction of emotional distress; (3) violations of RICO; (4) violations of ORICO; (5) civil conspiracy; (6) wrongful initiation of civil proceedings; (7) abuse of legal process; (8) defamation; (9) false light; (10) violations of Oregon Unlawful Trade Practices Act (UTPA), Oregon Revised Statute § 646.6-5, *et seq.*; (11) negligent misrepresentation; (12) fraud; (13) invasion of privacy; (14) violation of CFAA; and (15) trespass to chattels.

On March 31, 2008, the Court granted Andersen leave to file a Third Amended Complaint in *Andersen II* to correct the defects in her Second Amended Complaint as noted by the Court.

On April 17, 2008, Andersen filed a Third Amended Complaint in *Andersen II*. On April 21, 2008, the Court struck Andersen's Third Amended Complaint and granted her leave to file a Fourth Amended Complaint.

On May 1, 2008, Andersen filed her Fourth Amended Complaint in *Andersen II* as a class action alleging claims for (1) civil conspiracy against all Defendants, (2) wrongful initiation of civil proceedings against Record Company Defendants, (3) abuse of legal process against Record Company Defendants, and (4) negligence against all Defendants.

On April 2, 2009, Andersen filed a Motion for Class Certification.

On May 8, 2009, Defendants filed a Motion seeking summary judgment as to all of Andersen's claims on the basis of the *Noerr-Pennington* Doctrine.  See *Prof'l Real Estate Inv., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 62-63 (1993).

On October 19, 2009, the Court heard oral argument on Defendants' Motion for Summary Judgment.  The Court noted and Defendants acknowledged their Motion only addressed whether the *Noerr-Pennington* Doctrine barred Andersen's claims arising from the initiation of *Andersen I* and did not address whether the Doctrine barred Andersen's claims based on the continuation of *Andersen I*.  The Court, therefore, found Defendants' Motion as proceeding only against those claims arising from Defendants' initiation of civil proceedings in *Andersen I* and the "conduct incidental to" the initiation of *Andersen I*.  See *Sosa v. DirecTV, Inc.*, 437 F.3d 923, 934-35 (9th Cir. 2006). Accordingly, the Court declined to address at that time

(1) whether *Noerr-Pennington* barred Andersen's claims arising from Defendants' continuation of civil proceedings and (2) whether class certification was appropriate.

On November 12, 2009, the Court issued an Opinion and Order in which it granted Defendants' Motion for Summary Judgment as to all aspects of Andersen's claims that arise from Defendants' initiation of civil proceedings in *Andersen I* on the ground that this aspect of Andersen's claims is barred by the *Noerr-Pennington* Doctrine.

On December 1, 2009, the parties filed a Joint Status Report in which they disagreed as to the issues remaining to be resolved in *Andersen II* after the Court's November 12, 2009, Opinion and Order.

On January 6, 2010, the Court issued an Opinion and Order in *Andersen II* in which it concluded Andersen's claims for civil conspiracy, abuse of legal process, and negligence survive only to the extent that they are based on Defendants' actions that allegedly took place after the initiation of *Andersen I*. The Court also

1. dismissed Andersen's claim for wrongful initiation of civil process,
2. dismissed Andersen's claims for injunctive and/or declaratory relief prohibiting Record Company Defendants from using MediaSentry-gathered IP addresses

7 - OPINION AND ORDER

        as the basis for any legal action,

3. denied Andersen's Motion for Class Certification,

4. denied Andersen's request for leave to file a Fifth Amended Complaint "to include an additional class representative,"

5. directed Andersen to show cause in writing why the Court should not dismiss her claims against MediaSentry and/or SSC,

6. granted Andersen leave to file another class-certification motion based on the existing record, and

7. granted Record Company Defendants permission to file a motion for leave to file another motion for summary judgment.

On January 22, 2010, Andersen filed an Opposition to the Dismissal of Defendants MediaSentry and SSC. On January 27, 2010, Andersen filed a Motion for Leave to File an Amended Motion for Class Certification. On that same date, Record Company Defendants filed a Motion for Leave to File Motion for Summary Judgment.

At some point after January 22, 2010, Andersen filed a Petition for Writ of Mandamus with the Ninth Circuit in which she sought a review of this Court's decision to deny her initial Motion for Class Certification on the ground that the Court's November 12, 2009, and January 6, 2010, Opinions and Orders

8 - OPINION AND ORDER

...

contained "virtually no analysis" as to Andersen's initial Motion for Class Certification.

On May 4, 2010, the Court issued an Opinion and Order in *Anderson II* in which it declined to reverse dismissal of Defendants MediaSentry and SSC and, therefore, dismissed Andersen's claims against those Defendants with prejudice; denied Andersen's Motion for Leave to File an Amended Motion for Class Certification; denied Defendants' Motion for Leave to File Motion for Summary Judgment as to Andersen's claim for abuse of legal process; and granted Defendants' Motion for Leave to File Motion for Summary Judgment as to Andersen's claim for negligence.

On May 17, 2010, the Ninth Circuit issued an order denying Andersen's Petition for Writ of Mandamus.

On July 23, 2010, Defendants filed a Motion for Summary Judgment as to Andersen's claim for negligence.

## STANDARDS

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the

9 - OPINION AND ORDER

pleadings and show there is a genuine issue of material fact for trial. *Id.*

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Id.* "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936*, 680 F.2d 594, 598 (9th Cir. 1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990). When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9th Cir. 2004), *as amended by* 410 F.3d 1052, 1055 (9th Cir. 2005) (citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller*

*Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id*.

## DISCUSSION

In the portion of Andersen's negligence claim remaining after the Court's January 6, 2010, Opinion and Order, Andersen alleges

> [T]he RIAA and the Record Companies acted negligently in one or more of the following ways:
>
> * * *
>
> f.   When they engaged in . . . prosecuting baseless sham litigation against Plaintiff.
>
> g.   When they failed to properly investigate the true identity of "gotenkito" . . . after his true identity was supplied to them by her and was otherwise known to them.
>
> The negligent conduct described above proximately caused direct damages to Plaintiff.

Fourth Am. Compl. at ¶¶ 8.42-8.43. Andersen also points to the following allegations to support her negligence claim:

> Before the lawsuit, Ms. Andersen had hoped to return to work, but her psychological and physical symptoms seriously worsened due to Defendants' malicious and outrageous conduct. After being attacked by defendants, rather than completing a return to work program she had to seek additional medical and psychiatric care. Defendants have been aware of the deleterious effect their acts have had on Ms. Andersen's physical and psycho-logical conditions since March 6, 2005, when Ms. Andersen wrote to Settlement Support Center

11 - OPINION AND ORDER

> advising of the harm she was suffering because of their conduct.
>
> * * *
>
> When Ms. Andersen declined to pay them, Defendants stepped up their abuse and intimidation.  In January 2007, lawyers for the RIAA and the Record Companies demanded the deposition of Ms. Andersen's then 10 year-old daughter, Kylee.  This demand was made after Defendants 1) knew who the real "gotenkito" was; and, 2) after the computer inspection and other evidence showed that Ms. Andersen's computer has not been used for infringement.  The sole purpose of the threatened deposition was to distress, upset and intimidate Ms. Andersen.  Ms. Andersen was understandably upset.  The RIAA and its agents knew that Ms. Andersen was very concerned about her daughter.  As intended, the threat of taking her deposition was causing Ms. Andersen a great deal of physical and emotional distress.
>
> * * *
>
> Ms. Andersen . . . knew she had not engaged in copyright infringement as Defendants falsely claimed.  Because of their aggressive and relentless claims that they had actual proof, their superior technological knowledge and economic domination, Ms. Andersen invested substantial resources into investigating the integrity of her computer and investigating the claims of infringement made by Defendants.  Ms. Andersen also spent additional time and resources locating and consulting with attorneys regarding the false claims made against her.  Defendants' false threat that they actually possessed proof that would be used in a lawsuit to ruin her financially caused her great distress.  The conduct of the RIAA [and] the Record Companies . . . caused her medical condition to worsen, requiring that she return to her doctor causing her to be unable to return to work. . . .  Ms. Andersen did not possess the sophisticated knowledge of copyright law or of computer technology claimed by Defendants.  She . . . was without reasonable means to even properly

12 - OPINION AND ORDER

>     investigate yet effectively the false claims and
>     the federal lawsuit filed against her.

Fourth Am. Compl. at ¶¶ 7.26, 7.30, 7.36.

Defendants move for summary judgment as to Andersen's negligence claim on the grounds that (1) Oregon law precludes emotional-distress damages based on negligence absent a physical impact and Andersen has not established that she suffered a physical impact as a result of Defendants' alleged negligence and (2) Defendants did not have any special relationship with Andersen that would allow her to maintain a claim in the absence of a physical impact.  In her Response to Defendants' Motion, Andersen concedes she did not have any special relationship with Defendants giving rise to a claim for negligence in the absence of a physical impact.  The Court, therefore, addresses only Defendants' assertion that Andersen has not established a physical impact.

The parties do not dispute that Oregon courts "have recognized claims for emotional distress caused by ordinary negligence, but only if the distress is accompanied by physical impact."  *Lowe v. Philip Morris USA, Inc.*, 207 Or. App. 532, 551 (2006)(citing *Simons v. Beard*, 188 Or. App. 370, 375 (2003)).  *See also Chouinard v. Health Ventures*, 179 Or. App. 507, 515 (2002)(no recovery for emotional distress caused by failure to initially diagnose cancerous tumor in the absence of manifest physical impact); *McCulloch v. Price Waterhouse LLP*, 157 Or. App.

13 - OPINION AND ORDER

237, 252 (1998)(plaintiff could not recover from accountant for emotional distress caused by his negligence); *Flowers v. Bank of Am.*, 67 Or. App. 791, 794 (1984)(plaintiff could not recover for emotional distress caused when restaurant negligently failed to honor his credit card).  Nevertheless, Andersen asserts she has established that she suffered a physical impact caused by Defendants' actions in continuing their lawsuit against her.  Specifically, Andersen points to the Declaration of her physician, Lloyd T. Morita, M.D., in which Dr. Morita testifies (1) Andersen's migraine headaches increased in duration in October 2005, July 2006, and April 2007; (2) Andersen had problems sleeping due to pain in March 2006; and (3) Andersen suffered from increased depression and stress in April 2007.  Dr. Morita opines "the continuation of the lawsuit was undoubtedly causing Ms. Andersen's symptoms to increase and worsen."  Morita Decl. at ¶¶ 3-7.  Andersen relies on *Chouinard*; *Simmons v. Beard*, 188 Or. App. 370 (2003); *Wilson v. Tobiassen*, 97 Or. App. 527 (1989); and *Feheley v. Senders*, 170 Or. 457 (1943), to support her contention that she suffered a physical impact caused by Defendants' actions sufficient to survive summary judgment as to her negligence claim.

Defendants note in all of the cases relied on by Andersen, the plaintiff first suffered a "physical touching" that then gave rise to emotional distress.  Defendants assert Oregon's "impact

14 - OPINION AND ORDER

rule" requires "a physical injury that gives rise to emotional distress" while Andersen, on the other hand, is alleging emotional distress that gave rise to physical symptoms. According to Defendants, therefore, Andersen has not satisfied the physical impact rule because she has not alleged any physical contact preceding her emotional distress.

In *Shoemaker* and *Wilson*, the plaintiffs alleged offensive sexual touching that gave rise to emotional distress. 125 Or. App. at 571, 97 Or. App. at 531. Similarly, the plaintiff in *Fehely*, a pregnant woman who was involved in an automobile accident, suffered physical injuries and feared her unborn child had also been injured. 170 Or. at 459-60. The Court in *Fehely* allowed the plaintiff to bring a claim for negligence on the ground that "one suffering from injuries to his person due to the negligence of another may recover for mental distress and anguish which directly and as a natural consequence *flows from the physical injury*." *Id*. at 461 (emphasis added).

In *Simons* the Oregon Court of Appeals noted "[c]onsistent[] with *Fehely*, we have referred to the physical impact rule as requiring a 'physical injury' *that gives rise to* emotional distress." 188 Or. App. at 376 (emphasis added). The court held the plaintiff had sufficiently alleged a physical impact when she alleged in her amended complaint that

> [the] defendants' negligence in failing to correct
> the transverse lie resulted in "prolonged and

15 - OPINION AND ORDER

>    improper impact" of the fetus upon the birth canal
>    and "greatly increase[d] both *maternal* and fetal
>    risk of death if not corrected prior to the onset
>    of active labor." (Emphasis added.) The amended
>    complaint also alleges that "continuou[s] fetal
>    monitoring was necessary to determine if and when
>    the unborn child went into fetal distress, thus
>    requiring immediate medical and/or surgical (*i.e.*,
>    Cesarean section) care." The amended complaint
>    further alleges that, even after plaintiff's
>    mucous plug became dislodged, and even as the
>    fetus remained in a position from which
>    spontaneous delivery was "impossible," plaintiff
>    was denied admission to the hospital. Finally, as
>    pertinent to "physical impact," the amended
>    complaint alleges that defendant Beard corrected
>    the transverse lie only after the fetus had died
>    and that plaintiff then delivered her dead child
>    vaginally.

*Id*. at 376-77.

Based on *Fehely, Simmons, Chouinard,* and *Wilson*, the Court concludes to survive summary judgment on her claim for negligence under Oregon law, Andersen must establish that she suffered a physical touching that resulted in emotional distress. The evidence Andersen relies on, however, establishes only that she suffered emotional distress that gave rise to an exacerbation of her existing physical ailments. As noted, Andersen's doctor testifies in his Declaration that "the continuation of the lawsuit was undoubtedly causing Ms. Andersen's symptoms to increase and worsen." Similarly, Andersen testifies in her Declaration that Defendants' continued action against her caused her headaches to worsen in duration and frequency and caused her "physical suffering." Andersen Decl. at ¶¶ 4-5, 9, 11. Thus,

16 - OPINION AND ORDER

the evidence indicates Andersen suffered emotional distress that increased and exacerbated her physical suffering, and Andersen does not identify any evidence of the inverse *(i.e.*, that she suffered any kind of physical impact that caused her to suffer emotional distress as required by *Fehely* and *Simmons).*

On this record, the Court finds Andersen has not produced sufficient evidence that she suffered a physical impact that caused her emotional distress.  Accordingly, the Court grants Defendants' Motion for Summary Judgment as to Andersen's negligence claim.

## CONCLUSION

For these reasons, the Court **GRANTS** Motion (#202) for Summary Judgment on Andersen's negligence claim.

IT IS SO ORDERED.

DATED this 18th day of November, 2010.

/s/ Anna J. Brown

ANNA J. BROWN
United States District